**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**DOCKET NO:  05-40170 FDS**

| | |
|---|---|
| STEPHANIE HOFER and | ) |
| DOUGLAS HOFER, | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GAP, INC., EXPEDIA, INC., and | ) |
| TURTLE BEACH TOWERS, | ) |
|     Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT, GAP, INC.'S, MOTION AND**
**MEMORANDUM OF LAW TO COMPEL DISCOVERY**
**AND**
**PLAINTIFFS' REQUEST FOR RULE 11 SANCTIONS**

    Plaintiffs, Stephanie Hofer and Douglas Hofer, submit the following in Opposition to Defendant, Gap, Inc.'s (the "Gap"), Motion to Compel Discovery.  Plaintiffs also request, as a result of the Gap's utter bad-faith, that Gap be sanctioned in accordance with F.R.C.P., Rule 11.

**Introduction**

    Gap's Motion to Compel Discovery from the Plaintiffs requests that this Court direct the Plaintiffs to produce a pair of 1) "exemplar sandals", 2) "medical records" and 3) "disability records."  In a deliberate effort to taint this Court against Plaintiffs' counsel, Gap attempts to draw support for it's motion from the fact that Plaintiffs' counsel were assessed costs when Plaintiffs did not oppose a Motion for Supplemental Discovery filed by co-Defendant, Expedia.  Ironically, despite the fact that Expedia did not allege that

1

Plaintiffs' withheld documents, Gap attaches Expedia's Rule 34 Document Request in support of its position that documents are being withheld *from the Gap*.[1]

As stated more fully below, the Plaintiffs have not failed to produce any documents properly requested by the Gap. Rather, as the facts will illustrate (1) Gap has been less than forthright (or consistent) in its alleged reasons for the production of the exemplar sandals and Plaintiffs are not required to "produce for testing" the exemplar sandals, (2) the Plaintiff's medical records have, in fact, been produced to the extent they were properly requested (some records have actually been produced multiple times), and (3) Plaintiff's disability records were not properly requested and are nevertheless not in the Plaintiffs' possession.

## ARGUMENT

**I.  GAP'S REQUEST FOR THE PRODUCTION OF THE EXEMPLAR SANDALS IS MADE IN BAD-FAITH.**

On September 8, 2006, at a Status Conference held in connection with this action, the Court extended the time to complete depositions as it related to the Plaintiffs' examinations of the Defendants' Rule 30(b)(6) designees.[2] During the Status Conference, counsel for the Gap, who attended telephonically, represented that the production of a pair of exemplar sandals was necessary to enable it to *identify* the manufacturer of the sandals worn by the Plaintiff at the time of her accident. Gap also requested the Plaintiffs be ordered to produce the sandals for this limited reason. This Court declined to grant the Gap's oral motion for production of the sandals.

---

[1] Gap's attempt to use discovery requests propounded by co-Defendant, Expedia, Inc., in support of Gap's claims is wholly improper and, nevertheless, inappropriate. If Expedia had concluded that Plaintiffs failed to produce requested discovery, Expedia would certainly have raised such an issue in at least one of the three pleadings it has recently filed with this Court.

[2] Plaintiffs had served their notices of depositions prior the deposition discovery deadline of August 31, 2006.

On the same day of the Status Conference, Gap's counsel, in flagrant disregard for this Court's directives, corresponded with Plaintiffs' counsel demanding the production of one pair of sandals for "testing" and further stated that Gap would merely "attempt" to comply with the Court's Order that a designee be produced for deposition by the Plaintiffs.

Plaintiffs' subsequently asked Gap's counsel to explain why the "production" of a pair of exemplar sandals was necessary (for identification purposes) since the sandals were previously:

(1)     personally <u>inspected</u> by Gap's counsel at the Plaintiff's deposition;

(2)     captured on a "<u>Videotape</u>" maintained by Gap's counsel;

(3)     depicted in numerous <u>color photographs</u> produced at the request of Gap's counsel; and

(4)     <u>made available</u> for further inspection at the Plaintiffs' counsel offices during normal business hours.

Gap never addressed Plaintiffs' inquiries but rather filed a Motion to Compel.

Moreover, Plaintiffs never agreed to produce a pair of the exemplar sandals as indicated by Gap's counsel. Plaintiffs agreed only to review a Stipulation drafted by Gap's counsel to determine whether it would be agreeable to producing one pair of the exemplar sandals- to enable the Gap to identify the manufacturer. Indeed, upon review of the Stipulation drafted by the Gap's counsel Plaintiffs' counsel refused to sign same since it permitted Gap to perform testing on the sandals. Alternatively, the Plaintiffs' produced colored photographs, allowed Gap's counsel to personally inspect the sandals at Gap's counsel's offices, permitted for the sandals to be captured on Videotape, and continued to make the sandals available at Plaintiffs' counsel's office.

To date, Gap has failed to provide any explanation whatsoever as to how "testing" of the sandals is necessary to identify the sandals' manufacturer.

If Gap's representation in open Court were to be taken at face value as Gap intended, said representation being that the production of one pair of exemplar sandals is needed for the sole purpose of identifying the manufacture thereof, it is then difficult, if not impossible, to imagine why Gap is demanding the right to commit testing on the sandals. Furthermore, it defies logic that after personal inspection of the sandals, possession of a Videotape capturing the sandals, and numerous colored photographs depicting the sandals from various angles, Gap lacks the ability to identify the manufacturer.

Lastly, notwithstanding the fact that the above material should have permitted for the identification of the exemplar sandals' manufacturer, Gap has not alleged any reason why the sandals should be produced in lieu of being inspected at the offices of Plaintiffs' counsel.  Gap has in-state counsel located only minutes from Plaintiffs' counsel's office and could have at any time examined the sandals more thoroughly to allow it to make a proper identification as to the manufacturer.  Moreover, if Gap only sought to identify the manufacturer, as it represented through counsel before this Court, the logical and most prudent course of action would have been to enlighten Plaintiffs' counsel as to why "testing" was a necessary prerequisite for such a purpose.

Gap's request for the "production" and "testing" of the sandals has been made in bad-faith and there is no appropriate authority cited that would allow Gap to perform testing of the exemplar sandals.

**II.    ALL RECORDS PROPERLY REQUESTED BY THE GAP HAVE BEEN PRODUCED BY THE PLAINTIFF.**

Plaintiff, Stephanie Hofer, has produced all of her medical records properly requested by the Gap in this action.[3] On August 7, 2006, in response to the Gap's accusation that Plaintiff failed to produce her medical records, Plaintiffs' counsel took the time to detail for Gap's counsel how all properly requested documents were, in fact, produced pursuant to Gap's Rule 34 Document Request, which, in relevant part, read as follows:

> *Any and all medical records of Stephanie Hofer, including photographs taken by medical personnel from March 18, 2004 to the present.*

Plaintiffs' addressed each and every allegation made by the Gap as follows:[4]

a.    "Dr. Fraser": records from Dr. Fraser's treatment of the Plaintiff were <u>produced</u> to you on <u>April 14, 2006</u> in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents and Things.[5]

b.    "Dr. Hord": records from Dr. Hord's treatment of the Plaintiff were <u>produced</u> to you on <u>April 14, 2006</u> in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents and Things.

c.    "Dr. Borgen": records from Dr. Borgen's treatment of the Plaintiff were <u>produced</u> to you on <u>April 14, 2006</u> in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents and Things.

d.    *"Dr. Aney": Mental health records, such as records from Ms. Hofer's psychiatrist, were requested for the first time on June 9, 2006 and, therefore, said request was untimely.*

---

[3] The only exception relates to records from the DNA (Diversified Nursing Association) which have been ordered but have yet been received.

[4] *See* August 7, 2006 letter to Gap's counsel attached hereto as **Exhibit A**.

[5] In addition to these records being produced by the Plaintiffs, Gap also obtained these records through a Keeper of the Records Subpoena on June 23, 2006. Yet, despite production of the records on two separate occasions, Gap subsequently alleged that said documents were being withheld by the Plaintiffs.

e. "Dr. Schatz": Dr. Schatz was Ms. Hofer's gynecologist prior to March, 2004 and records relating to Ms. Hofer's medical treatment prior to March, 2004 were not timely requested by Gap, Inc.

f. "Mass General": records relating to Ms. Hofer's treatment at Mass General were produced on April 14, 2006 in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents.

g. "Diversified Nursing Association": records relating to Ms. Hofer's nursing treatment have not yet been received by the Plaintiff, despite request. Said records will be produced upon receipt.

h. "St. Ann's Hospital": Despite our most diligent efforts, which includes numerous requests, St. Ann's Hospital has not produced Plaintiff's records. (Subsequent to the August 7, 2006 correspondence, counsel for the Plaintiff received records from St. Ann's Hospital and promptly produced same.)

i. "UMass": records relating to Ms. Hofer's treatment at UMass were produced on May 11, 2006 in Plaintiff's First Supplemental Response to Defendant, Gap Inc.'s, First Request for Production of Documents.[6]

j. *"Charter Healthcare": Records from Charter Healthcare were not requested as Ms. Hofer was treated by Charter Healthcare prior to March, 2004.*

k. *"Linda Simmons": Records from Linda Simmons were not requested as such records relate to a period prior to March, 2004.*

l. "Dr. Lhowe": records from Dr. Lhowe were produced on April 14, 2006 in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents.

m. "Dr. Chen (Chang)": records from Dr. Chang were produced on April 14, 2006 in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents.

n. "Dr. Stoyjanovic (Stojanovic)": records from Dr. Stojanovic were produced on April 14, 2006 in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents.

o. "Dr. Hamburger": records from Dr. Hamburger were produced on April 14, 2006 in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents. Dr. Hamburger is Dr. Stoyjanovic's Associate.

---

[6] In addition to these records being produced by the Plaintiffs, Gap also obtained these records through a Keeper of the Records Subpoena on June 23, 2006. Yet, despite production of the records on two separate occasions, Gap subsequently alleged that said documents were being withheld.

p.        "Dr. Borgen": see (c) above.

q.        "Dr. Zachary": records from Dr. Zachary were produced on April 14, 2006 in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents.

r.        "Dr. Bassett": records from Dr. Bassett were produced on April 14, 2006 in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents.

s.        "Dr. Kulich": records from Dr. Kulich were produced on April 14, 2006 in Plaintiffs' Response to Defendant, Gap Inc.'s, First Request for Production of Documents.

t.        "Jen LaBlanc/Bill Chapman": records from Jen LaBlanc/Bill Chapman were produced on May 11, 2006 in Plaintiff's First Supplemental Response to Defendant, Gap Inc.'s, First Request for Production of Documents.

u.        "Dr. Sarah Reiff-Hekking": records from Dr. Sarah Reiff-Hekking were produced on May 11, 2006 in Plaintiff's First Supplemental Response to Defendant, Gap Inc.'s, First Request for Production of Documents.

Ironically, from August 7, 2006 to the date of the Status Conference on September 8, 2006, Gap did not dispute a single representation contained in Plaintiffs' letter of August 7, 2006, as outlined above. Notably, Plaintiffs' August 7, 2006 letter was not attached to Gap's Motion to Compel as it outlines Gap's history of making false accusations against the Plaintiffs in connection with Plaintiffs' production practices as well as other matters.[7] Further, as evident from Plaintiffs' August 7, 2006 letter, Gap has continuously cried foul play causing Plaintiffs to literally do Gap's homework in this case.

---

[7] After Plaintiffs' counsel spent considerable time assisting Gap (at Gap's request) in the scheduling of depositions of non-parties, not under the control of the Plaintiffs, Gap demanded "assurances" from Plaintiffs' counsel that the non-party opponents would appear. When Plaintiffs' counsel stated the obvious, that she could only confirm what had been said to her, Gap's counsel subsequently alleged that Plaintiffs were attempting to frustrate Gap's discovery. Evidently, Gap's counsel believed that Plaintiffs were "obligated" to ensure the deponents' appearances, after several written correspondence specifically to the contrary.

The above is only one example of many wherein the Gap had caused Plaintiffs to extend resources to the Gap's benefit and then, at the eleventh hour, attempt to rewrite Plaintiffs' obligations.

Rather than representing the facts to this Court, Gap alleged in its Motion to Compel that the Plaintiffs have sought to foil all attempts at civilized discovery and that the medical and disability records being sought by the Gap have been long outstanding. Gap also alleged, in direct contradiction to Plaintiffs' August 7, 2006 letter, that Plaintiffs failed to object to the production of these documents. Such representations could not be further from the truth. Plaintiffs have maintained their objection to the production of documents not properly requested and specifically outlined their objections, in great detail, in their August 7, 2006 correspondence.

Plaintiffs have not attempted to "foil" civilized discovery but instead have rightfully objected to the production of documents sought by the Gap <u>after</u> the discovery period expired in this action, which was on May 31, 2006. Gap sent three Rule 34 Document Requests to the Plaintiffs prior to May 31, 2006 and *subsequently,* on June 9, 2006, sent a Notice of Deposition Duces Tecum.[8] Plaintiffs' objected to the production of documents requested by the June 9, 2006 Notice of Deposition Duces Tecum, as being untimely.

Gap's Motion to Compel is simply an attempt to paint the Plaintiffs as recalcitrant in hopes that this Court will order the Plaintiffs to produce documents, which Gap failed to properly request. Simply put, Gap should not be entitled to obtain records not properly requested, such as Plaintiffs' psychiatric records from a decade prior to the present injury. Such a result would make this Court's Scheduling Order essentially pointless.

Furthermore, Gap's filing of a Motion to Compel, rather than the filing of a motion seeking permission from this Court to extend or enlarge discovery, is wholly improper. This Court did not order the Plaintiffs to produce the records Gap now seeks during the

---

[8] *See* Notice of Deposition Duces Tecum attached hereto as Exhibit B.

Status Conference, as indicated by Gap's counsel. As such, Gap should have set forth a motion to this Court requesting permission to take further discovery.

Gap, however, as a matter of course, has falsely accused the Plaintiffs of failing to produce documents and simply chose to capitalize on the fact that Plaintiffs' counsel were sanctioned as a means of obtaining documents from the Plaintiffs. It has not been until after the Plaintiffs have been forced to spend unnecessary time in road-mapping the record evidence that Gap relents in their accusations.[9]

Gap, knowing full well that it failed to request the now sought after medical and disability documents pursuant to the Scheduling Order, should have moved this Court to extend or enlarge discovery. Gap, however, sat silent after receiving Plaintiffs' August 7, 2006 correspondence and now attempts to misconstrue the Court's comments at the Status Conference in order to elicit this Court's participation in excusing Gap's from it's failure to

---

[9] Gap falsely accused Plaintiffs of having failed to produce the "receipts" for the purchase of the subject sandals despite the fact that from the onset of this litigation Plaintiffs stated that they did not have said receipts and, to that end, Plaintiffs even provided Gap access to Ms. Hofer's credit card receipts from Old Navy. Indeed, in Plaintiffs' Rule 26 Disclosure it states that said credit card receipt will be furnished by counsel for the Gap, Inc. *See Exhibit A to Gap's Motion to Compel Discovery, Plaintiffs' Rule 26 Disclosure.*

Gap falsely accused Plaintiffs of having failed to produce Ms. Hofer's "employment records" after having received said records from the Plaintiff and also from the Plaintiffs' employer. In addition, the Plaintiff's employer even provided a letter representing that no further records existed. It is inexcusable that Gap would declare that Plaintiffs failed to produce these records in light of the above facts. However, the fact that Gap did accuse Plaintiffs of withholding these documents after receiving same, twice, is evidence of their bad-faith.

Gap falsely accused Plaintiffs of having failed to produce each and every photograph of Ms. Hofer after she sustained her injuries despite the fact that Gap only requested photographs taken by medical personnel.

Gap also "objected" to Plaintiffs' service of discovery within the discovery period because service was made close to the discovery deadline. This was despite the fact that both Expedia and Gap served Rule 34 Documents one the eve of discovery. In fact, Expedia actually served its Second Request for Production of Documents on June 1, 2006- the day after discovery concluded. However, Plaintiffs, instead of objecting over the one-day delay responded to the document request.

*See* Plaintiffs' letter of August 7, 2006, for further demonstrably false accusations made by the Gap against the Plaintiffs' counsel.

9

pursue the discovery which now, in hindsight, it seeks. Gap's Motion should be denied and, in addition, the Gap should be sanctioned for its repeated bad-faith practices.

## CONCLUSION

For the aforementioned reasons, Plaintiffs' request that this Honorable Court deny Defendant, Gap, Inc.'s, Motion to Compel Discovery and issue appropriate sanctions against the Gap, Inc. pursuant to F.R.C.P., Rule 11 for their bad-faith filing of the Motion to Compel Discovery.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, Plaintiffs hereby request that this Honorable Court grant the Plaintiffs a hearing on the matters addressed within the instant pleading. Plaintiffs further state that given the conduct of Defendant's counsel a hearing may greatly assist in ongoing litigation matters.

    Plaintiffs,
    By their attorney,

    /s/ India L. Minchoff, Esq.          .
    India L. Minchoff, Esq. (652456)
    Law Offices of Russo & Minchoff
    123 Boston Street, 1st Floor
    Boston, MA 02125
    617/740-7340 telephone
    617/740-7310 facsimile

## CERTIFICATE OF SERVICE

I, India L. Minchoff, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 2, 2006.

    /s/ India L. Minchoff, Esq.