## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STEPHANIE HOFER and
DOUGLAS HOFER,

       Plaintiffs,

                                 FEDERAL COURT

vs.                             Case No. 05-40170 FDS

THE GAP, INC., EXPEDIA, INC.
and TURTLE BEACH TOWERS,

       Defendants.
_____/

### BRIEF IN SUPPORT OF DEFENDANT THE GAP, INC.'S
### MOTION FOR SUMMARY JUDGMENT

Dockets.Justia.com

## STATEMENT OF THE ISSUE PRESENTED

**IS DEFENDANT THE GAP, INC. ENTITLED TO SUMMARY JUDGMENT WHERE THERE IS NO EVIDENCE OF THE PURPORTED DEFECT IN HER SANDAL THAT ALLEGEDLY CAUSED HER TO FALL AND SUSTAIN SERIOUS INJURIES?**

Plaintiffs say "No."

Defendant says "Yes."

## AUTHORITY FOR RELIEF SOUGHT

Defendant The GAP, Inc. relies on Federal Rule of Civil Procedure 56(c) and all of the case law cited herein.

## STATEMENT OF FACTS

This action arises from personal injuries Plaintiff Stephanie Hofer ("Plaintiff") sustained at the Turtle Beach Towers resort in Ocho Rios, Jamaica when her sandal, allegedly sold by Defendant The GAP, Inc. ("GAP") purportedly broke, causing her to fall into a turtle pond located on the premises.[1]

On March 18, 2004, while descending a stairway at the Turtle Beach Towers in Ocho Rios, Jamaica, Plaintiff's purported newly purchased Old Navy[2] sandal allegedly became unhinged, causing her to lose her balance and fall approximately four feet into a turtle pond where she sustained serious injuries to her leg and foot.

On September 27, 2005, Plaintiff initiated this action, alleging products liability and breach of warranty of merchantability against GAP.  [Complaint, attached hereto as EXHIBIT A].  Plaintiff specifically alleges, in pertinent part, as follows:

> 52.    The sandal manufactured by Old Navy was defective by manufacture and/or by design.
>
> 53.    The sandal as defective when it left Old Navy's control.
>
> 54.    Stephanie purchased the sandal in the ordinary course of business.
>
> 55.    Stephanie's multiple injuries were proximately caused by the defective sandal.
>
> *       *       *
>
> 57.    Old Navy owed Stephanie an implied warranty of merchantability when she purchased the sandal.

---

[1] "Plaintiff" herein will refer to Stephanie Hofer only.  Douglas Hofer's claim for loss of companionship is derivative of his wife's claims.  To the extent Stephanie Hofer does not have a claim, neither does her husband.

[2] Old Navy is a wholly owned subsidiary of The GAP, Inc.

58    Risks due to the sandal's defectiveness were reasonably foreseeable to Old Navy at the time of sale and/or discoverable by reasonable testing prior to marketing the sandal.

59.    Old Navy breached its warranty to Stephanie by selling her defective footwear.

60.    Stephanie's numerous injuries were proximately caused by Old Navy's breach of warranty of merchantability.

\*        \*        \*

[EXHIBIT A, pp. 7-8].

In Response to GAP's First Set of Interrogatories, Plaintiff indicated that she purchased four pairs of sandals, including the subject sandals that purportedly caused her accident, at an Old Navy retail store during the spring of 2004.  [Plaintiffs' Response to GAP's First Set of Interrogatories, attached hereto as EXHIBIT B].  Old Navy retail stores did not sell these type of "wrapped" sandals during 2004.  Rather, "wrapped" sandals were only sold at Old Navy retail stores through the end of 2002.  "Wrapped" sandals were sold at Old Navy Outlet stores in 2004.  Importantly, however, there were no Old Navy Outlet stores located in the state of Massachusetts in 2004 and there have been no Old Navy Outlet stores located in Massachusetts thereafter.  [Affidavit of Nadine Mafredi, Old Navy IT Business Lead Product Pipeline, attached hereto as EXHIBIT C].

Further, in her Response to GAP's First Request for Admission, Plaintiff admitted that she failed to preserve the subject sandals that purportedly caused her fall:

**REQUEST TO ADMIT NO. 1**

Admit that the original footwear that plaintiffs claim is the subject matter of this litigation, and which were being work at the time of the incident alleged in the Plaintiffs'

Complaint were not in plaintiff Stephanie Hofer's possession when she left Jamaica on March 20, 2004 and traveled to Massachusetts.

**RESPONSE**

Admitted.

\*      \*      \*

**REQUEST TO ADMIT NO. 6**

Admit that the Plaintiff Stephanie Hofer took no steps to preserve the footwear which is the subject matter of this litigation.

**RESPONSE**

Admitted.

**REQUEST TO ADMIT NO. 7**

Admit that Plaintiff Stephanie Hofer did not preserve the footwear that is the subject matter of this litigation.

**RESPONSE**

Admitted.

\*      \*      \*

[Plaintiffs' Response to Defendant The GAP, Inc.'s First Request for Admissions, attached hereto as EXHIBIT D].

A directional pull test and a cycling test are performed by independent laboratories Intertek Testing Services and Bureau Veritas on all flip flop style sandals sold by GAP. [Deposition of Patricia Reese, GAP Technical Manager, Department of Product Integrity, pp. 26-34, 45, attached hereto as EXHIBIT E]. The directional pull test is "a single application of force in multiple directions." [EXHIBIT E, p. 30]. The amount of force is measured by an Instron. [EXHIBIT E, p. 30]. The laboratory follows

Test Method GP H9208, which stipulates the type of equipment, the amount of force, the duration of force to maintain, and the amount of time to apply the force, to execute the test. [EXHIBIT E, pp. 30-31]. The "Test Principle" for the directional pull test for flip flop strap attachments is that "[e]ach strap must withstand pull force in various directions as specified, without detachment." [EXHIBIT E, p. 32]. Patricia Reese, GAP Technical Manager, Department of Product Integrity, testified that the importance of the "Test Principle" is to assess both quality and safety. [EXHIBIT E, p. 32]. Moreover, Ms. Reese testified that every style of flip flop sold by Old Navy is tested according to the directional pull test. [EXHIBIT E, p. 32].

The cycling test is "a repeated application of force, with relaxation and repeated application." [EXHIBIT E, pp. 32-33]. This test is performed in 20 cycles of repeated relaxation and application. [EXHIT E, p. 33]. The laboratory follows Test Method GP H9207, which stipulates the type of instruments and clamps used, the positioning of the shoe, the direction of the force, and the duration of time for the test. [EXHIBIT E, p. 33]. An Instron is similarly used. [EXHIBIT E, p. 33]. The "Test Principle" for the cycling test for flip flop strap attachments is that "[e]ach strap attachment must withstand repeated applications of tension of 20lb. @ 20 cycles, both horizontally and vertically." [EXHIBIT E, p. 34]. The amount of weight the flip flop strap attachment must withstand was determined by GAP through a study of competitor flip flop sandals. [EXHIBIT E, p. 34].

Prior to the implementation of these tests in 2003, flip flop strap attachments were tested for reinforcement effectiveness in the same manner. [EXHIBIT E, pp. 36, 43-44]. At that time, the "Test Principle" was "25.0 Lbs. Min." [EXHIBIT E, p. 43]. This

standard tension application method tested the strength of the attached strap on a flip flop sandal using a vice and an Instron. [EXHIBIT E, pp. 43-44].

On November 15, 2006, GAP filed its Supplemental Disclosure pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, wherein GAP disclosed the identity and opinions of its expert witnesses. Specifically, notwithstanding that the exemplar sandals are not a reliable representation of the subjects sandals, John E. Moalli, ScD., Group Vice President and Principal Engineer at Exponent Failure Analysis Associates, and Maureen T.F. Reitman, ScD., Principal Engineer at Exponent Failure Analysis Associates' Mechanical and Materials practice, both opine that the exemplar sandals were manufactured in accordance with proper standards and practices and were fit for their intended purpose, and there were no design or manufacturing defects that caused or contributed to Plaintiff's injuries.

Further, William N. Newberry, Managing Biomechanical Engineer at Exponent Failure Analysis Associates, opines there was no failure of Plaintiff's sandal, but rather, the accident occurred because Plaintiff was either in the turtle pond or fell into the turtle pond, and the fact that she was allegedly wearing sandals was merely incidental to the actual injury.

To date, Plaintiff has failed to provide her Rule 26 expert information, originally due prior to October 2, 2006 pursuant to the Court's Case Management Order dated February 26, 2006.

GAP now moves for summary judgment as a matter of law.

## LEGAL ARGUMENT

**DEFENDANT THE GAP, INC. IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE OF THE PURPORTED DEFECT IN HER SANDAL THAT ALLEGEDLY CAUSED HER TO FALL AND SUSTAIN SERIOUS INJURIES**

**A.     Standard of Review**

GAP moves for summary judgment pursuant to Fed. R. Civ. P. 56(c).  "The role of summary judgment is 'to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial.'"  Chapman v. Bernard's, Inc., 167 F. Supp. 2d 406, 411 (D. Mass. 2001), quoting Mesnick v. General Elec. Co., 950 F.2d 816 (1st Cir. 1991).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A 'genuine issue' is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."  Triangle Trading Co., Inc. v. Robrov Industries, Inc., 200 F.3d 1, 2 (1st Cir. 1999), quoting Smith v. F.W. Morse & Co., 76 F.3d 413, 427 (1st Cir. 1996).  A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  "A genuine issue of material fact exists only where the party opposing summary judgment provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'"  Chapman, supra, quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The Court must "view the facts in the light most favorable to the non-moving

party, drawing all reasonable inferences in that party's favor."  Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995).  However, the non-movant cannot create a genuine issue of fact through conclusory allegations, improbable inferences, and unsupported speculation.  Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 154 (1st Cir. 2006).  Moreover, a mere "scintilla of evidence" is insufficient for the non-movant to survive a summary judgment motion.  Anderson, supra at 252.  Instead, the non-movant must produce evidence "on which the jury could reasonably find for the non-movant.  id.

In a diversity action of this nature, the federal court must apply Massachusetts law in accordance with the controlling decisions of the highest court of this state.  Cipollone v. Yale Indus. Prods., 202 F.3d 376, 387 (1st Cir. 2000); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994); Bourassa v. La Fortune, 711 F. Supp. 43, 44 (Dist. Mass. 1989).  "A federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state.  Ticketmaster-New York, Inc., supra.

**B.    Because The Subject Sandal Has Been Destroyed, There Is No Evidence Of Its Purported Defect**

"Spoliation is the intentional, negligent, or malicious destruction of relevant evidence."  Townsend v. American Insulated Panel Co., 174 F.R.D. 1, 4 (D. Mass. 1997). Although this Court's jurisdiction is based upon diversity, federal law governs the issue of spoliation of evidence.  Chapman v. Bernard's, Inc., 167 F. Supp. 2d 406, 413 (D. Mass. 2001); Townsend v. American Insulated Panel Co., 174 F.R.D. 1, 4 (D. Mass. 1997).

"Under settled authority, the district court has inherent power to exclude evidence that has been improperly altered or damaged by a party where necessary to prevent the non-offending    side    from    suffering    unfair    prejudice."    Sacramona    v.

Bridgestone/Firestone, Inc., 106 F.3d 444, 446 (1st Cir. 1997); Unigard Sec. Ins. Co. v.

Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992); Headley v. Chrysler

Motor Corp., 141 F.R.D. 362, 365 & n.13 (D. Mass. 1991).  Potential sanctions for the

destruction of evidence include dismissal of the case, the exclusion of evidence, or a

spoliation inference jury instruction.  id.; Corales, 172 F.R.D. 10, 13 (P.R. 1997).  When

considering the severity of the sanction warranted, courts consider the following five

factors:

> '(1) whether the defendant was prejudiced as a result of
> [the destruction of the evidence]; (2) whether the prejudice
> can be cured; (3) the practical importance of the evidence;
> (4) whether the plaintiff was in good faith or bad faith; and
> (5) the potential for abuse if the evidence is not excluded.'

> Townsend, supra, quoting Mayes v. Black & Decker, 931
> F. Supp. 80, 83 (D. N.H., 1996).

While bad faith is an important consideration when determining the severity of a

sanction when conduct results in the destruction of evidence, it is not essential, and even

if evidence is destroyed through mere carelessness, if the other side is prejudiced, the

district court is entitled to impose sanctions, including exclusion of the evidence.

Sacramona, supra at 447; Nation-Wide Check Corp., Inc. v. Forest Hills Distrib., Inc.,

692 F.2d 214, 219 (1st Cir. 1982).

Absent willful destruction, the primary aim when imposing sanctions is remedial.

Sacamona, supra.  "The intended goal behind dismissing a complaint is to rectify any

prejudice the non-offending party may have suffered as a result of the loss of evidence

and to deter any future, particularly deliberate, conduct leading to such loss of evidence."

Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 29 (1st Cir 1998); Sacramona v.

Bridgestone/Firestone, Inc., 106 F.3d 444, 446 (1st Cir. 1997).

Of importance to this action is Headley, supra, wherein plaintiff was precluded from presenting any expert evidence concerning alleged defects in a vehicle and the vehicle's restraint system because the vehicle was destroyed before defendant had an opportunity to examine it for the purported defects which plaintiff alleged caused his injuries during a motor vehicle accident.

Similarly, in the instant action, GAP's experts have been deprived of an opportunity to examine the subject sandals because they have been destroyed. [EXHIBIT D]. This prejudice cannot be cured because the evidence which was destroyed, the purportedly newly purchased sandals Plaintiff was allegedly wearing at the time of her fall, is crucial to the case.

Of critical importance is the fact that there is no evidence whatsoever that the subject sandals were even purchased from an Old Navy retail store. While Plaintiff claims that she purchased four pair of sandals, including the subject sandals that purportedly caused her accident and three pairs of sandals identified as exemplars, at an Old Navy retail store during the spring of 2004, Nadine Mafredi, Old Navy IT Business Lead Product Pipeline, has indicated that Old Navy retail stores did not sell these type of "wrapped" sandals during 2004. [EXHIBIT C]. Rather, "wrapped" sandals were only sold at Old Navy retail stores through 2002 while "wrapped" sandals were sold at Old Navy Outlet stores in 2004. Importantly, however, there were no Old Navy Outlet stores located in the state of Massachusetts in 2004, nor have there been any Old Navy Outlet stores located in Massachusetts since 2004. [EXHIBIT C]. Assuming *arguendo* that the subject sandal was purchased from an Old Navy retail store, the sandals presented as exemplars are not reliable representations of the subject sandals.

Accordingly, because there is no evidence of the purported defect where the subject sandal has been destroyed and the sandals presented as exemplars are not reliable representations, GAP is entitled to summary judgment as a matter of law.

**C.     Plaintiff Has Failed To Set Forth Any Evidence To Support Her Products Liability And Breach Of Implied Warranty Of Merchantability Claims**

In a products liability action, plaintiff must show that the defect which allegedly caused an injury is attributable to defendant's negligence.  Smith v. Ariens Co., 375 Mass. 620, 625; 377 N.E.2d 954 (1978); Coyne v. John S. Tilley Co., 368 Mass. 230, 234 (1975); Carney v. Bereault, 348 Mass. 502, 506 (1965).  Under a theory of negligent design, a total product line is claimed to be defective because of faulty design and to show that a defect is attributable to a manufacturer, plaintiff must show that the defect existed at the time the product left the manufacturer.  id.; Mickle v. Blackmon, 252 S.C. 202, 237 (1969).

Furthermore, a claim for breach of implied warranty of merchantability is governed by Mass. Gen. Laws ch. 106, § 2-314(2)(c), which provides as follows:

> (2)     Goods to be merchantable must at least be such as
>
> *       *       *
>
> (c) are fit for the ordinary purposes for which such goods are used; and
>
> *       *       *

Mass. Gen. Laws ch. 106, § 2-314(2)(c).

"A seller breaches its warranty obligation when a product is 'defective and unreasonably dangerous,' for the 'ordinary purposes' for which it is 'fit' caused injury." Haglund v. Philip Morris, Inc., 446 Mass. 741, 746-747; 847 N.E.2d 315 (2006), quoting

Colter v. Barber-Greene Co., 403 Mass. 50, 62; 525 N.E.2d 1305 (1988). "Ordinary purposes" refers to a product's intended and foreseeable uses and "fitness" refers to the reasonable consumer expectations. id.; Back v. Wickes Corp., 375 Mass. 633; 378 N.E.2d 964 (1978). Warranty liability may be premised on the failure to warn or on defective design. id.

Proof of the nature of an alleged design or manufacturing defect and the causal relation between the purported defect and plaintiff's accident requires expert testimony if it is beyond the common knowledge of the fact finder. Goffredo v. Mercedes-Benz Truck Co., 402 Mass. 97, 104; 520 N.E.2d 1315 (1988). Where knowledge of the nature of the alleged defect and the causal relationship between it and plaintiff's accident is technical or specialized and would not be within the ordinary experiences of a jury, expert testimony is proper. id.

A design is determined defective if it presents an unreasonable risk of injury to others after considering a number of factors including "'the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design,'" matters not within the experience and knowledge of most jurors. Back v. Wickes Corp., 375 Mass. 633, 642; 378 N.E.2d 964 (1978), quoting Barker v. Lull Eng'r Co., 20 Cal. 3d 413, 431; 573 P.2d 443 (1978); Goffredo, supra. Further, expert testimony is essential where jurors must make factual findings on technical matters beyond a lay persons' ordinary experience. Triangle Dress, Inc. v. Bay State Service, Inc., 356 Mass. 440, 442; 252 N.E.2d 889 (1969). Expert testimony is not required only

where a jury can determine on its own lay knowledge that a defect exposing users of a product to unreasonable risks of injury exists. <u>Smith</u> v. <u>Ariens Co.</u>, 375 Mass. 620, 625; 377 N.E.2d 954 (1978).

Massachusetts courts have consistently required expert witness testimony in cases where the nature of the alleged defect and its relation to the accident are complex and beyond the common knowledge and experience of the average juror. See <u>Enrich</u> v. <u>Windmere Corp.</u>, 416 Mass. 83; 616 N.E.2d 1081 (1993) (despite evidence that a fan manufactured by defendant was the source of a fire, plaintiff's product liability claim failed in the absence of expert opinion evidence that a purported defect was present at the time the fan was sold); <u>White</u> v. <u>Nissan Motor Corp.</u>, 10 Mass. L. Rep. 533 (1999) (defendant was entitled to summary judgment of plaintiff's claims for negligence and breach of warranty where plaintiff failed to present expert opinion evidence that the seat of the truck manufactured by defendant was defective when it left defendant's factory and caused or enhanced plaintiff's back injuries); <u>Smith</u> v. <u>Eriksson</u>, 3 Mass. L. Rep. 244 (1994) (summary judgment of third-party plaintiff's claims for contribution and indemnity was proper in the absence of expert opinion evidence that the silicon gel in breast implants manufactured by third-party defendant was defectively designed); and <u>Hochen</u> v. <u>Bobst Group, Inc.</u>, 290 F.3d 446 (1st Cir. 2002) (plaintiff's claims of alleged deficiency, neglect or breach in the design, manufacture, and installation of a printing-press against defendant manufacturer failed where plaintiffs failed to present admissible expert testimony that the printing press suffered from any design or manufacturing defect).

Expert testimony as to the defective nature of a design is an indispensable element

of a plaintiff's case where the purported defect involves technical or scientific issues. Gynan v. Jeep Corp., 13 Mass. App. Ct. 504, 508-09, 434 N.E.2d 688, app. denied 386 Mass. 1104, 440 N.E.2d 1177 (1982). "The opinion of the nonexperts who testified at trial cannot substitute for this absence of expert testimony." Enrich, supra at 87. In the absence of expert opinion evidence, the presence of the alleged defect is based solely on speculation and conjecture. id.

In the instant action, Plaintiff alleges that:

52. The sandal manufactured by Old Navy was defective by manufacture and/or by design.

53. The sandal as defective when it left Old Navy's control.

54. Stephanie purchased the sandal in the ordinary course of business.

55. Stephanie's multiple injuries were proximately caused by the defective sandal.

        *        *        *

57. Old Navy owed Stephanie an implied warranty of merchantability when she purchased the sandal.

58. Risks due to the sandal's defectiveness were reasonably foreseeable to Old Navy at the time of sale and/or discoverable by reasonable testing prior to marketing the sandal.

59. Old Navy breached its warranty to Stephanie by selling her defective footwear.

60. Stephanie's numerous injuries were proximately caused by Old Navy's breach of warranty of merchantability.

        *        *        *

[EXHIBIT A, pp. 7-8].

However, Plaintiff has no expert opinion evidence to support her allegations, and this Court previously acknowledged that absent expert testimony, GAP is entitled to judgment in its favor.  Indeed, in response to GAP's motion to bar expert testimony due to Plaintiff's failure to comply with Fed. R. Civ. 26(a)(2) and the Case Management Order for expert witness disclosure, Plaintiff acknowledged that while she was in violation of the Case Management Order, she would designate an expert on or before November 30, 2006.  [Plaintiffs' Opposition to Defendant The GAP, Inc.'s Motion to Bar Plaintiffs From Providing Any Expert Testimony, filed on November 26, 2006, attached hereto as EXHIBIT F].  The Court admonished Plaintiff for her failure to comply with Fed. R. Civ. P. 26(a), yet reluctantly granted her an extension of time to file her expert witness disclosures:

> **Plaintiffs' reasons for not complying with the discovery deadline are wholly inadequate, and indeed border on legal malpractice.  If counsel cannot meet a court-ordered deadline, they should seek relief from the Court, not simply ignore the deadline.  Nonetheless, the Court recognizes that a complete prohibition against expert testimony may, as a practical matter, prove to be a grant of judgment in favor of the defendants.**  The Court is reluctant, absent circumstances more extreme than the present, to cause the plaintiffs to lose a potential claim based on an error of counsel.  Accordingly, and with considerable reluctance, the Court will deny defendants' motions and provide for a new set of discovery deadlines, although it will permit defendants to recover their reasonable expenses, if any, caused by plaintiffs' failure to adhere to the deadline.

> Accordingly, the Court hereby orders as follows:

> 1.   Plaintiffs shall make their expert disclosures under Fed. R. Civ. P. 26(a)(2) by January 19, 2007.

> 2.   Defendants shall make their expert disclosures

under Fed. R. Civ. P. 26(a)(2) by February 16, 2007.

3.    Plaintiffs' experts shall be deposed by February 28, 2007.

4.    Defendants' experts shall be deposed by March 28, 2007.

5.    Defendants may seek recovery of their reasonable expenses, including attorney's fees, caused by Plaintiffs' failure to adhere to the October 23 discovery deadline.

6.    No further extensions of these deadlines will be allowed.

*       *       *

[Order, dated December 18, 2006, attached hereto as EXHIBIT G] (emphasis added).

However, despite the Court's extension of time, Plaintiff did not file her expert disclosures and clearly never intended to do so. The presence of a purported defect in the sandals manufactured by GAP cannot be inferred in the absence of expert testimony. Enrich, supra.

Moreover, there is a complete absence of evidence that the sandals Plaintiff was purportedly wearing at the time of the accident were defective or unreasonably dangerous.

Notwithstanding that the exemplar sandals are not a reliable representation of the subject sandals, John E. Moalli, ScD., Group Vice President and Principal Engineer at Exponent Failure Analysis Associates, and Maureen T.F. Reitman, ScD., Principal Engineer at Exponent Failure Analysis Associates' Mechanical and Materials practice, both opine that the exemplar sandals were manufactured in accordance with proper

standards and practices and were fit for their intended purpose, and there were no design or manufacturing defects that caused or contributed to Plaintiff's injuries. [EXHIBIT I]

Furthermore, there is no evidence that sandals sold by GAP are defective and unreasonably dangerous, or are unfit for their intended purpose. A directional pull test and a cycling test are performed by independent laboratories Intertek Testing Services and Bureau Veritas on all flip flop style sandals sold by GAP. [EXHIBIT E, pp. 26-34, 45]. The directional pull test is "a single application of force in multiple directions." [EXHIBIT E, p. 30]. The "Test Principle" for the directional pull test for flip flop strap attachments is that "[e]ach strap must withstand pull force in various directions as specified, without detachment." [EXHIBIT E, p. 32]. The importance of the "Test Principle" is to assess both quality and safety. [EXHIBIT E, p. 32]. Every style of flip flop sold by Old Navy is tested according to the directional pull test. [EXHIBIT E, p. 32].

The cycling test is "a repeated application of force, with relaxation and repeated application." [EXHIBIT E, pp. 32-33]. This test is performed in 20 cycles of repeated relaxation and application. [EXHIT B, p. 33]. The "Test Principle" for the cycling test for flip flop strap attachments is that "[e]ach strap attachment must withstand repeated applications of tension of 20lb. @ 20 cycles, both horizontally and vertically." [EXHIBIT E, p. 34].

Prior to the implementation of these tests in 2003, flip flop sandal straps were tested for reinforcement effectiveness in the same manner. [EXHIBIT E, pp. 36, 43-44]. At that time, the "Test Principle" was "25.0 Lbs. Min." [EXHIBIT E, p. 43]. This standard tension application method tested the strength of the attached strap on a flip flop

sandal using a vice and an Instron, in the same manner as the tests implemented in 2003. [EXHIBIT E, pp. 43-44].

Moreover, there is a complete absence of evidence that the sandals Plaintiff was purportedly wearing at the time of her accident were not fit for their ordinary purpose. Scientific analysis proves that Plaintiff's injuries are inconsistent with her testimony that the accident was caused by a defective sandal. William Newberry, Managing Biomechanical Engineer at Exponent Failure Analysis Associates, opines there was no failure of Plaintiff's sandal, but rather, the accident occurred because Plaintiff was either in the turtle pond or fell into the turtle pond and the fact that she was wearing sandals was incidental to the actual injury. Specifically, Mr. Newberry opines in pertinent part as follows:

> The incident of March 18, 2004, was evaluated from a biomechanical engineering perspective to evaluate Ms. Hofer's kinematics during the event and the mechanisms associated with her injuries and to determine whether the incident as described could have produced Ms. Hofer's injuries. This evaluation was based on the materials received and reviewed, the laws of physics, principles of human motion and gait, principles of human tolerance, and biomechanical literature. In addition, the analysis involved a detailed review of Ms. Hofer's medical records.
>
> Several scenarios by which Ms. Hofer may have entered the turtle pond were explored in the context of the geometry of the scene and knowledge of human gait and physics.
>
> According to her deposition testimony, Ms. Hofer turned around and was beginning to walk down the stairs when her right flip-flop broke causing her to fall to her right into a turtle pond and injure her left leg. Ms. Hofer testified that the flip-flop broke when she was at the tope of the stairs on the process of taking a step down. . . . **If Ms. Hofer's flip-flop had broken and she tripped during the tow-off of the right foot, it is probable that she would have been**

**able to recover.**

       \*     \*     \*

**Ms. Hofer's testimony that she had "probably" taken a step after turning from the double doors and that the flip-flop broken as she was taking a step down are (sic) inconsistent with the geometry of the site.**

       \*     \*     \*

**Ms. Hofer's injury patterns do not support her testimony that she tripped and fell into the turtle pond from the landing.** There were no abrasions, cuts, or scrapes documented on Ms. Hofer's arms, either in the medical records from St. Ann's immediately following the incident or in the medical records from Massachusetts General Hospital the next day. **Had Ms. Hofer fallen as a result of a broken flip-flop, she most likely would have fallen forward and would have reacted to the situation by placing her hands in front of her to arrest her fall.** Ms. Hofer testified that she knew something was happening and had time to look down and see that the flip-flop had broken. Clearly, if this were the case, she would have had plenty of time to also put her hands out to prepare for the fall. Also, had Ms. Hofer fallen as described, she would have likely injured her upper body and/or upper extremities as she attempted to recover and arrest her fall.

**Scenarios consistent with the evidence and testimony involve Ms. Hofer voluntarily being in the vicinity of the turtle pond to observe the turtles.** One possible scenario involves Ms. Hofer sitting along the edge of the pond with her feet in the water. A loss of balance while exiting due to the slippery surfaces in the turtle pond could have resulted in the lacerations to Ms. Hofer's left leg, especially considering the proximal-to-distal nature of the wound. . . . **Therefore, it is possible that she was not even wearing flip-flops at the time of the injury.**

The location and appearance of Ms. Hofer's leg wound is consistent with coming in contact with a sharp object in a top-to-bottom direction. **Such a wound would be consistent with Ms. Hofer having her leg in the turtle pond, attempting to leave, slipping on the tile, and catching her leg on the rock slab within the pond as her**

**body was moving past it in an uncontrolled manner due to the slip. It is not consistent with a fall into the pond, where the leg would be going foot first into the pool and a wound appearing as if the sharp object traveled bottom-to-top, resulting in a flap that was attached towards the top of the lower leg.**

**Conclusions**

**Based upon the scientific analysis outlined above, Ms. Hofer's injuries are not consistent with her testimony as to how the injuries occurred.** The opinions presented in this report are offered with a reasonable degree of scientific and biomechanical engineering certainty.

*       *       *

[Report of William Newberry, attached hereto as EXHIBIT H] (emphasis added).

Accordingly, GAP is entitled to sanctions pursuant to Fed. R. Civ. P. 37(c) for Plaintiff's failure to comply with the mandatory expert disclosure requirements of Rule 26(a). In addition to requiring the payment of reasonable expenses, including attorney fees, the Court has discretion to dismiss the case in its entirety. Fed R. Civ. P. 37(c)(1); Fed R. Civ P. 37(b)(2)(C). Furthermore, because there is a complete absence of evidence of a design or manufacturing defect that caused or contributed to Plaintiff's injuries, GAP is entitled to summary judgment as a matter of law.

## <u>CONCLUSION</u>

In sum, GAP is entitled to summary judgment because "wrapped" sandals were not sold at Old Navy retail stores in Massachusetts in 2004. Rather, "wrapped" sandals were sold at Old Navy Outlet stores in 2004; however, there were no Old Navy Outlet stores in Massachusetts in 2004 or thereafter. Furthermore, the subject sandals were destroyed and there is an absence of evidence that Plaintiff was even wearing sandals at the time of the incident. Most importantly, Plaintiff has failed to set forth any expert opinion evidence to support her allegations.

WHEREFORE, for the foregoing reasons, THE GAP, INC. respectfully requests that this Honorable Court grant its Motion for Summary Judgment and award it sanctions and all actual costs and attorney fees necessitated by the preparation and presentation of this Motion.

Respectfully submitted,

**SULLIVAN, WARD,**
 **ASHER & PATTON, P.C.**


By:   /s/Scott D. Feringa
      SCOTT D. FERINGA (P28977)
      Attorney for Defendant The GAP, Inc.
      1000 Maccabees Center
      25800 Northwestern Highway
      Southfield, MI  48075-1000
      (248) 746-0700

Dated:  February 15, 2007
W0497205

## <u>PROOF OF SERVICE</u>

I hereby certify that on the 15th day of February, 2007, I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.

/s/ <u>Scott D. Feringa</u>

Sullivan, Ward, Asher & Patton, P.C.
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48037-0222
Phone: 248-746-0700
Primary E-mail: sferinga@swappc.com
P28977

W0508020