Hofer et al v. Old Navy Inc. et al

Doc. 65 Att. 4

# EXHIBIT 4

Dockets.Justia.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Docket No. 05-40170 FDS

STEPHANIE HOFER and
DOUGLAS HOFER
Plaintiffs

vs.

THE GAP INC., EXPEDIA, INC.,
and TURTLE BEACH TOWERS,
Defendants
_______________________________/

COPY

Fort Lauderdale, Florida
October 17, 2006
11:00 o'clock a.m.

APPEARANCES:

THE LAW OFFICES OF RUSSO & MINCHOFF, P.A.
BY: INDIA L. MINCHOFF, Esquire
BY: STEVEN KUZMAN, Esquire
Appearing on behalf of the Plaintiffs.

THE LAW OFFICES OF BURNS & LEVENISON, P.A.
BY: LAWRENCE GREEN, Esquire
Appearing on behalf of the Defendant, Expedia.

THE LAW OFFICES OF SULLIVAN, WARD et al, P.D.
BY: DAVID LAFARGA, Esquire
Appearing on behalf of the Defendant, The Gap

ALSO PRESENT:
LAURA VEGLIA, Company representative for Expedia.

- - - - - - - -

DEPOSITION

OF

NASHARA FRAZIER

I-N-D-E-X

| DATE | PROCEEDINGS | PAGES |
|---|---|---|
| 10/17/06 | Deposition | 1 - 47 |

| Witness | Direct |
|---|---|
| Nashara Frazier | 3 |

REDACTED

The deposition of NASHARA FRAZIER was taken by me, Lisa Greenwell, a Notary Public for the State of Florida at Large, at the Pelican Grant Beach Resort, 2000 North Ocean Boulevard, Suite 706, in the City of Fort Lauderdale, County of Broward, in the State of Florida beginning at the hour of 11:00 a.m., the 17th day of October, 2006, on behalf of the Plaintiffs in the above-entitled action pending in the above-named court.

Thereupon,

NASHARA FRAZIER

having been first duly sworn, was examined and testified upon her oath as follows:

DIRECT EXAMINATION

MR. KUZMAN: We have the same stipulations, correct, Mr. Green?

MR. GREEN: Yes.

BY MR. KUZMAN:

Q. And just for the record, state your name and date of birth please.

A. Nashara Frazier, [REDACTED]

Q. Mrs. Frazier, you're testifying on behalf of Expedia.

MR. KUZMAN: Mr. Green, if you would please identify the particular paragraph that she'll be testifying about in our Schedule A attachment notice of taking deposition.

MR. GREEN: Yes, certainly. Mrs. Frazier is being produced in response to area Number 5. Area Number 5 is asking about all inspections performed by Expedia of hotels or resorts listed.

We objected. We said that there was one visit that took place to Turtle Beach Towers by Expedia. Mrs. Frazier was the one who did that visit.

And she's testifying about any other questions that you have with respect to Expedia as to procedures with response to visits done under Mrs. Veglia's testimony. Thank you.

MR. KUZMAN: Can you just help me out with the spelling of Mrs. Veglia's last name?

MR. GREEN: V-E-G-L-I-A, and the first name is Laura.

MR. KUZMAN: G is silent.

capacity?

A. Ah, a year-and-a-half.

Q. When you say contacts with hotels, would that also mean that you would visit hotels that were listed on Hotels.com?

A. No.

Q. It was strictly over the phone?

A. And E-mail.

Q. And E-mail?

A. Right.

Q. As a market coordinator, did you ever take complaints from any clients or customers of Hotels.com?

A. No.

Q. What was your first position with Expedia, Inc?

A. Um, I was promoted to market manager.

Q. How long were you employed in that position?

A. Ah, October '03.

Q. Until October '03?

A. Since October '03.

Q. Are you still employed in that position?

A. Yes.

Q. As a market manager for Expedia, Inc., what do you do?

A. Um, I'm responsible for the revenue production for my region.

Q. What's your region?

A. Several islands in the Caribbean.

Q. Which islands specifically?

A. Jamaica, U.S.V.I, B.C.B.V.I, Saint Kitts and Nevis, Grenada and Dominica.

Q. Where were you born?

A. Jamaica.

Q. Prior to being employed at Hotels.com, have you ever <SREUS> visited the Turtle Beach Towers?

A. No.

Q. Do you know where it was located?

A. No.

Q. When was the first time you became aware of a hotel by the name of Turtle Beach Towers?

A. When I was promoted in October of '03.

Q. How is it that you became familiar with Turtle Beach Towers in October of '03?

A. It was a part of the Expedia program

A. No, it's not fair to say.
Q. Have you ever been deposed before?
A. No.
Q. When was the last time you visited the database which had the financial information on it regarding the number of bookings that Turtle Beach Towers made through Expedia?
A. Um, I visited the database approximately last week, but not to review Turtle Beaches information.
Q. Why is it that you went to Turtle Beach Towers specifically in May 2004?
MR. GREEN: Object to the question. Her visit wasn't to Turtle Beach Tower specifically. So I object to the form of the question.
BY MR. KUZMAN:
Q. All right. In May 2004, is it fair to say that you visited Turtle Beach Towers?
A. Yes.
Q. What was the purpose of that visit?
A. Um, just to make myself familiar with the property.
Q. What do you mean by that?
A. Location. Um, for example, from the

hotel to the beach. Um, just to be aware of where it is and, you know, what we're selling or what we're booking on the web site.

Q. Is that something that's important to you as someone in marketing to know and be familiar with the properties that are on the Expedia web sites?

A. It is a benefit, but --

Q. Why were you in Jamaica in May 2004? Was it a business trip?

A. There was a conference, yes.

Q. Where was the conference?

A. In Montego Bay.

Q. Was it at a hotel?

A. Yes.

Q. Was it related to your business?

A. Yes.

Q. What was the purpose of the conference?

A. The Tourist Board held a conference.

Q. Tourist Board of Jamaica?

A. Yes.

Q. You were invited to it?

A. Yes.

Q. Were you Expedia, Incs representative

at the conference?

A. Yes.

Q. Was anyone else from Expedia along with you?

A. No.

Q. Where did you stay in Montego Bay?

A. Half moon.

Q. As far as you know, is there a certain amount of business that Expedia has to derive from any of the hotels that are listed on it's web site in order for them to be listed the following year?

A. No. ——

Q. How long were you in Jamaica in May of 2004?

A. I don't recall exactly how long.

Q. Less than a year or more than a week?

A. I don't recall.

Q. Did you visit other properties at that time that are listed on the Expedia web site?

A. Yes.

Q. What other properties did you visit?

A. I don't recall exactly which other ones.

Q. You don't recall?

Q. Is it fair to say that you visited more than two properties?

A. I did visit more than two properties.

Q. Why did you specifically choose Turtle Beach Towers as a place to visit?

A. Because it was close to Sunset Jamaica Grand.

Q. Did it have anything to do with this accident?

A. No.

Q. How long was your visit to Turtle Beach Towers in May of 2004?

A. I don't recall the exact length of time, but it was --

Q. How about approximately?

A. A few minutes.

Q. Did you take any photographs?

A. No.

Q. Did you meet with anyone?

A. A representative of the hotel.

Q. Who was that?

A. I don't recall his name.

Q. What time of day was it?

A. I don't know the exact time.

Q. It was definitely a male as opposed

Q. What was the purpose of those trips?

A. The same purpose, to make myself familiar with the products.

Q. Why was that important?

A. To make myself familiar with the products.

Q. You wanted to see what the physical plant looked like of the hotels, is that fair to say, of the Expedia web sites?

A. No.

Q. What was the purpose, just to meet people?

A. Portion of it is to meet and greet.

Q. Anything else other than meeting and greeting?

A. Ah, to get the feel of the property.

Q. Did you want to look over the condition of the property or did that -- is that something that didn't concern you?

A. Ah, I did not want to look over the condition.

Q. Was there anyone else at the -- at Expedia, as far as you know, that would inspect the physical plant of any of the hotels listed on Expedia web site?

A. Inspect? No.

Q. You have a problem with the word inspect?

A. Ah --

MR. GREEN: Object to the form.

THE WITNESS: If you can tell me what it means. What you mean by inspect?

BY MR. KUZMAN:

Q. Well, actually, look at the physical plant and make note of things that might need repairing or correcting?

A. Okay. In that case then, no.

Q. In the time you do the meet and greet but you don't inspect or look at the physical plant, do you take any notes regarding your meeting and greeting?

A. Occasionally.

Q. What do you do with those notes?

A. Ah, I review them when I get back and if I need take action on something, I do. If I don't, then I don't.

Q. Do you put the notes in the file on each property?

A. No.

Q. What do you do with those notes?