UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                               )
STEPHANIE HOFER and            )
DOUGLAS HOFER,                 )        Civil Action Docket No. 05-40170 FDS
                               )
         Plaintiffs,           )
                               )
v.                             )
                               )
THE GAP, INC., EXPEDIA, INC.   )
and TURTLE BEACH TOWERS,       )
                               )
         Defendants.           )
                               )
_____)
```

### LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS
### IN SUPPORT OF DEFENDANT EXPEDIA, INC'S
### **MOTION FOR SUMMARY JUDGMENT**

The defendant Expedia, Inc. respectfully submits that the following facts are the only material facts pertinent to its Motion for Summary Judgment, filed concurrently herewith, and that they are undisputed:

1. Expedia is a corporation incorporated in the State of Washington. (Expedia's Answers to Plaintiff Stephanie Hofer's First Set of Interrogatories ["Expedia Int. Ans."], attached to the Declaration of Rodney E. Gould, Esq. as Ex. 1, No. 2.)

2. Expedia owns the website Expedia.com, as well as other websites. (Id.) Each of the websites Expedia owns is dedicated to facilitating web-user interface with travel and travel-related vendors and services. (Id.)

3. Expedia provides access for on-line users to well over 100,000 travel-related product and service providers, such as hotels, airlines and rental car agencies. (Id.) Turtle Beach is one of those 100,000 vendors. (Knaack Depo., Gould Dec. Ex. 2, pp. 21:1-22:3.)

4. On-line users have the ability to peruse Expedia's websites, view the products and services offered by the hotels, airlines, rental car agencies and/or other travel-related entities, and use the website to book these travel-related products and services. (Expedia Int. Ans., Gould Dec. Ex. 1, No. 2.)

5. In providing this on-line access, Expedia acts as an independent contractor, not as an agent. (Id.)

6. In 2004, Sherna Thomas and her husband Daine Thomas were owners of eleven units at Turtle Beach. (Affidavit of Sherna Thomas Affidavit ["S. Thomas Aff."], ¶ 3.)

7. Since 2000, the Thomases have advertised their units on three separate websites -- Expedia.com, Travelocity.com and Worldres.com. (Id., ¶ 4.)

8. Expedia has never owned, operated, managed or controlled Turtle Beach or any units therein. (Affidavit of Nashara Frazier ["Frazier Aff."], ¶¶ 4-5.)

9. Nor has Expedia ever been owned or operated by Turtle Beach. (Id., ¶ 4.)

10. Similarly, Expedia has never owed, operated, managed or controlled any property management company for Turtle Beach or its common areas. (Id., ¶ 5.)

11. An independent entity, Proprietors Strata Plan # 7, Turtle Beach Towers, is the management company for Turtle Beach and it is the entity responsible for monitoring, preserving, and otherwise maintaining all units, buildings, and grounds of Turtle Beach. (Affidavit of Faylin Miller ["Miller Aff."], ¶ 20.)

12. Turtle Beach is a completely independent entity from Expedia. (Frazier Aff., ¶ 4.)

13. Expedia's records reflect that approximately 86 customers made bookings through Expedia for Turtle Beach in 2006, and approximately 69 customers made bookings through Expedia for Turtle Beach in 2005. (Id., ¶ 6.)

14. No employee of Expedia was present on the premises of Turtle Beach at the time of Hofer's accident. (Id., ¶ 10.)

15. No person employed by Expedia has ever conducted an inspection of any kind of Ms. Thomas's units or the Turtle Beach grounds or sent her a report detailing any such inspection. (S. Thomas Aff., ¶¶ 12-13.)

16. Hofer made no investigation of her hotel, Turtle Beach, before departure. (S. Hofer Depo. Vol. I, Gould Dec. Ex. 5, pp. 147:1-148:2.)

17. LaBelle, Hofer's traveling companion, took care of making the arrangements, with Hofer essentially being "along for the ride." (Id., pp. 145:20-145:24, 148:3-148:4.)

18. LaBelle booked the trip with the expectation that Hofer would reimburse her for half of the cost of the trip. (LaRoche Depo., Gould Dec. Ex. 6, p. 164:11-164:20.)

19. LaBelle, from her home, used the website Expedia.com to book the trip to Jamaica. (Id., pp. 99:19-100:1; 106:9-106:10.)

20. Before making the actual booking, Hofer gave LaBelle permission to book the trip on her behalf. (Id., pp. 101:19-102:4.)

21. Approximately 25 million consumers worldwide visit Expedia.com monthly. (Expedia Int. Ans., Gould Dec. Ex. 1, No. 2.)

22. Those consumers who make travel reservations through Expedia.com are subject to, must agree to, and must affirmatively click through Expedia, Inc.'s *Web Site Terms, Conditions, and Notices* to effectuate their respective on-line bookings. (Id.)

23. The terms and conditions effective at the time of the LaBelle-Hofer booking provide, in part, as follows:

    AGREEMENT BETWEEN CUSTOMER AND EXPEDIA, INC.

    This Web site is offered to you, the customer, conditioned on your acceptance without modification of the terms, conditions, and notices contained therein. Your use of this web site constitutes your agreement to such terms, conditions, and notices.

    . . .

    LIABILITY DISCLAIMER

    THE INFORMATION, SOFTWARE, PRODUCTS AND SERVICES PUBLISED ON THIS WEB SITE MAY INCLUDE INACCURACIES OR TYPOGRAPHICAL ERRORS. IN

PARTICULAR, EXPEDIA, INC. AND ITS AFFILIATES DO NOT GUARANTEE THE ACCURACY OF, AND DISCLAIM LIABILITY FOR INACCURACIES RELATING TO THE INFORMATION AND DESCRIPTION OF THE HOTEL, AIR, CRUISE, CAR AND OTHER TRAVEL PRODUCTS DISPLAYED ON THIS WEBSITE (INCLUDING, WITHOUT LIMITATION, PHOTOGRAPHS, LIST OF HOTEL AMENITIES, GENERAL PRODUCT DESCRIPTIONS, ETC.), MUCH OF WHICH INFORMATION IS PROVIDED BY THE RESPECTIVE SUPPLIERS. . . .

EXPEDIA, INC., ITS AFFILIATES, AND/OR THEIR RESPECTIVE SUPPLIERS MAKE NO REPRESENTATIONS ABOUT THE SUITABILITY OF THE INFORMATION, SOFTWARE, PRODUCTS, AND SERVICES CONTAINED ON THIS WEB SITE FOR ANY PURPOSE, AND THE INCLUSION OR OFFERING FOR SALE OF ANY PRODUCTS OR SERVICES ON THIS WEB SITE DOES NOT CONSTITUTE ANY ENDORSEMENT OR RECOMMENDATION OF SUCH PRODUCTS OR SERVICES BY EXPEDIA, INC. OR ITS AFFILIATES.  ALL SUCH INFORMATION, SOFTWARE, PRODUCTS, AND SERVICES ARE PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND.  EXPEDIA, INC., ITS AFFILIATES, AND/OR THEIR RESPECTIVE SUPPLIERS HEREBY DISCLAIM ALL WARRANTIES AND CONDITIONS WITH REGARD OT THIS INFORMATION, SOFTWARE, PRODUCTS, AND SERVICES, INCLUDING ALL IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NONINFRINGEMENT.

THE CARRIERS, HOTELS AND OTHER SUPPLIERS PROVIDING TRAVEL OR OTHER SERVICES FOR EXPEDIA, INC. ARE INDEPENDENT CONTRACTORS AND NOT AGENTS OR EMPLOYEES OF EXPEDIA, INC. OR ITS AFFILIATES.  EXPEDIA, INC. AND ITS AFFILIATES ARE NOT LIABLE FOR THE ACTS, ERRORS, OMISSIONS, REPRESENTATIONS, WARRANTIES, BREACHES OR NEGLIGENCE OF ANY SUCH SUPPLIERS OR FROM ANY PERSONAL INJURIEIS [sic], DEATH, PROPERTY DAMAGE, OR OTHER DAMAGES OR EXPENSES RESULTING THEREFROM.  EXPEDIA, INC. AND ITS AFFILIATES HAVE NO LIABILITY AND WILL MAKE NO REFUND IN THE EVENT OF ANY DELAY, CANCELLATION, OVERBOOKING, STRIKE, FORCE MAJEURE OR OTHER

>   CAUSES BEYOND THEIR DIRECT CONTROL, AND THEY
>   HAVE NO RESPONSIBILITY FOR ANY ADDITIONAL
>   EXPENSE, OMISSIONS, DELAYS, RE-ROUTING OR ACTS
>   OF ANY GOVERNMENT OR AUTHORITY. . . .
>
>   (Knaack Depo., Gould Dec. Ex. 2, pp. 22:4-22:16, 23:5-25:20 and
>   Ex. No. 4 thereto.)

24. While one can browse Expedia's website without reviewing the terms, conditions and notices document (Id., p. 25:12-25:15), before someone is allowed to create an account, the terms, conditions and notices <u>will</u> appear on Expedia's website. (Id., p. 25:5-25:11.)

25. When someone books a trip on Expedia.com., he or she <u>must</u> affirmatively assent to each and every term listed on the terms, conditions and notices. (Id., p. 25:16-25:20.)

26. Nothing in the terms, conditions and notices prohibits an Expedia customer from booking a trip in the name of another individual besides the one who is actually booking the trip. (Id., pp. 26:2-26:7.)

27. Hofer and LaBelle left Logan airport on March 18, 2004. (S. Hofer Depo. Vol. I, Gould Dec. Ex. 5, p. 148:5-148:6.) They arrived in Jamaica at approximately 4:00 p.m. and took a shuttle bus directly to Turtle Beach. (Id., p. 149:12-149:23.)

28. Stairs lead up to a glass door in the approach to the main lobby of Turtle Beach. (Id., p. 152:23-152:25.)

29. A rectangular turtle pond was located at the side of the stairs, which appeared to Hofer to be made out of stone walls. (Id., p. 153:1-153:11, 153:20-153:21.)

30.  The rectangular pond enclosed turtles, water and what appeared to be decorative flagstones.  (Id., p. 153:12-153:17.)

31.  Hofer used these very stairs (up and down) upon arrival when she and LaBelle entered the lobby and LaBelle checked them into their room around 5:00 p.m. or 6:00 p.m.  (Id., pp. 156:18-157:2, 157:21-157:24.)  Hofer testified that before the accident she went up the stairs twice and down the stairs once and had no difficulty in doing so.  (Id., pp. 157:7-157:8, 157:13-157:15, 167:21-167:24.)

32.  After returning to their room after dinner, Hofer and LaBelle discussed their plans for the next day and Hofer ultimately decided to walk over to the front desk to get information on Dunn's River Falls.  (Id., p. 162:5-162:24.)

33.  Hofer walked up the stairs to the lobby (her third time traversing the stairs) and tried the door, but she claims it was locked.  (Id., p. 167:21-167:24.)

34.  Hofer then testifies as follows:

> A.  (MS. HOFER). . . .  I followed that sidewalk over to the stair area and went up the stairs –-
> Q.  Okay.
> A.  --went to open the single glass door.  That was locked.  At that time I turned around to go down the stairs.
> Q.  And then what happened?
> A.  That's when the flip-flop broke –
> Q.  Okay.
> A.  -- sandal broke.
> Q.  So where was it when the flip-flop broke?  Where were you on – were you on the stairs, before the stairs?
> A.  I was at the top of the stairs getting ready to take my step down, in the process of taking my step down.

> . . . .
>
> Q. Okay. So then what happened?
> A. I fell.
> Q. Well, how do you know your flip-flop broke?
> A. Something felt wrong, I looked down and the flip-flop was broken and all within that same few seconds I fell.

(Id., pp. 168:7-168:22, 169:7-169:12.)

35. Hofer recalls that it was her right flip-flop which had separated. (S. Hofer Depo. Vol. II, Gould Dec. Ex. 9, p. 260:19-260:21.)

36. Hofer does not recall whether the flip-flop separated before she reached the first stair or if she fell as she was going down. (Id., pp. 271:21-272:1.)

37. Hofer claims she lost her balance and fell to her right into the turtle pond that was to the right of the stairs, gouging her left leg on whatever material was in the pond. (S. Hofer Depo. Vol. I, Gould Dec. Ex. 5, pp. 172:18-173:9, 173:20-173:21, 175:15-175:16.)

38. Her next memories are of holding her room key and asking someone to get LaBelle, and of Henry McKenzie carrying her to his car and being in the back seat of a car on the way to the hospital. (Id., pp. 176:16-177:4, 208:22-209:9.)

39. To her knowledge, no one witnessed the accident. (Id., p. 179:1-179:3.)

40. Hofer testified as follows: "The reason the accident occurred was because the flip-flop broke." (Id., p. 179:4-179:8.)

41. Hofer's complaint is the only complaint of which Expedia is aware concerning Turtle Beach, including complaints concerning the

|     |     |
| --- | --- |
|     | safety, maintenance or physical condition of the Turtle Beach property or any of the units therein. (Frazier Aff., ¶ 7.) |
| 42. | Specifically, Expedia has no record of any reports of injuries or near injuries resulting from falls down stairs on the premises of Turtle Beach, falls into turtle ponds on the premises, or any potentially dangerous conditions existing on the property, including the lack of handrails, guardrails or insufficient lighting. (Id.) |
| 43. | Since using Turtle Beach, Expedia has received no reports from travel industry trade publications, mainstream media or any other source that there existed a dangerous condition at Turtle Beach. (Id., ¶ 8.) |
| 44. | Likewise, Sherna Thomas is unaware of any such complaints from persons staying in the Thomases' units. (S. Thomas Aff., ¶ 15-17.) |
| 45. | Hofer's complaint is also the only report of injury or property damage at the Turtle Beach of which Faylin Miller, the Turtle Beach General Manager, is aware. (Miller Aff., ¶ 17.) |
| 46. | No person has issued any other complaint concerning the safety of any units or the Turtle Beach grounds. (Id.) |
| 47. | Indeed, Ms. Miller testified that in her 28-30 years of employment at Turtle Beach, this was the first reported instance of anyone falling into the turtle pond and the first major injury of which she |

was aware occurring on Turtle Beach property. (Miller Depo.,

Gould Dec. Ex. 8, pp. 34:7-34:8, 36:21-37:2, 76:1-76:16.)

        Respectfully submitted,

        By the defendant
        EXPEDIA, INC.,
        By its attorneys,

        **/s/ Rodney E. Gould**
        _____
        Rodney E. Gould (BBO # 205420)
        Email: rgould@rhglaw.com
        Robert C. Mueller (BBO#567599)
        Email: rmueller@rhglaw.com
        RUBIN, HAY & GOULD, P.C.
        205 Newbury Street
        P.O. Box 786
        Framingham, MA  01701-0202
        Tel: (508) 875-5222
        Fax: (508) 879-6803

DATED: February 16, 2007

## CERTIFICATE OF SERVICE

    I, Rodney E. Gould, hereby certify that this document, filed through the ECF system, will be served electronically upon the registered participants identified on the Notice of Electronic Filing (NEF) and will be served upon any non-registered participants, as indicated on the NEF, by paper copy sent via first-class mail, postage prepaid.

DATED: February 16, 2007        **/s/ Rodney E. Gould**
                                              _____
                                              Rodney E. Gould