UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
STEPHANIE HOFER and                 )
DOUGLAS HOFER,                      )        Civil Action Docket No. 05-40170 FDS
                                    )
          Plaintiffs,               )
                                    )
v.                                  )
                                    )
THE GAP, INC., EXPEDIA, INC.        )
and TURTLE BEACH TOWERS,            )
                                    )
          Defendants.               )
                                    )
_____)


**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT EXPEDIA, INC.'S MOTION FOR SUMMARY JUDGMENT**

Rodney E. Gould (BBO # 205420)
Email:  rgould@rhglaw.com
Robert C. Mueller (BBO#567599)
Email:  rmueller@rhglaw.com
RUBIN, HAY & GOULD, P.C.
205 Newbury Street
P.O. Box 786
Framingham, MA  01701-0202
Tel:  (508) 875-5222
Fax:  (508) 879-6803

Dockets.Justia.com

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION……………………………………………...……………… 1

II.     FACTUAL BACKGROUND…………………………………………………… 2

        A.      EXPEDIA AND ITS RELATIONSHIP WITH TURTLE BEACH…………….. 2

        B.      THE BOOKING OF HOFER'S TRIP…………………………………………… 5

        C.      HOFER'S ARRIVAL IN JAMAICA AND THE ACCIDENT………………… 7

III.    ARGUMENT…………………………………….…………………………….... 11

        A.      SUPPLIERS OF TRAVEL SERVICES SUCH AS EXPEDIA ARE
                NOT LIABLE FOR THE ALLEGED NEGLIGENCE OF THIRD-PARTY
                HOTELS REGARDLESS OF THE PROFFERED THEORY………………… 12

        B.      AS A MATTER OF LAW, EXPEDIA WAS NOT NEGLIGENT
                AND HAD NO DUTY TO WARN HOFER OF ANY ALLEGED
                DANGEROUS CONDITION ON THE STAIRS……………….………….. 17

                1.      Travel agents and tour operators have no duty to warn
                        of dangerous conditions on the property of an independent
                        supplier of services……………………………………….……….. 17

                2.      If the alleged dangerous condition was open and obvious,
                        Expedia owed no duty to Hofer to warn her of same……………..……… 19

                3.      If the alleged dangerous condition was hidden, Expedia
                        owed no duty to Hofer to warn her of same……………………..……… 21

                4.      Visits by a travel agent such as Expedia to a third-party
                        service supplier do not create a duty to inspect or warn………..……….. 23

                5.      The defective sandal was an intervening and/or
                        superseding cause of any injury to Hofer and relieves
                        Expedia from any liability…………………………………….……….. 26

        C.      EVEN IF A DUTY WERE OWED TO THE PLAINTIFF, EXPEDIA'S
                DISCLAIMER OF LIABILITY BARS THE PLAINTIFFS' CLAIMS……….. 27

        D.      EXPEDIA DID NOT GUARANTEE HOFER'S SAFETY ON THE TRIP…… 29

IV.     CONCLUSION……………………………………………...………………... 31

## I.    __INTRODUCTION__

This product liability action arises from personal injuries sustained by the plaintiff Stephanie Hofer ("Hofer") on the evening of March 18, 2004 at the Turtle Beach Towers resort ("Turtle Beach") in Ocho Rios, Jamaica.  Plaintiffs allege that Hofer's sandal, which she claims she purchased from the co-defendant The Gap, Inc. ("GAP"), broke the first evening of her trip in Jamaica, as she was preparing to descend stairs in front of the resort lobby door, causing Hofer to fall into a turtle pond located adjacent to the lobby stairs, resulting in the injuries of which she complains.[1]

Surprisingly, the plaintiffs seek redress from defendant Expedia, Inc. ("Expedia"), an on-line travel company that operates the Internet website Expedia.com on which Hofer's friend and traveling companion booked her trip.  Plaintiffs' theory is that Expedia had a duty to warn Hofer of an open and obvious dangerous condition existing on these stairs –- the lack of a guardrail or handrail -- at Turtle Beach, a property that Expedia does not own, operate or manage.  Plaintiffs argue, without evidence, that had the stairs had such a guardrail or handrail, it would have prevented Hofer's fall and/or subsequent injuries.

But the law in Massachusetts and in jurisdictions throughout the country is clear:  entities that book and arrange trips for the public, using the services of hotels and other third-party suppliers of travel services, are not liable for the dangerous conditions present on the premises of these suppliers, and have no duty to warn trip participants of any such open and obvious dangerous conditions.  Expedia's motion for summary judgment should be granted.

---

[1] Although the defendants dispute many details of the plaintiffs' version of the events surrounding the accident, for purposes of this summary judgment motion we assume, _arguendo_, that the plaintiffs' version of events is accurate.

## II.    FACTUAL BACKGROUND[2]

### A.    EXPEDIA AND ITS RELATIONSHIP WITH TURTLE BEACH

Expedia is a corporation incorporated in the State of Washington.  (Expedia's Answers to Plaintiff Stephanie Hofer's First Set of Interrogatories ["Expedia Int. Ans."], attached to the Declaration of Rodney E. Gould, Esq. as Ex. 1,[3] No. 2.)  Expedia owns the website Expedia.com, as well as other websites.  (Id.)  Each of the websites Expedia owns is dedicated to facilitating web-user interface with travel and travel-related vendors and services.  (Id.)  Expedia provides access for on-line users to well over 100,000 travel-related product and service providers, such as hotels, airlines and rental car agencies.  (Id.)  Turtle Beach is one of those 100,000 vendors.  (Knaack Depo., Gould Dec. Ex. 2, pp. 21:1-22:3.)  On-line users have the ability to peruse Expedia's websites, view the products and services offered by the hotels, airlines, rental car agencies and/or other travel-related entities, and use the website to book these travel-related products and services.  (Expedia Int. Ans., Gould Dec. Ex. 1, No. 2.)  In providing this on-line access, Expedia acts as an independent contractor.  (Id.)

In 2004, Sherna Thomas and her husband Daine Thomas were owners of eleven units at Turtle Beach.  (Affidavit of Sherna Thomas Affidavit ["S. Thomas Aff."], ¶ 3.)  Since 2000, the Thomases have advertised their units on three separate websites  -- Expedia.com, Travelocity.com and Worldres.com (Id., ¶ 4.) -- and, since 2000, Sherna Thomas has entered into three contracts with Expedia to advertise their units at the Turtle Beach resort.  (Id., ¶ 5.)

---

[2] Expedia's Local Rule 56.1 Statement of Material Facts accompanies this Memorandum of Law as a separate document.

[3] The discovery, deposition transcripts and exhibits cited within this memorandum are attached to the Declaration of Rodney E. Gould, Esq. in Support of Expedia, Inc.'s Motion for Summary Judgment ["Gould Dec."].

In order for a property to be listed on Expedia's website, a hotel must sign a listing contract, provide information about the property, and be open for business. (Veglia Depo., Gould Dec. Ex. 3, pp. 60:16-61:11.)  The description of Turtle Beach contained on Expedia's website was provided by Turtle Beach; no one from Expedia visits the hotels advertised on Expedia's website to ensure that the information that is conveyed from the hotel to Expedia is accurate. (Id., pp. 46:18-47:23.)

Expedia has never owned, operated, managed or controlled Turtle Beach or any units therein.  (Affidavit of Nashara Frazier ["Frazier Aff."], ¶¶ 4-5.)[4]  Similarly, Expedia has never owed, operated, managed or controlled any property management company for Turtle Beach or its common areas.  (Id., ¶ 5.)[5]  Turtle Beach is a completely independent entity from Expedia. (Frazier Aff., ¶ 4.)  Expedia's records reflect that approximately 86 customers made bookings through Expedia for Turtle Beach in 2006, and approximately 69 customers made bookings through Expedia for Turtle Beach in 2005.  (Id., ¶ 6.)

Expedia has never sent an employee or other representative to Turtle Beach (or any of the units therein) to perform a safety or any other type of inspection of the premises.  (Id., ¶ 9.) Indeed, as of the date of Hofer's accident, Expedia had never sent any employee to the property

---

[4] Nor has Expedia ever been owned or operated by Turtle Beach.  (Id., ¶ 4.)

[5] An independent entity, Proprietors Strata Plan # 7, Turtle Beach Towers, is the management company for Turtle Beach and it is the entity responsible for monitoring, preserving, and otherwise maintaining all units, buildings, and grounds of Turtle Beach. (Affidavit of Faylin Miller ["Miller Aff."], ¶ 20.)  Faylin Miller is the General Manager of Turtle Beach. (Id., ¶ 3.)

for any purpose. (Id.)[6] No employee of Expedia was present on the premises of Turtle Beach at the time of Hofer's accident. (Frazier Aff., ¶ 10.)

Sherna Thomas, the owner of the unit advertised on Expedia.com and the person who entered into the contracts with Expedia, has never personally met any person employed by Expedia. (S. Thomas Aff., ¶ 7.) At no time has she arranged for the Turtle Beach General Manager, Faylin Miller, to meet with any person employed by Expedia for safety (or other) inspections of the Thomases' units or the Turtle Beach itself. (Id., ¶ 11.) Nor did any person employed by Expedia request her permission to conduct inspections of the units or the Turtle Beach grounds. (Id., ¶¶ 9-10.) No person employed by Expedia has ever conducted an inspection of any kind of her units or the Turtle Beach grounds or sent her a report detailing any such inspection. (Id., ¶¶ 12-13.)

---

[6] From time to time, Expedia has occasion to visit hotel properties that it lists on its website. (Veglia Depo., Gould Dec. Ex. 3, p. 18:13-18:15.) The purpose of those visits is to meet the people at the hotels, (Id., p. 18:16-18:23), and to familiarize Expedia with the properties and destinations. (Id., pp. 18:24-19:8, 61:25-62:7.) It is not Expedia's responsibility or intent to observe the condition of the properties that it visits. (Id., pp. 19:9-19:16, 27:17-27:21.) Expedia does not inspect the physical plant of the facilities that are advertised on its web site. (Id., p. 38:16-38:20; Frazier Depo., Gould Dec. Ex. 4, pp. 28:22-29:12.)

After the incident in question, Nashara Frazier, Expedia's market manager for several Caribbean islands (Frazier Depo., Gould Dec. Ex. 4, pp. 7:15-7:25, 8:1-8:9), traveled to Montego Bay, Jamaica to attend a business conference hosted by the Tourist Board of Jamaica in May 2004. (Id., pp. 21:9-22:2.) During the trip, she visited Turtle Beach for just a few minutes. (Id., pp. 20:18-20:20, 24:11-24:16.) The purpose of Frazier's visit to Turtle Beach in May 2004 was to familiarize herself with the property's location and proximity to the beach. (Id., pp. 20:21-21:3.) The visit occurred after Hofer's accident, but Frazier's visit had nothing to do with her accident. (Id., p. 24:8-24:10.)

B.    <u>**THE BOOKING OF HOFER'S TRIP**</u>

On the Tuesday before their departure, Hofer and her friend, Carrie LaBelle ("LaBelle"),[7] decided they wanted to take a vacation to someplace warm.  (S. Hofer Depo. Vol. I, Gould Dec. Ex. 5, pp. 145:11-145:16, 145:25-146:15.)  It was LaBelle's idea that they go to Jamaica.  (<u>Id</u>., p. 146:11-146:12, 146:16-146:25.)  Hofer made no investigation of her hotel, Turtle Beach, before departure. (<u>Id</u>., pp. 147:1-148:2.)  LaBelle took care of making the arrangements, with Hofer essentially being "along for the ride."  (<u>Id</u>., pp. 145:20-145:24, 148:3-148:4.)  LaBelle booked the trip with the expectation that Hofer would reimburse her for half of the cost of the trip. (LaRoche Depo., Gould Dec. Ex. 6, p. 164:11-164:20.)

LaBelle, from her home, used the website Expedia.com to book the trip to Jamaica.  (<u>Id</u>., pp. 99:19-100:1; 106:9-106:10.)  Before making the actual booking, Hofer gave LaBelle permission to book the trip on her behalf.  (<u>Id</u>., pp. 101:19-102:4.)

Approximately 25 million consumers worldwide visit Expedia.com monthly.  (Expedia Int. Ans., Gould Dec. Ex. 1, No. 2.)  Those consumers who make travel reservations through Expedia.com are subject to, must agree to, and must affirmatively click through Expedia, Inc.'s *Web Site Terms, Conditions, and Notices* to effectuate their respective on-line bookings.  (<u>Id</u>.) The terms and conditions effective at the time of the LaBelle-Hofer booking provide, in part, as follows:

> <u>AGREEMENT BETWEEN CUSTOMER AND EXPEDIA, INC.</u>
>
> This Web site is offered to you, the customer, conditioned on your acceptance without modification of the terms, conditions, and notices contained therein.

---

[7] LaBelle was married after the events which transpired in Jamaica; her new surname is LaRoche (LaRoche Depo., Gould Dec. Ex. 6, pp. 8:19-9:5.)  In this memorandum, we will refer to her as LaBelle, which is the name she is referred to in other deposition transcripts.

5

Your use of this web site constitutes your agreement to such terms, conditions, and notices.

. . .

LIABILITY DISCLAIMER

THE INFORMATION, SOFTWARE, PRODUCTS AND SERVICES PUBLISED ON THIS WEB SITE MAY INCLUDE INACCURACIES OR TYPOGRAPHICAL ERRORS.  IN PARTICULAR, EXPEDIA, INC. AND ITS AFFILIATES DO NOT GUARANTEE THE ACCURACY OF, AND DISCLAIM LIABILITY FOR INACCURACIES RELATING TO THE INFORMATION AND DESCRIPTION OF THE HOTEL, AIR, CRUISE, CAR AND OTHER TRAVEL PRODUCTS DISPLAYED ON THIS WEBSITE (INCLUDING, WITHOUT LIMITATION, PHOTOGRAPHS, LIST OF HOTEL AMENITIES, GENERAL PRODUCT DESCRIPTIONS, ETC.), MUCH OF WHICH INFORMATION IS PROVIDED BY THE RESPECTIVE SUPPLIERS.
. . .

EXPEDIA, INC., ITS AFFILIATES, AND/OR THEIR RESPECTIVE SUPPLIERS MAKE NO REPRESENTATIONS ABOUT THE SUITABILITY OF THE INFORMATION, SOFTWARE, PRODUCTS, AND SERVICES CONTAINED ON THIS WEB SITE FOR ANY PURPOSE, AND THE INCLUSION OR OFFERING FOR SALE OF ANY PRODUCTS OR SERVICES ON THIS WEB SITE DOES NOT CONSTITUTE ANY ENDORSEMENT OR RECOMMENDATION OF SUCH PRODUCTS OR SERVICES BY EXPEDIA, INC. OR ITS AFFILIATES.  ALL SUCH INFORMATION, SOFTWARE, PRODUCTS, AND SERVICES ARE PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND.  EXPEDIA, INC., ITS AFFILIATES, AND/OR THEIR RESPECTIVE SUPPLIERS HEREBY DISCLAIM ALL WARRANTIES AND CONDITIONS WITH REGARD OT THIS INFORMATION, SOFTWARE, PRODUCTS, AND SERVICES, INCLUDING ALL IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NONINFRINGEMENT.

THE CARRIERS, HOTELS AND OTHER SUPPLIERS PROVIDING TRAVEL OR OTHER SERVICES FOR EXPEDIA, INC. ARE INDEPENDENT CONTRACTORS AND NOT AGENTS OR EMPLOYEES OF EXPEDIA, INC. OR ITS AFFILIATES.  EXPEDIA, INC. AND ITS AFFILIATES ARE NOT LIABLE FOR THE ACTS, ERRORS, OMISSIONS, REPRESENTATIONS, WARRANTIES, BREACHES OR NEGLIGENCE OF ANY SUCH SUPPLIERS OR FROM ANY PERSONAL INJURIEIS [sic], DEATH, PROPERTY DAMAGE, OR OTHER DAMAGES OR EXPENSES RESULTING THEREFROM.  EXPEDIA, INC. AND ITS AFFILIATES HAVE NO

6

> LIABILITY AND WILL MAKE NO REFUND IN THE EVENT OF ANY
> DELAY, CANCELLATION, OVERBOOKING, STRIKE, FORCE MAJEURE
> OR OTHER CAUSES BEYOND THEIR DIRECT CONTROL, AND THEY
> HAVE NO RESPONSIBILITY FOR ANY ADDITIONAL EXPENSE,
> OMISSIONS, DELAYS, RE-ROUTING OR ACTS OF ANY GOVERNMENT
> OR AUTHORITY.
>
> . . . .

(Knaack Depo., Gould Dec. Ex. 2, pp. 22:4-22:16, 23:5-25:20 and Ex. No. 4 thereto.)

While one can browse Expedia's website without reviewing the terms, conditions and notices document (Id., p. 25:12-25:15), before someone is allowed to create an account, the terms, conditions and notices will appear on Expedia's website. (Id., p. 25:5-25:11.) When someone books a trip on Expedia.com, he or she must affirmatively assent to each and every term listed on the terms, conditions and notices. (Id., p. 25:16-25:20.) Nothing in the terms, conditions and notices prohibits an Expedia customer from booking a trip in the name of another individual besides the one who is actually booking the trip. (Id., pp. 26:2-26:7.) This practice, of course, is done on a regular basis throughout the travel industry.

## C.    HOFER'S ARRIVAL IN JAMAICA AND THE ACCIDENT

Hofer and LaBelle left Logan airport on March 18, 2004. (S. Hofer Depo. Vol. I, Gould Dec. Ex. 5, p. 148:5-148:6.) They arrived in Jamaica at approximately 4:00 p.m. and took a shuttle bus directly to Turtle Beach. (Id., p. 149:12-149:23.)

Stairs lead up to a glass door in the approach to the main lobby of Turtle Beach. (Id., p. 152:23-152:25.) A rectangular turtle pond was located at the side of the stairs,[8] which appeared

---

[8] While not material to any issue material to Expedia's summary judgment motion, it is interesting to visualize the steps and the turtle pond. The turtle pond, the only one on the property, is located in front of Tower 4, which contains Turtle Beach's reception area. (Scarlett Depo., Gould Dec. Ex. 7, pp. 7:22-8:17; Miller Depo., Gould Dec. Ex. 8, pp. 9:11-10:17, 11:16-11:18 and the photograph attached as Ex. 1 thereto.) Between the lobby level and the ground

to Hofer to be made out of stone walls.  (Id., p. 153:1-153:11, 153:20-153:21.)  The rectangular pond enclosed turtles, water and what appeared to be decorative flagstones.  (Id., p. 153:12-153:17.)  Hofer used these very stairs (up and down) upon arrival when she and LaBelle entered the lobby and LaBelle checked them into their room around 5:00 p.m. or 6:00 p.m.  (Id., pp. 156:18-157:2, 157:21-157:24.)  Hofer testified that before the accident she went up the stairs twice and down the stairs once and had no difficulty in doing so.  (Id., pp. 157:7-157:8, 157:13-157:15, 167:21-167:24.)

After they were escorted to their room (in a nearby building), Hofer and LaBelle freshened up, relaxed, and decided to go to a marketplace across the street from Turtle Beach for dinner.  (Id., pp. 157:25-158:19.)  After dinner, Hofer and LaBelle returned directly to Turtle Beach, perhaps stopping at a kiosk.  (Id., p. 161:9-161:18.)

After returning to their room, Hofer and LaBelle discussed their plans for the next day and Hofer ultimately decided to walk over to the front desk to get information on Dunn's River Falls.  (Id., p. 162:5-162:24.)  She left her room around 11:00 p.m.  (Id., p. 164:14-164:18; LaRoche Depo., Gould Dec. Ex. 6, pp. 150:21-151:4.)  It was approximately a five-minute walk from Hofer's room to the lobby.  (S. Hofer Depo. Vol. I, Gould Dec. Ex. 5, p. 167:4-167:7.)  Hofer walked up the stairs to the lobby (her third time traversing the stairs) and tried the door, but she claims it was locked.  (Id., p. 167:21-167:24.)  Hofer then testifies as follows:

> A. (MS. HOFER). . . .  I followed that sidewalk over to the stair area and went up the stairs –-
> Q.    Okay.

---

level there are two wide steps, with a low rise between them, and a handicap ramp between the levels.  (See Miller Depo., Gould Dec. Ex. 8, Ex. 1 thereto.)  There is also a bench in front of the turtle pond, which was where Scarlett, the night manager, put Hofer after helping her out of the pond.  (Scarlett Depo., Gould Dec. Ex. 7, p. 19:17-19:20; Miller Depo., Gould Dec. Ex. 8, pp. 16:21-17:4 and the photograph attached as Ex. 5 thereto.)

A.      --went to open the single glass door.  That was locked.  At that time I turned
        around to go down the stairs.
Q.      And then what happened?
A.      That's when the flip-flop broke –
Q.      Okay.
A.      -- sandal broke.
Q.      So where was it when the flip-flop broke?  Where were you on – were you on the
        stairs, before the stairs?
A.      I was at the top of the stairs getting ready to take my step down, in the process of
        taking my step down.

. . . .

Q.      Okay.  So then what happened?
A.      I fell.
Q.      Well, how do you know your flip-flop broke?
A.      Something felt wrong, I looked down and the flip-flop was broken and all within
        that same few seconds I fell.

(Id., pp. 168:7-168:22, 169:7-169:12.)  Hofer recalls that it was her right flip-flop which had

separated.  (S. Hofer Depo. Vol. II, Gould Dec. Ex. 9, p. 260:19-260:21.)  Hofer does not recall

whether the flip-flop separated before she reached the first stair or if she fell as she was going

down.  (Id., pp. 271:21-272:1.)[9]

    Hofer claims she lost her balance and fell to her right into the turtle pond that was to the

right of the stairs, gouging her left leg on whatever material was in the pond.  (S. Hofer Depo.

Vol. I, Gould Dec. Ex. 5, pp. 172:18-173:9, 173:20-173:21, 175:15-175:16.)  Hofer then rolled

over to the side of the turtle pond closest to the stairs, and onto the edge.  (Id., pp. 198:15-

200:19.)  Her next memories are of holding her room key and asking someone to get LaBelle,

and of Henry McKenzie (a Turtle Beach security guard), carrying her to his car and being in the

---

        [9]While we accept Hofer's version of events for purposes of this summary judgment
motion, the testimony from Denroy Scarlett, the night manager in the lobby, was that Hofer told
him, immediately after the accident, that she thought she slipped in the pond while admiring the
turtles.  (Scarlett Depo., Gould Dec. Ex. 7, pp. 13:14-13:21, 15:3-15:12, 21:2-21:12.)

back seat of a car on the way to the hospital.  (Id., pp. 176:16-177:4, 208:22-209:9.)  To her

knowledge, no one witnessed the accident.  (Id., p. 179:1-179:3.)

  Hofer also alleges that her safety was jeopardized because the stairs were dimly lit (Id.,

p. 180:1-180:6.).  But she testified that the lighting conditions in the area around the stairs were

not the cause of her fall:

> Q.   And one of the reasons why you claim this accident occurred was
> because the stairs were dimly lit, correct?
> **A.   The reason the accident occurred was because the flip-flop
> broke.**

(Id., p. 179:4-179:8 (emphasis added).)

> Q.   So you could not see the steps?
> A.   No.  I could see the steps.

(Id., p. 179:17-179:18.)

> Q.   Does the fact that this was dimly lit have anything to do with your
> fall?
> A.   I think the fact that it was dimly lit jeopardized my safety.
> Q.   How?
> A.   By being dimly lit.
> Q.   All right.  But did you trip and fall because you couldn't see the
> stairs?
> A.   No.
>   Q.   Did you trip and fall because you didn't see the turtle
> pond?
> A.   No.

(Id., p. 180:1-180:12.)

  Hofer cannot recall how dimly lit the stairway was (S. Hofer Depo. Vol. III, Gould Dec.

Ex. 10, p. 387:1-387:7.)  But she could see the stairs going up to the lobby, the lobby door, and

the turtle pond.  (Id., p. 387:8-387:25.)

  Hofer's complaint is the only complaint of which Expedia is aware concerning Turtle

Beach, including complaints concerning the safety, maintenance or physical condition of the

Turtle Beach property or any of the units therein.  (Frazier Aff., ¶ 7.)  Specifically, Expedia has

no record of any reports of injuries or near injuries resulting from falls down stairs on the

premises of Turtle Beach, falls into turtle ponds on the premises, or any potentially dangerous

conditions existing on the property, including the lack of handrails, guardrails or insufficient

lighting.  (Id.)  Since using Turtle Beach, Expedia has received no reports from travel industry

trade publications, mainstream media or any other source that there existed a dangerous

condition at Turtle Beach.  (Id., ¶ 8.)

Likewise, Sherna Thomas is unaware of any such complaints from persons staying in the

Thomases' units.  (S. Thomas Aff., ¶ 15-17.)  Hofer's complaint is also the only report of injury

or property damage at the Turtle Beach of which Faylin Miller, the Turtle Beach General

Manager, is aware.  (Miller Aff., ¶ 17.)  No person has issued any other complaint concerning the

safety of any units or the Turtle Beach grounds.  (Id.)  Indeed, Ms. Miller testified that in her 28-

30 years of employment at Turtle Beach, this was the first reported instance of anyone falling

into the turtle pond and the first major injury of which she was aware occurring on Turtle Beach

property.  (Miller Depo., Gould Dec. Ex. 8, pp. 34:7-34:8, 36:21-37:2, 76:1-76:16.)

## III.  **ARGUMENT**

The plaintiffs' sole cause of action against Expedia is brought by plaintiff Stephanie

Hofer for breach of a duty to warn.[10]  (Complaint, Count V, ¶¶ 45-50.)  The plaintiffs allege that

Expedia was an agent for Turtle Beach and, as an agent, owed a duty to Stephanie Hofer to warn

her of dangerous conditions at the resort, to wit, the alleged dangerous condition of the lobby

---

[10] There is no separate cause of action asserted by plaintiff Douglas Hofer against Expedia
for loss of companionship.  Even if Mr. Hofer had asserted such a claim, his cause of action
would fail because his spouse has no valid tort claim against Expedia.  See Tauriac v. Polaroid
Corp., 716 F. Supp. 672, 673 (D. Mass. 1989) (citing Mouradian v. General Electric Co., 23
Mass. App. Ct. 538, 503 N.E.2d 1318, 1321 (1987)).

stairs.  But as a matter of law and on the undisputed facts, Expedia is entitled to summary judgment on plaintiffs' cause of action against it.  Regardless of the viability of plaintiffs' claims against Turtle Beach or, for that matter, GAP for allegedly providing the defective sandal which precipitated Hofer's fall, Expedia, the entity which merely facilitated LaBelle's booking of the trip, cannot be held liable for Hofer's injuries.

**A.    SUPPLIERS OF TRAVEL SERVICES SUCH AS EXPEDIA ARE NOT LIABLE FOR THE ALLEGED NEGLIGENCE OF THIRD-PARTY HOTELS REGARDLESS OF THE PROFFERED THEORY.**

It is undisputed that Expedia does not own, operate, manage or control Turtle Beach, (Frazier Aff., ¶¶ 4-5.), or the unit at which Hofer stayed.  (S. Thomas Aff., ¶ 3.)  The Turtle Beach premises itself was operated by Proprietors Strata Plan #7, a management company. (Miller Aff., ¶ 20.)  It is also undisputed that the alleged dangerous condition existing on the property of Turtle Beach – stairs near a turtle pond without guardrails – was not under the physical control of Expedia.  No employee of Expedia knew about this alleged dangerous condition or was in attendance at Turtle Beach at the time of (or before) Hofer's accident. (Frazier Aff., ¶¶ 7-10.)

There is voluminous case law in Massachusetts and indeed across the country to the effect that travel agents and tour operators are not liable for the alleged negligence of independent accommodations providers or defective conditions located on their property. Massachusetts cases which have expressly adopted this principle as a matter of state law include Tallent v. Trans Nat'l Travel, Civil Action No. 149943, slip op. (Mass., Boston Mun. Ct., Dec. 31, 1990) (Ex. 1)[11] (tour operator not liable for injuries plaintiff suffered when she stepped on a

---

[11] Opinions not contained within official reporters are attached to this memorandum as exhibits.

broken pipe in the ocean near her hotel) and Meola v. Trans Nat'l Travel, Civil Action No.

153778, slip op. at 3 (Mass., Boston Mun. Ct., Aug. 20, 1990) (Ex. 2) (summary judgment

granted to tour operator where plaintiff contracted food poisoning while dining at a tour hotel;

tour operator had no duty to supervise the quality of food at a hotel "not its own").

McElheny v. Trans Nat'l Travel, Inc., 165 F. Supp. 2d 190 (D.R.I. 2001) is on point.  In

that case, the plaintiff sued a Massachusetts tour operator for injuries she suffered when, while at

a hotel, a chair upon which she was sitting collapsed.  In granting the tour operator's motion to

dismiss or for summary judgment,[12] the court determined that the tour operator could not be held

liable for an alleged defective condition at the hotel because the tour operator did not own,

operate, or control the hotel where plaintiff was injured.  Id. at 203.  See also Passero v. DHC

Hotels and Resorts, Inc., 981 F. Supp. 742, 744 n.1, 746 (D. Conn. 1996) (plaintiff tripped and

fell over flotation mat near hotel's pool; "as a tour operator, TNT is not liable for the negligent

acts of third-party suppliers of services to tour participants"; court noted that there was no

difference in the relevant law of Massachusetts, Connecticut, and Rhode Island on this issue).

This sentiment was echoed in Gabrielle v. Allegro Resorts Hotels, 210 F. Supp. 2d 62

(D.R.I. 2002), in which the court denied plaintiff's motion to remand on a fraudulent joinder

removal case because the non-diverse travel agency could not be held liable for an assault

committed upon a tour participant in her hotel room, accepting the proposition "that travel agents

and tour operators are not liable for the negligence of third parties."  Id. at 69-70.  In addition,

Judge Zobel of this Court echoed this precise sentiment in two cases, one involving injuries

sustained in a safari vehicle, Ross v. Trans Nat'l Travel, 1990 U.S. Dist. LEXIS 6994 (D. Mass.

---

[12] McElheny was decided by reference to both Massachusetts and Rhode Island law.  Id. at 195-96.

13

June 5, 1990) (Ex. 3) (applying California law) (granting summary judgment motion of tour

operator), and the other a bicycle accident, Hassett v. Cape Cod Bicycle Tours, Inc., 1987 U.S.

Dist. LEXIS 8321 (D. Mass. Sept. 3, 1987) (Ex. 4) (granting summary judgment motion of tour

operator).[13]

In an effort to throw a wrinkle into this array of black letter law, plaintiffs allege, as an

ipse dixit and as though it matters, that Expedia, as a travel agent, was the "agent" of Turtle

Beach.  Most courts, of course, eschew that terminology, finding that the relationship between

entities which arrange travel, such as Expedia, and third-party service suppliers to be an

independent contractor relationship.  See Lavine v. General Mills, Inc., 519 F. Supp. 332, 336

(N.D. Ga. 1981) (holding that allegedly negligent cruise company was not the agent of defendant

tour package seller and planner, but rather an independent contractor; "plaintiff's dubious

assertions, without more, are insufficient to create any factual issue on that point."); Ross, 1990

U.S. Dist. LEXIS 6994 at *7 (Ex. 3) ("The majority of these cases refuse to impose liability upon

---

[13] Numerous cases from other jurisdictions are in accord.  See, e.g., Wilson v. American Trans Air, Inc., 874 F.2d 386, 389 (7th Cir. 1989) (tour operator not liable for negligence of hotel, an independent contractor, regarding attempted assault); Fling v. Hollywood Travel and Tours, 765 F. Supp. 1302, 1306 (N.D. Ohio 1990), aff'd, 933 F.2d 1008 (6th Cir. 1991) (tour operator not liable for injuries plaintiffs suffered when they were robbed and one of them shot near their tour hotel in Bahamas because tour operator did not manage or operate hotel); Andrei v. DHC Hotels and Resorts, Inc., 2000 U.S. Dist. LEXIS 4107, at *2-3  (S.D.N.Y. Mar. 31, 2000) (Ex. 5) (accepting removal based upon fraudulent joinder theory since no cause of action could be asserted against travel agent and tour operator on claims of injury caused by plaintiff's slip and fall at tour hotel); Viches v. MLT, Inc., 124 F. Supp. 2d 1092, 1095 (E.D. Mich. 2000) (plaintiffs sickened by the spraying of insecticide at tour hotel; court held that tour operators are not vicariously liable for the negligent actions of hotels or other independent contractors); Carley v. Theater Dev. Fund, 22 F. Supp. 2d 224, 228 (S.D.N.Y. 1998) (plaintiff fell from hotel room window; "operators of international tours do not have a duty to tour participants to insure the non-negligent performance of hotel services by independent contractors").

travel agents for injuries such as plaintiff's regardless of the theories advanced.") (citations omitted).

In the leading case of <u>Dorkin v. American Express Co.</u>, 345 N.Y.S.2d 891 (Sup. Ct., Spec. Term, Albany Co. 1973), <u>aff'd</u>, 351 N.Y.S.2d 190 (App. Div., 3d Dep't 1974), plaintiff was injured when the tour bus on which she was traveling braked abruptly, throwing her to the floor. The trial court held:

> American Express Company [acting as the tour operator] did not guarantee a good time . . . nor that plaintiffs would return safely without adverse adventure or harm. It could not be charged with foreseeability of possible motor bus accident and resulting injury. The defendant did what it contracted to do and does not have to respond in damages either in negligence or for breach of contract, based upon principles of agency.

<u>Dorkin</u>, 345 N.Y.S.2d at 894. Affirming the trial court on the same grounds, the Appellate Division held:

> [T]he tour bus was owned and operated by an independent contractor. Such relationship, therefore, precludes any liability on the part of defendant, either on a theory of negligence or breach of contract. Defendant agreed to supply plaintiffs with a planned European tour with meals, lodging and transportation. It did not, however, insure the safety of the plaintiff.

<u>Dorkin</u>, 351 N.Y.S.2d at 192 (emphasis added). <u>See also</u> <u>Aronov v. Bruins Transportation, Inc.</u>, 742 N.Y.S.2d 389, 390 (2d Dep't 2002) (affirming grant of summary judgment to tour operator for crash of Atlantic City tour bus; "[w]here tour participants are transported by an independent contractor, the tour operator is not responsible for an accident which occurs due to the negligence of the independent contractor") (citations omitted).[14]

---

[14] <u>See also</u> <u>Sachs v. TWA Getaway Vacations, Inc.</u>, 125 F. Supp. 2d 1368, 1374-75 (S.D. Fla. 2000) (tour operator not liable for injuries sustained by plaintiff when disembarking from motorcoach owned by independent supplier of services); <u>Ramage v. Forbes Int'l, Inc.</u>, 987 F. Supp. 810 (C.D. Cal. 1997) (same; injury occurred when motorcoach hit bump in the road); <u>Sova v. Apple Vacations</u>, 984 F. Supp. 1136, 1140 (S.D. Ohio 1997) (tour operator not liable for

In any event, there is no evidence which supports the plaintiffs' allegations that a "principal/agent" relationship existed between Expedia and Turtle Beach (or the Thomases).  But even if Expedia could be construed as being the agent of either Turtle Beach or the Thomases, it is hornbook law that while the actions of an agent may be imputed to a principal, the converse of that maxim is not true.  See, e.g., Hassett, 1987 U.S. Dist. LEXIS 8321, at *2 (Ex. 4) (Zobel, J.) ("Nor does plaintiff cite to any case to support her theory that an agent or middleman may be held liable for the tortious acts of the eventual dispenser of the services purchased."); Pierre v. American-Int'l Travel, Inc., 717 F. Supp. 435, 436-37 (M.D. La. 1989) ("it is plain that American-International acted only as a travel agent in making reservations and issuing tickets for travel on American Airlines, the carrier. . . . Undoubtedly, the travel agent cannot be held accountable [for the airline's negligence] since it had no control over the terminal areas"); Porshin v. Snider, 349 Mass. 653, 655, 212 N.E.2d 216, 217 (1965) (citing Restatement (Second) Agency, § 320) ("[u]nless otherwise agreed, a person making or purporting to make a contract for a disclosed principal does not become a party to the contract"); United States Gypsum Co. v. Stern, 293 Mass. 581, 586, 200 N.E. 283, 285 (1936) ("an agent making a contract for a disclosed principal does not become liable by reason of the failure of the principal to perform").

In a word, there is simply no basis, under an agency or any other theory, for holding Expedia liable for the knowledge or actions of Turtle Beach vis-à-vis an allegedly dangerous condition on its property.

---

injuries plaintiff suffered on optional snorkeling excursion mentioned in tour brochure because tour operator did not own, manage, or control the company which operated the excursion); Honeycutt v. Tour Carriage, Inc., 997 F. Supp. 694, 699 (W.D.N.C. 1996) ("[T]he fact that [tour operator and travel agent] did not operate or control the horseback riding activity is alone sufficient grounds for this Court to grant summary judgment in their favor.").

**B.      AS A MATTER OF LAW, EXPEDIA WAS NOT NEGLIGENT AND HAD NO DUTY TO WARN HOFER OF ANY ALLEGED DANGEROUS CONDITION ON THE STAIRS.**

It is a matter of hornbook law that "[b]efore liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff." O'Sullivan v. Shaw, 431 Mass. 201, 726 N.E.2d 951, 954 (2000). The existence of a duty is, of course, a question of law for the Court. Wallace v. Wilson, 411 Mass. 8 (1991); O'Gorman v. Antonio Rubinaccio & Sons, 408 Mass. 758 (1990). Here, Expedia owed no duty to Hofer to warn her that the lack of a guardrail or handrail on stairs adjacent to a turtle pond at a Jamaican resort rendered said stairs unsafe to traverse.

**1.      Travel agents and tour operators have no duty to warn of dangerous conditions on the property of an independent supplier of services.**

Case law in Massachusetts and throughout the country holds that the relationship between a travel agent or tour operator and a third-party supplier of services, such as a hotel, resort, cruise line, or ground transportation provider, will not give rise to a duty on the part of the travel agent or tour operator to investigate the safety of the third-party supplier or to warn of dangerous conditions thereon. Voluminous cases involve these precise circumstances and inevitably reject imposing such a duty on travel agents:

> Courts have generally declined to impose liability on travel agents and tour operators for injuries sustained by clients aboard vessels, buses and other modes of transportation or at hotels or other destinations. The courts have usually found that there never existed a relationship which would have given rise to a duty on the part of the travel agent to investigate the safety of instrumentalities over which it had no control or knowledge.

McElheny, 165 F. Supp. 2d at 197 (quoting McAleer v. Smith, 860 F. Supp. 924, 931 (D.R.I.), aff'd in part, 57 F.3d 109 (1st Cir. 1994)).

17

Massachusetts courts routinely dismiss or grant summary judgment to travel agents and tour operators in cases where tour participants are injured while in the hands of third-party suppliers of services to a tour, regardless of the service performed, due to the lack of a duty on the part of the agent or operator.  See, e.g., Hassett, 1987 U.S. Dist. LEXIS 8321, at *1-2 (Ex. 4) (Zobel, J.) (plaintiff was injured on bike, the rental of which -- from an independent dealer -- was included as part of bicycle tour; tour operator's duty held limited to making the necessary reservation); Ross, 1990 U.S. Dist. LEXIS 6994, at *4-*5 (Ex. 3) (Zobel, J.) (noting that plaintiff's assertion that tour operator had a duty to do more than use due care in selecting safari operator was not supportable in law); Accomando v. Trans Nat'l Travel, Civil Action No. 90-6605, slip op., 23 Avi. Cas. (CCH) 18,140, 18,142 (Mass. Super. Ct., Suffolk Co., June 19, 1991) (Ex. 6) (in granting tour operator summary judgment on claims that it was liable for a delay in the plaintiff's charter flight, court held, in part, that tour operator's sole responsibility was to arrange the flight); Gannon v. International Weekends Charter Vacations, Inc., C.A. 87-315, slip op. at 2 (Mass. Super. Ct., Suffolk Co., Dec. 11, 1987) (Ex. 7) (bus accident; tour operator granted summary judgment because it did not control operation of the coach and had no duty to ensure plaintiff's safety).

McElheny, supra, is instructive.  In that case, involving a collapse of an allegedly defective chair at a resort hotel, the plaintiff sued the tour operator, TNT.  McElheny, 165 F. Supp. 2d at 190.  TNT, as the tour operator, assembled the components of the tour package and sold the package to the public through retail travel agencies.  In granting the tour operator's motion to dismiss or for summary judgment, the court held that "[t]our operators do not have a duty to avoid or warn of hazards of which they have no knowledge or that are not in their control."  Id. at 197.

18

Voluminous other cases are in accord.  Patrick v. Massachusetts Port Authority, 141 F. Supp. 2d 180, 186-89 (D.N.H. 2001), is typical.  There, the court granted the tour operator's motion to dismiss or for summary judgment on plaintiff's claim that it was liable for injuries sustained by the plaintiff when she fell at Logan Airport while changing planes because the tour operator had no duty to provide a warning about conditions at Logan Airport, an independent third party.  See also Lavine v. General Mills, Inc., 519 F. Supp. 332 (N.D. Ga. 1981) (plaintiff injured on slippery rocks on vacation during an optional excursion; defendants, a travel agent and tour package planner, were held to owe no duty to warn plaintiff of the dangerous condition that caused her injury, as neither were the owner or occupier of the island where plaintiff fell); Connolly v. Samuelson, 671 F. Supp. 1312, 1217 (D. Kan. 1987) (plaintiff injured while on a walking tour of a wildlife reserve as part of a vacation package sold to her by defendant travel agent; court held that the travel agent had no duty to know of the walking tour conditions, to know or advise plaintiff of the standard operating procedures at the reservation, or to provide plaintiff with a safe and secure tour).

> **2.      If the alleged dangerous condition was open and obvious, Expedia owed no duty to Hofer to warn her of same.**

The plaintiffs claim that Expedia is liable for failing to warn Hofer of the dangerous condition existing at the Turtle Beach lobby stairs, namely the lack of a guardrail or handrail which would have broken Hofer's fall into the turtle pond.  Assuming, arguendo, that the lack of a guardrail did indeed constitute a dangerous condition, Expedia cannot be held liable for Hofer's injuries.

If the dangerous condition of the stairs were open and obvious, which Hofer appears to argue, then as a matter of law Expedia owed Hofer no duty to warn because Hofer was in an

19

infinitely better position to assess the condition of the stairs as she descended them. Indeed,

Hofer had been up or down the stairs <u>three</u> times prior to her accident. She admitted in her

deposition testimony that she had used these same stairs both mere hours before her accident

upon checking into the hotel and indeed mere seconds before her fall, and similarly admitted that

she had noticed the turtle pond adjacent to the stairs. (S. Hofer Depo. Vol. I, Gould Dec. Ex. 5,

pp. 156:18-157:2, 157:7-157:8, 157:13-157:15, 157:21-157:24; S. Hofer Depo. Vol. III, Gould

Dec. Ex. 10, p. 387:8-387:25.)

Being open and obvious, Expedia (even if, contrary to fact, it knew about the condition)

had no obligation to warn Hofer of the condition of the stairs, as numerous Circuit and District

Courts have so held. <u>See, e.g.</u>, <u>Tradewind Transp. Co. v. Taylor</u>, 267 F.2d 185, 187-88, 190 (9th

Cir.), <u>cert. denied</u>, 361 U.S. 829 (1959) (tour operator not liable to traveler who slipped and fell

on steps of temple she was visiting as part of a tour, even though tour driver who was present had

previously seen another tourist fall there, since the condition was apparent to a reasonably

prudent person); <u>Stafford v. Intrav, Inc.</u>, 841 F. Supp. 284, 287-88 (E.D. Mo. 1993), <u>aff'd</u>, 16

F.3d 1228 (8th Cir. 1994) (tour operator had no duty to warn plaintiff about an open gangplank

because it was an "obvious danger," even though tour guide was standing next to plaintiff when

she fell); <u>Manahan v. NWA</u>, 821 F. Supp. 1105 (D.V.I. 1991), <u>supplemental op., adhered to,</u>

<u>recons. denied sub nom.</u> <u>Manahan v. Yacht Haven Hotel</u>, 821 F. Supp. 1110, 1114 (D.V.I. 1992),

<u>aff'd without op.</u>, 995 F.2d 218 (3d Cir. 1993) (tour operator had no duty to warn of obvious

dangers or to give general safety precautions about walking on streets of St. Thomas at night);

<u>Sachs</u>, 125 F. Supp. 2d at 1374 (holding that the "potential danger of descending the steps of a

motorcoach" was obvious and readily observable by a traveler); <u>Gabrielle</u>, 210 F. Supp. 2d at 70

(finding that the act of leaving a balcony door open on a second floor hotel room constituted an

obviously dangerous condition; plaintiff was assaulted while sleeping in her room); <u>Maraia v. Church of Our Lady of Mount Carmel</u>, 2007 N.Y. App. Div. LEXIS 786, at *3 (N.Y. App. Div., 2d Dep't Jan. 23, 2007) (Ex. 9) (plaintiff sustained injuries from fall from platform on tour; tour operator entitled to summary judgment because the condition of the platform was open and obvious).

At a minimum, the condition of the stairs was equally discoverable by Hofer and she was in a much better position to assess the situation than Expedia. <u>See, e.g.</u>, <u>McElheny</u>, 165 F. Supp. 2d at 205 (holding that the plaintiff was in a better position to observe that the chair on which she was about to sit was defective than the tour operator's representatives who were on site but not present at the time of the accident); <u>Passero</u>, 981 F. Supp. at 744 (presence of a flotation mat by a swimming pool was an obvious condition equally observable by plaintiff); <u>Adames v. Trans Nat'l Travel</u>, 1998 Mass. Super. LEXIS 108 (Mass. Super. Ct., Suffolk Co. Apr. 10, 1998) (Ex. 8) ("[E]ven if TNT owed the Adames a duty to warn them about the dangers of the Cruise, the Adames had a better, and more apt, ability to determine the dangers involved in the trip.").

### 3.     If the alleged dangerous condition was hidden, Expedia owed no duty to Hofer to warn her of same.

If the condition of the stairs was not open and obvious, but rather a hidden danger, case law is clear that travel agents and tour operators have no duty to ferret out the danger when, as here, they have no specific, actual knowledge of any prior incidents with the service supplier which would trigger a duty to warn the participant of the possible danger or to discontinue use of the service supplier. At least four federal Circuit Courts have so concluded. See <u>Stafford</u>, 841 F. Supp. at 288, <u>aff'd</u>, 16 F.3d 1228 (8th Cir. 1994) (tour operator not liable for tour participant's fall from gangplank because it had no knowledge of prior accidents); <u>Wilson</u>, 874 F.2d at 390 (7th

Cir. 1989) (in a case involving an assault on a woman at a hotel, the court entered summary judgment in favor of tour operator because it had no knowledge of guest complaints regarding safety and security at the hotel); Fling, 765 F. Supp. at 1305-06, 1307-08, aff'd, 933 F. 2d 1008 (6th Cir. 1991) (in case involving a shooting and robbery at a destination hotel, tour operator held to have no duty to warn plaintiffs because it did not know about any prior attacks); Manahan, 821 F. Supp. at 1110, 1114, aff'd without op., 995 F.2d 218 (3d Cir. 1993) (tour operator had no duty to warn of danger of walking on streets of St. Thomas at night since it knew of no previous muggings). Here, there is absolutely no evidence that Expedia had specific, actual knowledge of previous incidents on these steps which would trigger such a duty to warn. In fact, there is no evidence that Expedia had even a general or vague knowledge of any such incidents!

Thus, in order to prevail the plaintiffs would be required to show that Expedia had actual knowledge of previous, similar accidents at Turtle Beach or that Expedia knew that the resort was somehow incompetent and used it anyway. See Wilson, 874 F.2d at 390 n.8. The plaintiffs cannot come forth with any evidence to support such a theory. Expedia has not received any complaints of injuries or near injuries resulting from dangerous conditions down stairs or into turtle ponds at Turtle Beach. (Frazier Aff., ¶¶ 7-8.) Similarly, Ms. Miller, General Manager of the Turtle Beach for over twenty-eight years, and Ms. Thomas, owner of the specific units advertised on the Expedia.com website, are also unaware of any such reports. (Miller Aff., ¶ 17; Miller Depo., Gould Dec. Ex. 8., pp. 34:7-34:8, 36:21-37:2, 76:1-76:16; S. Thomas Aff., ¶¶ 15-17.)

Because the defendant had experience with Turtle Beach and had had no reason to doubt its safety and reliability, there can be no claim against Expedia on a negligent investigation and resultant failure to warn theory. As Judge Zobel put it in Hassett, "[p]laintiff has alleged no

facts, however, which suggest that defendant knew or should have known that the [bicycle shop] was unreliable." Hassett, 1987 U.S. Dist. LEXIS 8321, at *2 (Ex. 4). See also Sova, 984 F. Supp. at 1142-43 ("The evidence is that defendant has received no complaints, aside from plaintiff's, concerning [supplier's] operations. . . . There is no evidence that defendant had any reason to believe that the excursion was unsafely or negligently run."); Klinghoffer v. S.N.C. Achille Lauro ed Altri-Gestione, 816 F. Supp. 934, 936-37 (S.D.N.Y. 1993) (holding that travel agent and marketing agent for cruise line could not be held liable for failing to warn of inadequate security measures aboard the Achille Lauro which allegedly resulted in hijacking and death of passenger).

As a travel agent, Expedia's only duty was to make the appropriate bookings and reservations for the plaintiff. E.g., Hassett, 1987 U.S. Dist. LEXIS 8321, at *1-2 (Ex. 4); Dorkin, 345 N.Y.S.2d at 894, aff'd, 351 N.Y.S.2d at 192. It is undisputed that Expedia properly made the appropriate reservations for LaBelle and Hofer at Turtle Beach and those reservations were honored. This duty having been satisfied, there can be no claim for negligence on the part of Expedia.

### 4.    Visits by a travel agent such as Expedia to a third-party service supplier do not create a duty to inspect or warn.

Plaintiffs may argue that one or more Expedia employees visited Turtle Beach before the accident, and therefore assumed a duty to inspect and subsequently warn of dangerous conditions. This argument is inaccurate. It may be based upon the inaccurate hearsay suppositions made by Faylin Miller, the General Manager of Turtle Beach, at her deposition.[15]

---

[15] Although Faylin Miller, the General Manager of Turtle Beach, testified in her August 21, 2006 deposition that she thought Expedia employees had visited the property, upon review of her records and her deposition transcript she is unsure if it was, in fact, Expedia employees.

23

But as set forth in detail, Miller acknowledges in her affidavit that such statements were wrong, and that she has no personal knowledge of the employment status of any individuals who visited Turtle Beach.  (Miller Aff., ¶¶ 3-9, 13-14.)  Moreover, the Thomases have testified that the individuals who visited the property were not from Expedia, but rather Travelocity.  And, of course, Expedia's officials deny any such visits.

But even assuming, <u>arguendo</u>, that Expedia employees did visit Turtle Beach for some sort of pre-accident "inspection," such activity by a travel agent or tour operator does not create a duty to warn of every dangerous condition on the property.[16]  Indeed, a cursory review of many of the tour operator cases previously cited demonstrates that even employees of travel agents or tour operators actually present on the premises of a third-party service supplier (in whatever capacity) do not create the type of activity or control necessary to impose liability on tour operators for any dangerous condition thereon.  See, e.g., McElheny, 165 F. Supp. 2d at 199-201 (tour operator's motion to dismiss or for summary judgment granted where tour operator representatives maintained a desk and chairs in hotel lobby, held meetings at the hotel on a daily basis, and lent assistance to hotel management in selling time shares; tour operator's physical presence in hotel did not give rise to a duty to the plaintiff to warn of defective chair); Stafford, 841 F. Supp. at 286 (granting summary judgment to tour operator which provided a travel

---

(Miller Aff., ¶¶ 3-9.)  She acknowledges that she has no way of confirming what company those representatives were from.  (Id., ¶ 13.)  Miller also acknowledges that the Thomases have superior knowledge as to who did or did not visit their units and Turtle Beach.  (Id., ¶ 14.)

[16] Of course, plaintiffs argument, taken to its logical conclusion, would mean that an entity such as Expedia, for each hotel or resort it ever visited, would have to warn each customer of every conceivable condition which might result in injury, from the obvious (dangers of swimming in the ocean [e.g., Tallent, supra] or of snorkeling [e.g., Sova, supra]) to the less obvious (the use of insecticide on hotel grounds [e.g., Viches, supra]) or even the failure or blow out of a lightbulb, thus causing an area to be ill-lit.  There is simply no such duty under the law.

director, tour leader, and tour guide on board a vessel used for a cruise; plaintiff fell through an

open gangplank while speaking to tour guide); Carley, 22 F. Supp. 2d at 228 (defendant not

liable for plaintiff's fall from her hotel room window even though the tour operator's president

stayed at the hotel with the plaintiffs, inspected the plaintiff's room upon check-in, spoke to hotel

employees about the condition of the room, and actually opened the offending window with the

assistance of a hotel employee); Manahan, 821 F. Supp. at 1106 (tour operator's groundhandler,

who also acted as hotel's concierge, provided safety lectures and recommended restaurant to

plaintiff where on her return she was mugged); Viches, 124 F. Supp. 2d at 1094 (tour operator

not liable for hotel's spraying of pesticide even though plaintiffs alleged that the tour operator

maintained a "steady presence" at the hotel, including the maintenance of a hut on hotel

grounds); Passero, 981 F. Supp. at 743 (tour operator's motion to dismiss or for summary

judgment granted where tour operator provided an "on location representative" at its hotel

destinations "to ensure a pleasant stay"); Powell v. Trans Global Tours, Inc., 594 N.W.2d 252,

255-56 (Minn. Ct. App. 1999)  (tour operator not liable for plaintiff's fall from hotel balcony

even though it staffed a counter in the hotel lobby and listed the hotel in its brochure); Maraia,

2007 N.Y. App. Div. LEXIS 786, at *1-*2 (Ex. 9) (holding that even if a tour operator assumed a

duty to the plaintiff, such as giving instructions to proceed in a particular manner, liability would

attach only when "its conduct put plaintiff in a more vulnerable position").

Because the presence of tour operator employees on the premises of service suppliers

does not create any indicia of control which would support a finding that a tour operator was

responsible for the operations and maintenance of a supplier's premises, even occasional

inspections by Expedia -- which of course did not even occur -- do not create a duty to warn of

every conceivable hidden or open and obvious danger on the premises of Turtle Beach.

25

**5.     The defective sandal was an intervening and/or superseding cause of any injury to Hofer and relieves Expedia from any liability.**

Assuming, <u>arguendo</u> and incorrectly, that Expedia was negligent in not warning Hofer of the lack of guardrails or handrails on the stairs, this failure was not the proximate cause of Hofer's fall.  Hofer has argued vigorously and often that the cause of her fall was a defectively manufactured sandal purchased from the GAP.  (S. Hofer Depo. Vol. I, Gould Dec. Ex. 5, pp. 168:7-168:22; 169:7-169:12.)

A clearer case of intervening or superseding cause to absolve Expedia from putative negligence on its part could hardly be imagined.[17]  <u>See, e.g.</u>, <u>Pine v. Arruda</u>, 448 F. Supp. 2d 282, 285 (D. Mass. 2006) (negligent driving of golf cart by plaintiff's companion while parking it caused plaintiff's injuries, not any failure of country club to provide a covered parking area, a designated storage for clubs, or a constant attendant for golfers); <u>In re Korean Airlines Disaster of Sept. 1, 1983</u>, 1985 U.S. Dist. LEXIS 17211, at *17-*24 (D.D.C. Aug. 1, 1985) (Ex. 10), <u>aff'd</u>, 829 F.2d 1171 (D.C. Cir. 1987) (deliberate aggression of Soviet Union in shooting down commercial aircraft that invaded its airspace superseded any negligence of manufacturer of aircraft's failed navigation equipment); <u>Smith v. West Rochelle Travel Agency, Inc.</u>, 656 N.Y.S.2d, 340, 342 (App. Div., 2d Dep't 1997) (tour operator and hotel sued for death of 17-year-old student on spring break trip; decedent's act of jumping off vessel in open waters was held to be a superseding event which severed the connection between the occurrence of the

---

[17] On the foreseeability issue, plaintiff also cannot establish that had there been a handrail or guardrail, the plaintiff would not have been injured.  She merely assumes this to be the case, with no expert testimony.

26

accident and the hotel's alleged negligence in permitting alcohol to be served to minors on its premises).[18]

## C.    EVEN IF A DUTY WERE OWED TO THE PLAINTIFF, EXPEDIA'S DISCLAIMER OF LIABILITY BARS THE PLAINTIFFS' CLAIMS.

As stated supra, the Expedia.com website contains a disclaimer of liability for the negligence of third-party service suppliers, such as hotels. It is well-established that contractual disclaimers for the negligence of travel service suppliers (including providers of hotel accommodations) are binding, particularly where, as here, the disclaimer clearly alerts the passenger to the limitation. Indeed, in Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991), the Supreme Court confirmed that limitation of liability provisions are enforceable even though they appear in pre-printed tickets and brochures and were not the product of bargaining between a tour operator and a tour participant. Id. at 593.

Shute did not carve out new ground. Courts routinely, and for years, have upheld exculpatory clauses of the type at bar. See, e.g., Wilson v. American Trans Air, Inc., 874 F.2d 386, 389 (7th Cir. 1989) (assault in a hotel in the Cayman Islands; court granted tour operator summary judgment based on contract disclaimer against third-party negligence); McDermott v. Travellers Air Services, Inc., 462 F. Supp. 1335 (M.D. Pa. 1978) (plaintiff fell in bathtub of hotel; court upheld tour operator's disclaimer); Tallent v. Trans Nat'l Travel, Civil Action No. 149943, slip op. (Mass., Boston Mun. Ct. Dec. 31, 1990) (Ex. 1) (disclaimer enforced; plaintiff was injured on a rusted pipe in the water near her hotel); Meola v. Trans Nat'l Travel, Civil

---

[18] See also McKethean v. Washington Metro Area Trans. Auth., 588 F.2d 708 (D.C. Cir. 1991) (plaintiffs alleged that the transit authority was negligent in placing a bus stop too close to a city street; court held that the driver's intoxication was a superseding act).

Action No. 153778, slip op. (Mass., Boston Mun. Ct. Aug. 20, 1990) (Ex. 2) (disclaimer

enforced; plaintiff contracted food poisoning while eating at hotel).[19]

In fact, courts throughout the country have held that contractual disclaimers in travel

contracts are <u>fully</u> enforceable even though they appeared in tickets or brochures and were not

signed by the tour participant at all.  See <u>Wilson</u>, 874 F.2d at 388-89 (tour operator's disclaimer

appeared in newsletter distributed to potential customers in travel club); <u>Shannon v. TAESA</u>

<u>Airlines</u>, 1993 U.S. Dist. LEXIS 21125, at *5-*8 (S.D. Ohio July 13, 1993) (Ex. 11) (tour

operator's disclaimer applied even though it was not signed); <u>Connolly</u>, 671 F. Supp. at 1317-18

(travel agent's disclaimer of liability was printed in brochure and on a deposit receipt.

It is, of course, universally accepted that one member of a traveling party can agree to

terms and conditions on behalf of his or her traveling companions.  In <u>McDermott</u>, <u>supra</u>, in

which the tour operator's disclaimer appeared in a brochure, the plaintiff's son (who booked the

trip) signed an acknowledgment agreeing to the terms and conditions in the brochure, and the son

later stated that he had not read the specific page of the brochure containing the terms and

conditions.  <u>McDermott</u>, 462 F. Supp. at 1340.  The court found the disclaimer to be valid as

against the plaintiff who received the tour as a present from her son.  <u>Id</u>. at 1340-41.  <u>See also</u>

---

[19] Courts throughout the country have found such disclaimers to be applicable to bar
liability for the negligence of all measure of other suppliers of services.  <u>E.g.</u>, <u>Smith v. West</u>
<u>Rochelle Travel Agency, Inc.</u>, 656 N.Y.S.2d 340 (App. Div., 2d Dep't 1997) (disclaimer
precluded wrongful death claim against tour operator for drowning during harbor cruise on third-
party craft); <u>Loeb v. United States Dep't of Interior</u>, 793 F. Supp. 431, 435 (E.D.N.Y. 1992)
(disclaimer valid even though plaintiff had never seen it; plaintiff fell while walking in Grand
Teton National park); <u>Accommando</u>, 23 Av. Cas. (CCH) at 18,142 (Ex. 6) (disclaimer valid for
plaintiff's claim of a delay in charter flight); <u>Corby v. Kloster Cruise Ltd.</u>, 1990 U.S. Dist.
LEXIS 13675 (N.D. Cal. Oct. 4, 1990) (Ex. 12) (disclaimer enforced; fall during a shore
excursion from cruise); <u>DeMarco v. Pan American World Airways, Inc.</u>, 459 N.Y.S.2d 655 (Sup.
Ct., Special Term, N.Y. Co. 1982) (disclaimer precluded plaintiff's claim against tour operator
for lost bag).

Marek v. Marpan Two, Inc., 817 F.2d 242, 247 (3d Cir. 1987) (holding that traveling companion's possession of cruise ticket contract was sufficient to charge plaintiff with notice of its provisions); Hodes v. S.N.C. Achilie Lauro ed Altri-Gestione, 858 F.2d 905, 912 (3d Cir. 1988) (travel club retained plaintiff's cruise ticket with contract; the court held that plaintiffs were charged with notice; "[t]he underlying question is whether someone has 'acted in the capacity of an agent in acquiring the ticket for the plaintiff.'")

Here, Hofer's traveling companion booked the trip on Expedia.com for both herself and Hofer, with Hofer's permission. When someone books a trip on Expedia.com, he or she must assent to each and every term listed on the terms, conditions and notices, which appear on the screen. (Knaack Depo., Gould Dec. Ex. 2, p. 25:16-25:20.) Nothing in the terms, conditions and notices prohibits a client or customer of Expedia from booking a trip in the name of another individual besides the one who is actually booking the trip (Id., p. 26:2-26:7.) This practice is universally done in the travel industry.[20]

## D.     EXPEDIA DID NOT GUARANTEE HOFER'S SAFETY ON THE TRIP.

At the end of the day, the plaintiffs are left with the argument that there is an implied warranty of safety in each and every travel contract – that if you book a trip with a travel agent or through a website, the agent (or website owner) is liable if something bad happens to you. Apart from the terms and conditions which state that no such warranties are given, supra, their argument is flat-out wrong.

---

[20] During her deposition, LaBelle lacked any memory as to the booking process she went through on the Expedia website. While she cannot recall what she read or did while making the booking for the trip, there is no testimony refuting Expedia's testimony with regard to the standard practice and procedure which is followed for each such booking.

Every court that has considered a claim that a travel agent or tour operator generally warrants the safety of tour participants has rejected it summarily.  See, e.g., Ross, 1990 U.S. Dist. LEXIS 6994, at *5 (Ex. 3) (Massachusetts decision applying California law) ("Defendant organized and arranged for the tour but did not agree to guarantee plaintiff's safety and therefore breached no duty in failing to do so."); Harden v. American Airlines, 178 F.R.D. 583, 585 (M.D. Ala. 1998) ("Travel agents do not exist to warrant the safety or reliability of the trips that they sell."); Klinghoffer, 816 F. Supp. at 936 ("Whether the disclaimer is binding or not, it evidences the lack of any express agreement or warranty on the part of [the travel agent or the marketing agent of cruise line] for safe passage during the cruise."); Connolly, 671 F. Supp. at 1317 ("[Tour operator] had no duty to provide plaintiff with a safe and secure tour."); Semmelroth v. American Airlines, 448 F. Supp. 730, 733 (E.D. Ill. 1978) (tour operators are not insurers of the health and safety of tour participants); Dorkin, 345 N.Y.S.2d at 893-94, aff'd, 351 N.Y.S.2d at 192 (tour operator "did not guarantee a good time . . . nor that plaintiffs would return safely without adverse adventure or harm"); Lavine, 519 F. Supp. at 336, 338 ("Even if it were made, a general promise that the trip would be ʿsafe and reliableʾ does not constitute a guarantee that no harm would befall plaintiff. . . .  Not even a railroad, an airline or any other public carrier is an insurer of the safety of its passengers where its instrumentalities are not defective or its employees are not negligent.  There is simply no legal liability in this case.").

Driscoll v. Relocation Advisors, Inc., Civil Action No. 97-00444, slip op. (Bristol, Mass. Super. Ct. Sept. 16, 1997) (Ex. 13), confirms this principle.  There, the plaintiff was on a bus tour arranged by the defendant tour operator.  Upon arriving at the destination hotel, the defendant tour operator instructed the tour participants to take the escalator to the second level of the hotel for check in.  Id. at 2.  While traversing the escalator, the plaintiff fell and severely injured her

30

leg.  Id.  The plaintiff alleged that the tour operator's agent was negligent for failing to mention

the existence of an elevator that the plaintiff could have used.  Id. at 4.  In dismissing the

plaintiff's claim against the tour operator, the court noted that "[a]lthough the plaintiff claims

that [the tour operator] agreed to provide an "escort" for the tour, it cannot reasonably be

concluded that this escort would provide twenty-four hour, unsolicited care to insure an injury-

free tour."  Id.

Liability here is even further removed, as Expedia did not provide an escorted trip, but

rather merely enabled Hofer and her companion to book a trip through its website.

## IV.    CONCLUSION

Regardless of the theory advanced, the plaintiffs cannot establish a cause of action

against defendant Expedia.  Expedia therefore respectfully requests that this Honorable Court

issue an Order granting its motion for summary judgment.

Respectfully submitted,
By the defendant
EXPEDIA, INC.,
By its attorneys,


**/s/ Rodney E. Gould**
_____
Rodney E. Gould (BBO # 205420)
Email:  rgould@rhglaw.com
Robert C. Mueller (BBO#567599)
Email:  rmueller@rhglaw.com
RUBIN, HAY & GOULD, P.C.
205 Newbury Street
P.O. Box 786
Framingham, MA  01701-0202
Tel:  (508) 875-5222
Fax:  (508) 879-6803

DATED: February 16, 2007

31

## <u>CERTIFICATE OF SERVICE</u>

I, Rodney E. Gould, hereby certify that this document, filed through the ECF system, will be served electronically upon the registered participants identified on the Notice of Electronic Filing (NEF) and will be served upon any non-registered participants, as indicated on the NEF, by paper copy sent via first-class mail, postage prepaid.

DATED: February 16, 2007                    **/s/ Rodney E. Gould**

                                            _____

                                            Rodney E. Gould