# EXHIBIT 2

Dockets.Justia.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:                          BOSTON MUNICIPAL COURT
                                      CIVIL ACTION NO. 153778


******************************

JOHN D. MEOLA, JR.,

        Plaintiff

   v.

TRANS NATIONAL TRAVEL, INC., and
DIVI HOTELS MARKETING, INC.,

        Defendants

******************************


ORDER


     The defendant Trans National Travel, Inc. ("TNT"), has moved
for dismissal of Counts I and II of the Complaint for failure to
state a claim upon which relief might be granted, or in the
alternative, for summary judgment.

     Count I alleges a breach by TNT of a written contract,
pursuant to which, it is alleged, TNT undertook "to provide a
safe, relaxing and enjoyable vacation package to Aruba"
(Complaint, paragraph 4) and "to book...a reputable hotel with
adequate accommodations and healthy food services" (Complaint,
paragraph 5).  Contrary to its promise, the plaintiff alleges,
TNT failed "to provide adequate hotel accommodations and healthy
food services" (Complaint, paragraph 8).  As a consequence of the
breach, the plaintiff contracted Salmonella bacteria that made
him very sick.

     The contract in question was printed in a promotional
brochure through which TNT offered a range of vacation "packages"
not only in Aruba but in other Caribbean vacation areas.  In
addition to setting forth the contract terms, the brochure
described, in promotional phrases, the range of accommodations
available.  Ten different hotels in Aruba were offered, from which
the plaintiff selected the one he visited.  The brochure gave a
brief description of the facilities available at each listed
hotel, including a "rating" from something called "The Official

Hotel and Resort Guide."  The Tamarijn Beach Hotel, the one
selected by the plaintiff, was rated as "1st Class."[1]

TNT's obligation under the contract, according to its terms,
was to be "responsible for arranging and providing services and
accommodations offered as stated" in the brochure.  It did not,
by its terms, undertake to supply "adequate accommodations" or
"healthy food services," as the Complaint alleges.  Did it
undertake to do so by implication?  Whether a contract that
simply obliged a tour operator to arrange foreign accommodations
for a traveler would also impose an obligation to furnish
accommodations that met some minimal standard of quality is not
presented here, because the contract at issue here said more than
that.  It obliged TNT to provide accommodations "offered as
stated" in the brochure.  The descriptions of the available
hotels together with the customer's ability to choose among them
give a more defined content to the contract obligation to
"provid[e] accommodations" than a bare statement of the
obligation would.  The contract here is not so vague that it is
necessary, as it might be in another case, to supply a standard
of performance by implication.

The contract further provided that

> "TNT is not responsible absent negligence on
> its part for any loss, injury, expense, or
> damage to person or property which results
> directly or indirectly from any act whether
> negligent or otherwise...caused by
> the...hotel or other supplier of services (as
> independent contractors over whom we have no
> direct control)...."

Such a disclaimer of liability is expressly authorized by
federal regulation. 14 C.F.R. s. 380.32(x).  The regulation of
air charter tour operators has been preempted by federal law, and
any state law to the contrary would have no application.  The
effect of the disclaimer is to deprive the plaintiff of a claim
based on the contract against TNT on the facts alleged in the
Complaint.

Count II seeks to take advantage of the opening in the
disclaimer and alleges that TNT was itself negligent in
"preparing the vacation package to Aruba by failing to
investigate and supervise the quality of food and adequateness of

_____

[1] The relative scale of the ratings is not explained in the
record before the Court.  Ratings for other hotels included
"Deluxe," "Moderate Deluxe," "Superior 1st Class," and "Moderate
1st Class."  According to the price schedule, however, a week at
the merely "1st Class" Tamarijn Beach Hotel cost more than the
same week at the "Superior 1st Class" Americana Aruba Hotel and
Casino or at the "Moderate Deluxe" Aruba Concorde Hotel Casino.

the hotel" (Complaint, paragraph 11).   The language of the allegation needs separating.   A duty on the part of a tour operator in the United States to "supervise the quality of food" in a facility not its own in Aruba stretches tort liability farther than present law recognizes.   A duty to investigate facilities, at least in general terms, before they are offered as a part of a tour package is another matter.   Assuming that TNT had such a duty, the plaintiff neither alleges nor otherwise adumbrates facts that would tend to show that TNT in the present case failed in that duty.   The "presence of wildlife in the areas of food and drink" and the "common practice of spreading manure fertilizer every morning" (Complaint, paragraph 6) are an insufficient demonstration of a hazard of contracting Salmonella[2] to conclude that it was negligent for a tour operator to have included the hotel where such things happened in its offerings.

        For these reasons, the defendant's motion to dismiss or in the alternative for summary judgment is ALLOWED.

                              By the Court

                              _____
                              Associate Justice

August 20, 1990

---

    [2] Absent from the papers is any scientific evidence of a causal connection between these conditions and the occurrence of the bacteria.   It would be up to the plaintiff to prove that any negligence in selecting a substandard hotel was a proximate cause of his illness.