# EXHIBIT 3

LEXSEE 1990 U.S. DIST. LEXIS 6994

JIM ROSS v. TRANS NATIONAL TRAVEL and MICATO SAFARIS

Civil Action No. 88-1763-Z

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

*1990 U.S. Dist. LEXIS 6994*

**June 5, 1990, Decided**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1]

John C Rosendale, Inc. Salinas, California.

Fredric Swartz, Esq. Jay S. Bronstein, Esq. Swartz & Swartz Boston, Massachusetts.

Rodney Gould, Esq. Rubin Hay & Gould Framingham, Massachusetts.

**JUDGES:**

Rya W. Zobel, United States District Judge.

**OPINIONBY:**

ZOBEL

**OPINION:**

Plaintiff, Jim Ross, injured his back while on safari in Africa. He brought this action in negligence against Trans National Travel ("TNT") of Boston, the tour organizer, and Mini Cabs & Tours Company Ltd. ("Micato") of Kenya, the safari operator. TNT has moved to dismiss or, in the alternative, for summary judgment pursuant to *Fed. R. Civ. P. 56(c)* on the grounds that it has breached no duty owed by it to the plaintiff which proximately caused his injuries. n1

> n1 Micato's motion to dismiss for lack of personal jurisdiction was previously allowed after plaintiff withdrew its opposition to that motion.

Plaintiff, a resident of California, purchased a package tour to Kenya through the U.C.L.A. Alumni Association. TNT, a Delaware Corporation with its principal place of business in Massachusetts, [*2] is the tour operator who organized the tour. TNT contracted with Micato, an independent safari operator, to handle all phases of the tour in Kenya. The trip departed California on July 29, 1987 and returned on August 18, 1987. Plaintiff claims that he was injured on August 2, 1987, while riding near a game reserve in a van negligently operated by Micato. He defends against the pending motion on three grounds. First, he asserts that TNT breached its duty to him to hire a safe and reliable safari operator in Kenya, in that TNT knew, or in the exercise of reasonable care should have known, that Micato was not competent to carry plaintiff safely on his safari. Second, plaintiff claims that TNT and Micato were joint venturers and therefore jointly and severally liable. Third, he suggests that TNT was his agent and thus owed him a duty of care.

Although plaintiff's alleged injury occurred in Kenya, neither party asserts that the law of Kenya should by applied. However, they disagree whether the law of Massachusetts or the law of California should control. Plaintiff argues for the latter, and defendant for the former. Since subject matter jurisdiction is based upon diversity, the forum state's [*3] choice of law rules apply. *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).* Massachusetts has abandoned strict adherence to the traditional rule of lex loci delicti in tort cases and has adopted a flexible approach to choice of law questions similar to the approach used in the *Restatement (Second) of Conflict of Laws § 148(2)* (1971). *Emery Corp v. Century Bancorp., Inc., 588 F. Supp. 15, 17 (D. Mass. 1984); Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 450 N.E.2d 581 (1983).* It is most likely that a Massachusetts court would analyze the facts of this case by applying a rule similar to Section 148(2) of the Restatement, which considers the relevant contacts to determine which state has the most significant relationship to the occurrence and the parties. *Emery Corp., 588 F. Supp. at 17; Computer Systems Eng'g v. Qantel Corp., 571 F. Supp. 1365, 1368 (D. Mass. 1983),* aff'd, *740 F.2d 59 (1st Cir. 1984).*

Under this approach, California is the point of

most contact and relevant activities. It is the place where plaintiff acted in reliance upon the defendant's representations and the place where the plaintiff received defendant's representations. **[*4]** California is the domicile of the plaintiff and the place where the trip began and ended. These factors outweigh the fact that defendant is domiciled in Massachusetts; therefore, California law governs.

Plaintiff acknowledges that it must show breach of defendants' duty to use due care in selecting Micato as tour operator. *Krawitz v. Rusch, 209 Cal. App. 3d 957, 963, 257 Cal. Rptr. 610, 612 (Cal. Ct. App. 1989).* But he has adduced nothing to controvert defendant's affidavit that it checked out Micato's reputation before beginning to do business with Micato and continued to do business with it for three years, including the period in question, with no reason to question its competence. See Hassett v. Cape Cod Bicycle Tours, Inc., No. 87-0016-Z (D. Mass. Sept. 3, 1987) (LEXIS, Genfed library, Dist file 8321) (plaintiff alleges no facts suggesting booking agent knew or should have known bicycle rental shop was unreliable); cf. *Rookard v. Mexicoach, 680 F.2d 1257 (9th Cir. 1982)* (California bus company had duty to warn of known danger/risk in Mexican bus travel).

To the extent plaintiff asserts that TNT had a duty to do more than use due care in selecting a safari operator, **[*5]** the assertion is not supported by any facts and not supportable in law. Defendant organized and arranged for the tour but did not agree to guarantee plaintiff's safety and therefore breached no duty in failing to do so. See *Wilson v. Am. Trans Air. Inc., 874 F.2d 386, 391 (7th Cir. 1989)* (tour operator's brochure is not "a guarantee of safety, and does not constitute affirmative conduct giving rise to a duty to investigate and warn"); *Connolly v. Samuelson, 671 F. Supp. 1312, 1317 (D. Kan. 1987)* (tour operator had no duty to advise plaintiff that walking tour was part of itinerary; know about walking tour conditions; advise about proper footwear; or provide plaintiff "with a safe and secure tour").

Plaintiff's second theory of liability is that TNT and Micato were partners engaged in a joint venture, and as to that he asserts an issue of fact exists. His assertion is based on travel documents he received from TNT, which included an information booklet. Plaintiff contends that the following three statements contained in the booklet are evidence of a joint venture: first, "the Trans National Travel/Micato Safaris representative will meet you upon arrival in Kenya"; second, "the **[*6]** TNT/Micato representative will accompany your tour while in Africa"; and third, "if you require personal medical attention while traveling in Kenya, our representative will refer you to a reliable local physician."

The same booklet also lists Micato separately in a number of places. For example, at one point it states, "Your arrangements in Kenya are provided by Micato Safaris"; at another, "in case of emergency, you may be reached through Micato Safaris" (followed by a Nairobi address and phone number); and at a third, "when you arrive in Kenya a representative from Micato Safaris will be at the airport to greet you."

The necessary elements of a joint venture are: first, a joint interest in a common business; second, an agreement to share profits and losses; and third, a right to joint control. *Los Angeles Memorial Coliseum v. N.F.L., 468 F. Supp. 154, 162 n.9 (C.D. Cal. 1979)* ("'A joint venture is a joint business undertaking of two or more parties who share the risks as well as the profits of the business.'"); 580 *Folsom Associates v. Prometheus Dev., 216 Cal. App. 3d 972, 265 Cal. Rptr. 251, 258 (Cal. Ct. App. 1989).* Even though the travel information booklet sent by TNT **[*7]** to plaintiff had some references that referred to "your TNT/Micato representative," that alone does not establish, as a matter of law, the existence of joint venture. Moreover, none of the facts alleged by plaintiff show that Micato was other than an independent operator who was solely responsible for the safari arrangements in Kenya, including the selection and staffing of the van in question.

Finally, plaintiff's contention that TNT was his agent is unsupported by any facts and wrong as a matter of law. This case is not unique. The issue of travel agent liability to tourists who injure themselves on tours sold by the agency has been reviewed in a number of jurisdictions. "The majority of these cases refuse to impose liability upon travel agents for injuries such as plaintiff's, regardless of the theories advanced." n2

> n2 See *Connolly v. Samuelson, 671 F. Supp. 1312 (D. Kan. 1987)* (no travel agent liability for walking tour injury in South Africa). See also, *Lavine v. General Mills, 519 F. Supp. 332 (N.D. Ga. 1981)* (summary judgment allowed for tour operator; no liability for slip and fall in Fiji Islands); *Pena v. Sita World Travel, Inc., 88 Cal. App. 3d 342, 152 Cal. Rptr. 17 (Cal. Ct. App. 1978)* (neither tour arranger nor travel agent liable for plaintiff's bus accident injuries while in Mexico); *Dorkin v. American Express Co., 74 Misc. 2d 673, 345 N.Y.S.2d 891* (N.Y. Sup. Ct.) (negligence of tour bus operator in Europe not chargeable to American Express; travel agent made no express or implied warranty of safety), aff'd, *43 A.D.2d 877, 351 N.Y.S.2d 190 (1974); Sachs v. Loews Theatres, Inc., 47 Misc. 2d 854, 263 N.Y.S.2d 253 (1965)* (even assuming that booking agent

is plaintiff's agent, a booking agent has no duty to advise plaintiff that a hotel is unreliable or to foresee its tortious acts).

**[*8]**

In support of its motion, defendant also relies on a disclaimer provision in the "Tour Participation Contract," which was included in the U.C.L.A. Alumni Association offering brochure. n3 Plaintiff disputes ever receiving this application and agreeing to any terms contained therein. It is unnecessary to decide whether the disclaimer relieves defendant because no negligence has been shown. However, the presence of this provision in the U.C.L.A. information brochure, plus the reference to "Tour Participation Contract" in the booklet sent by TNT to plaintiff, are further evidence that TNT intended "no warranty or contractual guarantee of plaintiff's safety on [his safari]." *Lavine v. General Mills, Inc., 519 F. Supp. 332, 336 (N.D. Ga. 1981); Connolly v. Samuelson, 671 F. Supp. 1312, 1317 (D. Kan. 1987)* (exculpatory clause and surrounding circumstances show travel agent intended no assumption of liability in connection with African safari walking tour injury).

> n3 The Tour participation Contract states, in relevant part:
>
> TNT ASSUMES NO LIABILITY FOR, AND THE PASSENGER AGREES THAT TNT SHALL NOT BE RESPONSIBLE OR LIABLE FOR, AND WAIVES ANY CLAIMS AGAINST TNT ARISING OUT OF . . . any . . . accident, injury, . . . which results from, or is occasioned by, directly or indirectly, any defect or the acts or failures to act, whether negligent or otherwise, of any such . . . other transportation company . . . or other travel supplier engaged in conveying the passenger or otherwise carrying out the arrangement included in your TNT vacation.

**[*9]**

For the reasons stated, the motion for summary judgment is allowed. Judgment may be entered for defendants TNT and Micato.

JUDGMENT

In accordance with the Court's ruling on May 25, 1989, on the motion of Micato Safaris to dismiss, and the Memorandum of Decision, dated June 5, 1990, on the motion for summary judgment of Trans National Travel, it is

ORDERED that judgment be and it is hereby entered dismissing the complaint against Micato Safaris; and it is

FURTHER ORDERED that judgment be and it is hereby entered for defendant Trans National Travel.