# EXHIBIT 8

LEXSEE 1998 MASS. SUPER. LEXIS 108

**Teresa Adames et al. n1 v. Trans National Travel n2**

n1 David Adames
n2 TNT Vacations is a division of Trans National Group, Inc.

SUCV97-00208-B

SUPERIOR COURT OF MASSACHUSETTS, AT SUFFOLK

*1998 Mass. Super. LEXIS 108*

**April 10, 1998, Decided**

**DISPOSITION:** [*1] Defendant TNT's motion for summary judgment allowed. The Plaintiffs' action DISMISSED.

**LexisNexis (TM) HEADNOTES- Core Concepts:**

**JUDGES:** Vieri Volterra Justice of the Superior Court.

**OPINIONBY:** VIERI VOLTERRA

**OPINION:** MEMORANDUM OF DECISION AND ORDER ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Plaintiffs, Teresa and David Adames, brought a negligence action against the defendants, TNT Vacations ("TNT"), seeking damages for personal injuries and loss of consortium allegedly sustained when she participated in a game during the course of her vacation in Cancun. The Plaintiffs claim that employees and/or agents of the defendant encouraged her participation in the game, and that the defendant exhibited control over the activities of the excursion she took during the course of the trip from which the injuries precipitated. The defendants maintain they are not liable to the Plaintiffs for their injuries, because they are not responsible for injuries occasioned by the alleged negligence of third parties they do not own, operate, manage, or control. The Defendant, TNT, moved for summary judgment and seeks to have the action against them dismissed. For the following reasons the defendant's motion is ALLOWED.

BACKGROUND

The Defendant, [*2] "TNT," is a federally regulated charter tour operator which books transportation, transfers, and hotels for individuals going on vacation. Teresa Adames won a vacation to Cancun through her participation in a radio contest with KISS 108 FM ("KISS"), a local Boston radio station. KISS subsequently purchased a vacation package from the defendant, TNT.

The TNT vacation package purchased by KISS included round-trip air transportation, seven nights of hotel accommodations at a hotel of the Plaintiffs' choice, and transfers. TNT did not itself personally provide the ground transfer in Cancun, but instead used Intermar Caribe ("IMC"), a local Mexican company, as its transfer agent in Cancun. The relationship between TNT and IMC consists of IMC arranging transfers between the airport and the hotel for TNT customers. That is the extent of the TNT-IMC relationship, and it is undisputed that TNT does not own, operate, or exhibit any control over the independent company IMC. IMC, on its own, also sold optional excursions to vacationers in Cancun, including but not limited to TNT customers. The Adames purchased one such excursion from Aqua Tours, Inc. ("Aqua Tours"), an independent Mexican [*3] company with a relationship to IMC, on the day they arrived in Cancun. The Aqua Tours excursion was called the Isla Mujeres Adventure Cruise ("Cruise"), and was optional and separate from the TNT vacation package purchased by KISS. n3 TNT, at the time of the Adames trip, had no agreement with Aqua Tours regarding this excursion, and TNT received no compensation from Aqua Tours for the purchase of this excursion.

n3 This cruise is mentioned in TNT's vacation brochure.

Ms. Adames sustained an injury to her anterior cruciate ligament ("ACL") during the course of a game that took place during the Isla Mujeres Adventure Cruise. The game consisted of a relay race where contestants would race down the beach, spin around a large wooden fish, take a shot of tequila, and run back to their team and

Case 4:05-cv-40170-FDS   Document 70-9   Filed 02/16/2007   Page 3 of 4

Page 2
1998 Mass. Super. LEXIS 108, *3

tag the next person. At the conclusion of the game, when the last female relay team participant had finished, the women were ordered to attack the male participant still on the beach. At the conclusion of the race, the crowd [*4] surged forward and Ms. Adames was trampled and allegedly sustained an injury to her ACL when an undisclosed party stepped on her leg.

The Plaintiffs contend that TNT employees were present when the injury to Ms. Adames leg occurred, and they directly influenced her decision to participate in the games. The Plaintiffs allege, therefore, that TNT is liable for any and all injuries that occurred during the course of the trip. The Defendant argues they possessed no duty of care for the Plaintiffs while on their Aqua Tours excursion, because it is through an uncontrolled third party service provider. Additionally, TINT argues that the lack of proof of any connection existing between TNT and Aqua Tours or control of Aqua Tours, the Isla Mujeres Cruise, or any other person present during the games at which the Ms. Adames sustained her injuries, by TNT entitles TNT to summary judgment as a matter of law. Furthermore, TNT argues that summary judgment is proper pursuant to the contractual disclaimer present in their vacation contract.

DISCUSSION

This court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment [*5] as a matter of law. *Cassesso v. Commissioner of Correction, 390 Mass. 419, 422, 456 N.E.2d 1123 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553, 340 N.E.2d 877 (1976)*; Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment should be granted as a matter of law. *Pederson v. Time, Inc., 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989)*.

A party moving for summary judgment who does not bear the burden of proof at trial can demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party's case or by showing that the nonmoving party is unable to submit proof of the element at trial. *Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716, 575 N.E.2d 734 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809, 575 N.E.2d 1107 (1991)*. The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts. *Lalonde v. Eissner, 405 Mass. 207, 209, 539 N.E.2d 538 (1989)*. Establishing the absence of a triable issue requires the nonmoving [*6] party to respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. *Pederson v. Time, Inc., 404 Mass. 14, 17, 532 N.E.2d 1211 (1989)*.

In the present case, TNT argues that they are entitled to summary judgment as a matter of law, because federal regulatory law preempts the Adames' claim pursuant to 14 C.F.R. 380 et seq. The regulatory scheme of this particular statute allows a charter contract to "expressly provide that the charter operator, unless [they are] negligent, is not responsible for personal injury or property damage caused by any direct air carrier, hotel or other supplier of services." *See e.g.* 14 C.F.R. 380.32(x); *Wilson v. American Trans Air, Inc., 874 F.2d 386, 388 (7th Cir. 1989); McDermott v. Travellers Air Services, Inc., 462 F. Supp. 1335, 1341 (M.D. Pa. 1978); Accomado v. Trans National Travel,* Civil No. 90-6605 (Superior Ct. Dept., Suffolk County, June 19, 1991). In the Adames' 1995 tour participant contract, TNT provides a disclaimer that protects them from liability in all instances of injury absent a showing of their own negligence. n4 Therefore, failure to provide evidence on TNT's negligence [*7] entitles TNT to summary judgment as a matter of law.

> n4 The contract contains the following disclaimer:
>
> Responsibility and Liability: Trans National Travel/The Haley Corporation ("Operator"), The Trans National Building, 2 Charlesgate West, Boston, MA 02215-3552, is responsible to its passengers as set forth below. Operator, as the principal on charter flights, is responsible for arranging and providing all services and accommodations offered in connection with these trips. However, on all charter and scheduled air trips Operator does not own, operate or control any of the firms which will provide goods and services for the trip . . . or for any option which may be available in connection with the trip (for example, optional side trips, car rentals, etc.) . . . Accordingly, participants agree to seek remedies directly with the supplier and not to hold the Operator liable in the absence of its negligence, for any loss, injury, death, delay, inconvenience, or expense which results directly or indirectly, from any action or omission, whether negligent or otherwise, of any entity which is to or does provide goods or services for the trip.

[*8]

In this case, no proof or evidence exits to suggest TNT negligence or liability for the Adames' injuries, because the injuries resulted from a trip that took place outside the offerings of the TNT package. The Adames contend that

two representatives of TNT, sold them the Cruise, and were present at the party when the injury to Ms. Adames occurred. The Adames also contend that TNT employees had in fact urged her to participate in the game after she refused to do so. While the Plaintiffs make these contentions they do not offer any evidence to support their allegations against the Defendant, TNT. Therefore, the Plaintiffs have merely made assertions of disputed facts which are not supported by evidence other than the beliefs and impressions of Ms. Adames. Thus, by not offering any such proof, the Plaintiffs cannot defeat summary judgment. *See Lalonde v. Eissner, 405 Mass. 207, 209, 539 N.E.2d 538 (1989).*

The Plaintiffs also argue that an agency relationship exists between TNT and Aqua Tours, because TNT employees took an active part in the solicitation of Aqua Tours trips to Isla Mujeres by advertising the excursion in their Cancun brochure. The Adames also argue that TNT should have known [*9] the dangerous activities accompany the Isla Mujeres Adventure Cruise, and, therefore, TNT had a duty to warn the Adames of such dangers. However, it is an undisputed fact in this case that TNT did not own, operate, or otherwise control Aqua Tours or the Cruise. It is further undisputed that TNT received no compensation for the purchase of any Aqua Tours excursion, including but certainly not limited to the Isla Mujeres Adventure Cruise. Additionally, no evidence exists in the record which suggests TNT knew or had reason to know of the dangers involved with the Isla Mujeres Adventure Cruise or that the Adames would even take that particular excursion.

In light of such undisputed facts, the Court finds as a matter of law, TNT had no duty to warn the Adames of the dangers involved with their participation in the activities involved in the Cruise package. To find such a duty on these facts would necessitate the travel operator, or tour operator, to inform the travelers of all the possible dangers of each optional third-party excursion they advertise in their vacation packages. Such a policy would cause a great deal of strain and expense to tour operators, to ensure they were insulated [*10] from potential lawsuits, and would be too big of a burden on the industry to sustain such a rule.

Finally, even if TNT owed the Adames a duty to warn them about the dangers of the Cruise, the Adames had a better, and more apt, ability to determine the dangers involved in the trip. See *Manahan v. NWA, 821 F. Supp. 1105, 1109 (D.V.I. 1992), reconsideration denied, 821 F. Supp. 1110, 1112-13) (D.V.I. 1992), aff'd (3d Cir. 1993); McCollum v. Friendly Hills Travel Center, 172 Cal. App. 3d 83, 217 Cal. Rptr. 919, 925-26 (Cal.App. 1985).* In both of the above mentioned cases, the Court held that where the Plaintiffs had the ability to judge for themselves the danger involved in certain situations and the tour operator had no reason to know of the danger, the Plaintiffs could not hold the operator liable for an injury resulting from taking part in the dangerous activity. In this case, Ms. Adames should have known the dangers involved in the race. Additionally, while TNT does indeed advertise the Cruise in their Cancun brochure, they had no reason to know that the optional excursion would include relay races containing drinking and attacking other people. Therefore, much like the [*11] *Manahan* and *McCollum* cases, Ms. Adames was in a much better position to evaluate the dangers of the game than TNT, and the Plaintiffs' own negligence, not the negligence of TNT, proximately caused the injuries. Therefore, TNT is entitled to summary judgment as a matter of law.

ORDER FOR JUDGMENT

Based upon the foregoing the Court ALLOWS the Defendant TNT's motion for summary judgment. The Plaintiffs' action is hereby DISMISSED.

Dated: 4/10/98

Vieri Volterra

Justice of the Superior Court