# EXHIBIT 10

1985 U.S. Dist. LEXIS 17211, *

23 of 29 DOCUMENTS

In Re Korean Air Lines Disaster of September 1, 1983

Civil Action Nos. 83-3442, 83-3443, 83-3444, 83-3445, 83-3448, 83-3449, 83-3450, 83-3451, 83-3452, 83-3453, 83-3454, 83-3455, 83-3456, 83-3457, 83-3458, 83-3459, 83-3460, 83-3461, 83-3462, 83-3463, 83-3463, 83-3466, 83-3467, 83-3468, 83-3472, 83-3898, 83-3900, 83-3903, 84-0029, 84-0030, 84-0083, 84-0084, 84-0402, MDL Docket No. 565, Misc. No. 83-0345

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

1985 U.S. Dist. LEXIS 17211

August 1, 1985, Decided; August 2, 1985, Filed

COUNSEL: [*1]

Gerald H. Baker, Esquire, for Plaintiffs, John Marino (84-0083, 84-0084), Maria Beirn (83-3467), Hans Ephraimson-Abt (83-3463), Robert Speir (83-3468).

Aaron J. Broder, Esquire, F. Lee Bailey, Esquire, for Plaintiffs, Betty B.S. Lim (83-3448), Christina Ting (83-3457), Barbara Swift (83-3458), Kyung HWA Park (83-3459), Hee Sook Lee (83-3460), Ul Ran Lim (83-3461), Eun Jung Oh (83-3462).

Milton G. Sincoff, Esquire, Kreindler & Kriendler, for Plaintiffs, Elisa E. Chan (83-3465, 83-3466), Robert Caltabellatta, Sr. (83-3453), Sungwha Oh Yoo (83-3454), Jose A. Bolantem (83-3455, 83-3452), JWA Hong (83-3456), Maurine E. Oren (83-3449), David Wu Dunn (83-3450), Renay Lynne Bevine (83-3451), Jeung Em Yun (83-3464), Robert Cruz (84-0029), Robert Caltabellatta, Sr. (84-0030).

Philip Corboy, Esquire, Corboy & Demetrico, P.C., for Plaintiff Cecille Chauapoco (83-3472).

Melvin M. Belli, Sr., Esquire, for Plaintiffs Pataban Arivade (83-3442), Maria Beirn (83-3443), Thomas L. Mahalek (83-3444), Joeph Munder (83-3445).

James M. Kenny, Esquire, McHugh, Leonard & O'Connor, for Plaintiff Louella Maris Antonia Defrentias Nassief (83-3893).

Heroico M. Aguiluz, Esquire, for Plaintiff Rosario Bayona [*2] (83-3900).

Michael S. Mazur, Esquire, Chambers, Steiner, Mazur, Ornstein & Amlin, for Plaintiff Willie N. James (83-3903).

George N. Tompkins, Jr., Esquire, Condon & Forsyth, for Defendant Korean Air Lines.

OPINION BY:

ROBINSON

OPINION:

MEMORANDUM AND ORDER

Aubrey E. Robinson, Jr., Chief Judge.

Before the Court is a motion to dismiss filed by Defendant Litton Systems, Inc. (Litton) pursuant to *Fed. R. Civ. P. 12(b)(6)* and a motion for summary judgment filed by Defendant Boeing Company (Boeing) under *Fed. R. Civ. P. 56(b)*. Both motions arise out of the downing of Korean Air Lines Flight 007 (KAL 007) on September 1, 1983 by Soviet SU-15 fighter aircraft southwest of Sakhalin Island over the Sea of Japan. On board KAL 007 were 269 civilian passengers and crew traveling to Seoul, South Korea. It is undisputed that the commercial airliner owned and operated by a corporation of South Korea deviated from its assigned course, which was the northernmost airline route, and over sensitive Soviet territory. It is also undisputed that military aircraft, dispatched by the Union of Soviet Socialist Republics, deliberately fired missiles destroying the aircraft and killing all aboard. These are the [*3] undisputed and material facts which are pertinent to both motions.

Issues Presented

Both motions also raise the same legal question: was the action of the Soviet Union foreseeable. More specifically the question can be phrased as a determination of Defendants' duty and whether the intentional downing of KAL 007 by Soviet missile attack

Case 4:05-cv-40170-FDS   Document 70-11   Filed 02/16/2007   Page 3 of 7

Page 2
1985 U.S. Dist. LEXIS 17211, *

arises to the level of a "superseding cause" preventing any liability which might otherwise attach to Defendants Boeing and Litton: Boeing has raised these questions in the form of a motion for summary judgment primarily arguing that, as a matter of law, the assertedly criminal nature of the Soviet attack supersedes any possible liability on its part. Litton has cast the same issue in the form of a motion to dismiss. Litton argues that the downing of KAL 007 by missile attack was not a "reasonably foreseeable" consequence of any product defect which might be attributed to Litton Systems, Inc. Consequently, Litton argues that it had no duty to Plaintiffs' decedents with respect to the Soviet attack and that, under these circumstances, there can be no liability.

For the purpose of their motions, both Boeing and Litton assume that there was in [*4] fact a product defect in the inertial navigation systems (INS) aboard KAL 007, causing the aircraft to stray from its assigned course without detection of the error. Plaintiffs oppose both the motion for summary judgment and the motion to dismiss on the ground that, assuming product defect in the INS, the question of foreseeability is one which must be determined by jury. Alternatively, Plaintiffs urge the Court to find that the missile attack was reasonably foreseeable by these two manufacturers.

Determination of the Motions Pursuant to *Fed. R. Civ. P. 12(b)(6)* and *Fed. R. Civ. P. 56*

Before reaching the precise legal questions presented by these two motions, the question of what standard should govern their determination must be addressed. Boeing has presented a motion for summary judgment, placing before the Court evidence beyond the complaints. The evidence which Boeing asks the Court to consider ranges from affidavits to reports and provisions of the Convention on International Civil Aviation (ICAO), a United Nations agency charged with the task of administering international civil aviation in accordance with the principles of the Convention on International Civil Aviation [*5] signed at Chicago on December 7, 1944, 61 Stat. 1180; 15 U.N.T.S. 295, U.N. Doc. 7300/6. In addition to the arguments already noted, Plaintiffs have asserted a need for discovery, pursuant to *Fed. R. Civ. P. 56(f)* as another reason for denying Boeing's motion for summary judgment.

Litton's motion to dismiss is, according to *Fed. R. Civ. P. 12(b)(6)*, to be decided based strictly on the pleadings presented. It is this Defendant's position that considering the complaint in the light most favorable to Plaintiffs, i.e., assuming all allegations to be true, relief may not be granted because there was no duty to guard against missile attack in the design of the inertial navigation system. Consequently, Litton argues, there is no claim against it upon which relief may be granted. The legal arguments of these Defendants do not differ very much. Nonetheless, because they have chosen alternate procedural devices for their presentation of the issue, the Court is faced with two slightly different standards for a determination of the same legal questions arising out of the same fact situation.

Under the test for consideration of a motion to dismiss for failure to state a claim, the Court [*6] and the parties are limited to consideration of the complaint. Litton's motion to dismiss for lack of a cognizable claim cannot be granted unless it appears beyond doubt that under no set of facts well pleaded and proved can Plaintiffs prevail. Boeing's motion for summary judgment, on the other hand, may be granted if there are no issues of material fact and if, based upon the facts presented, Defendant is entitled to prevail as a matter of law. Both motions require the Court to scrutinize the evidence and pleadings closely and to resolve any doubts in favor of Plaintiffs. See *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Scheuer v. Rhode s, 416 U.S. 232, 236 (1974).* Therefore, the principal difference in these two standards is the scope of the evidence which the Court may consider and the opportunity to oppose which must be afforded to Plaintiffs.

The ultimate question presented in these two motions, however, is the same: should the Defendants have foreseen the possibility that the Soviet Union would intentionally shoot down KAL 007. If, as a matter of law, the act of the Soviet Union was not foreseeable, then, whether phrased in terms of duty or "superseding cause," [*7] whether embodied in a motion to dismiss or in a motion for summary judgment, no liability can attach to either Defendant.

Since the material facts and issues of law relevant to their determination are the same, the Court will consolidate these two motions. However, in order to consider the motions according to a procedure which is fair to all parties, the Court will necessarily convert the motion filed by Litton, seeking dismissal pursuant to *Fed. R. Civ. P. 12(b)(6)*, into a motion for summary judgment. Rule 12(b) provides that

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In this case, matters outside the pleadings have been presented for the Court's consideration by Boeing and by Plaintiffs; these matters will not be excluded. Plaintiffs have had reasonable opportunity to present any and [*8] all material pertinent to a decision pursuant to Rule 56. Indeed, submitting to the Court exhibits and affidavits

Case 4:05-cv-40170-FDS   Document 70-11   Filed 02/16/2007   Page 4 of 7

Page 3
1985 U.S. Dist. LEXIS 17211, *

beyond the pleadings, it was Plaintiffs' decision to file a single opposition, apparently recognizing the identical legal question is presented. Consequently, by attempting to demonstrate through extrinsic evidence that Litton owed a duty to Plaintiffs' decedents and that the behavior of the Soviet Union was foreseeable, Plaintiffs have treated the motion to dismiss as though it were for summary judgment. The Court finds that the requisites have been satisfied for conversion of Litton's motion to dismiss into a motion for summary judgment. Moreover, for the reasons set forth below, the Court finds that the matters presented are properly disposed of by way of summary judgment.

DISCUSSION

For the purpose of their motions, Defendants Boeing and Litton have assumed that there was a product defect in the inertial navigation systems and that negligence in manufacture was a factor in causing KAL 007 to deviate from course. Litton points out in its motion that in order for a product defect to have been responsible for KAL 007's unfortunate misdirection into Soviet airspace, [*9] all three INS systems aboard the aircraft would have had to have failed simultaneously. However unlikely it may have been, such simultaneous failure is within the realm of possibility and shall be assumed for the purpose of deciding these motions.

Having assumed that some act or omission of Defendants contributed to bringing KAL 007 to the site of this tragedy, thereby acting as a "cause in fact," the question becomes one of "proximate cause." Proximate cause is best described as a question of legal responsibility. W. Prosser & P. Keeton The Law of Torts 281 (5th ed. 1984) [hereinafter cited as Prosser & Keeton]. In fact, "the question is primarily not one of causation, and never arises until causation has been established. It is rather one of the fundamental policy of the law, as to whether defendant's responsibility should extend to such results." Id. Stated in terms particularly relevant in this case "the question of proximate causation, like that of duty, is at base one of foreseeability." *Rieser v. District of Columbia, 563 F.2d 462, 479 (D.C. Cir. 1977).*

Fundamental principles of tort law require that there be duty before there can be liability and, before there [*10] can be duty, foreseeability of the consequences of one's act. As stated in the celebrated case *Palsgraf v. Long Island Railroad Co., 162 N.E. 99, 100 (N.Y. 1928)* "[t]he orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty." In this case, the pure and simple legal question is whether or not the armed Soviet missile attack was a risk within the orbit of duty of the manufacturers of the aircraft's navigation equipment, thereby creating a corresponding duty in Defendants to protect against it. The Court concludes that the risk of a missile attack was not reasonably foreseeable by Defendants. Moreover, the Soviet attack upon KAL 007 operated as an independent and intervening cause of the damages suffered by Plaintiffs and relieves Defendants of any legal responsibility. Accordingly, judgment shall be entered in favor of Defendants Boeing Company and Litton Systems.

Foreseeability and the Scope of duty

The scope of one's duty extends only to "that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances." *Washington Hospital Center v. Butler, 384 F.2d 331, 335 (D.C. Cir.* [*11] *1967).* In this case, Defendants can only be held to that standard of care required of producers of equipment utilized by commercial airlines for civil aviation. Since the Court is only concerned with the standard of care owed in the context of civil aviation, Plaintiffs' protests that the United States government prints a warning on the maps it publishes for use by military aircraft are not relevant. While it may be true that the political climate between our government and that of the Soviet Union may be so "cold" that the United States may expect its military aircraft to be fired upon should Soviet boundaries be crossed, unarmed commercial airlines have no reason to expect the same or similar treatment.

The treatment to be accorded civilian aircraft is defined in the Convention on International Civil Aviation and Annexes thereto, signed at Chicago on December 7, 1944, 61 Stat. 1180; 15 U.N.T.S. 295. While the ICAO is primarily directed to civil, not military, agencies of aviation, the Chicago Convention incorporated Rules. of the Air and international Standards and Recommended Practices for civil aviation which 152 nations of the world, including the Soviet Union have agreed [*12] to. Incorporated in the ICAO Annex 2 of the Rules of the Air is an international code of conduct applicable to situations where civilian aircraft intrude into prohibited airspace and interception becomes necessary. When intercepting an intruding aircraft, an overflown state is admonished to avoid the use of weapons. The procedures established for interception are elaborate but do not mention the use of force. See ICAO Annex 2, para. 3.8. Indeed, the Note which precedes the general rules for interception provides that interceptions are to be avoided and used only as a "last resort." See also ICAO Annex 11, para. 2.13-2.14.2. This principle was reaffirmed by the community of nations adhering to the Chicago Convention when the attack on KAL 007 was investigated. The report of the ICAO fact-finding investigation reaffirmed that "[i]n accordance with the ICAO Council's special recommendations in ICAO Annex 2, Attachment A, interception of civil aircraft should be avoided and should be undertaken only as a

Case 4:05-cv-40170-FDS   Document 70-11   Filed 02/16/2007   Page 5 of 7

Page 4
1985 U.S. Dist. LEXIS 17211, *

last resort. Furthermore, an interception should be limited to determining the identity of the aircraft and providing any navigational guidance necessary for the safe conduct **[*13]** of the flight." See Boeing Exhibit B. Therefore, intruding aircraft may be required to land; nothing in the ICAO documents authorizes destruction. Even while the ICAO language appears to anticipate the remote possibility of armed force, the use of weapons is discouraged. It is clear that the ICAO Council expected overflown states to refrain from deliberate violence against unarmed civilian aircraft; likewise, Defendant manufacturers had reason to expect that force would be avoided.

For whatever reason, the Soviet Union disregarded the ICAO principle embodied in the international Rules of the Air and intentionally fired upon KAL 007 while it was impossible for the airliner to land. To support their contention that the action taken by the Soviet Union was foreseeable, Plaintiffs in effect argue that Defendants were "on notice" that aircraft overflying sensitive Soviet territory might be fired upon. Plaintiffs point out that the Defense Mapping Agency has published navigation charts including the warning: "Aircraft infringing upon Non-Free Flying Territory may be fired on without warning." See Plaintiffs' Exhibits 1 and 2. As already noted, these warnings, directed to military **[*14]** flights, have no bearing on the motions before the Court. In addition, Plaintiffs submit news clippings concerning other incidents of interception in which the Soviet Union has used force. See Plaintiffs' Exhibit 3-19. These exhibits are intended to show that Defendants were or should have been aware that the Soviet Union Would employ armed force against intruding civilian aircraft. First of all, even assuming awareness, a duty does not necessarily follow. In addition, most of the incidents represented in Plaintiffs' exhibits involved identifiable military aircraft; the legal standards and rules which would govern in those situations are not analogous in this one.

However, there is one incident noted by Plaintiffs which is similar to that which occurred on September 1, 1983. On April 23, 1978, another Korean Air Lines jetliner, a Boeing 707, was intercepted by Soviet fighter planes. See Plaintiffs' Exhibit 19. The earlier act of the Soviet Union is not comparable to the circumstances presented in this case. In that incident, the Soviet intercepting fighter planes did follow the ICAO procedures and signalled the Korean plane to land. Only after those attempts failed, apparently, **[*15]** did the Soviet Union force the plane down. Even then the commercial airliner was only disabled and forced to land; it was not, as was KAL 007, shot into the sea. There lies the difference. In 1978, the Soviet Union opted to force landing. Unfortunately, in 1983, the decision was otherwise; the civilian craft was destroyed and all aboard killed. Forced landing could not have been intended;

KAL 007 was attacked over water. Boeing and Litton were under no obligation to anticipate such deliberate destruction.

Defendants urge that such intentional attack amounts to a criminal act and point out that there is no duty to guard against criminal acts since "independent illegal acts of third persons are deemed unforeseeable and therefore the sole proximate cause of the injury, which excludes the negligence of another as a cause of injury." *Decker v. Gibson Products Co. of Albany, 679 F.2d 212, 215 (11th Cir. 1982)*. Plaintiffs counter by noting that where there has been a history of criminal acts, there is a duty to make reasonable provision against their occurrence, *Lillie v. Thompson, 332 U.S. 459 (1947)* and that this principle applies to manufacturers. d' *Hedouville v. Pioneer Hotel* **[*16]** *Co., 552 F.2d 886 (9th Cir. 1977)*. Plaintiffs are correct. * For example, in *Hicks v. United States, 511 F.2d 407 (D.C. Cir. 1975),* recovery was allowed for the death of a woman at her husband's hands upon his negligent release from a mental hospital. Since attacks upon his wife were known manifestations of the patient's mental condition, the court found that the homicide was only a consequence. "The homicide was closely related to the very reason he had been committed originally to the Hospital -- one of many drunken attacks on his wife." *Id. at 422*. The court first found that the hospital realized or should have realized that such a situation might be created. That cannot be said of this situation. It may have been foreseeable that some sort of harm might have come of an equipment failure; it was not within a foreseeable risk nor was it to be anticipated that injury would occur by reason of deliberate state action.

* However, whether the state action was "criminal" is of no relevance to the determination of this motion. The Court need only determine whether the action taken was sufficiently unforeseeable to prevent liability. Defendants are correct in noting that many **[*17]** cases which hold that criminal attacks are foreseeable involve situations or products designed for use in circumstances relating to crime. For instance, dangerous consequences are presumed foreseeable when a product intended to repel attackers fails upon use. See, e.g., *Klages v. General Ordinance Equipment Co., 367 A.2d 303 (Pa. 1976)*. (Mace spray did not immediately stop attacker, as advertised.)

Therefore, the question continues to hinge on whether or not Defendants could foresee or had a duty to foreseen that an intruding aircraft would be destroyed by the Soviet Union. The Court "must reach the question of liability for attacks which are foreseeable in the sense that they are probable and predictable." *Kline v. 1500 Massachusetts Avenue Apartment Corp., 439 F.2d 477, 483 (D.C. Cir. 1970*. Beyond the foreseeable risk, Defendants need not go. "It would be folly to impose

Case 4:05-cv-40170-FDS   Document 70-11   Filed 02/16/2007   Page 6 of 7

Page 5
1985 U.S. Dist. LEXIS 17211, *

liability for mere possibilities." *Kline v. 1500 Massachusetts Avenue Apartment Corp., 439 F.2d at 483.* Duty extends only to those things which are objectively reasonable to expect, not to all things which might conceivably occur. This must be so because "[i]n one sense, almost nothing **[*18]** is entirely unforeseeable, since there is a very slight mathematical chance, recognizable in advance, that even the most freakish accident which is possible will occur, particularly if it has ever happened in history before." Prosser & Keeton at 297. Plaintiffs argue, however, that the precise nature of the harm need not have been predicted, noting that if some injury could have been foreseen, it would be enough to impose a duty. *Cain v. Vontz, 703 F.2d 1279* (llth Cir. 1983). However, in the case cited for that proposition, the court noted that, in connection with the harm suffered, "[a] dangerous situation was created when the defendant failed to repair the broken locks on a young woman's apartment door, It would not take a very foresighted person to be able to imagine the possible consequences of such an action." *Id. at 1283.* Therefore, the resulting break-in and murder were, under the circumstances of that case, easily within the "possible consequences."

Nonetheless, Plaintiffs argue that Defendants foresaw the "exact danger encountered" by KAL 007. Plaintiffs' Opposition at 12. It is their position that even the intentional nature of the Soviet action does not relieve **[*19]** Defendants of a duty to have guarded against attack by designing and manufacturing a navigation system which would have avoided Soviet airspace. The contention that Soviet hostilities toward intruding but unarmed civilian aircraft should be expected and guarded against by manufacturers negates any requirement that the Soviet Union behave responsibly with regard to the protection of human lives and, in this instance, is tantamount to making Defendants insurers of Soviet state actions.

Moreover, a duty to protect from harm can only flow from an ability to protect from harm. In the cases cited by Plaintiffs the scope of duty extended only to territory or person over whom the defendants could exert control. Even in cases where a defendant is required to guard against intentional or criminal conduct by unknown third persons there must be some contention that his supervision over the situation could have made a difference. See *Cullen v. BMW of North America, Inc., 691 F.2d 1097 (2d Cir. 1982)* ("No amount of supervision by [defendant] would have enabled it to foresee [third party actor's] thievery."). In this case, prevention of armed military attack by a foreign power was beyond **[*20]** the control of Defendants and therefore beyond their duty. The law does not impose a duty, the fulfillment of which is, for these Defendants, impossible. In any event, direct and deliberate military attack was not a tactic to be expected. Being unexpected, there was no duty to prepare for it. In light of the relevant circumstances, the Court finds that Defendants had no duty to anticipate or guard against the Soviet action. Without such a duty there can be no legal responsibility or liability for plaintiffs' harm.

"Superseding Cause" Analysis

In addition to the claim that no duty was owed Plaintiffs' decedents with respect to deliberate attack by a foreign power, Defendants urge the Court to find that, in the circumstances presented, such an attack operated as an independent, intervening cause of harm superseding any liability which might otherwise fall upon them. The legal definition of a "superseding cause" is the act of a third person or other force which by its intervention prevents the actor from being liable for harm which his antecedent negligence is a substantial factor in bringing about. *Restatement (Second) of Torts § 440* (1977). This is true even though Defendants' **[*21]** negligence may have created the situation which created the opportunity for the ultimate cause *Restatement (Second) of Torts § 448* (1977). In the case before the Court, were there a legal duty to protect against the attack, which the Court has held there was not, the Soviet Union's action toward KAL 007 was sufficiently independent and intervening to constitute "superseding cause" as a matter of law.

In support of their contention that any liability on their part is superseded by the fault of the Soviet Union, Defendants direct the Court's attention to *The Lusitania, 251 F.2d 715 (S.D.N.Y. 1918).* In that case, the Cunard Steamship Company, Ltd. was alleged to have been negligent for attempting to aid a merchant ship through a war zone on a trip from New York to Liverpool, England. The ship was torpedoed without warning by German submarines causing the deaths of approximately 1,200 persons. Although there had been explicit notice from the German government that enemy merchant ships passing through certain waters would be destroyed, the court dismissed all claims against the steamship company, finding:

It is, of course, easy now, in the light of many later events, added to preceding **[*22]** acts, to look back and say that the Cunard Line and its captain should have known that the German government would authorize or permit so shocking a breach of international law and so foul an offense, not only against an enemy, but as well against peaceful citizens of a then friendly nation. But the unexpected character of the act was best evidenced by the horror which it excited in the minds and hearts of the American people.

The fault, therefore, must be laid upon those who are responsible for the sinking of the vessel, in the legal as well as moral sense. It is therefore not the Cunard Line, petitioner, which must be held liable for the loss of life and property. The cause of the sinking of the Lusitania

Case 4:05-cv-40170-FDS   Document 70-11   Filed 02/16/2007   Page 7 of 7

Page 6
1985 U.S. Dist. LEXIS 17211, *

was the illegal act of the Imperial German government, acting through its instrument, the submarine commander, and violating a cherished and humane rule observed until this war, by even the bitterest antagonists.

The court utilized both the concepts of foreseeability and superseding cause when it concluded that the Cunard Line could not be held accountable for the deliberate act of the German government. Similarly, Defendants in this case cannot be held accountable for the [*23] unexpected act of aggression by the Soviet Union. "Liability for compensation for injury alleged to have been caused by negligence follows only if it is proven that the negligence was a proximate cause of the injury. An intervening cause which is independent of the negligence absolves the defending negligent actor of liability." *Hicks v. United States, 511 F.2d at 420.* From Defendant's vantage point, the Soviet missile attack upon the commercial airliner was an intervening force and a "superseding cause" of Plaintiffs' injuries. Under this analysis, Defendants are insulated from any liability because of the unexpected and needlessly tragic way in which the KAL 007 intrusion into Soviet airspace was handled. Defendants cannot be found liable where Plaintiffs' injuries result from an independent and intervening force, the danger of which was neither anticipated nor increased by any negligence of theirs.

CONCLUSION

"Proximate cause is designed not only to allow recovery for damages incurred because of another's act, but also to define such limits on recovery as are economically and socially desirable." *Klages v. General Ordinance Equipment Co., 367 A.2d 304, 313 (Pa.* [*24] *1976).* The Court is aware that "approximate causation, including the question of superseding cause, however, is ordinarily a question of fact for the jury." *Rieser v. District of Columbia, 563 F.2d at 480.* Nonetheless, in this case, the issues presented are so clear that the Court may decide them as a matter of law. "Under *Fed. R. Civ. P. 56(c)*, summary judgment is proper only where there is no genuine issue of material fact and, viewing the evidence in light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Byers v. Burleson, 713 F.2d 856, 859 (D.C. Cir. 1983).* "Indeed, the record must reveal that the party opposing the motion would not be entitled to prevail under any discernible circumstances." *Kreuzer v. American Academy of Periodontology, 735 F.2d 1479, 1495 (D.C. Cir. 1984).* In this case, the Soviet act of firing upon an unarmed commercial airplane over the Sea of Japan, knowing this would inevitably result in the loss of life of all persons on board was, at the least, a deviation from accepted international norms, or, at the most, all that it has been characterized to be by our government. See, Pub. L. No. 98-98, 97 [*25] Stat. 715 (1983). What it was not is "expected," or, in the language of the law, "foreseeable."

After all inferences are viewed in light most favorable to Plaintiffs, the circumstances presented are so exceptional, so extraordinary that Plaintiffs cannot prevail. No jury in the land could reasonably find that this chain of events, assumed to have begun with equipment failure and ended with an act of military aggression by a world power against a commercial airliner, was foreseeable to the airplane and equipment manufacturers. Under either duty or superseding cause analysis, this tragedy cannot be found to have been proximately caused by these Defendants. While any negligence on Defendant's part may have been in part responsible for placing KAL 007 at the site, such original negligence was not the proximate cause of the disaster. Therefore, the motion for summary judgment, filed by Defendant Boeing, and the motion to dismiss, filed by Defendant Litton, also considered under *Fed. R. Civ. P. 56(c)*, must be granted.

An appropriate Order accompanies this Memorandum.

ORDER

In accordance with the Memorandum entered this date, it is by the Court this day 1985,

ORDERED, that the against [*26] Defendant Boeing Company and against Defendant Litton Systems, Inc. are DISMISSED.