# EXHIBIT 12

LEXSEE 1990 U.S. DIST. LEXIS 13675

**CHRISTINE CORBY, Plaintiff, v. KLOSTER CRUISE LIMITED d/b/a NORWEGIAN CRUISE LINE, NORWEGIAN CRUISE LINE, NORWEGIAN CARIBBEAN LINE, AND XAYMACA TOURS, Defendants**

No. C-89-4548 MHP (ARB)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*1990 U.S. Dist. LEXIS 13675*

**October 5, 1990, Decided
October 5, 1990, Filed**

**LexisNexis (TM) HEADNOTES- Core Concepts:**

**JUDGES:** [*1]

Marilyn Hall Patel, United States District Judge.

**OPINIONBY:**

PATEL

**OPINION:**

*MEMORANDUM AND ORDER*

Plaintiff brings her personal injury action in this court pursuant to *28 U.S.C. section 1332,* based on diversity of citizenship between the parties and an amount in controversy alleged to exceed $50,000. The parties are now before the court on defendant's motion for summary judgment. Having considered the papers submitted and the arguments of the parties, for the following reasons, the court now grants defendant's motion for summary judgment.

BACKGROUND

Christine Corby was a passenger on a cruise ship owned and operated by Kloster Cruise Limited ("Kloster"). On December 27, 1988, while the ship was in port in Jamaica, Ms. Corby participated in an onshore excursion tour of Dunn's River Falls. While climbing the waterfalls with the tour group and guide, Ms. Corby slipped on a rock and fell, sustaining bodily injuries.

Plaintiff filed a complaint in December 1989, alleging that defendants' negligence caused her injuries, and requesting monetary damages. Defendant Kloster moves for summary judgment on the following grounds: (1) an exculpatory clause in Ms. Corby's passenger ticket contract exempts [*2] the cruise line from liability for accidents occurring ashore; (2) Kloster is not liable for the negligence of Xaymaca Tours, an independent contractor; and (3) Ms. Corby assumed the risk of climbing the falls and was contributorily negligent.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).* See also *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)* (the nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact); *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)* (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, [*3] is not to make credibility determinations. *Anderson, 477 U.S. at 249.* The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv., 809 F.2d at 631.*

DISCUSSION

I. Choice of Law

Neither party argues or addresses the choice of law issue. Since there is no indication that the parties contemplated the application of any other law, the court will

apply the law of the forum state, California.

Arguably, this court might have applied Florida law, in view of the fact that the passenger ticket contract provides that all claims shall be filed and litigated in a court located in Dade County, Florida. Ex. 2B-2, para. 28. However, defendant cites no Florida law, and plaintiff cites only one case. That case, *Carlisle v. Ulysses Line, Ltd., S.A., 475 So. 2d 248 (Fla. Dist. Ct. App. 1985),* is clearly distinguishable from the case at bar.

In Carlisle, cruise ship passengers were shot on a Nassau beach. The crew knew that violent acts had previously occurred, yet directed plaintiffs to the beach without warning them of the dangers. The court held that the carrier had a duty to warn passengers of dangers [*4] of which the carrier knew, or reasonably should have known. In the present case, there is no evidence of previous injuries, sustained on the river tour, of which Kloster was or should have been aware. In addition, the danger of criminal attack is not obvious. The Carlisle plaintiffs therefore depended on full and accurate information being provided by their ship's crew. In contrast, the dangers inherent in wading through a river, climbing a waterfall, and stepping on a wet, algae-covered rock are readily apparent to a reasonable person. There is no duty to warn of dangers which are observable by and apparently as obvious to the passenger as to the carrier's employees. 11 Cal. Jur. 3d, Carriers, § 61 at 421; *Choquette v. Key Sys. Transit Co., 118 Cal. App. 643, 654 (1931).*

Thus, since the parties do not argue the choice of law issue, since there is no showing that Florida law, in fact, differs from California law on the issues before this court, and since the only Florida case cited by the parties is distinguishable, the court will apply California law.

II. Exculpatory Clause

An exculpatory clause contained in plaintiff's passenger ticket contract exempts the cruise line [*5] from liability for any accidents occurring ashore. n1 Another contract provision exempts the cruise line from liability for the negligence of other parties. n2 If these exculpatory provisions are valid, plaintiff has in effect excused the cruise line from any duty of care. If there is no duty, there can be no breach and plaintiff's action for negligence must fail.

> n1 Paragraph (4) of the passenger ticket contract provides:
> In no event shall Carrier be liable for any accident which occurs outside the passenger areas of the vessel or itself, including, but not limited to, accidents occurring ashore, on tenders not owned by the vessel, on or resulting from equipment not a part of the vessel, or upon docks or piers. The exemption from liability herein contained shall extend to each of the employees, officers, agents, servants and representatives of Carrier.
> Ex. 2B-2 at 6.

> n2 Paragraph (10) of the passenger ticket contract provides:
> In making any arrangements for shore accommodations, victualing, amusement or entertainment for any passenger, or for any other service or facility whatsoever for any passenger otherwise than aboard Carrier's ships or such tenders aforesaid, it is understood and agreed that Carrier is acting solely in the capacity of agent for the party or parties actually providing such care, transportation, accommodation, victualing, amusement, entertainment, service or facility as aforesaid, and that the same are provided subject to such terms, if any, appearing in the tickets, vouchers or notices of such party or parties for the time being in force or otherwise imposed by such party or parties nor does Carrier guarantee the performance of any such service or facility. It is further understood and agreed that Carrier is not to be, or to be held, liable for the act, neglect, default, or omission of any party whomsoever in respect of any events, matters or things, whatsoever or wheresoever, elsewhere than aboard Carrier's ships or tenders.
> Ex. 2B-2 at 8.

California courts have upheld the validity of exculpatory clauses which do not involve the public interest. 1 B. Witkin, Summary of California Law, Contracts § 631 at 569 (9th ed. 1987). The California Supreme Court has held that a transaction of public interest is one which exhibits some or all of the following characteristics:

It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it . . . . As a result of the essential nature of the service, . . . the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation . . . . Finally, as a result of the transaction, the person or property of [*7] the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 98-101 (1963) (emphasis added) (footnotes omitted).

In the present case, the contract between Ms. Corby and the cruise line exhibits none of the above characteristics. Cruises are not generally publicly regulated. A cruise is not a service of great public importance; certainly it is not a necessity. The service provided by Kloster is not available to any member of the public; in fact, Kloster expressly reserves the right to refuse or revoke passage. n3 Kloster possesses no bargaining edge, since the service it provides is not essential. Potential passengers who are unhappy with the terms of the contract are free to accept or reject it. They can do business with a different cruise line or forego the cruise. Having agreed to the terms of the contract, passengers can protect themselves and their property by staying within the passenger areas of the vessel, where Kloster is liable.

> n3 Paragraph (14) of the passenger ticket contract provides:
> This contract and the passage contemplated hereby is not available to persons who in Carrier's sole judgment may be refused admission into a port of landing or into the country of destination or for persons who may be suffering from a contagious disease or who for any other cause may endanger themselves or others or be or become obnoxious to others. Carrier reserves the right to refuse or revoke passage to such person or persons . . . .
> Ex. 2B-2 at 8.

**[*8]**

Since the contract entered into between plaintiff and defendant does not involve the public interest under the Tunkl test, the contract's exculpatory clauses are valid.

The facts in Lohman v. Royal Viking Lines, Inc., 1981 Am. Maritime Cas. 1104 (D. Co. 1980), are strikingly similar to those in the present case, and that court's reasoning is persuasive. Lohman, a cruise ship passenger, sued the cruise line for injuries sustained during a shore excursion tour, when she was struck by a motorcycle as she stepped off the tour bus. An exculpatory clause in the ticket contract exempted the cruise line from liability for injuries sustained by passengers while on excursion tours. The court, applying Colorado law, held that the exculpatory clause was valid, since no matter of public interest was involved. In addition, the court noted that "a carrier may contract for exemption from liability with respect to activities they are under no duty to the public to perform[.]" Id. at 1109. The cruise line was under no duty to arrange excursion tours for its passengers. Therefore, an exculpatory provision involving these activities is valid.

The effect of an exculpatory provision is to relieve **[*9]** the exempted party of the duty of due care. If there is no duty, there can be no breach. Thus, there can be no prima facie showing of negligence. "The release expressly states that it was [plaintiff's] intent to exempt and relieve the defendants from any liability for their negligence. . . . 'The result is that the defendant is relieved of legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence.'" *Madison v. Superior Court*, 203 Cal. App. 3d 589, 597 (1988) (quoting *Coates v. Newhall Land & Farming, Inc.*, 191 Cal. App. 3d 1, 8 (1987)). Kloster owed Ms. Corby no duty of care once she left the passenger areas of the vessel and its tenders. Thus, Kloster cannot be charged with negligence and cannot be held liable for the injuries plaintiff suffered while ashore in Jamaica.

III. Respondeat Superior

Where a party seeks to impose tort liability on another for negligence under the doctrine of respondeat superior, the party must show that the wrongdoer was an agent of the defendant. 2 B. Witkin, pp. 4-5, Agency and Employment § 13, at 29. Generally, while a principal is liable for the torts of its agent, an employer is not liable for the torts **[*10]** of an independent contractor. *Taylor v. Costa Lines, Inc.*, 441 F.Supp. 783, 785 (E.D. Pa. 1977).

An independent contractor can be distinguished from an agent in that the employer of an independent contractor has no right of control as to the means of completing the contracted work, whereas an agent represents his principal both as to the means and the results of his work. 2 B. Witkin, supra pp. 4-5, Agency and Employment § 12, at 28.

It is an uncontroverted fact that Xaymaca Tours is an independent contractor. Proposed Pretrial Preparation Order at 3. The brochure advertising the excursion tours expressly states that the cruise line "does not own or control any . . . tour operators or sightseeing tours of any kind." Ex. 3. The passenger ticket contract states that onshore amusement and entertainment is provided subject to such terms imposed by the party actually providing the service, "nor does Carrier guarantee the performance of any such service[.]" Ex. 2B-2, para. 10. In addition, Ms. Corby conceded that she "understood that the tour was somebody other than the ship[.]" Corby Depo. at 119.

Plaintiff now contends that the nexus between the cruise line and the tour company **[*11]** was such that a passenger could infer that Xaymaca Tours was the agent of Kloster. However, the facts before the court do not support this as a reasonable conclusion, and the actual

relationship of Xaymaca Tours to Kloster was that of an independent contractor. To the extent that any agency relationship existed, Kloster was Xaymaca Tours' agent, not its principal, for the limited purpose of arranging tours for passengers. Ex. 2B-2, para. 10. Thus, Kloster cannot be held liable for any negligence on the part of Xaymaca Tours.

IV. Assumption of the Risk

In view of the fact that no negligence can be established against Kloster, either through its own negligent acts or omissions, or by virtue of an agency relationship with Xaymaca Tours, the court need not reach the question of availability of the affirmative defense of assumption of the risk.

CONCLUSION

The passenger ticket contract entered into between Ms. Corby and Kloster Cruise Limited does not involve a matter in the public interest. Therefore, the exculpatory provisions contained in that contract, exempting the cruise line from liability, are valid. Since defendants owed Ms. Corby no duty regarding accidents occurring [*12] ashore, there could be no breach. Thus, defendants were not negligent as a matter of law.

Kloster cannot be held liable for the negligence of Xaymaca Tours. Generally, while a principal may be liable for the negligence of its agents, it is not liable for the negligence of an independent contractor. Xaymaca Tours was an independent contractor and not an agent of the cruise line.

The court therefore GRANTS defendant's motion for summary judgment.

IT IS SO ORDERED.

JUDGMENT - October 5, 1990, Filed

This action having come before this court, the Honorable Marilyn Hall Patel, United States District Judge presiding, and the issues having been duly presented and an order having been duly filed herein,

IT IS ORDERED AND ADJUDGED that defendant's motion for summary judgment is GRANTED and this action is dismissed.

IT IS SO ORDERED.