**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**DOCKET NO:  05-40170 FDS**

| | |
|---|---|
| STEPHANIE HOFER and | ) |
| DOUGLAS HOFER, | ) |
| 　　　Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GAP, INC., EXPEDIA, INC., and | ) |
| TURTLE BEACH TOWERS, | ) |
| 　　　Defendants. | ) |

**PLAINTIFFS' EMERGENCY MOTION TO REOPEN DISCOVERY FOR THE LIMITED PURPOSES OF REEXAMING FAYLIN MILLER, SUSPEND THE PERIOD FOR PLAITNIFFS TO FILE AN OPPOSITION TO EXPEDIA'S MOTION FOR SUMMARY JUDGMENT PENDING MS. MILLER'S REEXAMINATION, STRIKE MS. MILLER'S AFFIDAVIT FROM THE SUMMARY JUDGMENT RECORD, AND ASSESS COSTS AGAINST EXPEDIA**

Plaintiffs, Stephanie Hofer ("Stephanie") and Douglas Hofer (collectively, "Plaintiffs"), move this honorable court for the following relief:

(1)　　　Reopen Discovery for the Limited Purposes of Reexamining Faylin Miller, Turtle Beach Tower's general manager;

(2)　　　Suspend the Period For Plaintiffs to File an Opposition to Expedia's Motion for Summary Judgment pending Reexamination of Ms. Miller;

(3)　　　Strike Ms. Miller's Affidavit from the Summary Judgment Record; and

(4)　　　Assess the Costs Associated With Ms. Miller's Deposition Against Expedia.

**RELEVANT FACTUAL BACKGROUND AND ARGUMENT**

Plaintiff's Opposition to Expedia's Motion for Summary Judgment is due on March 16, 2007.  However, Plaintiffs believes that disposition of the instant Motion is vital prior

1

to summary judgment and requests that this Court suspend the period for Plaintiff's to file an Opposition for the reasons articulated herein.

Plaintiffs' case against Expedia is well founded. There is a genuine issue of material fact regarding the extent to which Expedia *controlled* Turtle Beach Towers' (the "Resort") safety requirements. Thus, Expedia's argument that, as a matter of law, it cannot be liable to the Plaintiffs falls short. While Expedia's duty may or may not be founded in case or statutory law, it does arise by Expedia's own actions.

On August 21, 2006, at great expense to Plaintiffs, Plaintiffs' counsel traveled to Jamaica for the deposition of Ms. Faylin Miller noticed by the Gap, Inc. Ms. Miller is the general manager of Defendant, Turtle Beach Towers. On August 21, 2006, Ms. Miller provided sworn deposition testimony in this case.[1] Ms. Miller repeatedly and unambiguously testified that Expedia undertook a duty to inspect the Turtle Beach Towers' resort. In fact, Ms. Miller explained that Expedia not only inspected the Resort but that it also prepared "checklists" of work it required the Resort to perform. [Deposition of Faylin Miller, 52-55, 81]. The relevant testimony is as follows:

> **Q. Have you ever seen anyone from Expedia - - or who works for Expedia at Turtle Beach Towers?**
>
> **A. Yes. They will come and do checks now and again, room checks.**
>
> **Q. They will come and do checks?**
>
> **A. Inspections.**

---

[1] It should be noted that prior to Ms. Miller's deposition Expedia and the Gap, collectively, asserted that Ms. Miller's testimony would "blow Plaintiffs' case out of the water." In essence, according to the Defendants, Ms. Miller would testify that Expedia did not undertake any inspection duty at the Resort and that Stephanie was intoxicated at the time of the accident. As the record indicates, Ms. Miller's testimony did not support either contention. In fact, her testimony supported Plaintiffs' case.

Q. <u>Inspections. Okay. And how often would they perform their inspections? About</u>.

A. <u>It's maybe about two times a year they would.</u>

Q. And they could come - - alright. And they would come here, and it is not fair to say that they would do that in 2004, 2005 and 2006?

A. Yes.

Q. <u>And would those be inspection - - what would those inspections of the premises consist</u>?

A. <u>Grounds and rooms.</u>

Q. Grounds and rooms?

A. Yes.

Q. And would they point out things to you at times that need - -

A. Yes.

Q. I could just finish, Ms. Miller.

A. Okay.

Q. <u>Would they point out things on occasion to you as the manager here which need to be fixed</u>?

A. <u>Yes</u>. If there is …

Q. That would be true of items within a hotel room?

A. Right.

Q. <u>As well as what needs to be fixed on the grounds</u>.

A. <u>Yes</u>.

Q. <u>Would they take photographs also upon their inspections</u>?

A. Yes. If they see anything wrong, they would do a checklist.

Q. And if they saw anything wrong, would they give a list of things which needed correcting or would they just tell you?

A. They would email it.

Q. They would email it to you?

A. Yes.

Q. Do you keep a separate file of the correspondence with Expedia?

A. I do have, but I don't have it in my possession here.

Q. Okay. You didn't bring that with you to the deposition. Is that fair to say?

A. Right.

Q. Alright. And in 2004, is it fair to say that you had a separate file for Expedia's, let's say, inspection reports of your facility?

A. Yes.

Q. And that would be true also of 2005 and 2006?

A. Yes.

-------------------------------------

Q. The inspection reports that Expedia does that you've seen and maintained in a file folder, are they handwritten or are they on a form?

A. I think they would be typed or by e-mail, but on a form.

Q. So they would send you the e-mail after their visit?

A. Yes.

Q. And you would try and correct those things which needed correcting.

A. Sure.

4

> Q. Yes. Okay. After you received that correspondence from Expedia, and you attempted to correct the situation, how did you notify Expedia that the situation that was listed on their inspection report was corrected?
>
> A. <u>We would fill the checklist and send it back to them</u>.

-------------------------------------

> Q. And that Expedia has had a contract with Turtle Beach Towers for approximately five or six years, since 2000?
>
> A. Five years, yes.
>
> Q. <u>Is it fair to say during each one of those years Expedia conducted an investigation of the grounds and the rooms at Turtle Beach Towers</u>?
>
> A. <u>Yes</u>.

Ms. Miller, based on her "personal" interactions unequivocally testified that Expedia performed inspections, twice a year, that Expedia would email checklists to her based on its inspections, and that she would make repairs and send back to Expedia notification that the items had been corrected. There was no ambiguity either in the questions posed or in the answers given.

<b><u>To date, Ms. Miller has not changed her deposition testimony.</u></b>

Undoubtedly recognizing that Ms. Miller's deposition testimony was fatal to its "no control" "no liability" defense, Expedia obtained a post-deposition Affidavit from Ms. Miller which wholly contradicted her previously sworn deposition testimony. The Affidavit on its face is untrustworthy and the circumstances regarding its preparation and execution may be equally as untrustworthy.

In her Affidavit Ms. Miller claims that following her deposition Attorney Reith requested a copy of her file concerning Expedia.<u>com</u> inspections and it was then that she realized that she did not have any documents in her *possession*.[2]  Ironically, following her deposition, Attorney Stephen Kuzma, counsel for the Plaintiffs, also requested a copy of Ms. Miller's file.  In response to Attorney Kuzma's request, Ms. Miller unequivocally stated that such files did exist but were kept off site and that she would obtain same for production.  [Affidavit of Stephen J. Kuzma].  At this time, Ms. Miller also again reaffirmed that the "files" would contain inspection reports as well as other correspondence between herself, on behalf of Turtle Beach Towers, and <u>Expedia</u>.  *Id*.

Ms. Miller's Affidavit also appears to imply that she only met a single representative, on a single occasion, that could have been from Expedia.  As evidenced by the above testimony, Expedia regularly visited and inspected Turtle Beach Towers under Ms. Miller's purview.  Simply put, Ms. Miller clearly testified that inspections occurred approximately two times a year for a five-year period and not that there was merely a single visit.  Ms. Miller's post-deposition Affidavit does not even attempt to proffer an explanation regarding this contradiction.  Truly, there is a significant difference between one visit as opposed to **10 inspections**.  In addition, Ms. Miller's claim in her Affidavit that "as [she] testified, [she] hoped to learn the specifics as to such a visit by reviewing certain documents" is completely false.  Nowhere in the record does such testimony exist.  Rather, as Ms. Miller's deposition illustrates, she was testifying based on her personal interactions and knowledge.

---

[2] It is worth noting that the language used states "possession" as opposed to "control."  It is equally as notable that paragraph 7 of Ms. Miller's Affidavit references only expedia.com whereas in each other paragraph Expedia, Inc. is used.  Such parsing has been commonplace to confuse the facts of this case.

### EXPEDIA'S KNOWLEDGE, AND SUBVERSION, OF MS. MILLER'S NEWFOUND TESTIMONY, OBTAINED UNDER SUSPICIOUS CIRCUMSTANCES, SHOULD NOT ACT TO PREJUDICE THE PLAINTIFFS.

It is alarming that although Expedia's counsel prepared Ms. Miller's Affidavit as early as December, 2006 and obtained an executed copy by February 5, 2007, it withheld revealing Ms. Miller's changed testimony until it filed for summary judgment. The significance of Ms. Miller's deposition testimony to Plaintiffs' case, and Expedia's defense, cannot be overstated. Indeed, Expedia's Motion for Summary Judgment is premised, *in its entirely*, on allegations that it had no duty to Ms. Hofer because it had no control over the Resort, and, more specifically, over the Resort's safety requirements.[3]

Clearly, Ms. Miller's deposition testimony that Expedia did, in fact, control Turtle Beach Towers' safety requirements, renders Expedia's Motion for Summary Judgment baseless as it creates a genuine dispute to be resolved only BY a jury. In short, Plaintiffs obtained the "missing link" between Expedia and Turtle Beach Towers. Expedia, having realized same, now seeks to relieve itself of all liability by the Affidavit submitted six months after Ms. Miller's spontaneous, unrehearsed, and uncoached deposition testimony.[4]

Since the significance of Ms. Miller's testimony was not overlooked by Expedia, it is difficult, if not impossible, to imagine that it sat idly while Ms. Miller made no

---

[3] That Expedia submitted an Affidavit by Sherna Thomas is also suspicious. Sherna Thomas is allegedly the wife of Daine Thomas. However, even a cursory review of her affidavit evidences Expedia's attempt to split hairs and parse language. The Affidavit recites Sherna Thomas's "lack of knowledge" of certain events and was presented to refute Plaintiffs allegations. It is significant that Daine Thomas, the very person who Ms. Miller testified was her contact person and who had signed the contract with Expedia, has not submitted any such Affidavit.

[4] On this point, Plaintiffs also point out that Expedia's allegation that it does not perform visits to its properties is also contradicted by the language stated on its own website: "In cases where the available data is insufficient to meet our standards, we make an effort to perform additional research, including further review of media and *additional visits* to the property." *See* expedia.com.

"corrections" to her testimony or that it delayed in sending to her the deposition transcript.[5] Although acknowledging that Ms. Miller did nothing to correct her sworn testimony within the proscribed period, <u>or at any time prior to summary judgment</u>, Expedia brushes away this deficiency. As if to trivialize the significance of Ms. Miller's highly contradictory Affidavit and to excuse themselves from compliance with the governing rules, Expedia merely claims Ms. Miller did not receive her deposition transcript prior to November 14, 2006. Whether or not Ms. Miller did or did not receive her transcript on November 15, 2006, or at some earlier time, is of no consequence to the Plaintiffs and should have no significance to this Court. The inescapable fact remains that at no time, including present, has Ms. Miller, Expedia, or co-Defendant, Gap, Inc., (the party who noticed Ms. Miller's deposition), moved this Court to enlarge the period for her submit an errata sheet. The Defendant nevertheless now attempts, through 20/20 hindsight, to change damaging testimony which is probative of Plaintiffs allegations of control.

Moreover, there is a lack of any explanation as to why Ms. Miller waited over three months (and not until Expedia was moving summary judgment), to change her allegedly inaccurate testimony via Affidavit. Indeed, that Expedia has sought to deny all control over Turtle Beach Towers based largely on Ms. Miller's Affidavit, illustrates its clear foresight that its entire defense hinged on Ms. Miller changing her testimony. The reasons for Expedia's failure to forward Ms. Miller's testimony, upon receipt, or to seek leave to allow for late changes, may perhaps only be unveiled upon a reexamination of

---

[5]There can be no denial on this point. At hearing before this Court on September 8, 2006, Attorney Thomas Reith, then counsel for Expedia, asserted to this Court that Ms. Miller's testimony "must be incorrect." It strains credibility that Expedia did not immediately seek to have such testimony changed.

It should be noted that during the time Ms. Miller changed her testimony, Expedia changed counsel.

8

Ms. Miller. Obviously, waiting until summary judgment to reveal Ms. Miller's contradictory testimony deprives Plaintiffs the opportunity to properly test the veracity of Ms. Miller's new founded testimony and/or whether it was cajoled.

There can be little dispute that Expedia prepared Ms. Miller's Affidavit which it now seeks to use as a shield to liability. Further yet, Expedia knew of the anticipated changes to Ms. Miller's testimony as early as December, 2006, and withheld Ms. Miller's Affidavit as of February 5, 2007, weeks prior to filing its Motion for Summary Judgment. Expedia's knowledge, and subversion, of Ms. Miller's newfound testimony, obtained under suspicious circumstances, cannot be at Plaintiffs peril. Such a result would be manifestly unjust.

As Expedia may have well suspected, and sought to thwart, had it sought leave to permit Ms. Miller to file a late errata sheet, and if Ms. Miller made changes to her transcript which mirrored those contained in her Affidavit, Plaintiffs would have immediately sought to reexamine Ms. Miller. It is likely that this is the very reason why Expedia did not seek to obtain from Ms. Miller her changes pursuant to the governing rules.

That Expedia's aim was to disadvantage the Plaintiffs (and possibly conceal damaging information) is bolstered by its admitted knowledge of Ms. Miller's changes as early as December, 2006, months prior to moving for summary judgment. Similarly, had Plaintiffs at least been provided with Ms. Miller's "switched" testimony on February 5, 2007, the date her Affidavit was executed, Plaintiffs would have rushed to the courthouse steps.

In short, Ms. Miller's belated switch in testimony, precipitated by Expedia's efforts to summarily dismiss Plaintiffs' case, must be examined. Furthermore, her Affidavit must be accorded no weight by this Court for summary judgment purposes. To hold otherwise would saddle Plaintiffs with an insurmountable burden disabling them from fairly presenting their case while, at the same time, award Expedia for its obstructionist and calculated actions.

Case law is crystal clear: deposition testimony, taken under oath, cannot later be altered to support a party's summary judgment claims. "When clear answers are given to unambiguous deposition questions, he or she cannot raise an issue of fact by submitting a subsequent affidavit that merely contradicts the deposition testimony." *Lowery v. AIRCO, Inc.*, 725 F. Supp. 82, 85-86 (D. Mass. 1989). Courts "do not allow a party to defeat a motion for summary judgment using an affidavit that impeaches without explanation, sworn testimony." *Russell v. Acme-Evans Co., 51 F.3d 64, 67-68* (7th Cir. 1995).

In short, a summary judgment cannot be based upon challenged affidavits from witnesses who have admittedly stated some facts that are not true because the ultimate trier of fact is free to disregard the entire testimony of those affiants. *Peckham v. Ronrico Corp.*, 171 F.2d 653 (1st Cir. 1948). The purpose of this sham affidavit rule is to protect the procedural integrity of summary judgment. *Mahan v. Boston Water & Sewer Comm'n*, 179 F.R.D. 49, 53 (D. Mass. 1998).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs relief. Any other result would severely handicap the Plaintiffs and award

Expedia for actions clearly calculated to deprive Plaintiffs a fair opportunity. In addition, the Plaintiffs request that they be allowed to investigate the circumstances regarding the change of Ms. Miller's testimony as well as the testimony of Sherna Thomas. This Court should not condone Expedia's obvious actions in its promulgation of Ms. Miller's change of testimony.

Plaintiffs state that it would be able to conduct the reexamination of Faylin Miller in Jamaica within thirty days of this Court's Order.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, Plaintiffs hereby request that this Honorable Court grant the Plaintiffs a hearing on the matters addressed within the instant pleading.

> Plaintiffs,
> By their attorney,
>
> /s/ India L. Minchoff, Esq.
> India L. Minchoff, Esq. (652456)
> Law Offices of Russo & Minchoff
> 123 Boston Street, 1st Floor
> Boston, MA 02125
> 617/740-7340 telephone
> 617/740-7310 facsimile

### CERTIFICATE OF SERVICE

I, India L. Minchoff, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 13, 2007.

> /s/ India L. Minchoff, Esq.