UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHANIE HOFER and <br> DOUGLAS HOFER, <br><br> Plaintiffs, <br><br> v. <br><br> THE GAP, INC., EXPEDIA, INC. <br> and TURTLE BEACH TOWERS, <br><br> Defendants. | Civil Action Docket No. 05-40170 FDS |

### DEFENDANT EXPEDIA, INC.'S
### OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION
### RELATIVE TO THE DEPOSITION TESTIMONY AND AFFIDAVIT
### OF FAYLIN MILLER

The defendant Expedia, Inc. ("Expedia"), by and through its undersigned counsel, opposes the Plaintiffs' Emergency Motion filed March 13, 2007. For the reasons set forth below, all of the plaintiffs' requests for relief should be denied.

### I. ARGUMENT

Instead of addressing the substantive arguments made by Expedia in its summary judgment papers,[1] the plaintiffs – 25 days after being served with the same and a mere 72 hours before their summary judgment opposition is due – have sprung the instant motion upon the

---

[1] Indeed, one would have thought that the plaintiffs' instant motion would have been more properly brought as a Rule 56(f) motion at the time the plaintiffs filed their opposition to Expedia's summary judgment motion. One can only assume that the plaintiffs, having had almost four weeks to respond to Expedia's summary judgment motion, have decided to interpose this instant emergency motion solely for the purposes of delay and to relieve the plaintiffs from having to respond to the weight of authority against their position.

Court and the parties[2] requesting extraordinary relief, including a request to re-open discovery almost five months after the factual discovery deadline and a request to re-depose a third-party witness located in a foreign country at Expedia's expense. However, the plaintiffs' arguments are nothing more than a red herring interposed as a desperate attempt to delay response to the weight of authority interposed in Expedia's summary judgment motion. Indeed, as set forth below, <u>even</u> <u>if</u> Ms. Miller's original deposition testimony were to be considered by the court on summary judgment, Expedia is still entitled to dismissal.

**A.    FAYLIN MILLER IS ENTITLED TO CHANGE STATEMENTS IN HER DEPOSITION TESTIMONY WHICH ARE IN ERROR.**

While a party generally cannot vary his deposition testimony with an affidavit, this prohibition does not extend to situations where the party explains the variance. <u>See</u> <u>Colantuoni</u> <u>v. Alfred Calcagni & Sons, Inc.</u>, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.") Here, Ms. Miller's affidavit (attached hereto as Exhibit 1) does, in fact, give a satisfactory answer for the variance. Ms. Miller states she did not receive a copy of her deposition transcript until November 15, 2006,[3] and she further states that upon review of this transcript she was uncertain of whether the individuals she met were, in fact, Expedia employees. (Miller Aff., Ex. 1, ¶¶ 4-5.) During her deposition, she stated she had hoped to learn the specifics as to the visits by reviewing certain documents which she believed to

---

[2] While Expedia obviously does not consent to any part of the plaintiffs' motion, we note that the plaintiffs' counsel never conferred with counsel for Expedia or otherwise informed counsel for Expedia that they would file this emergency motion with the Court, in violation of L.R. 7.1(A)(2).

[3] We note this was well after the October 23, 2006 factual discovery deadline.

be in her possession, but that she was incorrect when she stated that she had any such documents in her possession. (Id., ¶ 7.) She did not realize that she, in fact, had no such documents until being asked for the same by Expedia's prior counsel after the deposition had concluded. (Id., 7).[4]

Moreover, Ms. Miller, through her affidavit, is not now stating that <u>no</u> visits took place when she previously stated that <u>some</u> visits occurred. Rather, she is stating that she cannot testify as to the <u>identity</u> of the person or persons who visited Turtle Beach to conduct the discussed "inspections." Ms. Miller, in her affidavit, recalls someone visiting the Thomases' units and the Turtle Beach grounds, but she is uncertain that it was, in fact, an Expedia employee. (Id., ¶ 9.) Given that Ms. Miller's deposition testimony as to the identity of the employer of these visitors is speculative hearsay on her part and inadmissible on that ground alone, it is not surprising that she wishes to make clear that she has no personal knowledge of the actual employer of these individuals.[5]

---

[4] The Affidavit of Steven Kuzma (attached as Exhibit C to plaintiffs' emergency motion) has been submitted by the plaintiffs to call into question Ms. Miller's veracity as to whether she did not have the documents as stated in her affidavit or whether the documents were located off site. We respectfully suggest that if our Brother Kuzma wishes to testify as a witness in order to impeach the credibility of Ms. Miller as to the existence or non-existence of documents at Turtle Beach, he immediately withdraw as counsel for the plaintiffs. Of course, the fact that documents were never forwarded to him by Ms. Miller would support Ms. Miller's statement that she did not, in fact, have any such documents. If the plaintiffs believe that Turtle Beach and/or its management company are hiding such documents, then the plaintiffs could have turned to the courts of Jamaica to compel production of the same.

[5] We note in passing that Ms. Miller's deposition was neither noticed nor arranged by Expedia, but rather by the co-defendant, The Gap, Inc. (Miller Aff., ¶ 7 [noting that Gap's counsel communicated with her regarding deposition scheduling]). Given that Expedia's counsel did not communicate with Ms. Miller at any time prior to her deposition (Miller Depo., attached hereto as Exhibit 2, at p. 8:15-8:25), it is hardly surprising that Miller may not have placed much significance on the distinction between "Expedia" versus "Travelocity" versus "Worldres.com,"

3

Moreover, Ms. Miller's affidavit is supported by the affidavit of Sherna Thomas, which was submitted with Expedia's summary judgment papers and is attached hereto as Exhibit 3.[6] Ms. Thomas, who owns several units at Turtle Beach along with her husband, testifies that she advertised her units not only on Expedia, but with Travelocity.com and Worldres.com (Thomas Aff., Ex. 3, ¶¶ 3-4.), and that at no time had she arranged with Expedia or any of its related entities to conduct inspections of any kind of her units or the Turtle Beach grounds. (Id., ¶¶ 9-14.) Of course, it has been Expedia's testimony throughout this litigation that it had not conducted any such inspections. (See generally Affidavit of Nashara Frazier in Support of Defendant Expedia's Motion for Summary Judgment, attached hereto as Ex. 4, at ¶ 9.)[7]

In summary, Ms. Miller's affidavit merely seeks to clarify certain statements in her deposition, and acknowledges that she has no personal knowledge of the precise identity of the person or persons who visited Turtle Beach to perform some sort of inspection. Given that her

---

given that she was called to testify over what she believed to be a suit over an allegedly defective sandal and allegedly dangerous stairs on Turtle Beach property.

[6] The plaintiffs were well aware of the existence of Sherna and Daine Thomas before the October 23, 2006 discovery deadline, both through supplemental automatic disclosures as well as Ms. Miller's deposition testimony. That the plaintiffs' counsel chose not to depose either of the Thomases is not grounds for re-opening discovery or delaying plaintiffs' response to Expedia's summary judgment motion because Expedia has submitted an affidavit from one of them. Moreover, while the plaintiffs take issue with the fact that it is Sherna Thomas, as opposed to Daine, who has submitted an affidavit, Sherna Thomas has testified that it was she who signed the contracts with Expedia. (S. Thomas Aff., Ex. 3, ¶¶ 5-6.) Again, we fail to see how Ms. Miller's deposition testimony that she thought Daine had signed the contract with Expedia is relevant, given that Ms. Miller is not an employee of Expedia and was not a party to the contract.

[7] The plaintiffs reference a general statement on Expedia's website: "In cases where the available data is insufficient to meet our standards, we make an effort to perform additional research, including further review of media and additional visits to the property." Of course, this statement is entirely consistent with Expedia's testimony that it did not visit Turtle Beach prior to Hofer's accident – if Expedia believes the available data to be sufficient, it does not perform any further research. Indeed, this is not surprising given the approximately 100,000 vendors with listings on Expedia's website.

affidavit contains additional, more specific facts than those in the deposition, it may be considered by the Court.  See Sullivan v. City of Augusta, 406 F. Supp. 2d 92, 117 (D. Me. 2005).

**B.   REGARDLESS OF THE WEIGHT GIVEN TO MS. MILLER'S TESTIMONY, EXPEDIA IS STILL ENTITLED TO SUMMARY JUDGMENT.**

While Expedia does not wish to re-brief its entire summary judgment motion, it is important to understand that, as a matter of law, even if Ms. Miller's affidavit is discounted and her initial deposition testimony, replete with error, is considered on summary judgment (or if the Court determines that Ms. Miller's change in testimony on the issue of Expedia's visits to the property creates an issue of credibility on this point to be determined by the ultimate trier of fact, even though the corrected testimony conforms with the other undisputed testimony on record), this situation does not change the fact that Expedia is still entitled to summary judgment on the plaintiffs' claims.  As such, there is absolutely no reason to re-open discovery to take Ms. Miller's deposition, nor to delay the plaintiffs' opposition to Expedia's summary judgment motion.

**1.   Ms. Miller's testimony with regard to her knowledge (or lack thereof) pertaining to inspections by Expedia personnel is not a material fact relevant to Expedia's pending summary judgment motion.**

In the Local Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant Expedia, Inc.'s Motion for Summary Judgment [Docket # 69], nowhere does Expedia cite to Ms. Miller's affidavit testimony concerning her knowledge (or lack thereof) pertaining to inspections conducted by employees of Expedia.[8]  As such, while Expedia desires to make the record clear

---

[8] Ms. Miller's affidavit, in addition to performing the function of an errata to her deposition, is cited by Expedia's Local Rule 56.1 Statement only with regard to the identity of the property management company for Turtle Beach responsible for maintenance and the fact

as to Ms. Miller's testimony vis-à-vis the identity of the individuals who visited Turtle Beach, the issue is not critical to deciding whether or not Expedia is liable for injuries sustained by Stephanie Hofer when she allegedly fell down stairs into a turtle pond.

Because Expedia is not relying upon Ms. Miller's testimony on this factual point, there is absolutely no basis for plaintiffs' request to re-open discovery, re-depose Ms. Miller, impose sanctions upon Expedia to conduct the same, and to stay the period for their response to Expedia's motion for summary judgment.

### 2.      As a matter of law, Expedia is not liable for the plaintiff's injuries, regardless of whether it conducted inspections or not.

Even assuming, arguendo and contrary to fact, that Expedia employees did visit Turtle Beach for some sort of pre-accident "inspections" of the grounds, such activity by a travel agent or tour operator does not create a duty to warn of every potentially dangerous condition on the property of a service supplier.

Many of the cases cited in Expedia's summary judgment memorandum involve "personally escorted" tours in which the entity which provided the travel services was present at the scene of the plaintiff's injury. In each of these cases, the defendant was dismissed or granted summary judgment. See, e.g., McElheny v. Trans Nat'l Travel, 165 F. Supp. 2d 190, 199-201 (D.R.I. 2001) (tour operator's motion to dismiss or for summary judgment granted where tour operator representatives maintained a desk and chairs in hotel lobby, held meetings at the hotel on a daily basis, and lent assistance to hotel management in selling time shares; tour operator's physical presence in hotel did not give rise to a duty to the plaintiff to warn of defective chair);

---

that she is unaware of any prior similar accidents at the Turtle in her 28-30 years working at the property. (Expedia's L.R. 56.1 Statement, Docket # 69, ¶¶ 11, 45 and 47.) These issues are not contradicted in any way by Ms. Miller's prior deposition testimony.

Stafford v. Intrav, Inc., 841 F. Supp. 284 (E.D. Mo. 1993), aff'd, 16 F.3d 1228 (8th Cir. 1994) (granting summary judgment to tour operator which provided a travel director, tour leader, and tour guide on board a vessel used for a cruise; plaintiff fell through an open gangplank while speaking to tour guide); Manahan v. NWA, 821 F. Supp. 1105 (D.V.I. 1991), supplemental op., adhered to, recons. denied sub nom. Manahan v. Yacht Haven Hotel, 821 F. Supp. 1110 (D.V.I. 1992), aff'd without op., 995 F.2d 218 (3d Cir. 1993) (tour operator's groundhandler, who also acted as hotel's concierge, provided safety lectures and recommended restaurant to plaintiff where on her return she was mugged); Viches v. MLT, Inc., 124 F. Supp. 2d 1092, 1094 (E.D. Mich. 2000) (tour operator not liable for hotel's spraying of pesticide even though plaintiffs alleged that the tour operator maintained a "steady presence" at the hotel, including the maintenance of a hut on hotel grounds); Passero v. DHC Hotels and Resorts, Inc., 981 F. Supp. 742, 743 (D. Conn. 1996) (tour operator's motion to dismiss or for summary judgment granted where tour operator provided an "on location representative" at its hotel destinations "to ensure a pleasant stay"); Powell v. Trans Global Tours, Inc., 594 N.W.2d 252, 255-56 (Minn. Ct. App. 1999) (tour operator not liable for plaintiff's fall from hotel balcony even though it staffed a counter in the hotel lobby and listed the hotel in its brochure); Maraia v. Church of Our Lady of Mt. Carmel, 2007 N.Y. App. Div. LEXIS 786, at *1-*2 (N.Y. App. Div., 2d Dep't Jan. 23, 2007) (holding that even if a tour operator assumed a duty to the plaintiff, such as giving instructions to proceed in a particular manner, liability would attach only when "its conduct put plaintiff in a more vulnerable position").

    Carley v. Theater Dev. Fund, 22 F. Supp. 2d 224 (S.D.N.Y. 1998), drives this point home. In Carley, the plaintiff sued for injuries sustained when she fell out of a hotel room window while on a tour in St. Petersburg, claiming that she had fallen while trying to open said

window due to the defective condition of same.  Id.  226-27.  The plaintiffs alleged that the defendants assumed a duty to the plaintiffs for the following reasons:  (1) the tour operator's president accompanied the plaintiffs on their tour and stayed in the hotel with them; (2) the tour operator's president translated for the plaintiffs throughout their tour; (3) the tour operator's president <u>physically inspected the room</u>; (4) the tour operator's president "<u>spoke with hotel employees about the condition of the room</u>"; (5) the tour operator's president "<u>told plaintiffs the room was safe</u>"; and (6) the tour operator's president, on her own accord, "<u>sought to have the window in the hotel room opened and did so with the assistance of a hotel employee</u>."  Id. at 228 (emphasis added).  In granting the defendants' motion to dismiss or for summary judgment, the court held, "these actions, even if assumed to be true, do not create an assumption of duty by [the tour operator and the tour promoter] to guarantee the non-negligent operation of the hotel."  Id.  Of course, in the instant case, there is no dispute that Expedia did not even accompany Hofer to Turtle Beach, and there is absolutely no evidence that any Expedia employees were present at the Turtle Beach at the time of Hofer's accident.

> **3.    In addition, because the stairs' proximity to the turtle pond and the lack of a handrail or guardrail constituted either an open and obvious condition or a hidden condition, Expedia cannot be held liable on a negligent inspection/failure to warn theory.**

As set forth in more detail in Expedia's summary judgment memorandum, Expedia is also entitled to summary judgment – even if, contrary to fact, it conducted inspections – because the condition of the stairs was either (1) an open and obvious condition or (2) a hidden condition. In either case, even if Expedia had conducted inspections, no liability attaches to Expedia's actions.

Hofer appears to argue that the dangerous condition of the stairs was an open and obvious condition, and that Expedia, in one of its "investigations" of the property, should have noticed that the lack of handrails or guardrails on these particular steps could create a dangerous condition insofar as people might fall into the turtle pond, and should have so warned everyone booking a trip at Turtle Beach or demanded that Turtle Beach take remedial action.  But if the dangerous condition of the stairs were open and obvious, then as a matter of law Expedia owed Hofer no duty to warn because Hofer was in an infinitely better position to assess the condition of the stairs as she descended them, particularly since she traversed the stairs three times prior to her accident.  (Expedia's L.R. 56.1 Statement of Material Facts, Docket # 69, ¶¶ 31, 33.)

Being open and obvious, Expedia (even if it knew or should have known about the condition through prior inspections) had no obligation to warn Hofer of the condition of the stairs, as numerous Circuit and District Courts have so held.  See, e.g., Tradewind Transp. Co. v. Taylor, 267 F.2d 185, 187-88, 190 (9th Cir.), cert. denied, 361 U.S. 829 (1959) (tour operator not liable to traveler who slipped and fell on steps of temple she was visiting as part of a tour, even though tour driver who was present had previously seen another tourist fall there, since the condition was apparent to a reasonably prudent person); Stafford v. Intrav, Inc., 841 F. Supp. 284, 287-88 (E.D. Mo. 1993), aff'd, 16 F.3d 1228 (8th Cir. 1994) (tour operator had no duty to warn plaintiff about an open gangplank because it was an "obvious danger," even though tour guide was standing next to plaintiff when she fell); Manahan v. NWA, 821 F. Supp. 1105 (D.V.I. 1991), supplemental op., adhered to, recons. denied sub nom. Manahan v. Yacht Haven Hotel, 821 F. Supp. 1110, 1114 (D.V.I. 1992), aff'd without op., 995 F.2d 218 (3d Cir. 1993) (tour operator had no duty to warn of obvious dangers or to give general safety precautions about walking on streets of St. Thomas at night); Sachs v. TWA Getaway Vacations, Inc., 125 F. Supp.

2d 1368, 1374 (S.D. Fla. 2000) (holding that the "potential danger of descending the steps of a motorcoach" was obvious and readily observable by a traveler); Gabrielle v. Allegro Resorts Hotels, 210 F. Supp. 2d 62, 70 (D.R.I. 2002) (finding that the act of leaving a balcony door open on a second floor hotel room constituted an obviously dangerous condition; plaintiff was assaulted while sleeping in her room); Maraia v. Church of Our Lady of Mount Carmel, 2007 N.Y. App. Div. LEXIS 786, at *3 (N.Y. App. Div., 2d Dep't Jan. 23, 2007) (plaintiff sustained injuries from fall from platform on tour; tour operator entitled to summary judgment because the condition of the platform was open and obvious).

At a minimum, the condition of the stairs was equally discoverable by Hofer and she was in a much better position to assess the situation than Expedia. See, e.g., McElheny, 165 F. Supp. 2d at 205 (holding that the plaintiff was in a better position to observe that the chair on which she was about to sit was defective than the tour operator's representatives who were on site but not present at the time of the accident); Passero, 981 F. Supp. at 744 (presence of a flotation mat by a swimming pool was an obvious condition equally observable by plaintiff); Adames v. Trans Nat'l Travel, 1998 Mass. Super. LEXIS 108 (Mass. Super. Ct., Suffolk Co. Apr. 10, 1998) ("[E]ven if TNT owed the Adames a duty to warn them about the dangers of the Cruise, the Adames had a better, and more apt, ability to determine the dangers involved in the trip.").

Alternatively, if the condition of the stairs were a hidden condition, then Expedia, even if it conducted pre-accident inspections, had no duty to ferret out this hidden condition absent any knowledge of prior accidents. See Stafford, 841 F. Supp. at 288, aff'd, 16 F.3d 1228 (8th Cir. 1994) (tour operator not liable for tour participant's fall from gangplank because it had no knowledge of prior accidents); Wilson v. American Trans Air, Inc., 874 F.2d 386, 390 (7th Cir. 1989) (in a case involving an assault on a woman at a hotel, the court affirmed summary

judgment in favor of tour operator because it had no knowledge of guest complaints regarding safety and security at the hotel); Fling v. Hollywood Travel and Tours, 765 F. Supp. 1302, 1305-06, 1307-08 (N. D. Ohio 1990), aff'd, 933 F. 2d 1008 (6th Cir. 1991) (in case involving a shooting and robbery at a destination hotel, tour operator held to have no duty to warn plaintiffs because it did not know about any prior attacks); Manahan, 821 F. Supp. at 1110, 1114, aff'd without op., 995 F.2d 218 (3d Cir. 1993) (tour operator had no duty to warn of danger of walking on streets of St. Thomas at night since it knew of no previous muggings).  Here, there is absolutely no evidence that Expedia had specific, actual knowledge of previous incidents on these steps which would trigger such a duty to warn.  (Frazier Aff., Ex. 4, ¶¶ 7-8.)  This is confirmed by the uncontroverted testimony of Ms. Miller that she was also unaware of any such instances at the Turtle Beach in her 28-30 years of employment there, as well as the testimony of Sherna Thomas, the owner of several units at the Turtle Beach.  (Expedia's L.R. 56.1 Statement of Material Facts, Docket # 69, ¶¶ 41-47.)

For these reasons, and for the reasons more fully set forth in Expedia's summary judgment memorandum, Expedia is entitled to summary judgment on plaintiffs' claims even if it is assumed that employees of Expedia conducted pre-accident safety inspections of the Turtle Beach grounds prior to Hofer's accident.

C.     **IF THIS COURT WERE INCLINED TO RE-OPEN DISCOVERY, DISCOVERY SHOULD BE RE-OPENED TO ALL PARTIES ON THIS SPECIFIC ISSUE ONLY.**

While the plaintiffs state in their motion that they could re-depose Ms. Miller within 30 days from the date of the Court's order, we fail to see how that would be possible, given the fact that, as far as the defendant is aware, the plaintiffs have not sought leave from the appropriate international authorities for the deposition of Ms. Miller and have not confirmed that she is

willing or even available to submit to such a deposition (particularly during the busy March vacation season).

But if this Court were inclined to re-open discovery to enable the plaintiffs to re-depose Faylin Miller or depose the Thomases, Expedia requests that factual discovery be re-opened to all parties, solely on the issue of whether Expedia personnel (or someone else) conducted any inspections of the Turtle Beach Towers property prior to Stephanie Hofer's accident, and that Expedia be permitted to take other third-party discovery and depositions it deems necessary on this particular issue, including, inter alia, discovery of Travelocity.com and Worldres.com, to obtain further information as to the specific identity of the persons or persons who may have visited the Turtle Beach Towers. Expedia further requests that if the Court does re-open discovery, that each party would bear their own costs for any such discovery undertaken.

## II.  CONCLUSION

WHEREFORE, the defendant Expedia, Inc. respectfully requests that this Honorable Court deny the plaintiffs' emergency motion in all respects, and direct that the plaintiffs file their opposition, if any, to Expedia's motion for summary judgment no later than March 16, 2007.

> Respectfully submitted,
> By the defendant
> EXPEDIA, INC.,
> By its attorneys,

/s/ Rodney E. Gould
_____
Rodney E. Gould (BBO # 205420)
Email:  rgould@rhglaw.com
Robert C. Mueller (BBO#567599)
Email:  rmueller@rhglaw.com
RUBIN, HAY & GOULD, P.C.
205 Newbury Street
P.O. Box 786
Framingham, MA  01701-0202
Tel:  (508) 875-5222
Fax:  (508) 879-6803

DATED: March 14, 2007

**CERTIFICATE OF SERVICE**

  I, Rodney E. Gould, hereby certify that this document, filed through the ECF system, will be served electronically upon the registered participants identified on the Notice of Electronic Filing (NEF) and will be served upon any non-registered participants, as indicated on the NEF, by paper copy sent via first-class mail, postage prepaid.

DATED: March 14, 2007       **/s/ Rodney E. Gould**
                     _____
                     Rodney E. Gould