**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**DOCKET NO:  05-40170 FDS**

| | |
|---|---|
| STEPHANIE HOFER and | ) |
| DOUGLAS HOFER, | ) |
|      Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GAP, INC., EXPEDIA, INC., and | ) |
| TURTLE BEACH TOWERS, | ) |
|      Defendants. | ) |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT,**</u>
<u>**GAP, INC.'S MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiffs, Stephanie Hofer ("Stephanie") and Douglas Hofer (collectively, "Plaintiffs"), state

the following in Opposition to Gap, Inc.'s ("Gap") Motion for Summary Judgment and

Request for Sanctions.

<u>**Introduction**</u>

    Plaintiffs' case against the Gap is based on charges of products liability and breach of

implied warranty of merchantability.  Stephanie filed suit after she sustained disabling

injuries when a new sandal (the "flip-flops") sold by and advertised as an Old Navy brand

became detached.  Plaintiffs' case proceeds on three grounds:

(1)      Plaintiffs cannot be sanctioned with a dismissal when Plaintiffs never maintained

         control of the flip-flip and the co-Defendant, Turtle Beach Towers, disposed of the

         flip-flop;

(2)      A juror, through his common knowledge and experience, can determine that a flip-

         flop which breaks upon its first wear is defective, that the defect existed at the time of

         its manufacture or sale, and that the defect was the proximate cause of Stephanie's

         injuries; and

Dockets.Justia.com

(3)     The doctrine of res ipsa loquitur can be used to establish Gap's warranty and

negligence liability.

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1, Plaintiffs submit the following concise statement of the

material facts of record as to which it is contended that there exists a genuine issue to be

tried.

1.  Stephanie was born on July 18, 1972; at the time she sustained her injuries she was 31

years old.  (**Exhibit 1**, Deposition of Stephanie Hofer ["Stephanie"], 67:24-25, 307:18-

20).

2.  On March 18, 2004, Stephanie and her companion, Carrie LaRoche (formerly known as

Carrie LaBelle), traveled to Ocho Rios, Jamaica, via a vacation package arranged through

Expedia.  (**Exhibit 2**, Deposition of Carrie LaRoche ["Carrie"], 166:14-18], [Stephanie,

148:5-6], [**Exhibit 3**, Travel Itinerary].  Stephanie and Carrie were scheduled to stay at

Turtle Beach Towers ("the Resort").  [Travel Itinerary].

3.  The subject flip-flops were purchased at Old Navy and the Old Navy brand name was

printed on the top of the flip-flops.  [Stephanie, 122:21-24].

4.  Stephanie could not recall the exact date when she purchased the flip-flops but did

believe that she likely purchased them on her Old Navy credit card.  [Stephanie, 123:3-

10, 134:7-10, 140:23-25].

5.  To date, and notwithstanding its initial claim to the contrary, Gap has refused to produce

Stephanie's Old Navy credit card receipts for the relevant time period.  [**Exhibit 4**, Gap

correspondence dated February 13, 2006 with included records (showing that Gap

withheld production of records from March, 2004) and correspondence dated March 8,

2007].

6.  When Stephanie purchased the flip-flops an Old Navy store hanger connected them. [Stephanie, 134:3-6].

7.  Stephanie showed her mother, Lauren M. Drew, what she had purchased at Old Navy, prior to leaving to Jamaica.  The subject flip-flops were included as part of the purchase. (**Exhibit 5**, Deposition of Lauren M. Drew ["Lauren"], 109:4-14, 111:24-112-3).

8.  Lauren observed that the subject flip-flops were still connected by the Old Navy hanger and that they had not yet been worn.  [**Exhibit 6**, Affidavit of Lauren M. Drew].

9.  Stephanie showed Carrie the Old Navy flip-flops while packing for their trip to Jamaica and identified them as new.  [**Exhibit 7**, Carrie, 43:21-24, 166:7-167:1].

10. At that time Carrie observed that the flip-flops were still connected by the Old Navy hanger and that they had not yet been worn.  [Affidavit of Carrie LaRoche].

11. The exemplar flip-flops Plaintiffs produced to the Gap are a fair and accurate representation of the subject flip-flops.  [Stephanie, 132:23-133:13, 136:5-22], [Affidavit of Carrie LaRoche], [Affidavit of Lauren M. Drew].

12. On March 18, 2004, the date of the accident, Stephanie wore the subject flip-flops for the first time. [Stephanie, 132:8-13, 154:10-16], [Carrie, 43:17-24].

13. On the evening of March 18, 2004, while Stephanie was about to walk down the stairs at the Resort, her right flip-flop became detached and caused her to fall into a turtle pond located outside of the Resort's reception area.  [Stephanie, 172:14-17, 169:9-12, 179:4-8, 260:17-21, 261:3-10, 379:12-13].

14. Stephanie specifically recalls that she felt something "wrong" so she looked down and saw the broken flip-flop "all within the same few seconds" that she fell.  The thong of the flip-flop became detached by pulling through the sole.  [Stephanie, 168:13-22, 169:13-170:1, 170:10-19, 171:7-13, 172:14-19].

15. While at the scene of the accident, Stephanie told Carrie that her flip-flop broke causing her to fall.  [Carrie, 30:4-13, 35:2-4].

16. Immediately after Stephanie's fall Carrie observed the subject flip-flop on a stair, which abutted the turtle pond.  [Carrie, 35:3-8, 39:20-22, 72:23-73:1, 192:3-17].

17. Carrie observed that the flip-flop's thong was "detached" in exactly the same manner as described by Stephanie.  [Affidavit of Carrie LaRoche].

18. In the accident Stephanie's leg caught on something within the turtle pond, which was filled with razor sharp coral, slate, and flagstone, making her unable to pull herself out of the pond.  [Stephanie, 174:5-10, 278:16-279:7].

19. Stephanie has a vivid memory of observing her injuries.  She looked down and saw blood pouring from her leg and the skin between her shin and foot had separated; it was as if a potato peeler had been used on her leg and her blood vessels were hanging like spaghetti.  [Stephanie, 175:7-17, 176:16-22, 199:16-17, 207:19-209:20, 283:15-21].

20. Denroy Scarlett, an employee of the Resort, did not personally observe Stephanie's fall but did find Stephanie after the accident.  At that time, he observed that she had lost so much blood that the water in the pond had turned blood red.  Mr. Scarlett also observed the flip-flop at the scene.  (**Exhibit 8**, Deposition of Denroy Scarlett ["Denroy"], 27:1-10, 28:11-14).

21. After Mr. Scarlett obtained some towels for Stephanie he immediately assisted in putting her into a car so she could be rushed to a hospital.  [Denroy, 19:9-14].

22. Due to the severity of her injuries, the only other memories Stephanie recalls, after viewing her leg, is pleading for someone to find Carrie and subsequently being lifted into the backseat of a car to be transported to the hospital.  [Stephanie, 174: 22-25, 175:1-11,

17-23, 284:9-15]. The location of the flip-flops, quite obviously, was the last thing on Stephanie's mind. [SOF, 31:10-19].

23. Stephanie was not able to state whether she was in the process of making a right versus left step when she fell and she could not recall the exact position of her body when she landed but she does recall that she rolled over onto the side of pond, the position where she was later found by Mr. Scarlett. [Stephanie, 171:17-172:2, 198:6-199:14, 278:6-19, 281:14-18,282:4-6, 283:11-24].

24. Stephanie never returned to the Resort after being rushed to the hospital. Stephanie spent the entire night in the hospital in Jamaica and on March 19, 2004, she was flown to Boston where she was immediately transported to Massachusetts General Hospital for emergency surgery. [Carrie, 55:24-56:9, 65:16-22, 69:1-8, 193:6-13], [Stephanie, 32:6-9, 211:10-14, 215:17-21], and [**Exhibit 9**, Massachusetts General Hospital Discharge Order].

25. When Carrie returned to the Resort hours after accompanying Stephanie to the hospital the flip-flops were not present. [Carrie, 200:8-14].

26. The last time Carrie saw the subject flip-flop was after Stephanie's accident and at that time the broken flip-flop was located on a stair. On March 19, 2004 Carrie spoke with the Resort's personnel, however, no one provided Carrie with Stephanie's flip-flops or stated that they had preserved any of Stephanie's belongings. [Carrie, 193:14-194:17].

27. Mr. Scarlett stated that after Stephanie fell, either he or the Resort's maintenance crew cleaned up the accident scene. Mr. Scarlett did not know what subsequently happened to the flip-flop. [Denroy, 16:18-20, 22:2-14, 29:25-30:10].

28. Stephanie told her mother, while still at the hospital that her flip-flop broke, causing her to fall. [Lauren, 82:14-83:9].

29. Stephanie has undergone 3 surgeries as a result of the injuries she sustained due to the defective flip-flop and will in the future require reconstructive and plastic surgery. [Stephanie, 220:2-19, 389:16-390:18].

30. Prior to the accident Stephanie worked as a dental hygienist and was planning to have a child.  Today Stephanie is totally disabled, requires the use a cane, a leg brace, and is forced to wear fitted pressure bandages on her leg.  [Stephanie, 52:6-17, 73:20, 74:24-75:1, 218:20-219:9] and [**Exhibit 10**, Social Security Administration, Notice of Award]. In addition, because in order to manage her injuries Stephanie is required to take in excess of 11 medications, her neurologist, gynecologist, and primary care physician have all advised Stephanie that she should not attempt pregnancy.  [Stephanie: 70:10-17, 71:5-17, 222:21-226:25].

31. Stephanie was not drunk when she fell, she did not fall and trip because she could not see the stairs, and she did not fall and trip because she could not see the turtle pond. [Stephanie, 148:9-12, 149:8-12, 149:24-150:2, 158:20-24, 180:10-12, 189-190], [Denroy, 17:25-18:12, 27:20-25].

32. "The reason the accident happened was because the flip-flop broke."  [Stephanie, 179:4-8].

33. The flip-flops were never mishandled by Stephanie or by anyone else.  There is no evidence in the record before the Court that Stephanie ever dragged her toe or did anything of that nature during the brief period she wore the flip-flops.  [Stephanie, 172:9-13].  On the contrary, the evidence is that Stephanie used the flip-flops for their normal and intended use.  There is simply no evidence to the contrary.  [Deposition of Stephanie Hofer, Vol.'s I, II, and III; Deposition of Carrie LaRoche].

## PLAINTIFFS' RESPONSE TO GAP'S STATEMENT OF FACTS

Plaintiffs object to Gap's Statement of Facts. The purported "facts" fail to demonstrate the absence of material facts in dispute. For these reason alone, Plaintiffs would be well justified in resting on its pleadings. *Davidson v. Stanadyne, Inc.* 718 F.2d 1334 (1983) (no defense is required by Rule 56(e) if the movant fails to meet his burden of showing the absence of any genuine issue of material fact because an opponent of the motion has no duty to present evidence in opposition "when the matters presented fail to foreclose the possibility of a factual dispute").

Plaintiffs also object to Gap's Statement of Facts to the extent that the purported "facts" are made without record reference, are not in compliance with Rule 56.1, and are based on conjecture, supposition, and opinion. A Court "must disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation." *Abbott v. Bragdon*, 107 F.3d 934, 942 (1st Cir.1997).

Plaintiffs, therefore, respond only to those statements that contain record citations, and are not made on conjecture, supposition, and opinion:

1.    Plaintiffs state that the cited portions of the Complaint speak for themselves.

2.    Plaintiffs deny that Stephanie's Answers to Interrogatories state or "indicate" that Stephanie purchased four pairs of sandals, including the subject sandals that purportedly caused her accident, at an Old Navy retail store during the spring of 2004. Plaintiffs' further state that Stephanie's Answers to Interrogatories specifically do not state the cited allegations.

3.    Plaintiffs deny each statement Gap attributes to Nadine Mafredi, an employee of the Gap. The affidavit referenced in support thereof is contradictory on its face. The affidavit states that the sandals in question, described as "wrapped," were sold in

2003.  Yet the Defendant's statement states that they last sold in 2002.  In addition, Plaintiffs state the Gap failed to provide any description of what it intended by the reference term "wrapped." As all flip flips are similarly styled in a "wrapped" fashion Plaintiffs are without ability to discern the intended meaning of such a designation. Plaintiffs further state that the eyewitness testimonies of Stephanie Hofer, Lauren M. Drew and Carrie LaRoche contradict Ms. Mafredi's affidavit and creates a genuine dispute.

4.    Plaintiffs state that Plaintiff, Stephanie Hofer's, Response to Defendant Gap, Inc.'s First Request for Admissions speak for themselves.  Stephanie further states, however, that the flip-flops were never in her possession following her fall and that they were disposed of, without her knowledge or consent, by the Resort.

5.    Plaintiffs admit that the cited reference to the deposition of Patricia Reese states that a directional pull test and a cycling test are performed on all "styles" of flip-flops sold by the Gap, that the directional pull test is a single application of force in multiple directions and that amount of force is measured by an Instron.  Plaintiffs' further state that within the cited text Gap also admits that not every flip-flop undergoes testing.

6.    To the extent that the Defendant cites to the deposition testimony of Patricia Reece, the Plaintiffs admit that stated references are contained in her testimony.  To the extent that the testimony contains her opinions, the Plaintiffs are unable to respond.

7.    To the extent that the Defendant filed a Supplemental Disclosure identifying its experts the Plaintiffs admit to same.  To the extent that the Defendant states that the expert opinions of John Moalli, Maureen T.F. Reitman or William Newberry, the Plaintiffs submit that the opinions do not fall within the meaning of a statement of fact pursuant to Rule 56.1.

8.      To the extent that Defendant alleges the Plaintiffs failed to provide expert information in accordance with the Court's directive, the Plaintiff denies.

## **LEGAL ARGUMENT**

### I.      **SPOLIATION**

Ostensibly, the brunt of Gap's spoliation claim is that Stephanie acted either negligently or deliberately by failing to retain the flip-flop which caused her injuries and that it has been prejudiced by an inability to inspect the flip-flop. In Gap's view, Stephanie's inability to obtain control of the flip-flops while she was laying in a pool of her own blood suffering from permanent disabilities, is a form of evidence spoliation, and that it is so severe as to warrant outright dismissal of the case. Gap's argument, however, is without support and bespeaks a lack of anything that would warrant the application of the spoliation doctrine or the sanction of dismissal. In fact, Gap's entire spoliation argument is a red herring, arguably advanced in bad-faith. The fact that Gap failed to cite a single case in which a court actually imposed sanctions, adverse to a blameless party, supports this conclusion.

### A.      *The Spoliation Doctrine Does Not Apply to Stephanie.[1]*

#### i.      **The Spoliation Doctrine Does Not Apply In Situations When a Litigant Does not Have Notice that the Evidence Is Relevant Or When They Are Not Responsible for the Evidence's Destruction.**

Spoliation is the intentional, negligent, or malicious destruction of relevant evidence.

*Townsend v. American Insulated Panel Co.*, 174 F.R.D. 1 (D. Mass. 1997). For the doctrine

---

[1] Gap, however, is guilty of spoliation of evidence. The Plaintiffs made written request of the Gap for Credit Card receipts, which it maintains within its possession, custody, and control and which would evidence Stephanie's credit card purchase of the subject flip-flops. Not only did Gap fail to produce the relevant documentation, it attempted to conceal its actions by misrepresenting otherwise. Given the Defendant's defense that the subject flip-flops could not have been sold by it during the relevant time period, the requested documentation has probative value in either supporting Plaintiffs' allegations or adversely impacting the Gap's defense. An inference may adversely be drawn against the Gap at the time of trial. The Court should also note that there is also a spoliation issue against the Defendant, Expedia, Inc., which will be addressed in Plaintiffs' Opposition to Expedia's Motion for Summary Judgment.

to apply, "a litigant that destroys evidence must have notice that [evidence] in its possession is relevant to litigation or potential litigation, or is reasonably calculated to lead to the discovery of admissible evidence." *McGuire v. Acufex Microsurgical*, 175 F.R.D. 149 (D. Mass. 1997), see also *Kronisch v. United States*, 150 F.3d 112, 126 (2nd Cir. 1998) ("This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation").

In addition, when evidence is lost to no fault of a party, the spoliation doctrine is inapplicable. *Townsend*, 174 F.R.D. 1 at 5. In other words, "absent any evidence that the plaintiff was at fault for the loss or destruction [of the evidence], it would be inappropriate to apply the spoliation doctrine and impose sanctions…" *Id*. "While it is true that "[a] litigant has a duty to preserve evidence, the duty <u>does not</u> extend to evidence which is not in the litigant's possession or custody and over which the litigant has no control." *Id*.

In *Townsend*, the plaintiff sought to recover from the manufacturer of a walk-in freezer for injuries she sustained. *Townsend,* 174 F.R.D. 1 at 3-4. The plaintiff was a manager at the restaurant where the walk-in freezer had been located. *Id*. Years later, the plaintiff's employer either dismantled or sold the freezer. *Id*. In finding that the plaintiff was not responsible for the acts of her employer, the Court held that the disposition of the freezer was outside of the possession, custody and control of the plaintiff. *Id*. To support its holding the District Court for the District of Massachusetts adopted the reasoning expressed in many other jurisdictions:

> "[t]here does not appear to be a basis for concluding that such a sanction [preclusion from proving defect] would be appropriate when no conduct on the part of the plaintiff is the cause of the destruction of the allegedly defective product.
> ***

In short, then, the cases in which judgment has been entered in favor of defendants because the plaintiffs have lost or destroyed key evidence are consistent with the doctrine of spoliation of evidence. … To hold that no plaintiff may recover in a product liability action when the actual product which is alleged to be defective is unavailable, regardless of the conduct of the plaintiff, is an unwarranted expansion of the doctrine of spoliation."

*Townsend,* 174 F.R.D. 1 at 4-5, citing *Gordner v. Dynetics Corporation*, 862 F. Supp. 1303 (M.D. Pa., 1994).

Furthermore, the extent of any alleged prejudice is not a consideration when determining whether to apply the spoliation doctrine; such prejudice, if any, bears only on the issue of the scope of the sanction to be imposed if spoliation is found. *McGuire,* 175 F.R.D. at 153.

### ii. The Facts and Circumstances of This Case Do Not Support Use of the Spoliation Doctrine and Gap Has Not Provided Any Authority to the Contrary.

The facts of this case are far from supporting even an inference that Stephanie either maliciously destroyed evidence or deliberately attempted to prevent the Gap from inspecting the flip-flop. (Statement of Facts ["SOF"], 13, 14, 18, 20, 24, 27). The facts are also far from illustrating negligence or even carelessness by the Plaintiffs. *Id.* Furthermore, there is not even a scintilla of evidence that Stephanie had knowledge, on March 18, 2004, that the flip-flop should have been preserved. [SOF, 22].

The record evidence demonstrates that Stephanie never had possession or control over the flip-flop after sustaining her injuries. [SOF, 24-27]. Stephanie was wearing the subject flip-flops when one became detached and caused her to fall. [SOF, 13-14, 32]. Mr. Scarlett, the first person who reportedly found Stephanie after the accident, observed she had lost so much blood that the water in the turtle pond had turned red. [SOF, 20]. When Carrie found Stephanie, after she had sustained her injuries, she was lying on a bench with her "leg half hanging off gushing blood everywhere." [SOF, 33-Carrie, 31:15-18]. Stephanie was rushed immediately from the accident scene to a Jamaican hospital for emergency care and was never able to return to the Resort where she had last been in possession of her footwear.

11

[SOF, 21-22, 24].  In fact, Stephanie was transported directly from the hospital in Jamaica to Boston where she was admitted for emergency surgeries and remained hospitalized for approximately 12 days before being sent home to convalesce.  [SOF, 24].  Moreover, Stephanie did not have any ability to control how the Resort cleared the accident scene.  The Resort, using a maintenance crew, had removed and cleaned the accident scene while Stephanie lay in the hospital.  [SOF, 27].

Notwithstanding Gap's protestations otherwise, any suggestion that Stephanie's retention measures were deliberate, negligent, or even careless is simply misplaced.  The only conclusions that can be drawn from the record evidence are that Stephanie had no control over the subject flip-flop [SOF, 24-27] and that in the minutes that followed her accident, while Stephanie lay helpless at the Resort, she was not contemplating litigation.  [SOF, 22]. Absent such findings, Stephanie cannot be considered a spoliator.

Significantly, Gap has failed to cite a single case in the First Circuit (or any circuit) which has applied the spoliation doctrine without first determining that a party, with knowledge that evidence should be preserved, was responsible for the destroyed evidence. The *Headley and Sacramona* cases heavily relied upon by the Gap do not create exceptions to these enunciated requirements – in fact, a review of these cases show that both Courts specifically found these requirements present before proceeding to apply the spoliation doctrine.  *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362 (1991); *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F. 3d 444 (1997).

In *Headley*, as in *Sacromona*, the plaintiff did not dispute the characterization of its destruction of the evidence as being intentional or negligent.  *Headley*, 141 F.R.D. at 364. After the plaintiff in *Headley* and its expert fully inspected the evidence they allowed it to be

destroyed.  *Id.*  In support of its findings that the spoliation doctrine applied, the Court

specifically distinguished the plaintiff's conduct, in destruction of the evidence, from those

situations "when destruction results from no fault of the party or his agents" and specifically

found that plaintiff destroyed the evidence "after notice that [it] should have been retained for

evidentiary purposes."  *Id.*

In *Sacramona*, the evidence revealed that a wheel had undergone "somewhat destructive"

examination by the plaintiff's expert making it impossible to determine whether the wheel

and tire had been mismatched (the theory of the plaintiffs case).  *Sacramona*, 106 F. 3d at

445-446.  Plaintiff, however, later submitted an affidavit by its expert tending to negate that

he was responsible for damaging the wheel.  *Id.*  Upon appellate review by the District Court

for the District of Massachusetts, the Court held that had plaintiff sought an evidentiary

hearing on the issue of damage and "<u>responsibility for it</u>," since these issues were murky, the

lower court could well have abused its discretion in denying the plaintiff an opportunity to

establish that he was not responsible for damage to the wheel.  *Id.*, 447.  But since the

plaintiff failed to object, the appellate Court was without the power to reverse.  *Id.*

In short, the facts and circumstances of this case do not give rise to the application of the

spoliation doctrine and Gap has simply failed to establish any authority to the contrary.[2]

**B.**      ***Even if this Court Determined that the Spoliation Doctrine Did Apply, Gap Has***
            ***Failed to Establish that Dismissal is Warranted.***

Although this Court has the inherent power to exclude spoliation evidence, where

necessary to prevent the non-offending side from suffering unfair prejudice, as a general

principle, courts view dismissal as a harsh sanction, which runs counter to the strong policy

favoring the disposition of cases on the merits.  *Benjamin v. Aroostook Med. Ctr., Inc.*, 57

---

[2] In the event, however, this Court has any doubt as to Stephanie's responsibilities, Plaintiffs request that an evidentiary hearing be held.

F.3d 101, 107 (1st Cir. 1995).  Normally, sanctions imposed based on the destruction of

relevant evidence involve exclusion of evidence or permitting inferences to be drawn against

the culpable party.  *McGuire*, 175 F.R.D. at 156.  If a Court finds that a party is a spoliator, it

must only impose those sanctions which correspond to its findings.  *Northern Assurance Co.*

*v. Ware*, 145 F.R.D. 281, 283-284 (D. Me. 1993).

     In addition, since one of the aims of the spoliation doctrine is intended to sanction the

offending party, the degree of fault of the offending party is a salient inquiry.  *Headley v.*

*Chrysler Motor Corp.*, 141 F. R. D. 362, 365 (Mass. 1991).  In this regard, bad-faith is a

proper and important consideration in deciding whether and how to sanction conduct

resulting in the destruction of evidence, particularly in assessing whether to summarily

dismiss a party's claim.  As outlined above, no such bad-faith exists here.  Moreover, since

Gap, as the moving party, has failed to articulate any grounds of prejudice it must be denied

its requested relief.

     Gap has not identified a single issue relevant to its defense that inspection of the flip-flop

may have resolved.  Nowhere in its motion for summary judgment or in its supporting

statement of material facts does Gap provide evidence that its inability to inspect the flip-

flops has prejudiced its ability to defend its case fairly.  Rather, *Gap's counsel* only self-

servingly states that the flip-flop is crucial to its case.  Gap did not reference the record

evidence in support of its counsel's unverified allegation.  As a result, this Court should

strike and disregard Gap's claims of prejudice.  Unverified allegations are not accorded any

evidentiary weight.  *Perry v. Ryan*, 1991 U.S. App. LEXIS 7098 (1st Cir. 1991), see also

F.R.C.P., Rule 56(e).  Moreover, even if consideration of Gap's counsel's allegations were

permissible, Gap's contentions must nevertheless fail since it has not set forth any specific

facts substantiating prejudice.

In addition to failing to demonstrate how inspection of the flip-flip is crucial to its case by identifying those issues which inspection could resolve, Gap also offers no support for its unilateral conclusion that the exemplars provided by the Plaintiffs are not reliable representations. Plaintiffs, on the other hand, have presented substantial evidence that the exemplars are reliable representations.

Stephanie testified that although she could not recall when she purchased the subject flip-flops, she did recall that she purchased four pairs which, but for color, were identical. [SOF, 33, Stephanie: 131:3-5]. Lauren M. Drew, who saw the subject flip-flops, connected by an Old Navy hanger, prior to her daughter's departure to Jamaica, has also provided testimony that the exemplars are fair representations of the subject flip-flops. [SOF, 11]. In addition, Ms. LaRoche, the only other person who witnessed Stephanie wearing the flip-flops on March 18, 2004, states that Stephanie had shown her the subject flip-flops, either the night before or morning of their departure to Jamaica, and identified them as being "new;" the flip-flops were still connected by an Old Navy store hanger; the flip-flops bore the Old Navy brand name; and the exemplars produced to the Gap for inspection are a fair and accurate representation of the subject flip-flops. [SOF, 10-11, 16]. Finally, and perhaps most importantly, Ms. LaRoche states that she observed the _broken_ flip-flop on a stair at the Resort following Stephanie's accident and that it was one of the same flip-flops which had been previously been connected by the Old Navy store hanger. [SOF, 17].

Plaintiffs further state that Gap's inability to evidence how inspection would have resolved any disputed areas is because possession of the "broken" flip-flop would not, in fact, assist Gap in disproving Plaintiffs claims. "Although a defendant may testify that he has exercised all reasonable care, the conclusion may still be drawn, on the basis of ordinary

human experience, that he has not." <u>Restatement (Second) of Torts</u>, Section 328D (1965), cm. n.

## II.     **PRODUCT CLAIMS**

Gap claims that, absent specific expert testimony, the breaking of a flip-flop, on its first wear, and the subsequent personal injuries suffered by Stephanie, cannot be connected to any defect in the flip-flop.  Essentially Gap argues that it cannot be found negligent or to have breached its warranty of merchantability without expert testimony regarding the precise nature of the alleged defect and its causal relationship to Stephanie's accident.

For the reasons stated more fully below, Plaintiffs state that they are not required to provide expert testimony to support their claims because (1) the breaking of a new flip-flop is within the common fund of lay knowledge, (2) the Gap's negligence can be inferred by use of the doctrine of res ipsa loquitur, and that with respect to Gap's warranty liability, (3) Stephanie has satisfied her burden of proof.

### A.     *Legal Standard On Summary Judgment*

The test for summary judgment is rigorous.  *Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 934 (1st Cir.1987).  "When presented with a motion for summary judgment, the judge must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any to determine whether summary judgment is appropriate."  Mass. R. Civ. P. 56 (c); *Conley v. Massachusetts Bay Transportation Authority*, 405 Mass. 168, 173 (1989).  The Court has no duty or function to try or decide factual issues.[3]

---

[3] "Even in cases where the judge is of the opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented." *Hughes v.*

"A party moving for Summary Judgment has the burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." *Foley v. Matulewicz*, 17 Mass. App. Ct. 901, 1005 (1984); *Conley v. Massachusetts Bay Transportation Authority*, 405 Mass. 168 (1989).  The court must look at the record in the light most favorable to the nonmoving party and "must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir. 1983) and *Staffier v. Sandoz Pharmaceuticals Corp.,* 888 F. Supp. 28 (Mass,1995), citing *O'Connor v. Steeves,* 994 F.2d 905, at 907 (1st Cir. 1993).  If a reasonable factfinder could resolve any material issue in favor of the non-moving party after reviewing the record in this generous light, then summary judgment must be denied.  *Mack v. Great Atlantic and Pacific Tea Company,* 87 F.2d 179, 181 (1st Cir.1989).

Further, all doubts as to the existence of material fact must be resolved against the party moving for summary judgment.[4]  *Donovan v. Agnew,* 712 F.2d 1509, 1509-16 (1st Cir.1983); *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922 (1st Cir.1983); *Foley*, *supra*, at 1005, quoting 10A Wright & Miller, Federal Practice and Procedure §2727, at 124-125 (2 ed. 1983) ("The movant is held to a stringent standard . . . any doubt as to the existence of a genuine issue of material fact will be resolved against [him].  Because the burden is on the movant, the evidence presented . . . always is construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences that can be drawn from it.").

---

*American Jawa, Ltd.,* 529 F.2d 21, 25 (8th Cir.1976) (quoting *Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.), *cert. denied,* 342 U.S. 887, 72 S. Ct. 197, 96 L.Ed. 665 (1951)).

[4] "It is well-settled that the party moving for summary judgment has the burden of demonstrating that the Rule 56(c) test-'no genuine issue as to any material fact'-is satisfied and that he is entitled to judgment as a matter of law. The movant is held to a stringent standard.  Before summary judgment will be granted it must be clear what the truth is and any doubt as to the existence of a genuine issue of material fact will be resolved against the movant.  Because the burden is on the movant, the evidence presented to the court always is construed in favor of the party opposing the motion ...."  10A Wright, § 2727.

The question whether a duty was breached is a question of fact. *Armstrong v. United States,* 756 F.2d 1407, 1409 (9th Cir.1985). It follows that summary judgment is rarely appropriate when the issue of negligence and proximate cause are involved and is, therefore, seldom granted. Wright, Miller & Kane, 10A *Federal Practice and Procedure* § 2729 (1983); *Gross v. Southern Railway Company,* 414 F.2d 292 (5th Cir.1969); *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970); Wright & Miller, *Federal Practice & Procedure:* Civil 2nd Section 2729; *Foley*, *supra*, at 1005, quoting 10A Wright & Miller, Federal Practice and Procedure §2727, at 194 (2 ed. 1983).

One rationale for this rule, as applied to negligence cases, was stated in *Gauk v. Meleski,* 346 F.2d 433 (5th Cir.1965), as follows:

> "Because of the peculiarly elusive nature of the term 'negligence' and the necessity that the trier of fact pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed." *Id*., 437.

see also *Foley*, *supra*, at 1005, quoting 10A Wright & Miller, *Federal Practice and Procedure* §2727, at 194 (2 ed. 1983) (it is rarely appropriate to grant summary judgment, "on merits of a negligence action because of the jury's 'unique competence in applying the reasonable man standard to a given fact situation).

 Summary judgment is generally also inappropriate in products liability cases, since a question of fact typically exists regarding causation. *Cross v. Cummins Engine Co.*, 993 F.2d 112 (Miss.1993) ("[u]se of summary judgment is rarely appropriate in negligence or product liability cases, even where material facts are not disputed); *Trevino v. Yamaha Motor Corp.,* 882 F.2d 182 (5th Cir.1989) (the use of summary judgment is rarely appropriate in negligence or products liability cases, even where the material facts are not disputed); s*ee also*, FEDPROC § 62:742, and *Marsden v. Patane,* 380 F.2d 489, 491 (5th Cir.1967); *Gross*

*v. Southern Railway Co.,* 414 F.2d 292, 296 (5th Cir.1969), *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970), *King v. Avtech Aviation, Inc.,* 655 F.2d 77, 78 (5th Cir.1981), 10A Wright & Miller, *Federal Practice and Procedure* § 2729 at 195 (1983) (all finding summary judgment "<u>inappropriate</u>" in product liability cases).

Where, as here, the record makes plain that genuine issues of material fact are in dispute, it is not appropriate to grant summary judgment.

**B.     *Negligence Liability***

The basic elements of a products liability action founded on negligence are duty, breach of duty, and proximate cause.  *Colter v. Barber-Greene, Co.*, 403 Mass. 50, 525 N.E.2d 1305 (1988).  Negligence, through the doctrine of *Res Ipsa Loquitur*, may be established by circumstantial evidence.  *Coyne v. Tilley Co., Inc.*, 368 Mass. 230, 331 N.E. 2d 541 (1975). The question of negligence is one of fact for the jury.  *Marquez v. Home Depot USA, Inc.*, 154 F. Supp. 2d 152 (D. Mass. 2001).  It is only when no rational view of the evidence warrants a finding that the defendant was negligent that the issue can be taken from the jury. *Luz v. Stop & Shop, Inc. of Peabody*, 348 Mass. 198, 203-204 (1964), *Beaver* v. *Costin*, 352 Mass. 624, 626 (1967), *Zezuski v. Jenny Mfg. Co.*, 363 Mass. 324, 327 (1973).

Since, as matter of law, it cannot be disputed that Gap owed Stephanie a duty Plaintiffs will address the issues of breach and causation.

Plaintiffs allege that Stephanie's injuries were caused by the defective flip-flops manufactured and sold by the Defendant.[5]  As this case involves the negligent manufacture of a particular product, rather than a line of products, the applicable analysis can be found in

---

[5] The common acceptance of trademarks or trade names on products as proof of the manufacturer of products, which has been reinforced by manufacturers' advertising, indicates that the identity of a corporation's name and the name on a product should be sufficient to identify that corporation as the manufacturer.  *Smith v. Ariens Co.,* 375 Mass. 620 (1978).

*Coyne v. Tilley Co.*, 368 Mass. 230 (1975), *Kenney v. Sears, Roebuck & Co.*, 355 Mass. 604 (1969), *Carney v. Bereault*, 348 Mass. 502 (1965), *Selissen v. Empire Bottling Co.*, 343 Mass. 779 (1962), and *Evangelio v. Metropolitan Bottling Co.*, 339 Mass. 177 (1959).

"In these types of cases, to show that the defect is attributable to the manufacturer, the plaintiff must only show that it was not caused by intermediaries." *Smith v. Ariens Co.*, 375 Mass. 620, 627 (1978), 377 N.E.2d 954.  It is in this regard that *Res Ipsa Loquitur* aids the Plaintiffs case.

*Res Ipsa Loquitur*, which is sometimes referred to as the common sense view, allows plaintiffs to use circumstantial evidence to prove the existence of a defect or breach of warranty.  *Enrich v. Windmere Corporation*, 416 Mass. 83, 616 N.E. 2d 1081 (1993), *Haas v. United States of America*, 492 F. Supp. 755 (1980), Westlaw CJC Sales Section 300, VIII, Warranties.  It is a way of showing negligence in some "unspecified way by excluding all possibilities other than defendant's negligence, even though not going far enough to show just what a defendant did or failed to do that was wrong."  *Haas v. United States of America*, 492 F. Supp. 755 (1980).[6]

The inference that the defendant was negligent is established when the event is of a kind which ordinarily does not occur in the absence of negligence;[7] other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence (a plaintiff, however, is not required to exclude all other possible conclusions, it is

---

[6] However, a plaintiff need not exclude all other possible causes, he must merely show that there is a greater probability than not that the accident resulted from the defendant's negligence. *Enrich v. Windmere Corporation*, 416 Mass. 83, 616 N.E. 2d 1081 (1993).

[7] In the usual case, the basis of past experience from which this conclusion may be drawn is common to the community, and is a matter of general knowledge, which the court recognizes on much the same basis as when it takes judicial notice of facts, which everyone knows.  No expert is needed when there is what has been called a fund of common knowledge.

enough that he makes out a case from which the jury may reasonably conclude that the negligence was more probably than not that of the defendant)[8]; and the negligence is within the scope of the defendant's duty to the plaintiff.   Restatement (Second) of Torts, Section 328D, (1965), *Hass*, 492 F. Supp. at 761.[9]

There is no dispute that it was Gap's duty to sell its product to Stephanie, without defect. There is also no doubt that the breaking of a new shoe is the kind of event which ordinarily does not occur in the absence of negligence.  Since Stephanie has also eliminated the possibility of any intermediary causes, she is afforded the inference of *Res Ipsa Loquitur* on her claims.[10]  [SOF, 31-33].  Consequently, there is an inference that Stephanie's flip-flop, which broke on its first wear, resulted from Gap's negligence.

It should also be stated that the inference permitted by the doctrine of *Res Ipsa Loquitur* is not defeated by a defendant's evidence that an event was not caused by his negligence. Restatement (Second) of Torts, Section 328D, (1965).  Therefore, Gap's reliance on its own designee's testimony that "all styles" of its flip-flops were tested does nothing to defeat Stephanie's negligence claims and, at best, merely demonstrates a disputed issue to be resolved by the jury.  The moving party on summary judgment bears the burden of demonstrating that there is no genuine issue as to any material fact and that the moving party

---

[8] A plaintiff may sustain this burden of proof by the aid of a second inference, based on a showing that the defendant is responsible for all reasonably probable causes to which the event can be attributed.  This may be done by showing sufficient evidence to eliminate intermediate causes.

[9] See *Coyne v. John S. Tilley, Co. Inc.*, 368 Mass 230, 331 N.E. 2d 541 (1975) (when a properly fabricated and designed aluminum ladder put to proper care and usage collapses, the occurrence of the accident will support an interference of negligence); see also, *Evangelio v. Metropolitan Bottling Co.*, 339 Mass. 177, 180 (1959) (the explosion of a bottle containing a carbonated beverage is the kind of occurrence which usually does not happen in the absence of negligence).

[10] *Le Blanc v. Ford Motor Co.*, 346 Mass. 225, 231 (Mass. 1963) (a jury could reasonably regard it as unlikely that there would be tampering with the selector mechanism or that the minor use and moving of a new automobile stored on a dealer's lot would materially change the condition of the vehicle from that in which it was delivered or would result in damage to, or maladjustment of, a properly made and inspected new vehicle-under these circumstances it was open to the jury to conclude that the plaintiff's accident would not have occurred unless there had been negligence on Ford's part.).

is entitled to a judgment as a matter of law. F.R.C.P., Rule 56(c), *GMAC v. Camilleri Bros. Chevrolet of Holyoke, Inc.*, 188 F. Supp. 2d 73 (D. Mass. 2001). It is the function of the jury to determine whether the inference [of negligence] is to be drawn in any case where different conclusions may reasonably be reached. Restatement (Second) of Torts, Section 328D (1965), *Hass,* 492 F. Supp. at 761.

Moreover, Gap's designee's testimony that "all styles" undergo testing is of little significance. That she also testified that each marketed flip-flip did not undergo testing, however, is significant. [Deposition of Patricia Reese, p. 32[11]]. Similarly, it was also helpful to Plaintiffs that Gap admitted to having reduced its testing standards. *Id*.

The purported conclusions of Gap's liability expert also fail to aid Gap's pursuit of summary judgment. Such conclusions are based merely on speculation, surmise, and conjecture and should be disregarded for summary judgment purposes. As said above, "[a]s a defendant's evidence approaches complete demonstration that the event could not possible have occurred, it is all the more clearly contradicted by the fact that it has occurred." Restatement (Second) of Torts, Section 328D (1965), cm. n.

### i.  A Flip-Flop, Arguably, Is Perhaps The Simplest of Products Well Within The Common Knowledge of a Layperson.

Expert witnesses are employed only when it will help the fact-finder understand matters beyond his experience. *Adams v. United States Steel Corporation*, 24 Mass. App. Ct. 102, 506 B.E. 2d 893 (1987).[12] For this reason, the competency of an expert witness to testify to his opinion must rest upon "*unusual knowledge and extraordinary experience, superior to*

---

[11] The referenced text appears in Ms. Reese's deposition excerpts attached to Defendant's Summary Judgment record and has not been reproduced by the Plaintiffs herein.

[12] Federal Rule 702 makes clear, in addition to being reliable, expert testimony will only be admitted so long as it is relevant.

*that of ordinary persons.*" *Commonwealth v. Russ*, 232 Mass. 58, 122 N.E. 176 (1919) (emphasis added).

That a flip-flop should not break, <u>the first time it is worn</u>, is not technical or complex in nature; it is not unusual knowledge which only extraordinary experience can explain; rather, it is quite clearly information within the common knowledge and experience of a layperson. Indeed, it strains the imagination to envision how the ordinary person, applying their natural commonsense, would be unable, without an expert, to conclude that a flip-flop (or any shoe) should not break on its first wear. This is a classic case of a simple defect leading to a devastating injury.

This point is illustrated in each of the following cases where expert testimony as to the exact nature of a defect was unnecessary since the matter was not technical and was within the purview of the fact-finder's common knowledge or experience:

(1) *Coyne v. John S. Tilley, Co., Inc.*, 368 Mass 230, 235, 331 N.E. 2d 541 (1975) (jury could infer as a matter of common knowledge that a newish aluminum step ladder would not when being used collapse inward at a 45 degree angle unless someone had been negligent);

(2) *Collins v. Sears, Roebuck & Co.*, 31 Mass. App. Ct. 961, 962, 583 N.E. 2d 873 (1992) (electric clothes dryer caught on fire two and a half years after purchase and although moved and installed elsewhere defendant liable without expert testimony of exact nature of defect- there was no evidence that the plaintiffs, or any other party had worked on electrical system - the inability to pinpoint the exact defect within the dryer's electrical system affected only the weight of the plaintiffs' case; the evidence, however, was sufficient to warrant an inference on the jury's part that some defect in the electrical system, present at the time of sale, caused the fire);

(3) *Richard v. American Manufacturing Co., Inc.*, 21 Mass. App. Ct. 967, 489 N.E. 2d 214

(1986) (bag-bundling press manufacturer found liable without need for specific expert

testimony);

(4) *Petchel v. Collins*, 59 Mass. App. Ct. 517, 522, 523 (Mass. App. Ct. 2003) (it is a matter

of common understanding and knowledge that propane gas is an explosive and

flammable substance);

(5) *Merwin v. De Raptellis*, 338 Mass. 118, 120, 153 N.E.2d 893 (1958) (where a plaintiff

sought to recover damages from personal injuries sustained while descending a common

stairway expert testimony was unnecessary for jury to find that "clicking sound indicated

a movement of the [stairway] tread and that repeated applications of the weight of

persons passing upon it caused it to slip out of place");

(6) *Smith v. Airens*, co., 375 Mass 620, 625, 377 N.E. 2d 954 (1975) (snowmobile

manufacturer liable for manufacturing defect without expert testimony as to the exact

defect);

(7) *Stimpson v. Wellington Serv. Corp.*, 355 Mass. 685, 690-691, 246 N.E.2d 801 (1969)

(jurors could apply their knowledge and experience to fact that the effect of downward

movement on part of rigid pipe in street would cause an upward thrust at other end of

pipe) (a layman could also determine that a rigid pipe under pressure could fracture);

(8) *Adams v. United States Steel Corp.*, 24 Mass. App. Ct. 102, 506 N.E.2d 893 (1987) (it

was reasonable to conclude that a jury did not need outside help to determine whether a

hole in a parking lot was dangerous);

(9) *McInnis v. Tewksbury*, 19 Mass. App. Ct. 310, 313, 473 N.E.2d 1160 (1985), further app.

rev. den. 394 Mass. 1103, 477 N.E.2d 595 (expert testimony not necessary to determine

the amount of sawdust necessary in a pit where seventh grade students were directed to jump);

(10)   *Thomas v. Tom's Food World Inc.*, 352 Mass. 449, 226 N.E.2d 188 (1967) (expert testimony not needed to show the hazard of walking down a forty or forty-five degree grade); and

(11)   *Johnson v. Orange*, 320 Mass. 336, 69 N.E.2d 587 (1946) (court upheld the exclusion of expert evidence on the proper construction of a driveway entrance over a sidewalk by saying that the matter could easily be comprehended by a jury).

### ii.  **Expert Testimony is Also Not Required to Establish That Gap's Negligence Proximately Caused Stephanie's Injuries.**

"Direct testimony [by a party as to how injuries were sustained] clearly suffices, as a matter of law, to establish a *prima facie* case of causation."  *Collazo-Santiago v. Toyota Motor Corp.*, 957 F. Supp. 349, 356 (1997), see also *Merwin v. De Raptellis*, 338 Mass. 118, 120, 153 N.E.2d 893 (1958) (expert testimony not required on the issue of proximate causation when the plaintiff testified that the tilting of the tread caused her to fall).  In establishing causation, a plaintiff is not required to "point out the exact way in which the accident occurred as long as she shows a greater likelihood that her injuries came from an act of negligence for which the defendants were responsible.  *Zezuski v. Jenny Manufacturing Company*, 363 Mass. 324, 293 N.E. 2d 875 (1973).  Moreover, on this element too, proof can be established by either direct evidence or rational inferences drawn from the probabilities of established facts.  *Id*.  The mere existence of other possible causes does not preclude a jury from finding a defendant's negligence was the proximate cause.  *Id.*

Stephanie, through her own testimony, has made out a prima facie case on proximate causation.  Moreover, a jury is justified in concluding a causal relationship when, as here,

as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result. *Necktas v. General Motors Corp.*, 357 Mass. 546, 551 (1970), see also *Petchel v. Collins*, 59 Mass. App. Ct. 517, 522, 523 (Mass. App. Ct. 2003) (jury could reasonably infer that a causal connection existed between the presence of propane gas and plaintiffs subsequent injuries without the opinion of an expert); *McInnis v. Tewksbury*, 19 Mass. App. Ct. 310, 313, 473 N.E.2d 1160 (1985), further app. rev. den. 394 Mass. 1103, 477 N.E.2d 595 (expert testimony unnecessary to establish causal relationship between jumping into an unsafe pit and the injury sustained, a fractured ankle). A layperson, of ordinary experience, is justified in concluding that a person would fall upon the breaking of a shoe. Indeed, it is difficult, in not impossible, to imagine any other result.

In *Collazo- Santiago v. Toyota Motor Corp.*, 957 F. Supp. 349, the issue of proof of causation, by expert testimony, was addressed both at the pretrial and post trial stages. *Id*. In a pretrial hearing, the Court held that if the plaintiff would personally testify that she felt the airbag hit her face and abrade it, such testimony would be sufficient to establish a prima facie case of causation. *Id*. At trial, the plaintiff eliminated other probable factors for her facial burns and testified that she believed her injuries were caused by the airbags, although she could not state that the airbag hit her face. *Id.,* 355.

In defendant's motion for judgment, as a matter of law, it argued that the plaintiff failed to show that the product caused her damages because she did not introduce documentary or expert testimonial evidence showing the cause of the alleged damages and because, since she did not testify that the airbag impacted her face, her testimony was too conjectural and speculative. *Collazo-Santiago*, 957 F. Supp. 349 at 354-355. The Court held that the only proper way to deal with plaintiff's testimony was to challenge her credibility, not to

disregard it, since the evidence could (and did) lead a reasonable jury to conclude that the deployment of the airbag was the proximate cause of the plaintiff's facial burns. *Id.*, 356. The fact that the evidence on causation consisted of plaintiff's testimony did not render the evidence too conjectural or speculative for consideration by a jury. *Id.*

Stephanie's testimony, which unequivocally links her injuries directly to Gap's breach of duty, is even more definitive than the testimony given by the plaintiff in *Collazo-Santiago*. Stephanie has testified that she observed the flip-flop break immediately prior to her fall, she lost her balance as a result of the flip-flop breaking, and that she consequently fell into the turtle pond where she sustained her injuries. [SOF, 13-14, 32]. In addition, Stephanie recited to Carrie almost immediately after her fall and while still at the scene of the accident that her flip-flop had broken causing her to fall. [SOF, 15]. Further, Stephanie again recited these exact circumstances to her mother shortly thereafter while she at the hospital. [SOF, 28]. In cases where plaintiffs recite how they were injured within a short space of time, it makes any other explanation of how the injury occurred "highly improbable." *Beaver v. Costin*, 352 Mass. 624, 626 (1967). Stephanie's testimony establishes a prima facie case on the element of proximate causation.[13]

---

[13] Plaintiffs briefly address the Report submitted by Gap's Biomechanical Engineer. At best, the Report does no more than create a disputed issue for consideration by the jury. The Report is clearly based on supposition and assumptions, many of which are premised on demonstrably false record citations or which have been taken out of context. Moreover, its conclusions are clearly premised on pure speculation, all of which a jury is free to disregard. For example, the Report assumes that Stephanie was in forward momentum at the time of her fall, "making it even less *"likely"* that an event such as a trip would cause her momentum to shift to the right to cause her to fall into the turtle pond." Stephanie, however, did not testify that she was in "forward *momentum*." Rather, Stephanie testified that she was on the landing of the stairs when she looked down and saw the flip-flop break all within the same few seconds that she fell. [SOF, 14].

The Report, most likely in order to mask its shortcoming, also consists of the author's analysis and comparisons of the various witnesses' testimonies, the majority of which are incorrectly summarized and bear no relevance to causation. In this respect, the Report also contains hearsay within hearsay not subject to any exception. This Court should disregard, for summary judgment, all hearsay statements contained in the Report.

C.        _Warranty Liability_

A claim for breach of the implied warranty of merchantability is governed principally by

Mass. Gen. Laws ch. 106, § 2-314(2)(c).  Warranty liability focuses on whether the product

was defective <u>and not</u> on the conduct of the user or the seller.  *Colter v. Barber-Greene, Co.*,

403 Mass. 50, 525 N.E.2d 1305 (1988) quoting *Correia v. Firestone Tire & Rubber, Co.*, 388

Mass. 342 (1983).  The inquiry is, therefore, not whether the defendant took all reasonable

measures to make a product safe.[14]  *Rice v. James Hanrahan & Sons*, 20 Mass. App. Ct. 701

(*1985*).  In fact, "[b]ecause a breach of warranty does not require a defendant's misconduct, a

defendant may be liable on a theory of breach of warranty of merchantability even though he

or she properly designed, manufactured, and sold his or her product."  *Id*.  It is for this reason

that "[a] defendant in a products liability case may be found to have breached its warranty of

merchantability without having been negligent…"  *Hayes v. Ariens Co.*, 391 Mass. 407

(1984).  For the purposes of warranty law [a] vendor is presumed to have been fully informed

at the time of the sale of all risks.  The state of the art is irrelevant, as is the culpability of the

defendant.  Liability is imposed as a matter of social policy.  *Hayes,* 462 N.E.2d at 277-278

(1984); *see also Simmons v. Monarch Machine Tool Co., Inc.,* 413 Mass. 205, 596 N.E.2d

318, 320 n. 3 (1992).

For a plaintiff to recover for breach of an implied warranty of merchantability, she need

only demonstrate that the damages complained of are proximately caused by a defect which

existed at the time of sale.  *Fernandes v. Union Bookbinding Company, Inc.*, 400 Mass. 27,

---

In short, a jury could reasonably find, based on Stephanie's testimony, that the accident occurred as described
by her.  As stated above, "[a]s a defendant's evidence approaches complete demonstration that the event
could not possible have occurred, it is all the more clearly contradicted by the fact that it has occurred."
<u>Restatement</u>, cm. n.

[14] Actions under Massachusetts law for breach of the implied warranty of merchantability are the functional
equivalent of strict liability in other jurisdictions.  *Back v. Wickes Corp.,* 375 Mass. 633, 639-40, 378 N.E.2d
964 (1978)**.**

507 N.E.2d 728 (1987) citing *Walsh v. Atamian Motors, Inc.*, 10 Mass. App. Ct. 828, 829 (1980).  As a result, the condition of the product at the time of the accident vis-à-vis the time of the sale is a determative factor on proximate cause.  *Id*.

     "*Shoes from which soles readily detach are not fit for use as footwear and thus are not merchantable.*"  *Knapp Shoes v. Sylvania Shoe Mfg. Corp.* 418 Mass. 737 (1994), 640 NE2d 1101, subsequent app, remanded (CA1 Mass) 72 F3d 190, 28 UCCRS2d 430, cert den 517 US 1245, 135 L Ed 2d 191, 116 S Ct 2500.  That the subject flip-flops were not merchantable, thus, cannot be disputed.  As discussed above, Stephanie has also established proximate causation.

     Therefore, the only remaining inquiry concerns whether the defect existed at the time of sale.  Although this point is typically reserved until after trial, when all the evidence is presented, Plaintiffs have established that the flip-flops were in their sale condition.  On this point, Plaintiffs have produced sufficient evidence from which a jury could reasonably infer that the flip-flops were defective when purchased by providing uncontradicted evidence that Stephanie wore the flip-flops, for the first time, on the day she sustained her injuries.  [SOF, 12].  There is also uncontradicted evidence, provided by third parties, that prior to wearing the flip-flops they remained connected by an Old Navy store hanger.  [SOF, 6-10].  In addition, Stephanie has testified that the flip-flops were new and that they had not previously been worn.  [SOF, 12].  "Discovery of the defect shortly after its sale can be evidence tending to establish that the item was defective at the time it was sold."  *Carney v. Bereault*, 348 Mass. 502, 507 (1965), citing *LeBlanc v. Ford Motor Co.*, 346 Mass. 225.

     Moreover, Stephanie has established that neither she, nor any other person, mishandled the flip-flops and that she put the flip-flops to their intended use.  [SOF, 33].  It is therefore

reasonable to infer that the flip-flops were in the same condition at the time of their sale as they were when they failed.  There is absolutely no evidence to the contrary.  [SOF, 33].

## CONCLUSION

A fair-minded jury could return a verdict for the Plaintiffs on the evidence presented.

Gap's Motion for Summary Judgment, and request for sanctions, therefore must be denied.

Plaintiffs,
By their attorney,


/s/ India L. Minchoff, Esq.
India L. Minchoff, Esq. (652456)
Law Offices of Russo & Minchoff
123 Boston Street, 1st Floor
Boston, MA 02125
617/740-7340 telephone
617/740-7310 facsimile



## CERTIFICATE OF SERVICE

I, India L. Minchoff, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 15, 2007.


/s/ India L. Minchoff, Esq.