## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS
**DOCKET NO: 05-40170 FDS**

| | |
|---|---|
| STEPHANIE HOFER and | ) |
| DOUGLAS HOFER, | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| GAP, INC., EXPEDIA, INC., and | ) |
| TURTLE BEACH TOWERS, | ) |
|     Defendants. | ) |

### PLAINTIFFS' OPPOSITION TO DEFENDANT, EXPEDIA, INC.'S, MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Stephanie Hofer ("Stephanie" or "Plaintiff") and Douglas Hofer (collectively, "Plaintiffs"), state the following in Opposition to Expedia, Inc.'s ("Expedia") Motion for Summary Judgment.

### INTRODUCTION

Expedia's motion, on its face, fails to establish its right to summary judgment. As discussed below, material issues of fact, as well as issues of law, exist regarding each of the grounds upon which Expedia relies upon in its motion for summary judgment.

Contrary to Expedia's contentions, evidence exists which supports the finding that Expedia owed Stephanie a duty because (1) Expedia acted to control, among other things, the maintenance of Turtle Beach Tower's (the "Resort") grounds; (2) Expedia had a duty of disclosure based on its status as an agent; and (3) Expedia voluntarily assumed a duty. Neither the open and obvious rule nor Expedia's alleged liability disclaimer discharge Expedia of its duties owed. There is also ample evidence that Expedia breached its duty to Stephanie as its negligence was a proximate cause of Stephanie's injuries.

Dockets.Justia.com

## ARGUMENT

### I.    DUTY

Expedia's duty to Stephanie is well established by three principles of law.  First and foremost, its exertion of control over the maintenance of the Resort's premises, among other areas, gave rise to the common law duty to warn of the dangerous conditions present at the Resort which were known or ought to have been known.  The dangerous conditions present were not blatant hazards to a person in Stephanie's position, but were reasonably known to Expedia.  It is for a jury to determine whether Expedia breached its duty to warn of the hazards present at the Resort.

Secondly, as a matter of agency, Expedia was required to disclose information relative to the agency relationship.  Such information included notice of the nature of the hazards present at the Resort.  This duty does not result from a specific evidentiary inquiry into Expedia's control over the Resort, but rather is imposed as a matter of law.

Thirdly, Expedia had a duty to Stephanie because it voluntarily undertook to maintain the Resort's premises and therefore was required to ensure that the premises were safe for visitors and guests.

Finally, as explained in more detail below, Expedia did not disavow its duty to Stephanie through its so-called liability disclaimer.  The so-called disclaimer was neither communicated nor conspicuous to Stephanie.

**A.**          ***EXPEDIA ACTED TO CONTROL THE RESORT.***

**i.**          **THERE IS COMPETENT EVIDENCE THAT EXPEDIA EXERTED CONROL OVER ALL ASPECTS OF THE RESORT.**

There is admissible evidence that the safety of the Resort's grounds, among other areas, was within the sphere of Expedia's control.  Therefore, an essential premise supporting much of Expedia's Motion, that it did not have or exert "control" over the Resort, is disputed and warrants a determination by the ultimate fact finder.

Specifically, the record in this action contains powerfully suggestive indicia that Expedia exerted control over the Resort's guest accommodations, informative publications, and maintenance of its premises.  (Statement of Facts ("SOF"), 20, 23-24, 27-32).

The relationship between Expedia and the Resort began in 2000, at which time Expedia became the Resort's Internet representative.[1]  (SOF, 21, 27).  The Resort does not and did not maintain an independent website, forcing its patrons to use Expedia to obtain information about the Resort.  (SOF, 27).   Bookings through Expedia represent 10-15% of the Resort's revenues.  (SOF, 26).  Thus, Expedia is a significant player to the Resort's profitability.

The Resort is forced to answer to Expedia's "Caribbean" branch regarding all guest accommodations on its premises.  (SOF, 22).   In fact, Expedia has the ability to compel the Resort to accommodate guests who booked through Expedia even if that requires disrupting the stay of guests who booked their stay at the Resort through other means.  (SOF, 23).  Expedia also controlled the amount and manner in which the Resort received revenue from the lodging services it provided.  (SOF, 25).

---

[1] The Affidavit of Ms. Sherna Thomas, stating that Turtle Beach Towers "advertises" on Travelocity and Wordres.com, is demonstrably false.  A review of Worldres.com establishes no such finding.   In addition, Expedia's disclosure of Ms. Thomas after the discovery deadline precluded the Plaintiffs from subjecting Ms. Thomas to cross-examination.

In addition, Expedia had an influence over several aspects of Stephanie's stay at the Resort. Expedia created an itinerary for Stephanie and supplied the Resort with all the information it purportedly needed to fulfill its obligation to Stephanie in accordance with Expedia's requirements.  (SOF, 10).

Furthermore, it is apparent from the communications between Expedia and the Resort that Expedia did more than the single meet and greet visit it contends.[2]  It generated "inspection reports" requiring the Resort to remedy those areas Expedia found to be in need of repair.  (SOF, 28-32).  This is evidence of the power Expedia exerted over the Resort.  The deposition testimony of Faylin Miller, the Resort's general manager, later recanted by a post deposition affidavit submitted by Expedia's counsel, clearly demonstrates the pervasive control Expedia exercised over the Resort's safety standards:

**Q.**  **Have you ever seen anyone from Expedia - - or who works for Expedia at Turtle Beach Towers?**

**A.**  **Yes**.  **They will come and do checks now and again, room checks.**

**Q.**  **They will come and do checks?**

**A.**  **Inspections.**[3]

**Q.**  **Inspections.  Okay.  And how often would they perform their inspections?  About.**

---

[2] Although Expedia asserts in its motion for summary judgment that it would be ridiculous to believe that it visits the Resorts it promotes on its website, it urges this Court to believe that Travelocity or Worldres, companies in the same business as Expedia, performed the inspections Ms. Miller testified were conducted, bi-annually, for five years, by <u>Expedia</u>.  In addition to this allegation being contradictory on its face, it is devoid of any factual support.  Nowhere in the post-hoc Affidavit of Ms. Miller, in the Affidavit of Sherna Thomas, or any evidence before this Court, is there any basis to conclude that Travelocity or Worldres, as opposed to Expedia, inspected the Resort.  Rather, this allegation is rooted only in Expedia's counsel's plea to this Court that it ignore the plain wording of the evidence before it.

[3] It is noteworthy that Ms. Miller herself supplied the word "inspection" in response to a question that merely asked if she had ever seen anyone from Expedia at the Resort.

A. **It's maybe about two times a year they would.**

Q. And they could come - - alright.  And they would come here, and it is not fair to say that they would do that in 2004, 2005 and 2006?

A. Yes.

Q. **And would those be inspection - - what would those inspections of the premises consist?**

A. **Grounds and rooms.**

Q. Grounds and rooms?

A. Yes.

Q. And would they point out things to you at times that need - -

A. Yes.

Q. I could just finish, Ms. Miller.

A. Okay.

Q. **Would they point out things on occasion to you as the manager here which need to be fixed?**

A. **Yes.**  If there is …

Q. That would be true of items within a hotel room?

A. Right.

Q. **As well as what needs to be fixed on the grounds.**

A. **Yes.**

Q. **Would they take photographs also upon their inspections?**

A. **Yes.**  If they see anything wrong, they would do a checklist.

Q. **And if they saw anything wrong, would they give a list of things which needed correcting or would they just tell you?**

A. <u>They would email it</u>.

Q. <u>They would email it to you</u>?

A. <u>Yes</u>.

Q. <u>Do you keep a separate file of the correspondence with Expedia</u>?

A. <u>I do have, but I don't have it in my possession here</u>.

Q. Okay.  You didn't bring that with you to the deposition.  Is that fair to say?

A. Right.

Q. <u>Alright</u>.  <u>And in 2004, is it fair to say that you had a separate file for Expedia's, let's say, inspection reports of your facility</u>?

A. <u>Yes</u>.

Q. <u>And that would be true also of 2005 and 2006</u>?

A. <u>Yes</u>.

-------------------------------------

Q. <u>The inspection reports that Expedia does that you've seen and maintained in a file folder, are they handwritten or are they on a form</u>?

A. <u>I think they would be typed or by e-mail, but on a form</u>.

Q. <u>So they would send you the e-mail after their visit</u>?

A. <u>Yes</u>.

Q. <u>And you would try and correct those things which needed correcting</u>.

A. <u>Sure</u>.

Q. Yes.  Okay.  After you received that correspondence from Expedia, and you attempted to correct the situation, how did you notify Expedia that the situation that was listed on their inspection report was corrected?

A. <u>We would fill the checklist and send it back to them</u>.

-------------------------------------

**Q. And that Expedia has had a contract with Turtle Beach Towers for approximately five or six years, since 2000?**

**A. Five years, yes.**

**Q. <u>Is it fair to say during each one of those years Expedia conducted an investigation of the grounds and the rooms at Turtle Beach Towers</u>?**

**A. <u>Yes.</u>**

At no point in time in response to a number of questions regarding Expedia did Ms. Miller ever state or even suggest that another travel agency other than Expedia was involved.  (SOF, 33).

Taking all of the above evidence in a light most favorable to the Plaintiffs, the following inferences can be drawn: (1) the Resort relied on Expedia for receipt of its revenues; (2) Expedia controlled how the Resort accommodated guests who booked through Expedia as well as the Resort's non-Expedia guests; (3) Expedia conducted "bi-annual successive inspections" starting from the inception of its contract with the Resort in 2000, a task akin to that undertaken by a manager and indisputably a task evidencing control; (4) Expedia's inspections were of the Resort's "rooms and grounds," which included the stairs leading up to the lobby and the turtle pond where Stephanie sustained her injuries; (5) Expedia generated written "inspection reports," making it an activist in correspondence; (6) Expedia demanded that the Resort's general manager "confirm compliance" with the inspection reports, which is evidence that Expedia required such compliance of the Resort for the Resort's continued use of its service; and (7) Expedia documented the areas in need of repair with "photographs," suggesting that it did not rely solely on the Resort's representations that

it had complied with the maintenance it was ordered to perform but instead independently assured itself that the corrective measures ordered were undertaken to its satisfaction.

In short, the evidence reveals that Expedia exercised pervasive control over all aspects of the Resort, particularly the maintenance of the Resort's premises. On Ms. Miller's testimony alone, the Plaintiffs have established a prima facie case warranting a jury's determination.

**ii.      EXPEDIA'S LIABILITY IS DERIVED FROM THE CONTROL IT ASSERTED OVER THE RESORT.**

As a general rule, "[t]our operators are held harmless for dangerous conditions, acts, or omissions of hotels *because* they lack ownership and control." *Catalano v. N.W.A., Inc.*, 1998 WL 777023 (D.Minn.,1998); *Passero v. DHC Hotels & Resorts*, 981 F. Supp. 742, 745-746, 746 n. 3, (D. Conn. 1996). Therefore, whether Expedia owes Stephanie a duty is not wholly determinative upon Expedia's status as an agent of travel, but rather is decisive upon Expedia's control over the Resort.[4] This case falls outside the ambit of the typical tour operator/travel agent case because there is evidence that Expedia exercised control over the premises where Stephanie thereby subjecting it to liability.

It is elementary that liability for damage caused by the condition of premises commonly depends upon control of the offending instrumentality, either through ownership or otherwise. *Underhill* v. *Schactman*, 337 Mass. 730, 733; *Cronin* v. *Universal Carloading & Distrib. Co.* 348 Mass. 645, 648; *Kirby* v. *Boylston Market Association*, 14 Gray 249, *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47 (1888); *Ainsworth* v. *Lakin*, 180 Mass. 397, 62 N.E. 746 (1902); *Curry* v. *Dorr*, 210 Mass. 430 (1912); *Woodman* v. *Sheppard*, 238 Mass. 196, 199, 130 N.E. 194 (1921); *Moss* v. *Grove Hall Savings Bank*, 290 Mass. 520, 195 N.E. 762 (1935). It is settled that the party in control of premises owes a duty to a lawful visitor to

---

[4] Even in the absence of control, however, a duty is imposed through agency principles and through the acceptance of a duty. *See supra*, Section C, Duty Under Agency and Section D, Assumption of Duty.

keep them in reasonably safe condition or to warn visitors of hazards. *Nichols v. Donahoe*, 309 Mass. 241, 242, 34 N.E.2d 681 (1941); *Mounsey v. Ellard*, 363 Mass. 693, 707, 297 N.E.2d 43 (1973); *Romano v. Massachusetts Port Authy*. 3 Mass. App. Ct. 765, 330 N.E.2d 495 (1975); *Marsden v. Eastern Gas & Fuel Associates*, 7 Mass. App. Ct. 27, 385 N.E.2d 528 (1979). One who assumes the control and management of property cannot escape liability for injuries by showing a want of title in himself. *Woburn* v. *Henshaw*, 101 Mass. 193, 200 (1869); *Lindsey* v. *Leighton*, 150 Mass. 285, 287-288 (1889).

Each jurisdiction, including Massachusetts, analyzing the extent of a travel agent's liability has consistently applied the control analysis. *Paredes v. Princess Cruises, Inc.*, 1 F. Supp. 2d 87, 91 (D. Mass. 1998) (plaintiff traveler's allegations that defendant tour operator controlled premises precluded dismissal of plaintiff's claims). It is only when there is a total lack of control that liability for negligence cannot be imposed under this analysis.

In this case, there is evidence from which a jury could reasonably infer that Expedia not only had the ability to control the Resort but that it did, in fact, exert its control. Put simply, Ms. Miller's testimony is affirmative, admissible evidence that Expedia maintained control over the safety features on the Resort's grounds. Consequently, Expedia owed a common law duty to Stephanie to provide a safe premises or to warn her of the presence of dangerous conditions. This evidence precludes the issuance of summary judgment.

Moreover, since there is competent evidence that Expedia exerted control over the premises where Stephanie was injured, the circumstances of this case are markedly different from those presented in the line of cases Expedia offers to establish that it had no duty.[5] For

---

[5] In each case relied upon by Expedia, no liability was imposed on the defendant travel agents because there was no evidence that such defendants maintained control over the premises or instrumentality at issue:

this reason, the cases Expedia cites analyzing a travel agent's duties do nothing to assist Expedia in its attempt to avoid liability for Stephanie's injuries - the cited authorities simply do not support the notion that Expedia would have no legal obligation under the facts and circumstances of this case.  In fact, the cases relied upon by Expedia, inopposite to Expedia's contention, actually support Plaintiffs' theory of liability: each case recognizes that when control is found a duty is imposed and that it is only the *absence* of a nexus of control that would warrant summary judgment.

The cited cases also do not support the conclusion that Expedia's exertion of control was too insignificant to impose liability.  Even a cursory reading of the cases applying the "control test" allow for the determination that the facts present in this case evidence exactly the type of control necessary to establish liability.[6]  Indeed, it would be difficult to envision a set of facts evincing a nexus of control stronger than those in this case.

---

*Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62, 71 (D.R.I. 2002) (defendant did not own, manage, operate or *control* the hotel at which plaintiff's injuries occurred);

*McElheny v. Trans Nat. Travel, Inc.*, 165 F.Supp.2d 190, (D.R.I., 2001) (plaintiff unable to recover because plaintiff did not establish by affirmative evidence that defendant travel agent owned, operated, or *controlled* Club where plaintiff sustained injuries);

*Patrick v. Massachusetts Port Auth.*, 141 F.Supp.2d 180, 188 (D.N.H., 2001) (the duty to avoid or warn of hazards does not relate to conditions that were not *within the control* of the tour operator);

*Lavine v. General Mills, Inc.*, 519 F. Supp. 322, 335-336 (1981) (the record made clear that the vessel where the plaintiff sustained her injuries was not under the defendant's *control* as the only evidence was that the tour operator had asked the vessel's captain to return to shore);

*Sachs v. TWA Getaway Vacations, Inc.*, 125 F. Supp. 2d 1368, 1374 (D. Fla. 2000) (plaintiff's injuries did not occur on premises under defendant's *control*); and

*Carley v. Theater Development Fund and Educational Travel Resources, Inc.*, 22 F. Supp. 2d 224 (1998) (defendants did not own, operate or *control* hotel where plaintiff sustained injuries).

*See also* footnote 6.

[6] Expedia seemingly argues that even assuming that it exerted "control" over the Resort's maintenance, it would nevertheless have no liability to Stephanie.  Expedia, however, offers no legal basis for this position.  Rather, in an attempt to confuse the varying sources of liability, Expedia cites mainly to cases where the source of the duty arises from the voluntary assumption of duty or by the agency relationship.  As a result, such cases did not address the topic of control:

Therefore, Stephanie does not argue that this Court should carve out an exception to the general rule or analyze this action under any novel theories of liability; rather, Stephanie simply submits that application of the control test to the present facts gives rise to the finding that Expedia owed her a duty.

### iii.    EVIDENCE ESTABLISHING THE EXISTENCE OF A DISPUTED MATERIAL FACT PRECLUDES SUMMARY JUDGMENT.

The testimony and Affidavits presented by Expedia's employees and Ms. Sherna Thomas denying Expedia's control over the Resort creates a dispute regarding a material fact. This

---

In *Carley v. Theater Dev. Fund*, 22 F. Supp. 2d 224, 226 (D.N.Y. 1998), there was never an allegation that the defendant owned, managed or controlled the hotel where plaintiff was injured. Rather, liability was sought based on the defendant's assumption of duty. The Court's holding was therefore limited to evidence on this point and guided by the standard of law relating to same.

The issue in *Viches v. MLT, Inc.*, 124 F. Supp. 2d 1092, 1095 (D. Mich. 2000) concerned vicarious liability based on an assumption of duty and, like *Carley, infra*, was not based on issues of control.

Of the few cases Expedia cited which did address the imposition of a duty stemming from control, each court found that the plaintiffs failed to offer <u>any</u> competent evidence that the defendants controlled the premises at issue:

In *McElheny v. Trans Nat. Travel, Inc.*, 165 F.Supp.2d 190, 199 (D.R.I., 2001), the plaintiff offered only her own affidavit to support her contention that the defendant owned, operated, or controlled the club where she was injured. In plaintiff's affidavit, she merely stated it was her <u>opinion</u> that the defendant co-operated in the control, management and supervision of the defendant. Not surprisingly, the *McElheny* court found that there was no competent evidence substantiating the defendant's control of the club.

The court in *Passero v. DHC Hotels & Resorts*, 981 F. Supp. 742, 744 (D. Conn. 1996) analyzed the duty of a tour operator under both the control test and for its own negligence arising from agency principles. The record indicated no facts from which one could infer that defendant *owned, operated, managed or supervised* the resort. Under agency principles, the court found that the defendant may have been obligated to warn a plaintiff of a dangerous condition if it had been unknown to the plaintiff but known to it.

In *Stafford v. Intrav, Inc.*, 841 F. Supp. 284, 287 (D. Mo. 1993) the plaintiff's injury did not occur on premises under defendant's control since there was no evidence that the defendant owned or maintained the cruise ship where plaintiff fell.

The issue in *Powell v. Trans Global Tours, Inc.*, 594 N.W.2d 252, 256 (Minn. Ct. App. 1999) was whether the defendant and the hotel worked together for a common purpose. The only evidence before the court was that the defendant listed the hotel in its brochure, made reservations at the hotel for tour participants, and staffed a desk at the hotel to respond to matters related to its services. The court found that those facts did <u>not</u> indicate that the defendant had the ability to control the manner in which the hotel maintained its premises. The present case, of course, is based upon a completely different set of facts which demonstrate that Expedia did exert control over how the Resort maintained its premises.

Court must look at the record in the light most favorable to the non-moving party and "must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir. 1983); *Staffier v. Sandoz Pharmaceuticals Corp.,* 888 F. Supp. 287, 290 (Mass. 1995), citing *O'Connor v. Steeves,* 994 F.2d 905, at 907 (1st Cir. 1993). If a reasonable factfinder could resolve any material issue in favor of the non-moving party after reviewing the record in this generous light, then summary judgment must be denied. *Mack v. Great Atlantic and Pacific Tea Company,* 87 F.2d 179, 181 (1st Cir.1989).

Further, all doubts as to the existence of a material fact must be resolved against the party moving for summary judgment. *Donovan v. Agnew,* 712 F.2d 1509, 1509-16 (1st Cir.1983); *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir.1983); 10A Wright & Miller, Federal Practice and Procedure §2727, at 124-125 (2nd 1983) ("The movant is held to a stringent standard . . . any doubt as to the existence of a genuine issue of material fact will be resolved against [him]. Because the burden is on the movant, the evidence presented . . . always is construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences that can be drawn from it").

Applying the summary judgment standard to the facts of this case requires a finding that Expedia has not met its burden of showing there are no material facts in dispute. The testimony and Affidavits of Expedia's employees and Ms. Thomas, which submit conflicting statements to the testimony of Ms. Faylin Miller and the record evidence, create a dispute as to relevant, material issues of fact. Also, Expedia's own witnesses raise a dispute over a material fact since they contradict one another regarding the degree of control Expedia had over the Resort.

It should also be mentioned that the Affidavit of Sherna Thomas does not evince Expedia's lack of control. The units at the Resort are purportedly owed by both Sherna

Thomas and her husband Daine Thomas. (See Affidavit of Sherna Thomas[7]). Sherna Thomas's Affidavit, in each and every paragraph, refers only to <u>her</u> personal contact with Expedia, Inc. and its affiliates. *Id*. Thus, her Affidavit is merely evidence of <u>her</u> lack of personal knowledge. Mrs. Thomas's lack of personal knowledge is, however, of little significance since Ms. Miller testified that her contacts with the Thomas's, as it related to Expedia, were exclusively with Daine Thomas. In addition, Daine Thomas, and not Sherna, is listed as the point of contact by Expedia on its Registration Information. (SOF, 35). Interestingly, Mr. Daine Thomas did not submit an Affidavit although Expedia was aware of Ms. Miller's testimony and Expedia indisputably knew that Daine was its contact person. A reasonable inference can be drawn that he did not submit an Affidavit because his testimony would adversely impact Expedia's case. Certainly, he was a witness available to Expedia. Expedia apparently chose not to submit his knowledge in support of its motion for summary judgment.

The post hoc Affidavit of Faylin Miller also does not assist in eliminating the existence of a material dispute. Several grounds support this finding. First, unlike her deposition testimony, Ms. Miller's Affidavit supplied for summary judgment is not admissible evidence at trial.[8] Secondly, summary judgment cannot be based upon challenged affidavits from witnesses who state that previously stated facts are untrue because the ultimate trier of fact is free to disregard the entire testimony of those affiants. *Peckham v. Ronrico Corp.*, 171 F.2d 653, 657 (1st Cir. 1948). A litigant has a right to a trial where there is the slightest doubt as

---

[7] The Affidavit of Sherna Thomas is attached to Expedia's Motion for Summary Judgment and has not been reproduced by the Plaintiffs.

[8] For purposes of summary judgment, only competent evidence can be reviewed. It should also be mentioned that Ms. Miller is a Jamaican national and it is not expected that she would appear at trial. Plaintiffs, pursuant to this Court's Order dated March 20, 2007, contacted Ms. Miller regarding the Affidavit Expedia drafted on her behalf. However, Ms. Miller was not amenable to being deposed regarding her contacts with Expedia and the changes it procured to her testimony.

to the facts.  *Id*.  The purpose of this sham affidavit rule is to protect the procedural integrity of summary judgment.  *Mahan v. Boston Water & Sewer Comm'n*, 179 F.R.D. 49, 53 (D. Mass. 1998).

Case law is crystal clear: deposition testimony, taken under oath, cannot later be altered to support a party's summary judgment claims.  "When clear answers are given to unambiguous deposition questions, he or she cannot raise an issue of fact by submitting a subsequent affidavit that merely contradicts the deposition testimony."  *Lowery v. AIRCO, Inc.*, 725 F. Supp. 82, 85-86 (D. Mass. 1989).  Courts "do not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."  *Russell v. Acme-Evans Co.,* 51 F.3d 64, 67-68 (7th Cir. 1995).  As exhibited above, the deposition testimony of Ms. Miller was clear and unambiguous and therefore there can be no doubt that her Affidavit is in contradiction to her sworn testimony.

### iv.    EXPEDIA'S CONTROL OVER THE RESORT'S PREMISES GAVE RISE TO A COMMON LAW DUTY TO WARN OF DANGEROUS CONDITIONS.

The hazards presented in this action are twofold: (1) the lack of guardrails on a dimly lit stairway abutting a turtle pond and (2) the razor sharp material, unnoticeable to the casual observer, buried inside the turtle pond.

In a case involving premises liability, the duty imposed upon one who controls business premises is the obligation to use due care to keep the premises in a reasonably safe condition for the use of its patrons, or at least to warn them of any dangers that might arise from such use, which are not likely to be known to them and of which the defendant knows or ought to know exist.  *Oliveri v. Massachusetts Bay Transportation Authy*., 363 Mass. 165, 167, 292 N.E.2d 863 (1973).  Moreover, where there is dual control there may be dual liability.  *Restatement (Second) of Torts § 360*, Comment a (1965).  The obligation to warn of the

dangers that might arise from use of the hazardous conditions is treated as an alternative to the duty to make the premises reasonably safe. *Camerlin v. Marshall,* 411 Mass. 394, 398-99, 582 N.E.2d 539 (1991); *see also Oliveri,* 363 Mass. at 166-67, 292 N.E.2d 863 (1973).

A determination of whether a defendant ought to know of the existence of a particular hazard depends upon the circumstances of each case. *Deagle* v. *Great Atlantic & Pacific Tea Co.*, 343 Mass. 263, 265, 178 N.E.2d 286 (1961). The relevant factors are the length of time the condition is present and the opportunity for its discovery. *Id*; *Thurlow v. Shaw's Supermarkets*, 49 Mass. App. Ct. 175 (2000). If a defect or dangerous condition existed on the premises for such a period of time that, in the exercise of reasonable care, one should have known of it, liability is established. *Gilhooley v. Star Market,* 400 Mass. 205, 508 N.E.2d 609 (1987).

Furthermore, even if one did not have an opportunity or control to repair the dangerous condition, it is <u>not</u> relieved of its obligation to warn visitors of any unreasonable dangers. *Romano v. Massachusetts Port Authority*, 3 Mass. App. Ct. 765, 766, 330 N.E.2d 495 (1975) (finding that although Logan Airport was not in control of the lights in its parking lot (which were not lighted on the night of the accident) it was not relieved of its duty to warn lawful visitors of a danger which existed on the premises under its control; similarly, the Airport was not relieved of liability for the dangerous condition of which it either knew or should have known even though it was not responsible for the placement of the dangerous condition.); *Young* v. *Food Fair, Inc.* 337 Mass. 323, 324 (1958), *see also Hopkins v. F. W. Woolworth Co.*, 11 Mass. App. Ct. 703, 705-706 (Mass. App. Ct. 1981) (Woolworth, as a landlord, was under a duty to warn invitees of dangerous conditions although it was the responsibility of its tenant to make the premises safe to invitees).

15

Based on the evidence in this action, a jury would be warranted in finding that Expedia breached its duty to warn guests of the dangerous conditions. By virtue of its successive inspections and generated inspection reports, Expedia made it its responsibility to safeguard the grounds of the Resort. Since the dangers at the Resort were permanent rather than temporary conditions and Expedia had been to the Resort on a minimum of _ten_ occasions to inspect for such dangers, a jury could find that Expedia knew or should have know of dangerous conditions.

### B.    *THE HAZARDOUS CONDITIONS PRESENT AT THE RESORT WERE NOT OPEN AND OBVIOUS.*

Expedia concedes for summary judgment purposes that the conditions present at the Resort were hazardous, but argues that it owes Stephanie no duty because the hazards existing were open and obvious. This argument is without merit and is founded upon a faulty analysis of Massachusetts law applying the open and obvious rule.

"Whether a danger is open and obvious has to do with the duty of the defendant, not the negligence of the plaintiff." *O'Sullivan v. Shaw,* 431 Mass. 201, 205-206, 726 N.E.2d 951 (2000), quoting from *Callahan v. Boston Edison Co.,* 24 Mass. App. Ct. 950, 953, 509 N.E.2d 1208 (1987). Since the open and obvious rule presumes a plaintiff is exercising reasonable care for her own safety, the inquiry is whether, objectively speaking, the condition was so obvious that the defendant would be reasonable in concluding that an ordinarily intelligent plaintiff would perceive and avoid it, therefore making any warning superfluous. *O'Sullivan,* 431 Mass. at 206, 509 N.E.2d 1208.[9] Consequently, the legal standard in

---

[9] Since it is the perceptibility of a reasonable person of average intelligence that is decisive, subjective factors of Stephanie's knowledge and experience are inappropriate considerations. *O'Sullivan*, at 206.

Massachusetts is not, as Expedia argues, whether Stephanie was in an infinitely better position to assess the condition of the stairs [because she transversed them once].[10]

A danger is open and obvious only if a reasonable man exercising ordinary perception, intelligence, and judgment would recognize the danger. *O'Sullivan,* 431 Mass. at 206, 509 N.E.2d 1208. Therefore, even if a defect is one that might be visible to a person who is looking for such a condition, it does not follow that the hazard is, as a matter of law, open and obvious. In the comments to Restatement 2d, Torts § 343A(1), it states that "'[o]bvious' means that both the condition and the risk are apparent and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id*.

In situations indistinguishable from the present case, Massachusetts courts have held, without exception, that a visible condition does not make it an open and obvious danger. *Hubbard v. Palmer Russell Co.,* 343 Mass. 414, 416-417 (1961) (the presence of a stairwell down which plaintiff fell and which she had passed previously was not open and obvious); *Coates v. First Nat. Stores,* 322 Mass. 563, 565 (1948) (a staircase which plaintiff fell down, with no defects, which was six feet in width, wide open, not blocked and well lit was not as a matter of law an open and obvious danger); *Lombardi v. F.W. Woolworth Co.,* 303 Mass. 417, 419 (1939) (a weighing scale, which extended sixteen inches out into the aisle was not open and obvious, and the defendant was bound to anticipate plaintiff's injury); *Hildebrant v. Cumberland Farms, Inc.*, 2001 Mass. App. Div. 45, 46-47 (2001) (case of advertisements sticking out 15 inches in aisle is not open and obvious); *Fishman v. Paramount Cleaners & Dyers of Brockton, Inc.,* 2003 Mass. App. Div. 33, 36 (2003) (three foot scale on floor not an

---

[10] This representation by Expedia, apart from being legally untenable, is demonstrably false. Expedia, having inspected the Resort on a minimum of ten occasions as well as having other representatives visit the Resort, was actually in a superior position to know of the Resort's dangers. Indeed, Expedia's visits to the Resort were for the sole purpose of inspecting for such dangers.

open and obvious danger); *Duffy v. Capobianco,* 346 Mass. 48, 50 (1963) (open manhole in building that plaintiff backed into not open and obvious as a matter of law as it was for the jury to determine whether the defendant should have taken measures calculated to prevent the plaintiff's fall); *Murgo v. Home Depot USA, Inc.*, 190 F. Supp. 2d 248, 251-252 (D. Mass. 2002) (finding summary judgment inappropriate in determining whether pallet jack in the center of an aisle was an open and obvious condition); *Verge v. United States*, 965 F. Supp. 112 (D. Mass. 1996) adopting Order of September 17, 1997, Reported at: 1997 U.S. Dist. LEXIS 21068 (finding summary judgment inappropriate in determining whether gravel on post office steps was an open and obvious condition); *Reardon v. Country Club at Coonamessett, Inc.*, 353 Mass. 702, 704-705 (1968) (in action brought against country club after injured party was struck in the head by a golf ball after she had played a round of golf and was leaving golf course, evidence was sufficient on issue of negligence to reach the jury).

The Supreme Judicial Court uses the term "blatant hazards" in describing those conditions which fall within the definition of an open and obvious danger.  *O'Sullivan v. Shaw,* 431 Mass. at 204; *Barnett v. City of Lynn,* 433 Mass. 662, 666-667 (2001).  In light of this standard, Massachusetts courts have allowed summary judgment in only the most extraordinary circumstances.[11]  *Greenslade v. Mohawk Park, Inc.,* 59 Mass. App. Ct. 850, 853 (2003) (swinging on a rope swing over a river and rocky ledge was an open and obvious danger); *Barnett v. City of Lynn,* 433 Mass. 662, 666-667 (2001) (sledding down a stairway into a street was an open and obvious danger); *O'Sullivan v. Shaw,* 431 Mass. 201 (2000)

---

[11] Courts in many other jurisdictions have held that a decision regarding whether a hazard is "open and obvious" is not even a proper subject on a motion for summary judgment.  As stated in *Strickland v. Royal Lubricant Co.*, 911 F. Supp. 1460, 1471 "[s]ummary judgment based upon the dangers being open and obvious would be improper, such a determination is a factual issue for the jury."

(diving head first into the four foot shallow end of a pool with a diving board on the other end was an open and obvious danger). The hazards presented in this action are not conditions similar to diving headfirst into the shallow end of a swimming pool or riding a sled down snow-covered steps toward a public road.[12] *O'Sullivan,* 431 Mass. 201, 726 N.E.2d 951 (2000); *Barnett,* 433 Mass. 662, 745 N.E.2d 344 (2001).

An examination of the time, manner, place and surrounding circumstances reveals the following facts: Stephanie was unfamiliar with Resort, having arrived at around 6:00 pm the day the accident occurred. Stephanie transversed the staircase that lacked guardrails and abutted a turtle pond when Carrie and she checked-in. Approximately 4-5 hours later that same day, Stephanie left her room to obtain tourist information from the Resort's lobby. (SOF, 40-41). The staircase was the only known access to the Lobby where guests were required to check-in and all tourist information was available. Buried in the turtle pond were slate, flagstone, and other razor sharp materials which where regularly covered with algae, creating a dangerously, slippery condition. (SOF, 45-46).

The hazards associated with the staircase were not of such a character that Expedia may properly assume visitors, such as Stephanie, know of the danger it posed and that a warning would have been superfluous. As stated in *Mounsey*, *infra*, the "reasonable care in all the circumstances" standard will allow the _jury_ to determine what burdens of care are unreasonable in light of the relative expense and difficulty they impose, as weighed against the probability and seriousness of the foreseeable harm to others. *Id.*, 363 Mass. at 709. Here there is no indication of the presence of any "watch your step" or "caution" signs alerting visitors such as Stephanie to the presence of the admittedly shard material in the

---

[12] One could hardly argue that an inherent risk in descending a stairway is to fall, with no opportunity to catch themselves, into a pond containing material sharp enough to peel your skin apart from the bone and render you permanently scared and disabled.

pond. This type of warning would not have entailed extraordinary costs or burdens on the part of Expedia.

Even assuming the hazards to be open and obvious, a defendant may remain liable for a plaintiff's injuries if such injuries are foreseeable. *Murgo v. Home Depot USA, Inc.*, 190 F. Supp. 2d 248, 252 (D. Mass. 2002) (finding that notwithstanding the assumed open and obvious character of a hazard, the defendant is liable for the plaintiff's injuries if his injuries were foreseeable). The hazards here are such that the Defendant could reasonably foresee to result in injury. A fall or trip is a foreseeable event in transversing a stairway.[13] Expedia knew that the stairway was unguarded and that a fall from it would result in a guest landing in the turtle pond.

Taking the facts presented in the light most favorable to the non-moving party, it cannot be said, as a matter of law, that a reasonable person in Stephanie's position would have appreciated the dangers presented. Furthermore, a genuine issue of material fact exists as to whether the defendants exercised reasonable care under all the circumstances to warn Stephanie of the hazards. *Epps v. Sygma Network, Inc.*, 2000 Mass. Super. LEXIS 645 (Mass. Super. Ct. 2000) (concluding the question of foreseeability of harm is an issue that the jury is uniquely qualified to examine as it is a determination of what the reasonably prudent person would have done or not have done in the circumstances).

Accordingly, whether Expedia, who conducted bi-annual inspections for five years, was negligent in failing to warn Stephanie that the stairway, which was unguarded and abutted a pond of danger, constituted an unavoidable risk cannot be resolved at the summary judgment stage and must be left to the determination of the jury.

---

[13] Rhetorically, if the dangers were, as according to Expedia, so open and obvious to Stephanie, why were the dangerous conditions not similarly open and obvious to Expedia who undertook to perform safety inspections.

### C.        *DUTY UNDER AGENCY*

Apart from Expedia having a duty established from the extent of its control over the

Resort, Expedia has a duty to warn based on agency principles.[14]  The source of this duty is

also derived from existing social customs and values.  *Schofield v. Merrill,* 386 Mass. 244,

247 (1982); *Pridgen v. Boston Hous. Auth.,* 364 Mass. 696, 711 (1974); *Mounsey v. Ellard,*

363 Mass. 693, 706-708 (1973); *Mullins v. Pine Manor College,* 389 Mass. 47, 50-51 (1983).

The requirement imposed by this duty is the disclosure of reasonably obtainable

information that is relevant to the object of the agency.  The duty exists irrespective of the

level of control the agent exerts over the premises, and its scope is defined through an

assessment of the foreseeability of harm.  *Lyall v. Airtran Airlines, Inc.*, 109 F. Supp. 2d 365,

370 (D. Pa., 2000); *Lewis v. Eisin*, 2002 Mo. App. LEXIS 435 (Mo. Ct. App. 2002).  "A risk

is foreseeable if there is some probability or likelihood of harm sufficiently serious that

ordinary persons would take precautions to avoid it."  *Lopez v. Three Rivers Elec. Co-op.*, 26

S.W.3d 151, 156 (Mo. banc 2000).

The First Circuit, in *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62 (D.R.I.

2002), has acknowledged application of these agency principles in cases involving agents of

travel as spelled out in *Markland v. Travel Travel Southfield, Inc.*, 810 S.W.2d 81, 84 (Mo.

Ct. App. 1991).[15]  In *Markland*, the court found that the plaintiff's travel agent, as agent for

the plaintiff, had a duty of ordinary care to the plaintiff, which included the duty to disclose

---

[14] The duty of disclosure is the equivalent of the duty to warn and therefore has been properly pled in the instant action.  Indeed, Plaintiffs' Complaint asserts the agency relationship between Expedia and Stephanie which gives rise to Expedia's duty of disclosure.

[15] It is well established that travel agents and tour operators, as agents of their customers, have a duty to disclose reasonably obtainable information that is relevant to the object of the agency unless that information is so obvious to the client.  *Sachs v. TWA Getaway Vacations, Inc.*, 125 F. Supp. 2d 1368 (D. Fla., 2000); *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62 (D.R.I., 2002); *Strafford v. Intrav, Inc.*, 841 F. Supp. 284 (D. Mo., 1993); *Passero v. DHC Hotels & Resorts*, 981 F. Supp. 742 (D. Conn., 1996); *Rookard v. Mexicoach*, 680 F.2d 1257, (9th Cir., 1982); *Lyall v. Airtran Airlines, Inc.*, 109 F. Supp. 2d 365, (D. Pa., 2000); *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294, 296, 890 P.2d 69, 71 (App. 1994).

information relative to the object of the agency.  The *Markland* court found that the

defendant did not neglect this duty by failing to warn the plaintiff traveler of the airline's

precarious financial position because it had no "inside information."  *Id*.  This holding was

founded, in large part, upon the court's finding that the travel agent derived its information

about the travel services' financial difficulties from the same sources as the plaintiffs.  *Id*.

The agent therefore had no "inside information" about the financial difficulties and the risk

posed to the plaintiffs' vacation plans.  *Id.* at 83-84.

The reasoning applied by the *Markland* court can be imported to the instant case.

In contrast to *Markland*, the dangers presented by the turtle pond were not apparent to

Stephanie and she did not have equal access to information regarding safety at the Resort's

premises.  Also unlike the travel agent in *Markland*, Expedia did have "inside information"

as to the condition of the Resort and this information was material to Expedia's agency

relationship.  Once Expedia was made aware of this information, it was under a duty to

disclose it.  However, Expedia did not do so.  By failing to disclose this information, Expedia

deprived Stephanie of the opportunity to take additional precautions to avoid her tragedy.

Information regarding the material inside the turtle pond and the significance of the

absence of guardrails bore directly on Stephanie's safety and was therefore material to the

object of the agency relationship.  Expedia, as one who managed the safety of the Resort's

grounds, had specialized knowledge of these hazards, while Stephanie did not.  Therefore,

under the general principles announced in *Markland*, Expedia was under a duty to disclose

this information and warn of the dangers associated with the stairs and pond.

Furthermore, insofar as the instant case concerns a permanent condition, it is factually

comparative to *Stevenson v. Four Winds Travel, Inc.*, 462 F2d 899, 906 (1972), where the

court imposed liability on a tour operator for failing to disclose dangers which it ought to

have known.  In *Stevenson*, the plaintiff traveler purchased a ticket for a tour in South

America from a local travel agent.  While visiting a pre-designated tour location, a pier, the

traveler slipped and fell.  *Id*.  The fall was precipitated by the slimy condition of the planks

on the pier, which resulted from the accumulation of water, algae, and mud.  *Id*.  The

*Stevenson* Court found that the defendant did not own or "control" the pier but that it was

nevertheless liable to the plaintiff for its failure to warn.  *Id*.  The court reasoned that since

the planks were in its "normal condition" and there was evidence tending to prove that the

defendant had previously been in the designated area, it should have known of the dangers it

presented.  *Id*.

The facts of the present case are even stronger than those presented in *Stevenson*.  Here,

not only is there evidence tending to prove that Expedia had previously been to the

designated area (the lobby stairs and turtle pond that they abutted), suggesting that it should

have known of the dangers which caused Stephanie to sustain her injuries, but there is also

evidence that Expedia's purpose for being at the designated location was to ferret such

dangers.  Thus, Expedia, irrespective of the level of control it exerted over the Resort, is

liable for its failure to warn Stephanie based on its status as agent.


### D.        ASSUMPTION OF DUTY

Expedia's liability also arises from the fact that it assumed a duty to maintain the

premises at the Resort.  It is an established principle that a duty voluntarily assumed must be

performed with due care. *Black v. New York, N.H., & H.R.R.,* 193 Mass. 448 (1907).

The *Restatement (Second) of Torts* § 323 (1965), states: "[o]ne who undertakes,

gratuitously or for consideration, to render services to another which he should recognize as

necessary for the protection of the other's person or things, is subject to liability to the other

for physical harm resulting from his failure to exercise reasonable care to perform his

undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the

harm is suffered because of the other's reliance upon the undertaking.  *See also, Mullins v.*

*Pine Manor College,* 389 Mass. 47, 52-53 (1983).  Expedia's status as an agent does not

excuse its assumed duty.  *Patrick v. Mass. Port Auth.*, 141 F. Supp. 2d 180, 188 (D.N.H.

2001); *Cohen v. Heritage Motor Tours, Inc.,* 205 A.D.2d 105, 618 N.Y.S.2d 387, 389

(N.Y.App.Div.1994); *Kaufman v. A-1 Bus Lines, Inc.,* 416 So.2d 863, 864

(Fla.Dist.Ct.App.1982).

Expedia undertook the duty to ensure that the Resort's premises were maintained in a

safe condition.  Expedia did not take any corrective measures or provide any warning relating

to the dangers presented by the lack of guardrails on the stairway and its juxtaposition to the

turtle pond with its hidden dangers.  A jury could reasonably find that Expedia's failure to

warn Stephanie of the dangers present on the premises it undertook to ensure in a safe

condition, was a failure to exercise reasonable care.  In addition, a jury court reasonably infer

that Stephanie who was traveling for the first time out of the country would not have booked

her trip through an agent which she did not believe was reputable.


### E.        *DISCLAIMER*

Expedia contends that its disclaimer absolves it of all responsibility for personal injuries

occurring on the premises of the Resort.  Expedia's contention is legally flawed for several

reasons.  The alleged limitation clauses were not conspicuous to Stephanie and therefore

were not binding on her.  In addition, Carrie LaRoche, Stephanie's travel companion, who

denies having a memory of viewing or agreeing to any limitation terms, did not have the

authority to bind Stephanie.  Also, and perhaps most significantly, because Expedia exerted

control over the Resort's maintenance, the language of the limitation clauses do not bar this action.

    **i.**       **THE DISCLAIMER EXPEDIA RELIES UPON WAS NOT CONSPICUOUS TO STEPHANIE AND THEREFORE DOES NOT RELIEVE EXPEDIA OF ITS DUTY.**

To determine if Expedia's liability disclaimer applied to Stephanie, this Court must first determine whether the disclaimer was conspicuous to Stephanie. *Hunt v Perkins Machinery Co.*, 352 Mass 535, 226 (1967). "A term or clause is conspicuous when it is so written that a reasonable person *against whom it is to operate* ought to have noticed it." ALM GL ch. 106, § 1-201(10). *See, e.g., Kushner v. McGinnis*, 289 Mass 326, 194 (1935) (Where the court refused to relieve an operator of an amusement device from liability who relied on disclaimer printed on the back of a ticket); *Boeing Airplane Co.* v. *O'Malley,* 329 F. 2d 585, 593 (8th Cir.) (A disclaimer "merely in the same color and size of type used for the other provisions" was treated as not conspicuous); *Minikes* v. *Admiral Corp.* 48 Misc. 2d (N. Y.) 1012, 1013 (Dist. Ct.) (Where a "disclaimer . . . smaller, not larger, than the rest of the purchase order" was held not conspicuous).

In the present case, it is not disputed that Stephanie did not sign onto Expedia.com and book the travel plans, and likewise did not agree to the purported liability terms. It is also not disputed that Expedia is aware that its users customarily book travel packages for other party members. Expedia nevertheless seeks to bind individuals to the limiting clauses despite its failure to communicate its disclaimer to them. There is absolutely no legal foundation for such a conclusion.

Carrie LaRoche purchased the two tickets online and forwarded to Stephanie, via email, the mutual itinerary generated by Expedia.com. The itinerary created by Expedia.com does not contain the liability disclaimer. Further, the itinerary does not list <u>any</u> language that

indicates that a liability disclaimer existed.  In addition, the itinerary does not contain a link

to an online version of a liability disclaimer.  Nor did Expedia mail a brochure to Stephanie

or printed e-tickets containing the limiting language.  Because Expedia sold this package as a

web e-ticket, Stephanie never saw a ticket or any other document that might have had

attention-calling language that would have directed her to a liability disclaimer.  In fact, the

itinerary is the only document needed to obtain the services of the package booked on

Expedia and, as stated above, it does not act to inform that a liability disclaimer exists.  Thus,

despite the fact that Expedia was aware that third parties, such as Stephanie, were identified

as travelers, it did nothing to ensure that it communicated its liability disclaimer to these

known parties.  As a result, Expedia failed to fulfill its obligation to provide conspicuous

notice to Stephanie thereby nullifying the disclaimer as to Stephanie.[16]

The Defendant's Motion relies heavily upon the United States Supreme Court case,

*Carnival Cruise Lines, Inc. v. Shute*, where the Court was primarily focused on deciding a

forum selection issue, and indicated that it was common for an individual buying a ticket

from a cruise line not to have bargaining power in that regard.  499 U.S. 585, 593 (1991).

However, bargaining power relative to a liability disclaimer is not at issue here; the question

at bar is whether Expedia's disclaimer was conspicuous to Stephanie.  Based on the

undisputed facts stated above, there is only one clear answer: no.

Expedia also relies upon cases from other jurisdictions where courts have held

disclaimers in travel contracts that were <u>printed</u> on tickets or <u>printed</u> in brochures (even if

unsigned by the traveler) were held enforceable.  *Wilson v. American Trans Air, Inc.*, 874

---

[16] The placement and size of the so-claimed disclaimer arguably would not be conspicuous even to an individual booking on Expedia.com.  Moreover, as with Stephanie, Carrie was not provided with a printed version of the disclaimer to review.  Significantly, Carrie LaRoche, who booked the trip through Expedia.com, does not recall ever seeing or reading a liability disclaimer.

F.2d 386, 388-89 (7th cir. 1989) (Disclaimer was printed in a newsletter and distributed to members of the travel club); *Connolly v. Samuelson*, 671 F. Supp. 1312 (Disclaimer was in a brochure the plaintiff admitted receiving); *Shannon v. TAESA Airlines*, 1993 U.S. Dist. LEXIS 21125, at 7 (S.D. Ohio July 13, 1993) (Where plaintiff admitted relying on the language contained in that contract even though she did not sign it).  In each of those cases the disclaimers were communicated to the traveler.  But here, as stated above, there was no ticket or brochure, no signed or unsigned contract, and therefore there was no notification of a liability disclaimer.  In short, there is no way Stephanie could have possibly known a liability disclaimer existed and therefore the Expedia.com liability disclaimer (assuming one existed in the form as alleged in 2004) was not conspicuous to Stephanie and does not relieve Expedia of its duty to Stephanie.

It should also be pointed out that Carrie LaRoche's alleged acceptance of the disclaimer terms does not bind Stephanie.  *Bernstein v. Seacliff Beach Club*, 228 N.Y.S.2d 567, 571 (N.Y. Dist. Ct. 1962) ("The authority to execute on behalf of another a contract containing a clause which exempts a third person from liability for his negligence *must be clearly spelled out.*") (emphasis added).  Here, the liability disclaimer section of *Expedia, Inc. Web Site Terms, Conditions, and Notices* lacks any language indicating that the web users acceptance of the terms exempts Expedia from liability by a party member.  In fact, looking at the parties to the agreement, it clearly states that "[t]his web site is offered to you, the customer… Your use of this Web site constitutes your agreement to all such terms, conditions, and notices."  Thus, the plain language of the agreement, drafted by Expedia, makes clear that the parties are Expedia, Inc. and the web site user, not unknowing party members.  This is an additional reason why the alleged liability disclaimer does not bind Stephanie, who was not a party to its terms.

In addition, even if Expedia's disclaimer liability stated that the web user was binding third parties, there is evidence that Carrie had no *authority* to bind Stephanie to such a limiting clause. The only evidence before the Court is that Stephanie did not relate such authority. The *Bernstein* court, examining a similar provision in a beach club membership agreement, found that the contract bound only the person who signed it and not his guest, who was listed in the agreement but neither signed, read, nor was aware of the liability limitation. *Id.* at 568-569. The facts of this case are almost indistinguishable.

The case of *Fedor v. Mauwehu Council*, 143 A.2d 466, 468 (Sup. Ct. Conn. 1958) presented the issue of whether a non-contracting party could be bound by another. In *Fedor*, parents had signed a release for their minor child. *Id.* The court concluded that "[i]t [was] doubtful that either the mother or father of this minor plaintiff had the power or authority to waive his rights against the defendant arising out of acts of negligence on the part of the defendant." *Id.* If such authority is questionable as to a minor child, it is certainly questionable here, where the parties are unrelated adults.

### ii.        THE TERMS OF THE LIABILITY DISCLAIMER DO NOT NEGATE EXPEDIA'S LIABILITY.

The liability disclaimer is also ineffective in this action because, even assuming *arguendo* that Stephanie was bound by its terms (which she is not), the disclaimer did not insulate Expedia from direct liability. As stated above, Expedia, by three separate principles, is liable to Stephanie. The disclaimer at issue states that "[t]he carriers, hotels, and other suppliers providing travel or other services for Expedia, Inc. are Independent Contractors and are not agents or employees of Expedia, Inc…." The definition of "[a]n independent contractor is a person who contracts with another to do something for him but who is not controlled by the

28

other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Restatement 2d of Agency*, §2(3) (emphasis added). As outlined above, Expedia, contrary to the self-serving language contained in the liability disclaimer, exerted its control over the Resort's maintenance of its premises. Whether the degree of Expedia's control over the Resort is sufficient to establish its culpability is a jury question.

Moreover, while it is true that generally the employer of an independent contractor is not liable to third parties, there are numerous exceptions where such is not the case.[17] *O'Brien v. Christensen*, 422 Mass. 281, 285 n.9 (1996). For example, an employer is liable for harm caused to another by an independent contractor's negligence when the employer has retained some control over the manner in which the independent contractor's work was done. *Lyon v. Morphew*, 424 Mass. 828 (1997). In the present case, Expedia exercised great control over the upkeep and management of the Resort. The Resort contracted to act on behalf of Expedia, and remained subject to Expedia's control and as such, became both an independent contractor and an agent. *Restatement 2d of Agency*, §14N. Put otherwise, since the maintenance of the Resort was under the control of Expedia, the Resort functioned as an agent to Expedia. Creating an agency status has the effect of making the employer of the agent/independent contractor liable when the injured party can demonstrate that the contractor was "not entirely free to do the work in his own way." *St. Germaine v. Pendergast*, 411 Mass. 615 (1991); *Paradora v. CNA Insurance Co.*, 41 Mass.App.Ct. 651, 654 (1996).

---

[17] It is also true that Summary judgment is generally inappropriate in cases involving agency relationship questions, *Newcomb v. North E. Ins. Co.*, 721 F.2d 1016 (5th Cir. 1983), and disputed employment status, *Bradsher v. Mo. Pac. R.R.*, 679 F.2d 1253 (8th Cir. 1982); *Keller v. United States*, 557 F. Supp. 1218, 1225 (1983).

The record facts evidence that the Resort was not free to keep their premises in any way it pleased—it was controlled by Expedia's demands for maintenance and compliance with Expedia's bi-annual inspections.  As a result, the disclaimer, even if operative against Stephanie, does not insulate Expedia from liability for Stephanie's injuries.

## II.        <u>PROXIMATE CAUSE</u>

The act of a third party does not excuse the first wrongdoer if such an act was, or should have been, foreseen.  *Mullins*, 389 Mass. at 47.  Similarly, while the injury must be the direct result of the wrongful act, the cause will not be considered too remote if, according to human experience, the defendant ought to have foreseen that the intervening act was likely to happen.

In the context of proximate cause, it is also sufficient if it appears that the negligent act of the defendant would probably cause harm to another, even though the precise manner in which it occurred could not have been foreseen.  *Carroll v. Cambridge Electric Light Co.*, 312 Mass. 89 (Mass. 1942).  In other words, a defendant is not relieved from liability as a result of the actions of another person if such actions are foreseeable.

The question whether the risk of injury was foreseeable is almost always one of fact. *Moose v. Massachusetts Inst. of Technology,* 43 Mass. App. Ct. 420, 425, 683 N.E.2d 706 (1997); *O'Hanley v. Ninety-Nine, Inc.,* 12 Mass. App. Ct. 64, 68, 421 N.E.2d 1217 (1981) (question of proximate cause of plaintiff's injury is one for the jury).  Only where no view of the evidence would warrant a jury finding the defendant negligent can it be held, as a matter of law, that plaintiff cannot recover.  *Hildebrant v. Cumberland Farms, Inc.*, 2001 Mass. App. Div. 45 (Mass. App. Div. 2001).

Proximate cause "is not a rigid term confined only to the mechanical cause and effect, but rather is [a] flexible concept…" *Vizzini v. Ford Motor Co.,* 569 F.2d 754, 767 (3d Cir. 1977). Proximate cause is not necessarily that which is next or last in time or place. It is simply a legal cause of the injury and a plaintiff is not required to eliminate entirely all possibility that the defendant's conduct was not a cause of the injury. *Mullins v. Pine Manor College*, 389 Mass. 47 (Mass. 1983). It is enough that a plaintiff introduce evidence from which reasonable men may conclude that it is more probable than not that the event was caused by the defendant. *Id.*

Furthermore, a defendant is not relieved from liability because it is only responsible for one of several contributing causes. *Leveille v. Wright*, 300 Mass. 382, 15 N.E. 2d 457 (1983); *Wilborg v. Denzell*, 359 Mass. 279, 268 N.E. 2d 855 (1971); *Horne v. Meakin*, 115 Mass. 326 (1874); *Young v. New York N. H. RR.*, 273 Mass. 566, 174 N.E. 318 (1931); *Rocha v. Alber*, 302 Mass. 155, 69 N.E. 2d 466 (1939); *Sargent v. Massachusetts Accident Co.*, 307 Mass. 246, 29 N.E. 2d 825 (1940). It is well-established law that there can be two or more contributing causes of an injury. Where two or more causes combine to produce an injury, a defendant is not relieved from liability because it is responsible for only one of such contributing causes. *Miller v. Boston & North St. Rv. Co.*, 197 Mass. 535, 83 N.E. 990 (1908); *Wallace v. Ludwig*, 292 Mass. 251, 255, 198 N.E. 159 (1935) (a defendant's conduct may be the proximate cause of the injury, even though the conduct of some other persons may act with the defendant's to cause the injury as an end result); *see also Horne v. Meakin*, 115 Mass. 326, 329, 331 (1874). Thus, if the fact finder can find that Defendant's negligence was one of the causes of a plaintiff's injury then the defendant's conduct was a proximate cause. *Young v. New York N.H. RR.*, 273 Mass. 566, 174 N.E. 318 (1931); *Sargent v.*

*Massachusetts Accident Co*., 307 Mass. 246, 29 N.E. 2d 825 (1940); *Hill v. Winsor*, 118 Mass. 251 (1875).

### CONCLUSION

A fair-minded jury, based on the anticipated evidence, could return a verdict for the Plaintiffs.  Expedia's Motion for Summary Judgment therefore must be denied.

Plaintiffs,
By their attorney,


/s/ India L. Minchoff, Esq.
India L. Minchoff, Esq. (652456)
Law Offices of Russo & Minchoff
123 Boston Street, 1st Floor
Boston, MA 02125
617/740-7340 telephone
617/740-7310 facsimile


### CERTIFICATE OF SERVICE

I, India L. Minchoff, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 13, 2007.

/s/ India L. Minchoff, Esq.