UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                )
STEPHANIE HOFER and                )
DOUGLAS HOFER,                        )
                                                )        Civil Action Docket No. 05-40170 FDS
              Plaintiffs,                 )
                                                )
v.                                              )
                                                )
THE GAP, INC., EXPEDIA, INC.    )
and TURTLE BEACH TOWERS,       )
                                                )
              Defendants.               )
                                                )
_____)

**DEFENDANT EXPEDIA, INC'S REPLY MEMORANDUM
IN RESPONSE TO PLAINTIFFS' OPPOSITION TO
DEFENDANT EXPEDIA, INC.'S MOTION FOR SUMMARY JUDGMENT**

Rodney E. Gould (BBO # 205420)
Email:  rgould@rhglaw.com
Robert C. Mueller (BBO#567599)
Email:  rmueller@rhglaw.com
RUBIN, HAY & GOULD, P.C.
205 Newbury Street
P.O. Box 786
Framingham, MA  01701-0202
Tel:  (508) 875-5222
Fax:  (508) 879-6803

Dockets.Justia.com

## <u>TABLE OF CONTENTS</u>

I.      <u>INTRODUCTION</u>……………………………………………..………………… 1

II.     <u>ARGUMENT</u>…………………………………….……………………………….…... 1

      A.     EVEN IF MILLER'S TESTIMONY IS RELEVANT TO THE
            SUMMARY JUDGMENT ISSUES, THE PLAINTIFFS'
            RELIANCE THEREON IS MISPLACED…………………………..……………1

            1.     Miller's deposition testimony does not, in fact, state that
                  Expedia conducted safety inspections of the Turtle Beach
                  Grounds for dangerous or hazardous conditions…………………………3

            2.     Miller's deposition testimony as to the employment status
                  of the person(s) who conducted the inspections is inadmissible
                  hearsay…………………………………………………………..….. 4

      B.     THERE IS NO EVIDENCE THAT EXPEDIA EXERTED ANY
            "CONTROL" OVER OPERATIONS OF THE RESORT………………....….. 7

      C.     EXPEDIA HAD NO DUTY TO WARN OF EITHER OPEN AND
            OBVIOUS OR HIDDEN DANGERS…………………………….…………. 11

            1.     None of Expedia's activities amount to an assumption of
                  a duty where none would not otherwise exist……………..…………….. 12

            2.     Expedia's status as a travel agent did not impose upon it
                  a duty to warn Hofer of dangerous or hazardous conditions,
                  whether open and obvious or hidden……………………………………14

      D.     EXPEDIA'S DISCLAIMER OF LIABILITY IS ENFORCEABLE……………19

III.    <u>CONCLUSION</u>………………………………………………………………..20

## I.    <u>INTRODUCTION</u>

Expedia, Inc. ("Expedia") submits the following reply memorandum in response to Plaintiffs' Opposition to Defendant, Expedia, Inc.'s Motion for Summary Judgment.  Plaintiffs' opposition, while long on *ipse dixits*, unsupported speculation and hyperbole, is bereft of admissible evidentiary support for their claim that Expedia, a travel agency, is liable for injuries sustained by Stephanie Hofer ("Hofer") on the premises of the Turtle Beach Towers resort ("Turtle Beach") in Ocho Rios, Jamaica when her sandal broke, causing her to fall down stairs into an adjacent turtle pond.  There is simply no duty on the part of Expedia to investigate or warn of such a condition, regardless of the theory advanced.  For the following reasons, in addition to the reasons set forth in Expedia's moving memorandum, Expedia is entitled to summary judgment.

## II.    <u>ARGUMENT</u>

### A.    **EVEN IF MILLER'S TESTIMONY IS RELEVANT TO THE SUMMARY JUDGMENT ISSUES, THE PLAINTIFFS' RELIANCE THEREON IS <u>MISPLACED</u>.**

The plaintiffs' claim of liability against Expedia rests almost entirely upon the deposition testimony of Faylin Miller ("Miller"), the General Manager of Turtle Beach, whose deposition took place in Jamaica on August 21, 2006.[1]  Miller testified in her deposition that she believed

---

[1] The only "evidence" outside of Miller's testimony upon which the plaintiffs rely to demonstrate Expedia's control over Turtle Beach is contained in Exhibit 9 to plaintiffs' opposition, namely email correspondence from Expedia to Sherna Thomas produced in discovery and designated as "CONFIDENTIAL."  These emails concern Sherna Thomas's apparent double booking of guests into the same unit in or around July 2006 (over two years <u>after</u> Hofer's accident), and Expedia's ultimately <u>unsuccessful</u> attempt to secure accommodations for its client.  (<u>See</u> Affidavit of Lisa Fertig ["Fertig Aff."], attached hereto as Ex. 1, ¶ 7.)  But we fail to see how a travel agent's attempt to resolve a booking issue supports allegations that it exercises control over defective stairs or dangerous turtle ponds on the hotel grounds -- indeed, one would assume that pressing an accommodation provider to make a room

representatives of Expedia had performed inspections of the property prior to Hofer's stay and had prepared inspection reports. But, having later reviewed her records and discovering that no such reports or records from Expedia existed, she realized she had misspoken, and subsequently submitted an affidavit to correct the misstatements in her deposition testimony. (See Affidavit of Faylin Miller ["Miller Aff."], ¶¶ 4-7, 9, 13.)  To the extent any part of Miller's affidavit is in conflict with her deposition testimony, Miller has provided a satisfactory explanation as to why the testimony changed. Cf. Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994.) [2]

The undisputed affidavit of Sherna Thomas, one of the owners of the units advertised on the Expedia website and the person who contracted with Expedia to advertise their rooms, states she had contracted with two other entities for the same room, Travelocity and WorldRes.com, and that she never arranged any inspections with Expedia. (Affidavit of Sherna Thomas ["S. Thomas Aff."], ¶¶ 3-4, 7-14.)[3]  Expedia, meanwhile, testified unequivocally and without a hint

---

available for a previously-booked customer is the exact type of activity one would hope the travel agent would perform.

[2] As this Court is aware, the plaintiffs filed an emergency motion to re-open factual discovery to re-depose Ms. Miller on the issues presented in her affidavit. On March 20, 2007, after a hearing, the Court issued an order providing the plaintiffs additional time, to April 13, 2007, to re-depose Miller and to submit their instant opposition. The plaintiffs have claimed that Miller has declined to be re-deposed, although we have no corroboration of this fact from Miller or the Turtle Beach. For its part, Expedia has consistently held that Miller's testimony on the issues related to "Expedia's inspections" is not material to its summary judgment motion. Indeed, Miller's testimony on the inspection issue was not part of Expedia's Local Rule 56.1 Statement of Material Facts included with its moving papers.

[3] The plaintiffs complain that the existence of Sherna Thomas was not disclosed by Expedia until after the discovery deadline, precluding plaintiffs' ability to cross-examine her. This is patently false. The plaintiffs knew of the existence of both Sherna and Daine Thomas through the August 21, 2006 deposition testimony of Faylin Miller (See Miller Depo., attached hereto as Ex. 2, pp. 54:15-55:3, 72:16-73:12, 74:16-75:25.) In addition, the existence of Sherna

of refutation that it conducted no such inspections and made no visits to the Turtle Beach prior to

Hofer's accident.  (Affidavit of Nashara Frazier ["Frazier Aff."], ¶ 9.)

> ### 1.    Miller's deposition testimony does not, in fact, state that Expedia conducted safety inspections of the Turtle Beach grounds for <u>dangerous or hazardous conditions.</u>

Putting aside for the moment the obvious hyperbole of equating biannual "inspections"

allegedly conducted by Expedia with <u>control</u> over Turtle Beach's management and operations,

Miller's actual testimony does not support even the plaintiffs' accusations that Expedia

conducted safety inspections.  Miller's testimony, on its face, only states that the persons visiting

the property pointed out things which "need[ed] to be fixed" and that they would make a

checklist "if they [saw] anything wrong."  (Miller Depo., Ex. 2, pp. 52:15-53:16.)  <u>Nowhere</u> in

Miller's deposition does she state that Expedia performed inspections of the physical plant or

grounds of the Turtle Beach for <u>defective or hazardous conditions.</u>[4]  Likewise, <u>nowhere</u> in

Miller's deposition testimony does she refer to the inspections as "safety" inspections.  "[A]

summary judgment motion cannot be defeated by conclusory allegations, harsh invective, empty

rhetoric, strained inferences, or unsupported conjecture."  <u>Collier v. City of Chicopee</u>, 158 F.3d

601, 604 (1st Cir. 1998) (citing <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st

Cir. 1990)).

---

and Daine Thomas was disclosed on September 26, 2006, as part of Expedia's Supplemental
Automatic Disclosure Pursuant to Fed. R. Civ. P. 26 (attached hereto as Ex. 3), and the pertinent
contracts between the Thomases and Expedia were produced shortly thereafter once a
confidentiality agreement had been entered into, but before plaintiffs' depositions of Expedia
witnesses taken prior to the then discovery deadline of October 23, 2006.

[4] Such inspections could include the bacteria count in the swimming pool water, the
sanitation of the restaurant kitchen, the purity of the air conditioning filtration equipment, the
adequacy or competency of resort security guards, or the sharpness or slipperiness of rocks in the
water of a turtle pond.

Rather, the <u>only</u> record testimony on the <u>nature</u> of the inspections is that the "inspection reports" Miller recalled seeing concerned merely cosmetic or aesthetic issues. (Miller Aff., ¶ 16.)  There is simply no evidence that the inspections of which Miller recalls (even assuming they were conducted by Expedia representatives) involved an inspection of the physical plant for hazardous or dangerous conditions, and Miller's affidavit testimony on this issue does not, in any way, contradict her prior deposition testimony.  "A subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration" on summary judgment.  <u>Gillen v. Fallon Ambulance Serv.</u>, 283 F.3d 11, 26 (1st Cir. 2002); <u>Sullivan v. City of Augusta</u>, 406 F. Supp. 2d 92, 117 (D. Me. 2005) (noting that when an affidavit contains additional, more specific facts than those in the deposition, it may be considered by the court).

The plaintiffs, not Expedia, bear the burden of coming forth with <u>proof</u> that the inspections referred to by Miller encompassed defects in the physical plant causing dangerous or hazardous conditions.  Miller's testimony does not establish such proof, nor is there any documentary or any other testimonial evidence that this was the case (because no inspections actually took place).  In opposition to summary judgment, "a showing [of a material issue] cannot be manufactured by negative implication; that is to say, a party opposing summary judgment 'cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.'"  <u>Collier</u>, 158 F.3d at 604 (citing <u>McCarthy v. Northwest Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995)).

     **2.**     **Miller's deposition testimony as to the employment status of the the person(s) who conducted the inspections is inadmissible hearsay.**

Even if the Court were to disregard any potentially conflicting testimony in Miller's affidavit, and proceed to adjudicate the issues solely based upon her deposition testimony, Miller's deposition testimony cannot be relied upon by the plaintiffs in opposition to the present motion because Miller's testimony as to the identity of the employer of the person(s) who performed these "inspections" is inadmissible hearsay under Fed. R. Evid. 802.  Miller's testimony, that Expedia representatives visited the property for "inspections," is most definitely submitted by the plaintiffs for the truth of the matter asserted -- that these individuals referred to by Miller were employed (or representatives of) Expedia.  But there is no basis in the record for the plaintiffs to assert that Miller did have such personal knowledge of their employment status, particularly given that Expedia contracted with the Thomases, not Miller or the Turtle Beach property management company, to advertise the units, and there is no record that Miller has personal knowledge of the employment status of these individuals from any other means.  Indeed, Miller admitted as much during her deposition:

> Q.    How do you know these individuals who investigate Mr. Dane
>         Thomas's 20 units are from Expedia?
> A.    They would come --
>         MR. KUZMA:  Objection.
> A.    He would call us to say that they're coming over, to expect Mr. So-
>         and-so, and someone would take them to the rooms for inspection.
> Q.    Okay.  So is it fair to say, Mr. Thomas or someone on his behalf
>         would contact you?
> A.    Yes.
> Q.    Okay.  And that Mr. Thomas or you would say -- or that person
>         would say to you, X individual from Expedia is coming to
>         investigate my 20 units?
> A.    Right.
>         MR. KUZMA:  Objection.

(Miller Depo., Ex. 2, pp. 74:22-75:13.)  Miller's subsequent affidavit clarifies the point that she has no personal knowledge of the employer of the individuals who performed the inspections.

(Miller Aff., ¶¶ 9-14.)  Miller's deposition testimony that a third-person, Mr. Thomas (who by all accounts is a Jamaican resident and unavailable for trial), told her that individual(s) from Expedia would be coming to visit the units.  This is hearsay under Fed. R. Evid. 802, and none of the exceptions under Fed. R. Evid. 803 or 804 apply.[5]

"As a general matter, only evidence that would be admissible at trial may be considered in connection with a motion for summary judgment."  Iorio v. Aramark Servicemaster, 2005 U.S. Dist. LEXIS 40290, at *23 (D. Mass. Sept. 30, 2005) (Saylor, J.) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 49-51 (1st Cir. 1990).  Since Miller's deposition testimony regarding the employment status of the person(s) who conducted inspections is inadmissible hearsay, plaintiffs have no admissible evidence that it was, in fact, Expedia representatives who conducted any of these inspections.

This case presents a perfect example of why hearsay testimony is inadmissible and unreliable.  Expedia has flat out denied that it has ever sent an employee or representative to Turtle Beach to perform a safety or any other type of inspection, nor had it sent an employee or representative to Turtle Beach for any purpose whatsoever prior to Hofer's accident.  (Frazier Aff., ¶ 9).  Sherna Thomas has likewise denied that Expedia performed any inspection of her units or sent her any inspection reports.  (S. Thomas Aff., ¶¶ 9-14.)[6]  But the plaintiffs are asking this Court to disregard the testimony of persons who have direct knowledge of the issues, and instead rely upon the hearsay statements of Miller, a person who admitted in her deposition her

---

[5] In contrast, the statements of Expedia and Sherna Thomas, denying that Expedia ever conducted inspections, are not hearsay.

[6] Plaintiffs complain that Expedia has not also submitted an affidavit of Daine Thomas, husband of Sherna Thomas (who, upon information and belief, are presently separated), but Expedia is not required to prove a negative.  See discussion *supra*.

knowledge of the employment status of the persons who visited the Turtle Beach was reported to her from another source.

### B.     THERE IS NO EVIDENCE THAT EXPEDIA EXERTED ANY "CONTROL" OVER OPERATIONS OF THE RESORT.

But even assuming, *arguendo*, that Miller's deposition testimony (to the exclusion of affidavit testimony overruling same) is to be relied upon in deciding the instant motion – that Expedia representatives visited the Turtle Beach twice yearly, conducted general inspections of the "grounds and rooms" and submitted inspection reports – Expedia is still entitled to summary judgment.  Such activity by a travel agent or tour operator is simply insufficient to impose upon it the degree of control necessary to assume the duties of an innkeeper or landowner.

Many of the cases cited in Expedia's moving memorandum involve situations where the travel agent or operator exhibited a dramatically greater presence at the subject hotel than Expedia's purported biannual inspections.  And in such cases, dismissal or summary judgment was warranted upon a finding that the activities did not rise to the level of "control" needed to impose upon the travel agent or operator the duties of an innkeeper.  See, e.g., McElheny v. Trans Nat'l Travel, 165 F. Supp. 2d 190, 199-201 (D.R.I. 2001) (tour operator representatives maintained a desk and chairs in the hotel lobby, held meetings at the hotel on a daily basis, and lent assistance to hotel management in selling time shares; tour operator's physical presence in the hotel did not give rise to a duty to the plaintiff to warn of a defective chair); Stafford v. Intrav, Inc., 841 F. Supp. 284 (E.D. Mo. 1993), aff'd, 16 F.3d 1228 (8th Cir. 1994) (tour operator provided a travel director, tour leader and tour guide on board a vessel used for a cruise; plaintiff fell through an open gangplank while speaking to the tour guide); Manahan v. NWA, 821 F. Supp. 1105 (D.V.I. 1991), supplemental op., adhered to, recons. denied sub nom. Manahan v.

Yacht Haven Hotel, 821 F. Supp. 1110 (D.V.I. 1992), aff'd without op., 995 F.2d 218 (3d Cir. 1993) (tour operator's groundhandler, who also acted as hotel's concierge, provided safety lectures and recommended restaurant to plaintiff where on her return she was mugged).[7]

Carley v. Theater Dev. Fund, 22 F. Supp. 2d 224 (S.D.N.Y. 1998), drives this point home. In Carley, the plaintiff was injured when she fell out of a hotel room window while on a tour in St. Petersburg, claiming she had fallen while trying to open said window due to the defective condition of same. Id. at 226-27. The plaintiffs alleged that the defendants were liable for the resulting injuries because (1) the tour operator's president accompanied the plaintiffs on their tour and stayed in the hotel with them; (2) the tour operator's president translated for the plaintiffs throughout their tour; (3) the tour operator's president physically inspected the room which included the defective window; (4) the tour operator's president "spoke with hotel employees about the condition of the room"; (5) the tour operator's president "told plaintiffs the room was safe"; and, (6) the tour operator's president, on her own accord, "sought to have the window in the hotel room opened and did so with the assistance of a hotel employee." Id. at 228 (emphasis added). In granting the defendants' motion to dismiss or for summary judgment, Judge Kaplan held, "these actions, even if assumed to be true, do not create an assumption of duty by [the tour operator and the tour promoter] to guarantee the non-negligent operation of the hotel." Id.

---

[7] See also Viches v. MLT, Inc., 124 F. Supp. 2d 1092, 1094 (E.D. Mich. 2000) (tour operator not liable for hotel's spraying of pesticide even though plaintiffs alleged that the tour operator maintained a "steady presence" at the hotel, including the maintenance of a hut on hotel grounds); Passero v. DHC Hotels and Resorts, Inc., 921 F. Supp. 742, 743 (D. Conn. 1996) (tour operator provided an "on location representative" at its hotel destinations "to ensure a pleasant stay"); Powell v. Trans Global Tours, Inc., 594 N.W.2d 252, 255-26 (Minn. Ct. App. 1999) (tour operator not liable for plaintiff's fall from hotel balcony even though it staffed a counter in the hotel lobby).

Of course, in the instant case, there is no dispute that Expedia did not accompany Hofer to the Turtle Beach, and there is absolutely no evidence that any Expedia employees were present at the Turtle Beach at the time of Hofer's accident.  (See Frazier Aff., ¶ 10.)  Even if Miller's deposition testimony on this issue is credited, there is nothing in the record which demonstrates that Expedia was controlling Turtle Beach operations or maintenance in any respect.  Indeed, Miller's actual testimony was that after sending the inspection reports to the Turtle Beach, Expedia (assuming it was, in fact, Expedia) never followed up as to whether the items on the checklist were corrected.  (Miller Depo., Ex. 2, p. 55:15-55:23.)  This is hardly evidence of control.

Simply put, even assuming that Expedia conducted biannual inspections of both the grounds and rooms, took pictures, and submitted reports to Turtle Beach suggesting changes that needed to be made,[8] nowhere do these "facts" come near to establishing the control necessary to impose upon a travel agent the duties of a landowner or innkeeper.  The plaintiffs cite absolutely no case which stands for the proposition that a supplier of travel services such as Expedia becomes the *de facto* (or *de jure*) owner, maintainer, or occupier of the premises based upon such or similar activity.  The only travel-related case cited by the plaintiff on this issue, Parades v. Princess Cruises, Inc., 1 F. Supp. 2d 87 (D. Mass. 1998), denied the tour operator's motion to dismiss under a Rule 12(b)(6) standard, not a summary judgment standard.  On summary judgment, however, the same court (Gorton, J.) granted summary judgment to the tour operator, holding that A&K International, an Illinois corporation, had no control over the operations of an

---

[8] Of course, since Expedia did not, in fact, actually conduct any such inspections there are no such photographs, reports, email correspondence or similar documents.

9

affiliated entity, A&K Egypt, for A&K Egypt's alleged negligence in the operation of a tour bus

in Egypt.  Parades v. A&K International, Inc., 81 F. Supp. 2d 162, 165-67 (D. Mass. 1999).[9]

Under plaintiffs' theory, all travel agents who visit or take "familiarization trips"[10] to

properties for which they book clients, including Turtle Beach, and who suggest changes which

might improve the property, would presumably be subject to liability under a "control" theory.[11]

---

[9] Plaintiffs cite a number of cases from Massachusetts courts setting forth general propositions of law regarding the issue of a duty to warn of a hazardous condition based upon control.  Interestingly, a close examination of these cases demonstrates the absurdity of plaintiffs' position vis-à-vis Expedia, and supports Expedia's non-liability (even assuming the accuracy of Miller's deposition testimony).  See, e.g., Cronin v. Universal Carloading and Dist. Co., 348 Mass. 645, 204 N.E.2d 917 (1965) (holding tenant of railroad freight house not liable for injuries sustained by third-party making deliveries to tenant through use of ladder nailed to outside of its building, because the tenant did not control the ladder and tenant only had permission to use storage space in a different area of the building which was not immediately adjacent to the area of the offending ladder); Underhill v. Shactman, 337 Mass. 730, 151 N.E.2d 287 (1958) (finding that Federated Department Stores, as a tenant in the Chestnut Hill Shopping Center, was not liable in negligence for plaintiffs' fall off of a retaining wall in the mall parking lot, even though the parking lot was used for the benefit of the tenant, the tenant was required to carry insurance which covered persons injured in the parking lot, and the tenant had a contractual right to supply extra parking attendants, since the owner of the mall itself was the entity which exercised "control"); Romano v. Massachusetts Port Authority, 3 Mass. App. Ct. 765, 330 N.E.2d 495 (1975) (plaintiff was injured when she fell over railroad ties in an unlit parking lot at Logan airport; the court held that the judge's denial of directed verdict to the company which operated the parking lot was correct, even though the company did not control the parking lot lights, because the company operated the parking lot twenty-four hours a day under an agreement with the port authority and was charged with the responsibility of knowledge of the placement of the railroad ties as well as the position of cars blocking the crosswalk).

[10] A "familiarization trip" or "FAM trip" is a free or heavily discounted trip for a travel agent paid for by the destination hotel to enable the agent to see the property first-hand.  See generally Semmelroth v. American Airlines, 448 F. Supp. 730, 731 (E.D. Ill. 1978).

[11] While Miller may have stated in her deposition that Turtle Beach gets 10-15% of its revenues from "Expedia," it is undisputed that Expedia's contract was solely with Sherna Thomas and the units owned by the Thomases, not Miller or Proprietors Strata Plan # 7, the Turtle Beach property management company.  But even if Miller were, in fact, referring to Expedia, the plaintiffs cite no authority for the proposition that there is a threshold whereby a travel agent or tour operator assumes the duties of an innkeeper or landowner if the value of its bookings with a property exceed a certain dollar amount.  Indeed, even affiliated entities engaged

10

Taking this a step further, individual travelers who stayed at Turtle Beach, and then wrote to it demanding changes lest they cease to use the property again, would presumably be subject to liability as they, under the plaintiffs' theory, presumably "control" the Turtle Beach by telling it to take corrective measures.  We respectfully submit that the plaintiffs' argument, taken to its logical conclusion, would have the effect of ensuring that no travel agent or tour operator would ever make any personal visits, communications or suggestions to properties to which they book travelers lest they be determined to be controlling the property.  This Court should decline plaintiffs' invitation to stretch the confines of tort law to this extreme.

### C.    EXPEDIA HAD NO DUTY TO WARN OF EITHER OPEN AND OBVIOUS OR HIDDEN DANGERS.

The plaintiffs further argue that in addition to Expedia's alleged control over the premises, Expedia had a duty to warn, having either assumed such a duty through inspections or through a generalized duty of care owed by travel agents to their customers.  The plaintiffs' opposition conflates the "open and obvious" and "hidden condition" issues and hopes by doing so they can avoid the law relevant to each.  The plaintiff claims "(1) the lack of guardrails on a dimly lit stairway[12] abutting a turtle pond and (2) the razor sharp material, unnoticeable to the

---

in a common purpose are not held to exert control absent actual proof of same.  See, e.g., Parades, 81 F. Supp. 2d at 165-67; Ross v. Trans Nat'l Travel, 1990 U.S. Dist. LEXIS 6994, at *6-*7 (D. Mass. June 5, 1990) (Ex. 3 to Summary Judgment Brief).

[12] Hofer testified that she could see both the stairs and the turtle pond, and she did not trip and fall because she could not see the stairs or pond.  (Hofer Depo. Vol I, Gould MSJ Dec. Ex 5, pp. 179:4-179:8, 179:17-179:18, 180:1-180:12.)  The lighting of the area at the time of her accident was simply not an issue.  In any event, if the lighting rendered the stairs dangerous, how was Expedia supposed to know of this fact if its putative inspections had taken place during the day?  Of course, there is absolutely no evidence that any of these inspections even occurred, much less that they were conducted at night.  Again, it is the plaintiffs' burden to proffer evidence on this point, not Expedia's burden to prove a negative.

causal observer, buried inside the turtle pond" constituted hazardous conditions for which

Expedia was duty-bound to warn plaintiff. However, regardless of the theory advanced, there is

no support for the imposition of such a duty upon Expedia, even if Miller's deposition testimony

is taken at face value.

### 1.    None of Expedia's activities amount to an assumption of a duty where none would not otherwise exist.

The plaintiffs' theory that Expedia assumed a duty to inspect and breached that duty is

without merit. As discussed *supra*, Part II.A.1., Miller's deposition testimony, at face value,

nowhere states that Expedia performed inspections of the physical plant of the Turtle Beach

grounds for <u>defective or hazardous conditions</u>. Likewise, nowhere in Miller's deposition

testimony does she refer to the inspections as "safety" inspections. Based upon the sketchy

deposition testimony of Miller, plaintiffs announce the surprising *ipse dixit* that "Expedia

undertook the duty to ensure that the Resort's premises were maintained in a safe condition."

But case law is consistent in holding that travel agents and tour operators assume no such duty,

even where it is alleged that the representative of the operator, present at a hotel, inspects the

their clients' room including a defective window and declares it to be safe. <u>Carley</u>,, 22 F. Supp.

2d at 228. <u>See generally</u> cases cited *supra*, pp. 7-9.

Indeed, the issue was succinctly encapsulated in the recent case of <u>Maraia v. Church of

Our Lady of Mount Carmel</u>, 2007 NY Slip Op. 498, 36 A.D.3d 766, 828 N.Y.S.2d 525 (2d Dep't

2007). In <u>Maraia</u>, the New York appellate court affirmed summary judgment in favor of the

defendant tour operator on plaintiff's claim that the tour operator was liable for plaintiff's fall

from a platform. In its decision, the court held that even if a tour operator assumed a duty to the

plaintiff, such as giving instructions to proceed in a particular manner, liability would attach only

when "its conduct put plaintiff in a more vulnerable position." Id. at 36 A.D.3d at 767, 828 N.Y.S.2d at 526. Here, the putative act of Expedia performing biannual inspections of the Turtle Beach did not put plaintiff in a more vulnerable position than had Expedia conducted no inspections at all.

Moreover, the few cases which find any assumption of a duty on the part of the travel agent or tour operator generally base their decisions on the active conduct of the agent or operator, at the scene of the incident, directing the plaintiff to proceed in a particular manner. Cf. Cohen v. Heritage Motor Tours, Inc., 205 A.D.2d 105, 107-09, 618 N.Y.S.2d 387, 389-90 (N.Y. App. Div., 2d Dep't 1994) (tour operator's employee directed the plaintiff to step on slippery stepping stone while traversing a running brook, and plaintiff subsequently fell; "[i]f the tour guide did not direct the plaintiff to traverse the stepping stones, there would be no duty attributable to the defendant."). Here, there is no evidence that Expedia, or anyone on its behalf, directed the plaintiff to proceed in any particular manner during her trip.

Indeed, the argument that biannual visits to a hotel property, a general investigation of the grounds and rooms, and inspection reports sent to the Turtle Beach -- which form the outer limit of Miller's deposition testimony -- amount to an assumption of a duty to warn of sharp, slippery rocks in a turtle pond adjacent to wide, short steps on the Turtle Beach grounds (see Miller Depo., Gould MSJ Dec. Ex. 8, at Ex. 1 and 5 thereto), is nothing more than an argument that by occasionally visiting the property Expedia guaranteed that there would be no dangerous or defective conditions on the property at any time any one of its customers visited the Turtle Beach.[13] Such an argument has been uniformly rejected by the courts.[14]

---

[13] Plaintiffs' reliance on "The Expedia Promise" (Plaintiffs' Opposition Ex. 4) is misplaced. First, it appears that the document was pulled off a webpage on April 13, 2007. It

13

### 2. Expedia' status as a travel agent did not impose upon it a duty to warn Hofer of dangerous or hazardous conditions, whether <u>open and obvious or hidden</u>.

The plaintiffs argue that Expedia had a duty to disclose reasonably obtainable information relevant to the object of the agency, and argue that Expedia had a duty to warn the plaintiff of the hazardous condition of the stairs adjacent to the turtle pond.   The plaintiffs then allege -- without a shred of proof -- that Expedia was not only aware of the dangers of the turtle pond but also had specialized knowledge of its hazards based upon its "management of the safety

---

was not produced by Expedia in pretrial discovery.  Second, the plaintiffs have not submitted any evidence authenticating this document, or whether it was even in existence when Hofer's trip was booked in March 2004.  Even if it were, none of the statements therein state that Expedia inspected (or inspects) the Turtle Beach, nor do any of the statements guarantee that travelers will not suffer injury or harm on their trips.  Plaintiffs' reliance on the "Star Rating" system (Plaintiffs' Opposition Ex. 7) is similarly misplaced.  Nothing in that document suggests that hotels of a certain star class are guaranteed not to have hazardous stairs or turtle ponds, nor does any statement therein state that Expedia has inspected the Turtle Beach.  It merely states that "[i]n cases where the available data is insufficient to meet our standards, we make an effort to perform additional research, including further review of media and additional visits to the property."  There is absolutely no evidence that Turtle Beach was such a case.  In addition, "[f]or any particular hotel, we consider a wide array of factors, including ratings from independent ratings systems, media recognition, and post-trip surveys of our customers."  Nothing in this document states that Expedia visits <u>all</u> properties or that it specifically visited the Turtle Beach.

[14] <u>See, e.g.</u>, <u>Ross</u>, 1990 U.S. Dist. LEXIS 6994, at *5 (Ex. 3 to Summary Judgment Brief) ("Defendant organized and arranged for the tour but did not agree to guarantee plaintiff's safety and therefore breached no duty in failing to do so."); <u>Harden v. American Airlines</u>, 178 F.R.D. 583, 585 (M.D. Ala. 1998) ("Travel agents do not exist to warrant the safety or reliability of the trips that they sell."); <u>Dorkin v. American Express Co.</u>, 345 N.Y.S.2d 891, 893-94, <u>aff'd</u>, 351 N.Y.S.2d 190, 192 (tour operator "did not guarantee a good time . . . nor that plaintiffs would return safely without adverse adventure or harm"); <u>Lavine v. General Mills, Inc.</u>, 519 F. Supp. 332, 336, 338 (N.D. Ga. 1981) ("Even if it were made, a general promise that the trip would be 'safe and reliable' does not constitute a guarantee that no harm would befall plaintiff. . . .  Not even a railroad, an airline or any other public carrier is an insurer of the safety of its passengers where its instrumentalities are not defective or its employees are not negligent.  There is simply no legal liability in this case.").

of the Resort's grounds."[15]   Not even the acceptance of Miller's deposition testimony warrants

plaintiffs' assertions that Expedia had any such knowledge or acted in any such fashion.  Such

outlandish speculation and conclusory allegations, without any supporting evidence, cannot

support an opposition to a summary judgment motion.  See, Collier, 158 F.3d at 604; McCarthy,

56 F.3d at 315.  The simple fact is that there is no evidence, documentary or testimonial, that

Expedia viewed the stairs or turtle pond, determined that the arrangement of the turtle pond vis-

à-vis the stairs constituted a dangerous or hazardous condition, issued any reports concerning the

stairs or turtle pond, or, armed with such "knowledge," failed to impart such facts to the plaintiff.

     The plaintiffs now appear to argue that the existence of the stairs next to the turtle pond

was not an open and obvious condition observable to the plaintiff.   If the condition was not open

and obvious to the plaintiff, we fail to see how the dangerousness of the same would be "open

and obvious" to Expedia during a putative inspection, even if there were proof that it had

inspected the area around the stairs and the pond.  The plaintiffs do not proffer any evidence that

Expedia, a travel agent, has any specialized knowledge in the mechanics of falls, defective

sandals, the proper design of stairs or turtle ponds, or even knowledge enough to test the

sharpness or slipperiness of rocks inside a turtle pond not meant for human contact.  Similarly,

the plaintiffs do not proffer any evidence (including any expert testimony) that stairs without

handrails or guardrails next to a turtle pond were defective, in violation of any Jamaican law or

regulation, or that their design or construction could otherwise support an inference of

negligence.

---

[15] This absurd *ipse dixit* not only ignores the facts and the law, but comes close to
challenging Fed. R. Civ. P. 11.

Even owners and occupiers of business premises, which Expedia was not, are not liable for obvious conditions such as handrails on stairs or the existence of an adjacent condition, such as a turtle pond, readily observable by a prudent person.  E.g., Hartel v. United States, 2004 U.S. Dist. LEXIS 28242, at *11-*14 (D. Mass. Oct. 12, 2004) (Gertner, J.) (holding that the existence of dual handrails -- one ornamental and one ADA complaint -- on the steps of a post office was an open and obvious condition; summary judgment granted to government), aff'd per curiam, 139 Fed. Appx. 292, 2005 U.S. App. LEXIS 14779 (1st Cir. July 20, 2005) ("Both handrails, in whatever condition they were in, were obviously apparent to any passerby and thus, the land owner is relieved of any duty of care as to risks arising therefrom.").   Nor is the absence of handrails, in combination with an innocuous, but potentially hazardous condition known to both the premises owner and plaintiff, warrant a finding of negligence.  E.g., Belcher v. City of San Francisco, 69 Cal. App. 2d 457, 158 P.2d 996 (1945) (city, which built a flight of concrete steps without handrails on a steep Taylor Street sidewalk was not liable for plaintiff's injuries when a strong prevailing wind -- known to the city to exist -- blew her over). [16]

As detailed in our summary judgment memorandum, if the condition were open and obvious, the plaintiff -- being that she had traversed the stairs three times prior to her fall, could see the existence of the adjacent turtle pond and the lack of handrails on the stairs, and could judge her conduct while turning from the door at the top of the stairs -- was in a much better

---

[16] Contrary to the plaintiffs' position, the open and obvious condition does not need to be "blatant" for the doctrine to apply.  Common activities and conditions are also found to be open and obvious.  E.g., Del Sesto v. Condakes, 341 Mass. 146, 167 N.E.2d 635 (1960) (plaintiff injured when he hit his head on the top of a abnormally-short doorway; court held that no warning as to the door's proportions was required as the height was unconcealed and obvious); Sterns v. Highland Hotel Co., 307 Mass. 90, 29 N.E.2d 721 (1940) (condition of revolving door at hotel, with steps immediately outside door, was an obvious condition; hotel owner not liable for plaintiffs' injuries absent a showing that the door was defective).

position to assess the situation at the time of the accident and there is no duty on the part of

Expedia to warn.[17]  See, e.g., Adames v. Trans Nat'l Travel, 1998 Mass. Super. LEXIS 108

(Mass. Super. Ct., Suffolk Co. Apr. 10, 1998) (Ex. 8 to Summary Judgment Memorandum);

Tradewind Transp. Co. v. Taylor, 267 F.2d 185, 187-88, 190 (9th Cir.), cert. denied, 361 U.S.

829 (1959); Stafford, 841 F. Supp. at 287-88; Manahan, 821 F. Supp. at 1114; McElheny, 165 F.

Supp. 2d at 205; Passero, 981 F. Supp. at 744; Sachs v. TWA Getaway Vacations, Inc., 125 F.

Supp. 2d 1368, 1374 (S.D. Fla. 2000); Maraia, 36 A.D.3d 767, 828 N.Y.S.2d at 526.[18]

---

[17] If plaintiff claims she had no opportunity to judge due to the breakage of her sandal,
that is a superseding cause -- an issue not directly addressed by the plaintiff in her opposition
brief -- and demonstrates lack of foreseeability and proximate cause on the part of Expedia.

[18] Plaintiffs' reliance upon Massachusetts cases which imply that similar conditions
would not be "open and obvious" are not on point as they, inter alia, (1) do not relate to the
duties of a travel agent or tour operator vis-à-vis the premises of a third party service supplier,
and (2) involve the owner or occupier of the premises, not a third-party, and its duty to keep its
premises reasonably safe for invitees.  As argued by the plaintiffs, "[w]hether a danger is open
and obvious has to do with the duty of the defendant, not the plaintiff." O'Sullivan v. Shaw, 431
Mass. 201, 205-06, 726 N.E.2d 951 (2000) (emphasis added, quotation omitted).  Many cases,
while dealing with conditions which would be seen, dealt with "unexpected potentially
observable conditions" that the plaintiff literally stumbled upon for the first time, such as items
being improperly left on store aisles.  None apply to the facts of this case.

Stevenson v. Four Winds Travel, Inc., 462 F.2d 889, 906 (5th Cir. 1972), the one travel
case cited by the plaintiff on this issue, does not compel a different result.  The plaintiff in
Stevenson slipped on a wet and slippery pier while on a fully escorted tour arranged by the
defendant tour operator, Four Winds Travel, which employed the local guide who was present
with the plaintiff's group on the pier (we note that the plaintiff did not sue her South Carolina
travel agency which booked her on the trip, which the plaintiffs have done here.)  The court
reversed a directed verdict in favor of the defendant, determining that a jury could have found
that the operator's employee, who was present on the pier and knew about its condition, could
have breached a duty to warn plaintiff of the same, particularly since the tour operator's brochure
"guaranteed that she would have and could rely upon the aid at all times of an experienced and
responsible tour director, who would know precisely where they were at all times from the time
the tour began until it ended." Id. at 906-07.   Expedia was not present at the Turtle Beach
during plaintiff's trip, Expedia did not accompany the plaintiff to the stairs at the Turtle Beach,
and nothing in Expedia's literature stated that Expedia would do so.

17

But if the allegedly dangerous or hazardous condition were hidden, Expedia had no duty to ferret out the hidden danger when it had no specific, actual knowledge of any prior incidents.[19] Expedia has not received any complaints of injuries or near injuries resulting from dangerous conditions down stairs or into the turtle pond at Turtle Beach. (Frazier Aff., ¶¶ 7-8.)  Between 2003 and 2006, the years in which numbers are available, approximately 389 customers made bookings through Expedia for the Turtle Beach (234 of those made bookings in 2003 and 2004). (Fertig Aff., Ex. 3, ¶ 5.)  Expedia has no record of any customer complaining of injuries or near injuries resulting from dangerous conditions down stairs or into turtle ponds at Turtle Beach. (Frazier Aff., ¶¶ 6-8; Fertig Aff, Ex. 3, ¶ 6.)  Similarly, Ms. Miller, General Manager of the Turtle Beach for over twenty-eight years, and Ms. Thomas, owner of the specific units advertised on the Expedia.com website, are unaware of any such reports.  (Miller Aff., ¶ 17; Miller Depo., Ex. 2, pp. 34:7-34:8, 36:21-37:2, 76:1-76:16; S. Thomas Aff., ¶¶ 15-17.)   Plaintiffs fail to point to a single instance, whether or not involving Expedia, in which anyone fell from the stairs into the turtle pond at the Turtle Beach.

Because Expedia had experience with the Turtle Beach and had had no reason to doubt its safety and reliability, there can be no claim against it on a negligent investigation and resultant failure to warn theory.  See, e.g., Hassett v. Cape Cod Bicycle Tours, Inc., 1987 U.S. Dist. LEXIS 8321, at *2 (D. Mass. Sept. 3, 1987 ) (Zobel, J.) (MSJ Brief Ex. 4) ("Plaintiff has

---

[19] At least four federal Circuit Courts have so concluded.  See Stafford, 841 F. Supp. at 288, aff'd, 16 F.3d 1228 (8th Cir. 1994); Wilson v. American Trans Air, Inc., 874 F.2d 386, 390 (7th Cir. 1989); Fling v. Hollywood Travel and Tours, 765 F. Supp. 1302, 1305-06, 1307-08 (N.D. Ohio 1990), aff'd, 933 F. 2d 1008 (6th Cir. 1991); Manahan, 821 F. Supp. at 1110, 1114, aff'd without op., 995 F.2d 218 (3d Cir. 1993).  Here, there is absolutely no evidence that Expedia had specific, actual knowledge of previous incidents on these steps which would trigger such a duty to warn of such a hidden condition.

alleged no facts, however, which suggest that defendant [tour operator] knew or should have known that the [bicycle shop] was unreliable.").

### D.     __EXPEDIA'S DISCLAIMER OF LIABILITY IS ENFORCEABLE__

The plaintiffs take issue with Expedia's disclaimer of liability on the grounds that (1) it was not conspicuous to Hofer and therefore not binding; (2) that Carrie LaRoche, Hofer's traveling companion, denies having a memory of viewing or agreeing to any limitation terms and did not have the authority to bind Hofer, and (3) that the limitation clauses do not bar the action because Expedia exercised control over the resort's maintenance.[20]

Whether or not the terms and conditions were conspicuous to Hofer is beside the point. Case law is clear that terms and conditions are fully enforceable in travel contracts to all members of a traveling party, even if the terms and conditions are viewed, agreed to, or held by only one individual acting as the agent for the others, which LaRoche was in this case. It is, of course, universally accepted that one member of a traveling party can agree to terms and conditions on behalf of his or her traveling companions. In McDermott, the tour operator's disclaimer appeared in a brochure, the plaintiff's son (who booked the trip) signed an acknowledgment agreeing to the terms and conditions in the brochure, and the son later stated that he had not read the specific page of the brochure containing the terms and conditions. McDermott v. Travellers Air Services, Inc., 462 F. Supp. 1335, 1340 (M.D. Pa. 1978). The court found the disclaimer to be valid as against the plaintiff who received the tour as a present from her son. Id. at 1340-41. See also Marek v. Marpan Two, Inc., 817 F.2d 242, 247 (3d Cir. 1987) (holding that traveling companion's possession of cruise ticket contract was sufficient to charge

---

[20] The control issue has already been discussed *supra*. The plaintiffs' claim is without merit.

plaintiff with notice of its provisions); <u>Hodes v. S.N.C. Achilie Lauro ed Altri-Gestione</u>, 858

F.2d 905, 912 (3d Cir. 1988) (travel club retained plaintiff's cruise ticket with contract;  the court

held that plaintiffs were charged with notice; "[t]he underlying question is whether someone has

'acted in the capacity of an agent in acquiring the ticket for the plaintiff.'").  While plaintiffs

argue that these cases are distinguishable in that the disclaimer appeared on a prepared, printed

brochure, as opposed to an Internet website, plaintiffs do not provide any case law to support the

distinction.

Moreover, while Ms. LaRoche, perhaps not surprisingly, testified in her deposition that

she had <u>no memory</u> of viewing or agreeing to the terms and conditions, that testimony does not

refute or contradict Expedia's testimony that those consumers who make travel reservations

through Expedia.com are subject to, must agree to, and must affirmatively click through

Expedia, Inc.'s *Web Site Terms, Conditions, and Notices* to effectuate their respective on-line

bookings.   (Expedia Int. Ans., Gould MSJ Dec. Ex. 1, No. 2.), that before someone is allowed to

create an account, the terms, conditions and notices <u>will</u> appear on Expedia's website (Knaack

Depo., Gould MSJ Dec. Ex. 2, p. 25:5-25:11.), and that when someone books a trip on

Expedia.com, he or she <u>must</u> affirmatively assent to each and every term listed on the terms,

conditions and notices. (<u>Id.</u>, p. 25:16-25:20 and Ex. 4 thereto.)   LaRoche's "absence of memory"

does not create a factual dispute on this point.

**III.    <u>CONCLUSION</u>**

Regardless of the theory advanced, the plaintiffs cannot establish a cause of action

against defendant Expedia.  Expedia therefore respectfully requests that this Honorable Court

issue an Order granting its motion for summary judgment.

Respectfully submitted,
By the defendant
EXPEDIA, INC.,
By its attorneys,

**/s/ Rodney E. Gould**
_____
Rodney E. Gould (BBO # 205420)
Email:  rgould@rhglaw.com
Robert C. Mueller (BBO#567599)
Email:  rmueller@rhglaw.com
RUBIN, HAY & GOULD, P.C.
205 Newbury Street
P.O. Box 786
Framingham, MA  01701-0202
Tel:  (508) 875-5222
Fax:  (508) 879-6803

DATED:  April 27, 2007


## CERTIFICATE OF SERVICE

I, Rodney E. Gould, hereby certify that this document, filed through the ECF system, will be served electronically upon the registered participants identified on the Notice of Electronic Filing (NEF) and will be served upon any non-registered participants, as indicated on the NEF, by paper copy sent via first-class mail, postage prepaid.


DATED: April 27, 2007                    **/s/ Rodney E. Gould**
                                         _____
                                         Rodney E. Gould