# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHANIE HOFER and<br>DOUGLAS HOFER,<br><br>Plaintiffs,<br><br>v.<br><br>THE GAP, INC., EXPEDIA, INC., and<br>TURTLE BEACH TOWERS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
05-40170-FDS

## MEMORANDUM AND ORDER ON DEFENDANTS
## EXPEDIA AND GAP'S MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This action arises from injuries sustained by plaintiff Stephanie Hofer at the Turtle Beach Towers resort in Ocho Rios, Jamaica.[1]  According to the complaint, Hofer was injured when a "flip-flop" sandal that she was wearing broke while she was descending a stairway, which made her lose her balance and fall into an ornamental pond containing sharp rocks.  She contends that the sandals had been purchased at an Old Navy retail store, which is owned by defendant The Gap, Inc.  She further contends that defendant Expedia, Inc., which operates the travel website used to book plaintiff's reservation, negligently failed to warn her of dangerous conditions at the resort.

---

[1]The present motions for summary judgment are directed at Stephanie Hofer's claims, as it appears from the complaint that plaintiff Douglas Hofer's claim for loss of consortium is asserted only against defendant Turtle Beach Towers.  Moreover, defendants Gap and Expedia contend that to the extent any such claim is asserted against them, it is derivative of Stephanie Hofer's claims.  The Court will use the term "plaintiff" to refer to Stephanie Hofer only.

Dockets.Justia.com

Defendants Gap and Expedia have each moved for summary judgment. For the reasons set forth below, Gap's motion for summary judgment will be denied and Expedia's motion will be granted.

## I.     Factual Background

The following facts are set forth in the light most favorable to plaintiff.

### A.     The Parties

Plaintiff Stephanie Hofer is a resident of Leominster, Massachusetts, who previously worked as a dental hygienist. At the time of the alleged incident, she was 31 years old.

Defendant The Gap, Inc. is a California corporation that owns the Old Navy chain of retail stores, where plaintiff purportedly purchased the sandals at issue in this case.

Defendant Expedia, Inc., is a Washington corporation that owns the travel website Expedia.com. The Expedia.com website provides online users with access to more than 100,000 travel-related product and service providers, such as hotels, airlines, and rental car agencies.

Defendant Turtle Beach Towers is a resort located in Ocho Rios, Jamaica.[2] Turtle Beach is one of the vendors accessible through Expedia.com.[3]

### B.     The Booking of Plaintiff's Trip

In early 2004, Hofer and a friend, Carrie LaRoche, decided to take a vacation to Ocho

---

[2] Plaintiff filed a proof of service stating that a copy of the summons and complaint were hand-delivered to Dalkeith Lonsdale, an "agent and person in charge" of Turtle Beach Towers, on January 13, 2006. Turtle Beach, however, has not answered or otherwise responded to the complaint, nor has it filed an appearance or otherwise participated in the action.

[3] It appears that plaintiff rented a Turtle Beach Towers unit owned by Sherna and Daine Thomas, and managed by Proprietors Strata Plan #7, Turtle Beach Towers. It is unclear from the record whether the unit would be considered a studio or one bedroom unit because apparently the bed was only separated from the rest of the unit by a curtain. The Thomases have advertised their units on Expedia.com since 2000.

Rios, Jamaica.[4]  On March 13, 2004, LaRoche accessed Expedia.com on a computer.  Using the

Expedia.com system, she selected tickets for a round-trip flight from Boston to Montego Bay for

herself and Hofer and accommodations at Turtle Beach Towers.  Using a credit card, and

presumably entering data into various fields, she then purchased the selected items.

Hofer was not physically present when the trip was purchased.  There is no dispute that

she consented to having LaRoche book the tickets and accommodations on her behalf.[5]  Hofer

later reimbursed LaRoche for the costs of the tickets and the lodging.

After purchase, Expedia provided LaRoche with a travel itinerary in electronic format.

---

[4] LaRoche, who has since married, was known at the time as Carrie LaBelle.

[5] The relevant Hofer deposition testimony was as follows:

Q:      Shifting our focus now on . . . to the booking of the trip through Expedia, did you give Carrie
        permission to book the trip for you via Expedia.com?
A:      Yes, I did.
Q:      Who chose to go to Jamaica for the trip?
A:      Mutual decision.
Q:      Who chose to go to Turtle Beach Towers?
A:      Carrie.

(Hofer Dep. at 361-62).

The relevant LaRoche deposition testimony was as follows:

Q:      Okay.  Did Stephanie give you her permission to book the trip for her?
A:      Yes.
Q:      What did she say to let you know that you could book the trip for her?
A:      I believe I called her and said, "How does this sound?"  And she said, "Go for it."
Q:      Okay.  So before you actually booked the trip you gave a call to Stephanie to talk about the actual
        booking?
A:      Yes.
Q:      Okay.  Do you recall what you said to her?
A:      Not specifically.  I'm assuming I would have told her where we would be staying, the price, when
        we would leave, those kinds of things.

(LaRoche Dep. at 101-02).

LaRoche forwarded the itinerary to plaintiff via e-mail.

According to Expedia, consumers who book travel through Expedia.com must affirmatively agree to Expedia's *Web Site Terms, Conditions, and Notices* to make on-line bookings; although users can browse the site, tickets cannot be purchased or reserved unless the user has "clicked through" and accepted the terms and conditions. At the time, Expedia's terms and conditions included a "Liability Disclaimer" that stated as follows:

> THE CARRIERS, HOTELS AND OTHER SUPPLIERS PROVIDING TRAVEL
> OR OTHER SERVICES FOR EXPEDIA, INC. ARE INDEPENDENT
> CONTRACTORS AND NOT AGENTS OR EMPLOYEES OF EXPEDIA, INC.
> OR ITS AFFILIATES. EXPEDIA, INC. AND ITS AFFILIATES ARE NOT
> LIABLE FOR THE ACTS, ERRORS, OMISSIONS, REPRESENTATIONS,
> WARRANTIES, BREACHES OR NEGLIGENCE OF ANY SUCH SUPPLIERS
> OR FROM ANY PERSONAL INJURIEIS [sic], DEATH, PROPERTY
> DAMAGE, OR OTHER DAMAGES OR EXPENSES RESULTING
> THEREFROM.

LaRoche testified that she did not recall having seen the disclaimer. According to Hofer, the itinerary forwarded to her by LaRoche did not include a copy of the disclaimer, and she was never provided with tickets or other printed materials with any similar language.

C.    **The Accident**

Hofer and LaRoche left Logan airport in Boston on March 18, 2004. After arriving at the Montego Bay airport in Jamaica, they took a shuttle bus directly to Turtle Beach, arriving at the resort at approximately 6:00 p.m.

At the Turtle Beach Towers, stairs lead up to a glass door in the approach to the main lobby. According to Hofer, the stairway was dimly lit and lacked any handrail. Next to the stairway was a rectangular turtle pond that contained slate, flagstone, and other sharp materials.

Upon arriving at Turtle Beach, Hofer walked up the stairs as she and LaRoche entered the

4

lobby.  After they checked into their room, she walked back down the stairs.

After dinner at a marketplace across the street from the resort, Hofer decided to go to the front desk to get information on a possible trip to Dunn's River Falls.  She left the room around 11:00 p.m.  According to Hofer, she had recently purchased sandals before the trip at an Old Navy store and was wearing them for the very first time.

Hofer walked up the stairs to the lobby and tried the door, but found it locked.  She contends that as she turned around to descend the stairs, the thong of her right sandal became detached by pulling through the sole.  This caused her to lose her balance, and she fell to her right into the turtle pond.  As she fell, she gouged her left leg on the sharp rocks in the pond.

### D.    Loss of the Sandal

No one but Hofer witnessed the accident.  Denroy Scarlett, a Turtle Beach employee, discovered her in the pond, bleeding profusely; she had lost so much blood that the water in the pond had turned blood red.  He also saw the sandal at the scene.  Resort employees gave her towels and helped her into a car so that she could be rushed to a hospital.

According to LaRoche, when she arrived at the scene of the accident, Hofer told her that the broken sandal had caused the fall.  LaRoche also said that she observed the broken sandal on the stairs.

After accompanying Hofer to the hospital, LaRoche returned to the resort to collect Hofer's belongings.  The sandals that Hofer had been wearing, however, were now missing.  LaRoche spoke to resort employees, but no one was able to locate the sandals.  According to Scarlett, the resort's maintenance crew cleaned up the accident scene.  He does not know, however, what happened to the sandals.

Plaintiff did not return to Turtle Beach from the hospital.  Instead, she was flown to Boston on the next day, March 19, where she was transported to Massachusetts General Hospital for surgery.

### E.    Expedia's Inspections of the Grounds

Expedia rates the accommodations that are available for bookings through its website. The rating is performed according to a "star" system, on a scale of one star ("economy") to five stars ("exceptional").  According to the description on Expedia.com, the ratings are created in the following manner:

> We take an objective approach in rating hotels.  For any particular hotel, we consider a wide array of factors, including ratings from independent ratings systems, media recognition, and post-trip surveys of our customers.  All these points of data . . . are plugged into a weighted formula, which calculates our star rating.  These calculated ratings are then reviewed to help ensure they reflect any current developments or changes occurring since the compilation of the rating.
>
> In cases where the available data is insufficient to meet our standards, we make an effort to perform additional research, including further review of media and *additional visits to the property*.  We may also consult members of our editorial team for factual information regarding a hotel.

(emphasis added).  Based on this system, Turtle Beach Towers was given two stars (a "value" accommodation).[6]

Faylin Miller is the resort's general manager.  She testified at her deposition that representatives of Expedia came approximately twice a year to conduct "room checks" or

---

[6] The Expedia.com website, under the heading "The Expedia Promise," also states the following:

> You can depend on our information.  Expedia travel specialists visit thousands of hotels across the globe to ensure our descriptions are accurate and up-to-date.

"inspections" of the "grounds and rooms."[7]  She then testified as follows:

Q:    Would they point out things on occasion to you as the manager here which need to be fixed?

A:    Yes.  If there is . . .

Q:    That would be true of items within a hotel room?

A:    Right.

Q:    As well as what needs to be fixed on the grounds.

A:    Yes.

Q:    Would they take photographs also upon their inspections?

A:    Yes.  If they see anything wrong, they would do a checklist.

Q:    And if they saw anything wrong, would they give a list of things which needed correcting or would they just tell you?

A:    They would e-mail it.

*    *    *

Q:    So they would send you the e-mail after their visit?

A:    Yes.

Q:    And you would try and correct those things which needed correcting.

A:    Sure.

Q:    Yes.  Okay.  After you received that correspondence from Expedia, and you attempted to correct the situation, how did you notify Expedia that the situation that was listed on their inspection report was corrected?

_____

[7] Expedia denies that its representatives ever visited the property.  After her deposition, Miller executed an affidavit indicating that, after review of her deposition transcript, she is now unsure if any employee of Expedia or any of its affiliates ever visited Turtle Beach.  For the purposes of summary judgment, the Court will credit her deposition testimony.

A:      We would fill the checklist and send it back to them.

Bookings through Expedia.com represent ten to fifteen per cent of the resort's revenues. On at least one occasion, Expedia representatives have intervened to require the resort to accommodate guests who booked through Expedia.com, where the resort had failed to advise the company that it was sold out.

## II.   Procedural History

Plaintiffs filed the present action on September 27, 2005.  The complaint asserts claims for (1) negligent maintenance against defendant Turtle Beach; (2) negligent failure to warn against Turtle Beach and Expedia; (3) negligent infliction of emotional distress against Turtle Beach; (4) product liability against Gap; and (5) breach of an implied warranty of merchantability against Gap.[8]  Defendants Gap and Expedia have both moved for summary judgment as to all counts.

## III.  Analysis

### A.    Request to Strike LaRoche Affidavit

Before reaching the merits of the motions for summary judgment, the Court must address a threshold issue concerning the affidavit of Carrie LaRoche, submitted by plaintiff in opposition to defendant's motion for summary judgment.

Although it has not filed a motion, defendant Gap has requested that the Court strike the statement in LaRoche's affidavit that she "personally observed that one of the flip-flops was broken" after the accident directly contradicts her sworn deposition testimony, in which she never stated that the flip-flop was damaged, and must therefore be struck.

It is well-established that "a party opposing summary judgment may not manufacture a

---

[8] The complaint includes a claim by plaintiff Douglas Hofer for loss of consortium against Turtle Beach.

8

dispute of fact by contradicting his earlier sworn testimony without a satisfactory explanation of why the testimony is changed." *Abreu-Guzman v. Ford*, 241 F.3d 69, 74 (1st Cir. 2001); *see Williams v. Raytheon Co.*, 220 F.3d 16, 20-21 (1st Cir. 2000); *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994). However, the affidavit should be stricken only if there is a clear and unambiguous contradiction between the affidavit and the prior sworn testimony. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 26 (1st Cir. 2002). "A subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment." *Id.*

When asked during her deposition what the sandal looked like, LaRoche responded that it was a "flip-flop."[9] She did not testify that she had seen it broken. She did not, however, say the opposite (e.g., "The sandal was intact"), equivocate (e.g., "The sandal might have been broken"), or claim a lack of memory (e.g., "I don't remember whether the sandal was broken"). Indeed, counsel for Expedia—who conducted the deposition—never asked her whether she saw the flip-flop after the accident. Accordingly, there is no contradiction of any kind between the affidavit and the deposition, much less a clear and unambiguous contradiction. *See id.* The affidavit will not be struck.

---

[9] The relevant deposition testimony was as follows:

Q:      Okay. What color was the sandal?
A:      I don't remember.
Q:      What did the sandal look like?
A:      It was a flip-flop.
Q:      Describe for the record what you mean by "flip-flop."
A:      A flip-flop where it has the spot where your toe—your big toe goes on one side and the rest of your toes are on the other side, and it goes from the middle out to the two sides of the shoe.

(LaRoche Dep. at 39).

**B.**    **Summary Judgment Standard of Review**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (*quoting Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery, and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).

**C.**    **Gap's Motion for Summary Judgment**

Plaintiff asserts claims for negligent manufacture and breach of the implied warranty of merchantability against defendant Gap based on the failure of the sandal. Gap seeks summary judgment on both claims, contending that (1) plaintiff improperly failed to preserve the allegedly defective sandal and that it would be unfairly prejudicial to proceed with the claims in their absence; and (2) plaintiff has produced no evidence to establish that a defect existed or that defendant's negligence caused her injuries.

**1.**    **Spoliation Doctrine**

Gap first argues that it is entitled to summary judgment pursuant to the spoliation doctrine. "[S]poliation is the intentional, negligent, or malicious destruction of relevant evidence." *Townsend v. American Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass. 1997).[10] It is

---

[10] Although jurisdiction in this case is premised on diversity, federal law controls the issue of spoliation. *See Chapman v. Bernard's, Inc.*, 167 F. Supp. 2d 406, 413 (D. Mass. 2001).

well-established that a district court has the inherent power to sanction a litigant where evidence is improperly lost, damaged, or destroyed, when necessary to prevent the non-offending party from suffering unfair prejudice. *See Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446 (1st Cir. 1997). Possible sanctions include "dismissal of the case, the exclusion of evidence, or a jury instruction on the 'spoliation inference.'" *Townsend*, 174 F.R.D. at 4 (*quoting Vazquez-Corales v. Sea-Land Serv., Inc.*, 172 F.R.D. 10, 13-14 (D.P.R. 1997)).

The spoliation doctrine does not apply, however, where the opposing party is not responsible for the loss or destruction of the evidence. *Townsend*, 174 F.R.D. at 5. Although a litigant generally has a duty to preserve evidence in a case, "that duty does not extend to evidence which is not in the litigant's possession or custody and over which the litigant has no control." *Id.* Thus, "absent any evidence that the plaintiff was at fault for the loss or destruction of the [evidence]," the spoliation doctrine is inapplicable. *Id.; cf. Gordner v. Dynetics Corp.*, 862 F. Supp. 1303, 1308 (M.D. Pa. 1994) ("To hold that no plaintiff may recover in a product liability action when the actual product which is alleged to be defective is unavailable, regardless of the conduct of the plaintiff, is an unwarranted expansion of the doctrine of spoliation of evidence.").

Here, Gap contends that plaintiff's failure to preserve the subject sandal following her accident constitutes spoliation, and that it has been unfairly prejudiced, as it has been deprived of any opportunity to inspect the allegedly defective product. The proper sanction, according to Gap, is to enter summary judgment in its favor.

The facts in the present case, viewed in the light most favorable to plaintiff, do not come close to establishing spoliation. The sandal apparently came off plaintiff's foot in the course of the accident. Having suffered a serious injury, plaintiff was taken to a hospital in Jamaica without

11

her sandals.  From the hospital, she was transported directly to Massachusetts for surgery and did

not return to the resort.  When her traveling companion returned to the resort the following day

to collect plaintiff's belongings, the accident site had been cleaned by resort staff and the sandal

was missing.

It would be grossly unfair, under the circumstances, to require plaintiff to secure the

evidence prior to being transported for emergency care, or to hold her responsible for the actions

of the resort staff.  The loss of the sandal was not the result of any intentional or negligent act on

the part of plaintiff, and the spoliation doctrine accordingly does not apply.

### 2.    **Negligent Manufacture**

Plaintiff asserts a claim of negligent manufacture against Gap.  Where, as here, a product

liability claim is premised on negligence, "the plaintiff has the burden of proving each and every

element of that claim:  duty, breach of duty (or, the element of negligence), causation (actual and

proximate) and damages."  *Ulwick v. DeChristopher*, 411 Mass. 401, 408 (1991).

### a.    **Duty**

To prevail on her claim of negligence, plaintiff must establish that defendant owed her a

duty of care.  Under Massachusetts law,

> a manufacturer or other person owning or controlling a thing that is dangerous in
> its nature or is in a dangerous condition, either to his knowledge or as a result of
> his want of reasonable care in manufacture or inspection, who deals with or
> disposes of that thing in a way that he foresees or in the exercise of reasonable care
> ought to foresee will probably carry that thing into contact with some person,
> known or unknown, who will probably be ignorant of the danger, owes a legal
> duty to every such person to use reasonable care to prevent injury to him.

*Coyne v. John S. Tilley Co.*, 368 Mass. 230, 234 (1975) (*quoting Carter v. Yardley & Co.,* 319

Mass. 92, 96 (1946)).  Thus, so long as it can be shown that Gap manufactured or sold the sandal

at issue, it owed plaintiff a duty to use reasonable care to protect her from injury arising out of product defects.

Plaintiff alleges that at some time prior to her trip to Jamaica, she purchased four pairs of sandals that were identical (but for color) at an Old Navy store, and that the sandals at issue were among the four pairs.  In addition to her own testimony, plaintiff has submitted affidavit and deposition testimony of her mother, Lauren Drew, and of LaRoche, both of whom stated that they saw the sandals shortly after plaintiff bought them, and the they were still connected by an Old Navy hanger.

Gap, however, argues that plaintiff has not put forth sufficient evidence to identify it as the manufacturer of the sandals.  Specifically, Gap contends that (1) based on the exemplars produced by plaintiff, the allegedly defective product was a "wrapped" style sandal;[11] (2) Old Navy retail stores only sold these wrapped sandals through 2002, and thus did not carry them in 2004 when plaintiff purportedly bought them; and (3) although this style was sold at Old Navy outlet stores in 2004, there were no such stores in Massachusetts at that time.

Gap's evidence, if credited by the jury, is sufficient to support a defense verdict on the issue of product identification.  That is not, however, the standard for granting a defendant summary judgment.  Without question, when the evidence is viewed in the light most favorable to the plaintiff, it is sufficient to support the conclusion that Gap manufactured the sandals in question.  Summary judgment as to that issue must therefore be denied.

---

[11] Because the allegedly defective sandals were lost following the accident, plaintiff has apparently produced the remaining three pairs as exemplars.

      **b.**    ***Res Ipsa Loquitur***

The Court turns next to the elements of breach and causation.  Plaintiff has set forth no direct evidence as to any specific negligent act or omission by Gap that caused her injuries. Rather, she relies on circumstantial evidence and the doctrine of *res ipsa loquitur* to sustain her burden of proof.[12]

The doctrine of *res ipsa loquitur* "permits a trier of fact to draw an inference of negligence in the absence of a finding of a specific cause of the occurrence when an accident is of the kind that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes including conduct of the plaintiff are sufficiently eliminated by the evidence." *Enrich v. Windmere Corp.*, 416 Mass. 83, 88 (1993); *see also Coyne v. John S. Tilley Co.,* 368 Mass. 230, 235 (1975); *Evangelio v. Metropolitan Bottling Co.*, 339 Mass. 177, 181 (1959).  A plaintiff, however, "need not exclude all possible causes;" rather, "[she] must show that there is a greater probability than not that the accident resulted from the defendant's negligence."  *Enrich*, 416 Mass. at 87; *Coyne*, 368 Mass. at 237 ("The evidence introduced must be of such a nature that it warrants a reasonable inference that the particular defendant-manufacturer, rather than another, bears responsibility for the negligence which, one may infer, caused the accident.").

Thus, under the *res ipsa loquitur* doctrine, plaintiff here must show (1) a sandal breaking on its first use is the type of occurrence that does not usually happen in the absence of negligence; and (2) that her injuries were more likely caused by Gap's negligence than by some other cause.

---

[12] Gap objects to plaintiff's use of *res ipsa loquitur* on the grounds that she did not plead the theory in her complaint.  *Res ipsa loquitur*, however, is not a separate cause of action that must be specifically set out in the pleadings, but rather a means by which a jury may infer negligence through the occurrence of an unusual event. *See Coyne*, 368 Mass. at 235; c*f. Ryba v. LaLancette*, 417 F. Supp. 2d 199, 206 n.13 (D. Mass. 2006) (considering a *res ipsa loquitur* theory, even though plaintiff had not raised it anywhere in his pleadings).

*See Evangelio*, 339 Mass. at 180.

As to the first requirement, plaintiff argues that a flip-flop should not break the first time it is worn, and that such a failure is the type of occurrence that does not usually happen in the absence of negligence. The Court agrees, and concludes that a reasonable juror could so infer. *See Coyne*, 368 Mass. at 235 (" [A] trier of fact could infer as a matter of common knowledge that a relatively new aluminum stepladder would not collapse in such a way that one of its legs was bent inward . . . unless someone had been negligent."); *Petchel v. Collins*, 59 Mass. App. Ct. 517, 522 (2003) ("[I]t is a matter of such common understanding and knowledge that propane gas is an explosive and flammable substance that expert testimony on that fact, even if helpful, was not essential to the plaintiff's case.").[13]

The second requirement—evidence demonstrating a likelihood that plaintiff's injury was more likely caused by defendant's negligence, rather than some other cause—is a closer question. Plaintiff has submitted deposition testimony indicating that she had not previously worn the sandals; that she used the sandals for their normal and intended purpose; that she was not intoxicated or impaired at the time of the accident; and that her fall was not caused by an inability to see the pond. This evidence, while not overwhelming, is sufficient to allow the negligent manufacture claim to survive summary judgment. *Cf. Coyne*, 368 Mass at 239 n.9 ("A plaintiff's evidence, in cases similar to this one, should be sufficient to warrant a finding that the accident

---

[13] Plaintiff has proffered no expert testimony on the subject of negligent manufacture. According to Gap, in the absence of such evidence, any verdict for plaintiff would be based solely on speculation and conjecture. The Court disagrees. If the plaintiff were asserting a claim for defective design, such evidence would almost certainly be required. *See Back v. Wickes Corp.*, 375 Mass. 633, 642 (1978) (in defective design case, the court must consider "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design.") (citations omitted). Plaintiff, however, is asserting a claim for negligent manufacture, not for negligent design.

occurred in the course of proper and foreseeable use.").

\*     \*     \*

Thus, the Court concludes that there exist genuine issues of material fact as to (1) whether Gap produced and sold the allegedly defective sandals to plaintiff, and thereby owed her a duty of care; (2) whether Gap breached any duty and whether that breach was the proximate cause of plaintiff's injury.  Summary judgment is accordingly denied as to the negligent manufacture claim.

### 3.       Breach of the Implied Warranty of Merchantability

In Count Seven, plaintiff asserts a claim for breach of the implied warranty of merchantability.  A breach of the warranty of merchantability claim, which is governed by Mass. Gen. Laws ch. 106, § 2-314(2)(c), has been described by the SJC as "congruent, in all material respects, with the principles expressed in . . . the Restatement's definition of a seller's strict liability for harm suffered by a user or consumer of a seller's product."  *Colter v. Barber-Greene Co.*, 403 Mass. 50, 61 (1988).  Unlike a negligence claim, a claim premised on warranty liability "focuses on whether the product was defective and unreasonably dangerous and not on the conduct of the user or the seller."  *Id.* at 61-62 (*quoting Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 355 (1983)).  A manufacturer may therefore be liable under a breach of warranty claim, "even though he or she properly designed, manufactured, and sold his or her product."  *Colter*, 403 Mass. at 62.

Under Massachusetts law,

[a] defendant in a products liability case in this Commonwealth may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true.  A defendant cannot be found to have been negligent, without having breached the warranty of merchantability.

16

*Hayes v. Ariens Co.*, 391 Mass. 407, 410 (1984), *overruled on other grounds by Vassallo v. Baxter Healthcare Corp.*, 428 Mass. 1 (1998). Because the Court has concluded that summary judgment cannot enter on plaintiff's negligence claim, it must necessarily be denied as to the warranty claim as well. Gap's motion for summary judgment will accordingly be denied as to plaintiff's claim for breach of the implied warranty of merchantability.

### D.    Expedia's Motion for Summary Judgment

The negligence claim against Expedia alleges that Expedia breached its duty to warn plaintiff that the Turtle Beach stairway was dimly lit and lacked a handrail and that the turtle pond contained "razor-sharp rocks." According to plaintiff, the presence of a handrail would have prevented her from falling into the pond and sustaining injuries.

Expedia raises two arguments in support of its motion for summary judgment. First, it contends that it expressly disclaimed any liability for the negligence of any "carriers, hotels and other suppliers providing travel or other services for Expedia, Inc. . . ." Second, it contends that travel agents and tour operators are not liable for the alleged negligence of independent accommodations providers or for defective conditions located on their property. The Court will consider each argument in turn.

### 1.    The Liability Disclaimer

There is no dispute that plaintiff did not use the Expedia.com website, or indeed interact with Expedia in any way. Instead, plaintiff authorized Carrie LaRoche, her friend and travel companion, to book airline tickets and accommodation reservations for their trip. LaRoche used Expedia.com to purchase the tickets and reserve the accommodations, and plaintiff later reimbursed her for the expenses.

17

It is also undisputed that in order to finalize the reservation, LaRoche had to "click through" Expedia's *Web Site Terms, Conditions, and Notices*, which included a liability disclaimer.[14]   That disclaimer stated, among other things, that "[t]he . . . hotels and other suppliers providing . . . services for Expedia, Inc., are independent contractors and not agents or employees of Expedia, Inc., . . . ," and that "Expedia, Inc., . . . [is] not liable for the acts, errors, omissions, representations, warranties, breaches, or negligence of any such suppliers or from any personal [injuries] . . . resulting therefrom."

Plaintiff first contends that she is not bound by the disclaimer because LaRoche's acceptance of the disclaimer does not bind her.  This claim, reduced to its essence, is that LaRoche was not her agent for purposes of booking travel plans.  That argument is clearly without merit.  Although the details are not clear from the record, plaintiff obviously authorized LaRoche to go online and purchase airline tickets and hotel reservations.  Nothing in that arrangement is remarkable in the slightest respect; family members, friends, and work colleagues routinely book travel plans for others, and it would be extraordinarily cumbersome to require that each traveler book his or her own ticket.  Each such arrangement is necessarily an agency relationship:  the person booking the tickets is acting as an agent on behalf of the other members of the traveling party.  Implicit in that agency relationship is the power to bind the principal as to matters within the scope of the relationship, including the acceptance of the terms of a disclaimer. *See Transurface Carriers, Inc., v. Ford Motor Co.,* 738 F.2d 42, 45 (1st Cir. 1984) (holding

---

[14] During her deposition, LaRoche testified that she could not recall what she read or did while making the Expedia.com reservation.  Her claimed lack of memory, however, without more, is not sufficient to create an issue of disputed material fact. *See, e.g., Dickey v. Baptist Mem'l Hosp.-North MS*, 146 F.3d 262, 266 n.1 (5th Cir. 1998)*; Romero v. Caribbean Rests., Inc.*, 14 F. Supp. 2d 185, 192 (D.P.R. 1998).

principal bound by agent's agreement to a limitation of warranties and noting that "the law of principal and agent is clear that conferring authority to conduct a transaction gives authority to undertake acts incidental to the transaction."); RESTATEMENT (THIRD) OF AGENCY § 2.02 (2006) ("An agent has actual authority to take . . . acts necessary or incidental to achieving the principal's objectives . . . ."). LaRoche accordingly had the authority to purchase tickets and reservations for plaintiff, and to agree to a disclaimer of liability on her behalf to accomplish that end.[15]

Plaintiff further contends that LaRoche's agreement to Expedia's terms does not bind Hofer because the disclaimer was not sufficiently conspicuous.[16] Certainly, the disclaimer was conspicuous to LaRoche, who could not order tickets or make reservations without "clicking through" it. Moreover, LaRoche's assent to Expedia's terms bound both herself and Hofer to the disclaimer regardless of the fact that Hofer did not review those terms. *See, e.g., Marek v. Marpan Two, Inc.,* 817 F.2d 242, 247 (3d Cir. 1987) (affirming grant of summary judgment finding travel companion's possession of ticket contract sufficient to charge plaintiff with notice of contract's provisions); *Barkin v. Norwegian Caribbean Lines*, No. 86-0343, 1987 WL 766923, at *1, 4 (D. Mass. June 25, 1987) (granting summary judgment based on ticket contract limitation where plaintiff's travel companion purchased ticket for plaintiff and plaintiff failed to read ticket contract); *DeCarlo v. Italian Line*, 416 F. Supp. 1136, 1137 (S.D.N.Y. 1976) (finding plaintiff legally chargeable with notice of ticket provisions plaintiff did not read where travel companion

---

[15] Indeed, there is no small degree of irony in plaintiff's position. According to plaintiff, Expedia (with which plaintiff had no direct contact) *was* acting as her agent, and therefore owed her a duty of care, but LaRoche (who plaintiff expressly authorized to purchase tickets on her behalf) was *not*, and therefore could not bind her.

[16] There is no claim that the disclaimer itself is overbroad or otherwise unfair or unenforceable.

acted as agent in acquiring ticket for plaintiff); *see also Carnival Cruise Lines, Inc. v. Shute*, 499

U.S. 585, 593 (1991) (forum selection clause on pre-printed ticket enforceable notwithstanding

absence of opportunity for negotiation).[17]

Plaintiff is accordingly bound by the terms of the disclaimer, notwithstanding the fact that

she did not actually see it. Although that finding is sufficient to dispose of her claim, the Court

will go on to address the other issues raised by defendant's motion.

## 2.     **Expedia's Duty to Warn**

It is well-established that travel agents are not generally liable for the negligence or

dangerous conditions of third-party hotel or travel operators. *See, e.g., Gabrielle v. Allegro

Resorts Hotels*, 210 F. Supp. 2d 62, 70 (D.R.I. 2002) ("[T]ravel agents and tour operators are not

liable for the negligence of third parties.")*; McElheny v. Trans Nat'l Travel, Inc.*, 165 F. Supp. 2d

190, 203 (D.R.I. 2001) (tour operator could not be held liable for alleged defective condition at

hotel, where tour operator did not own, operate, or control the hotel); *Paredes v. Abercombie &

Kent Int'l, Inc.,* 81 F. Supp. 2d 162, 165 (D. Mass. 1999) (granting defendant's motion for

summary judgment where allegation that defendant controlled tour van, without evidence of that

control, was insufficient to create a genuine issue of material fact); *Carley v. Theater Dev. Fund*,

22 F. Supp. 2d 224, 228 (S.D.N.Y. 1998) ("[O]perators of international tours do not have a duty

to tour participants to insure the non-negligent performance of hotel services by independent

contractors.")*; Passero v. DHC Hotels and Resorts, Inc.*, 981 F. Supp. 742, 746 (D. Conn. 1996)

("[A]s a tour operator, TNT is not liable for the negligent acts of third-party suppliers of services

---

[17] Indeed, in the cases cited, the disclaimer was simply printed on a ticket or ticket contract. Here, plaintiff's agent, Carrie LaRoche, had to act affirmatively to accept the disclaimer before she could purchase the tickets.

to tour participants.") (footnote omitted); *Ross v. Trans Nat'l Travel*, 1990 WL 79229, at *3 (D. Mass. June 5, 1990) (tour operator not liable for back injury plaintiff suffered while on safari tour in Africa); *Lavine v. General Mills, Inc.*, 519 F. Supp. 332, 336 (N.D. Ga. 1981) (summary judgment allowed for tour operator; no liability for slip and fall in Fiji Islands).

Plaintiff contends, however, that this case should fall outside the general rule for three reasons: (1) Expedia "controlled" the Turtle Beach Towers resort as a result of inspections it allegedly conducted at the hotel; (2) Expedia, as plaintiff's agent, owed her a duty to warn her of dangerous hazards of which Expedia was aware through its "inside information;" and (3) Expedia voluntarily assumed a duty to warn her of safety hazards. The Court finds each of these arguments to be unpersuasive.

### a.    Duty to Warn Based on Alleged Control of Resort

Plaintiff first argues that, notwithstanding the general rule, a travel agent may be held responsible for conditions at a hotel or other place of accommodation if the agent exercises control over the facilities. Plaintiff then contends that a genuine issue of disputed fact exists as to whether Expedia exercised control over the facilities at Turtle Beach.

As support for that contention, plaintiff points to the deposition testimony of the resort's general manager, Faylin Miller, that Expedia had conducted "inspections" of the resort's grounds and rooms twice a year and that Expedia had provided the resort with a checklist of items that needed to be "fixed."[18] Plaintiff's primary contention is that these "inspections" and requests to

---

[18] As noted, Miller has filed an affidavit claiming that she is now unsure if any employee of Expedia ever visited Turtle Beach. Because a jury could credit Miller's original testimony over her affidavit and because for the purposes of this summary judgment analysis the Court must consider the facts in a light most favorable to the plaintiff, the Court will consider only Miller's original deposition testimony.

have things "fixed" prove that Expedia exercised "pervasive control over all aspects of the Resort,
particularly the maintenance of the Resort's premises."

As a general matter, of course, a party exercising control over a property may be liable to
invitees for defective conditions on the premises, without regard to whether the party actually
owns the property. *Great Northern Ins. Co. v. Paino Assocs.*, 364 F. Supp. 2d 7, 19 (D. Mass.
2005) ("[A] duty of care may arise from the right to control land, even where the person held to
such a duty does not own the land in question.") (citation omitted); *Buck v. Clauson's Inn at
Coonamessett, Inc.*, 349 Mass. 612, 615 (Mass. 1965) ("Liability for damage caused by the
condition of premises ordinarily depends upon the control of the offending instrumentality.").  In
this case, however, the evidence—even when viewed in the light most favorable to the
plaintiff—is not sufficient to establish the requisite degree of control.

First, there is no evidence as to the purpose of the "inspections" undertaken by Expedia.
Plaintiff seeks to draw the inference that the inspections were for the purpose of identifying and
remedying unsafe or dangerous conditions, based on the testimony that the resort was given lists
of things to "fix."  Under the circumstances, such an inference is unreasonable.  Expedia is not in
the business of property management, safety inspection, or civil engineering; it operates a travel
company.  It is routine for travel companies to publish ratings of accommodations, and as a part
of that process to inspect the facilities for comfort, quality, and value; absent additional evidence,
it is not reasonable to infer that such companies conduct safety inspections.

Second, there is no evidence that Expedia actually had or exercised any authority or
control over the resort.  At a minimum, the concept of "control" implies that Expedia had an
ability to compel or require Turtle Beach to make the repairs that Expedia identified.  But there is

no evidence that Expedia could sanction the resort or otherwise force Turtle Beach to fix the items on its inspection checklists. Miller merely testified that Turtle Beach attempted to correct the issues on Expedia's inspection checklists, not that Expedia required the resort to make the repairs, or that there would be any consequence for failing to do so. Furthermore, according to Miller, Expedia did not re-inspect Turtle Beach to ensure that the requested repairs had been made.[19]

Third, there is no evidence that Expedia held itself out as conducting safety inspections, or otherwise taking responsibility for conditions at the resort. To the contrary, the disclaimer states clearly that the accommodations advertised on Expedia.com were independent contractors and that Expedia bore no responsibility for their actions.[20]

Finally, the Court notes that the position put forth by the plaintiff would wreak substantial havoc in the travel industry, and do little to advance the cause of safety. A multitude of companies offer hotel and restaurant ratings for travelers, some of which cover the entire globe. Such ratings are to a large degree dependent on field work, where representatives travel to the facilities and perform inspections. If the combination of performing inspections and providing suggestions for improvement to the proprietor were sufficient to impose tort liability for defects in the premises, the likely result would be fewer inspections and few (if any) suggestions for

---

[19] Plaintiff suggests that the fact that 10 to 15% of the revenues of Turtle Beach came through bookings on Expedia.com gave Expedia economic power over the resort. Even assuming that to be true, there is no evidence that Expedia ever attempted to exercise any such power, or that the power was anything other than theoretical. Plaintiff points to one instance in which Expedia required the resort to honor reservations where the resort had neglected to inform Expedia that it was sold out, but that action appears to have been pursuant to the listing arrangement between Expedia and the resort, not the raw existence of economic power by Expedia.

[20] Plaintiff does not claim actual reliance on any representation or warranty by Expedia, even in the broadest sense (e.g., "We decided to book a room at the resort because Expedia gave it two stars.").

improvement, all to the detriment of the traveling public.

No court appears to have ever taken so drastic a step, and there is no reason to do so under the circumstances presented here. Indeed, courts have granted summary judgment on behalf of defendant travel agents or tour companies in cases where the evidence of control was far stronger than the evidence here. *See, e.g., McElheny*, 165 F. Supp. 2d at 199, 201-02 (granting summary judgment for tour operator because did not control hotel despite maintaining a desk in hotel lobby, holding meetings at hotel on daily basis, and assisting hotel management with selling time shares); *Passero,* 981 F. Supp. at 743 (granting tour operator's motion for summary judgment despite having performed inspection of hotel and having "on-location representative"); *Powell v. Trans Global Tours, Inc.,* 594 N.W.2d 252, 256 (Minn. Ct. App. 1999) (affirming grant of summary judgment for defendant despite defendant's listing hotel in its brochure, making reservations at hotel for tour participants, and staffing a desk at hotel).

In short, plaintiff's evidence of Expedia's control over Turtle Beach is not sufficient to raise a genuine issue of material fact as to whether Expedia had a duty to warn plaintiff about allegedly dangerous conditions at Turtle Beach, and summary judgment in defendant's favor as to that theory is therefore warranted.

**b.     <u>Duty to Warn Under Agency Principles</u>**

Plaintiff's second argument is that Expedia had a duty to warn plaintiff about the dangerous condition of the resort because Expedia was acting as plaintiff's agent. Plaintiff argues that, as an agent of plaintiff, Expedia owed her a duty to disclose information relative to the object of agency. In general, courts "refuse to impose liability upon travel agents . . . regardless of the theories advanced." *Ross v. Trans Nat'l Travel*, 1990 WL 79229, at *3 (D. Mass. June 5,

1990) (finding plaintiff's contention that travel agency defendant was liable to plaintiff under agency principles incorrect as a matter of law). As support for her agency argument, plaintiff primarily relies on a Missouri Court of Appeals case, *Markland v. Travel Travel Southfield, Inc.,* 810 S.W.2d 81 (Mo. Ct. App. 1991), which is neither binding on this Court nor particularly persuasive.[21]

The *Markland* court held that "a travel agency has a duty to use reasonable efforts to apprise a customer of information material to the agency which the travel agency has notice the customer would desire." 810 S.W.2d at 84. The court found, however, that the travel agent did not neglect its duty of care to the plaintiff because the agent did not have any "inside information" that it withheld from plaintiff. *Id.*

Plaintiff here contends that Expedia had "inside information" about the condition of the resort; in particular, she alleges that Expedia "as one who managed the safety of the Resort's grounds," had specialized knowledge of the material inside the turtle pond and the danger posed by the lack of a railing on the stairway. As discussed above, however, there is no evidence that Expedia managed the safety of the resort's grounds. Even assuming that Expedia conducted inspections of Turtle Beach, there is no evidence to suggest that Expedia had "inside information" about the conditions of the turtle pond and stairs that Hofer did not herself have. The alleged

---

[21] Plaintiff also relies on *Stevenson v. Four Winds Travel, Inc.,* 462 F.2d 899 (5th Cir. 1972). In *Stevenson,* the Fifth Circuit imposed liability on a tour operator for failing to disclose a dangerous condition on a pier that it did not own, lease, or control. 462 F.2d at 906. Importantly, however, the *Stevenson* court found the tour operator liable based on the specific terms of the parties' contract, in which defendant expressly represented that plaintiff would be "cared for" by defendant's tour escort from the beginning to the end of the trip. *Id.* at 907; *compare Hassett v. Cape Cod Bicycle Tours, Inc.*, 1987 WL 17540, at *1 (D. Mass. Sept. 3, 1987) ("[D]efendant did not agree to ensure plaintiff's safety and therefore breached no duty in failing to do so."). Here, Expedia clearly and specifically disclaimed any such duty in its *Web Site Terms, Conditions, and Notices*, and the *Stevenson* holding therefore does not apply.

hazards were just as open and obvious to plaintiff as they were to Expedia. *See Markland*, 810

S.W.2d at 84 ("[A] travel agent has a duty to disclose reasonably obtainable relevant information

to the traveler unless that information is so clearly obvious and apparent to the traveler that, as a

matter of law, the travel agent would not be negligent in failing to disclose it."); *Passero*, 981 F.

Supp. at 742. Expedia accordingly had no duty to warn plaintiff based on the obtaining of "inside

information."

### c.      Assumption of Duty to Warn

Finally, plaintiff argues that Expedia had a duty to warn her based on a theory of

gratuitous assumption of a duty to maintain the Turtle Beach premises. As support for that

argument, plaintiff cites to the RESTATEMENT (SECOND) OF TORTS § 323 (1965), which states as

follows:

> [o]ne who undertakes, gratuitously or for consideration, to render services to
> another which he should recognize as necessary for the protection of the other's
> person or things, is subject to liability to the other for physical harm resulting from
> his failure to exercise reasonable care to perform his undertaking, if (a) his failure
> to exercise such care increases the risk of such harm, or (b) the harm is suffered
> because of the other's reliance upon the undertaking.

That principle plainly does not apply to the facts of this case. As discussed at length

above, there is no evidence (1) that Expedia's inspections of Turtle Beach were conducted for the

protection of travelers, (2) that the risk of harm to plaintiff increased because of the inspections,

or (3) that plaintiff relied on these inspections in any way (in fact, prior to discovery in this

litigation she was not even aware that they had occurred). *See Carley v. Theater Dev. Fund*, 22

F. Supp. 2d 224, 228-29 (S.D.N.Y. 1998) (tour company assumed no duty to warn, even where a

representative of the tour company accompanied plaintiff on trip, stayed in the hotel with plaintiff,

inspected plaintiff's room, spoke with hotel staff about the room, and told plaintiff that the room

was safe).  In short, there is simply no support for plaintiff's contention that Expedia assumed a

duty to warn.[22]

**IV.    Conclusion**

For the foregoing reasons, defendant The Gap's motion for summary judgment is

DENIED.  Defendant Expedia's motion for summary judgment is GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: September 28, 2007

---

[22] The Court does not reach Expedia's argument that the failure of the sandal was an intervening or superseding cause of the injury.

27